UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TIRZA F. MING,

                              Plaintiff,

v.                                                         6:23-CV-0086
                                                           (MAD/ML)
JULIA BROUILLETE, in official and
personal capacity; and MINDY A. LAND,

                              Defendants.

_____

APPEARANCES:                                OF COUNSEL:

TIRZA F. MING
  Plaintiff, *Pro Se*
709 Columbia Street
Utica, New York 13502


MIROSLAV LOVRIC, United States Magistrate Judge


## ORDER and REPORT-RECOMMENDATION

        The Clerk has sent a *pro se* complaint in the above captioned action together with an

application to proceed *in forma pauperis*, filed by Tirza F. Ming ("Plaintiff") to the Court for

review.  (Dkt. Nos. 1, 3.)  For the reasons discussed below, I grant Plaintiff's *in forma pauperis*

application, and recommend that Plaintiff's Complaint be dismissed in its entirety (1) in part

without leave to replead, and (2) in part with leave to replead.  (Dkt. Nos. 1, 3.)

## I.    BACKGROUND

### A.    Procedural History

On January 23, 2023, Plaintiff filed a Complaint together with an application to proceed *in forma pauperis* and a motion for a temporary restraining order.  (Dkt. Nos. 1, 2, 3.)  On January 24, 2023, United States District Judge Mae A. D'Agostino denied Plaintiff's motion for a temporary restraining order because Plaintiff "failed to demonstrate a likelihood of success on the merits" and, in the alternative, "failed to demonstrate irreparable harm in the absence of the injunction."  (Dkt. No. 6 at 4.)  Judge D'Agostino then referred this matter to the undersigned for a decision on Plaintiff's motion for leave to proceed *in forma pauperis* and an initial review of the Complaint.  (*Id*.)

### B.    Summary of the Complaint

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that her rights were violated by defendants Julia Brouillete, an Oneida County Family Court Judge, and Mindy Land, an individual who lived with Plaintiff while she was a minor up until approximately January 18, 2023 (collectively "Defendants").  (*See generally* Dkt. No. 1.)  The Complaint is extremely difficult to follow, however, it appears to stem from personal disputes between Plaintiff and Defendant Land, which, at various times, involved Defendant Brouillete, acting in her capacity as a family court judge.  (*Id*.)

More specifically, the Complaint appears to allege that on January 18, 2023, Defendant Land called the police, made "false accusations and filed a temporary refrain from order" against Plaintiff and third-party Zaria Bartolomie, another individual who was living with Plaintiff and

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Defendant Land.  (Dkt. No. 1 at 8.)  Plaintiff alleges that Defendant Land removed Plaintiff's

and Ms. Bartolomie's belongings from the residence and stole some of Plaintiff's and Ms.

Bartolomie's belongings.  (*Id*.)  Plaintiff alleges that at some point in time, Plaintiff and Ms.

Bartolomie each made an "affidavit of facts," which they brought to the Oneida Family Court

and presented to Defendant Brouillete.  (*Id*.)  Plaintiff alleges that Defendant Brouillete heard

from Plaintiff and Defendant Land the same day, ignored Plaintiff's version of events, and

ordered Plaintiff and Ms. Bartolomie to vacate their shared residence with Defendant Land

within two hours.  (*Id*.)

Under the causes of action heading in the Complaint, Plaintiff appears to assert causes of

action pursuant to the following: (1) various provisions of the New York State Penal Law[2]; (2)

various federal criminal provisions including 18 U.S.C. §§ 241, 242, 245; (3) 28 U.S.C. § 518;

(4) 42 U.S.C. § 3631; (5) 42 U.S.C. § 14141; (6) 28 U.S.C. §§ 351-364; and (7) 42 U.S.C. §

1983 and the First Amendment of the United States Constitution.  (Dkt. No. 1.)  As relief,

Plaintiff seeks, *inter alia* compensatory and punitive damages.  (*Id*. at 6.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[3]  After reviewing Plaintiff's *in*

---

[2]       Plaintiff cites to N.Y. Pen. Law §§ 240.50, 240.36, 135.60, 155.05, 155.25, 210.45, 210.35, 120.15, 130.52, 175.35, 200.00, and 200.04.

[3]       The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant

*forma pauperis* application (Dkt. No. 3), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[4]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter*

*alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and

punctuation omitted).

---

who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]    Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed.  *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he

decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.    Plaintiff's Claims Asserting Various New York State and Federal Criminal Provisions

Without elaboration, Plaintiff cites to several New York State Penal Law and federal criminal statutes in her Complaint: 18 U.S.C. §§ 241 (Conspiracy against Rights), 242 (Deprivation of Rights under Color of Law), 245 (Interference with Federally Protected Activities); and N.Y. Pen. Law §§ 240.50 (falsely reporting an incident in the third degree), 240.36 (loitering in the first degree), 135.60 (coercion in the third degree), 155.05 (larceny defined), 155.25 (petit larceny), 210.45 (making a punishable false written statement), 210.35 (making an apparently sworn false statement in the second degree), 120.15 (menacing in the third degree), 130.52 (forcible touching), 175.35 (offering a false instrument for filing in the first degree), 200.00 (bribery in the third degree), and 200.04 (bribery in the first degree). (*See generally* Dkt. No. 1.)

There is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.)

("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes.").

As a result, I recommend dismissal of all of Plaintiff's claims that are premised on alleged violations of federal or state criminal laws. *See Hall v. Sampson*, 21-CV-4839, 2022 WL 2068248, at *2 n.2 (E.D. Pa. June 8, 2022) (collecting cases) (holding that the plaintiff cannot bring criminal charges against the defendants through a private lawsuit and that claims pursuant to, *inter alia*, 18 U.S.C. §§ 241, 371 do not give rise to a civil cause of action); *Patterson v. Patterson*, 16-CV-0844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) (quoting *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009)) ("Courts within this Circuit have accordingly held consistently that criminal charges under New York law 'cannot be prosecuted by a private person.'"); *Walthour v. Herron*, 10-01495, 2010 WL 1877704, at *2 (E.D. Pa. May 6, 2010) (recognizing no private right of action under, *inter alia*, 18 U.S.C. §§ 241, 371).

### B. Claim Pursuant to 28 U.S.C. § 518

To the extent that Plaintiff asserts a claim pursuant to 28 U.S.C. § 518, I recommend that it be dismissed. That statute provides that "[e]xcept when the Attorney General in a particular case directs otherwise, the Attorney General and the Solicitor General shall conduct and argue suits . . . in the United States Court of Federal Claims." 28 U.S.C. § 518.

Plaintiff has not alleged any involvement of the United States nor does this statute appear to be applicable to Plaintiff's claims against Defendants. As a result, I recommend that any

claim pursuant to 28 U.S.C. § 518 be dismissed for failure to state a claim upon which relief may be granted.

### C.    Claim Pursuant to 42 U.S.C. § 3631

To the extent that Plaintiff asserts a claim pursuant to 42 U.S.C. § 3631, I recommend that it be dismissed.  42 U.S.C. § 3631 is "a provision of the [Fair Housing Act] relating to criminal violations and penalties."  *Byrd v. KTB Capital LLC*, 16-CV-6017, 2019 WL 652529, at *4 (W.D.N.Y. Feb. 15, 2019).  "There is no private right of action under 42 U.S.C. § 3631." *Cruz v. New York*, 17-CV-0510, 2017 WL 6021838, at *13 n.12 (N.D.N.Y. Oct. 27, 2017) (Dancks, M.J.) (citing *DeSouza v. Taiman*, 16-CV-0490, 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases)), *report and recommendation adopted by* 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (Sannes, J.).

### D.    Claim Pursuant to 42 U.S.C. § 14141

Plaintiff appears to assert a claim against Defendants pursuant to 42 U.S.C. § 14141,[5] which prohibits governmental employees from depriving persons of rights, privileges, or immunities secured or protected under the constitution.  (*See generally* Dkt. No. 1.)  However, that statute contains no private right of action.  *Cruz*, 2017 WL 6021838, at *13 n.12 (citing *Miller v. Carpinello*, 06-CV-12940, 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); *see Israel v. City of Syracuse*, 21-CV-0915, 2021 WL 4777256, at *7 (N.D.N.Y. Sept. 16, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claim pursuant to 42 U.S.C. § 14141 because that provision contains to private right of action), *report and recommendation adopted by*, 2021 WL 4773232 (N.D.N.Y. Oct. 13, 2021) (Hurd, J.); *Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at *7 (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (citing 34 U.S.C. §

---

[5]    Effective September 1, 2017, that section was recodified as 34 U.S.C. § 12601.

12601(b)) ("Under 34 U.S.C. § 12601, only the United States Attorney General has the authority

to bring a civil action."); *see also Steinhardt v. Bernardsville Police Dep't*, 20-2825, 2021 WL

3929321, at *2 n.2 (3d Cir. Sept. 2, 2021) ("[The plaintiff] also referenced . . . 34 U.S.C. §

12601, but [that] provision[] contain[s] no private right of action."); *Chappell v. Adams Cnty.*

*Children's Servs.*, 22-CV-0747, 2023 WL 2568300, at *2 n.4 (S.D. Ohio Mar. 20, 2023)

("[t]here is no private right of action under this statute."); *Gumber v. Fagundes*, 21-CV-3155,

2021 WL 3563065, at *2 (N.D. Cal. Aug. 11, 2021) ("[C]laims under . . . 34 U.S.C. § 12601 . . .

must be dismissed because there is no private right of action.").  As a result, I recommend that

this claim be dismissed.

### E.    Claims Pursuant to 28 U.S.C. §§ 351-364

To the extent that Plaintiff attempts to assert claims pursuant to 28 U.S.C. §§ 351-364, I

recommend that they be dismissed.

"The Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351-364 ("the Act") . . . .

authorizes complaints against United States Circuit, District, Bankruptcy, and Magistrate Judges

who have 'engaged in conduct prejudicial to the effective and expeditious administration of the

business of the courts' or who are 'unable to discharge all the duties of office by reason of

mental or physical disability." *Killingsworth v. Bringedahl*, 21-CV-0337, 2023 WL 2486552, at

*3 (M.D. La. Feb. 24, 2023).  Pursuant to 28 U.S.C. § 351(a), any person seeking to assert a

claim pursuant to the Act "may file with the clerk of the court of appeals for the circuit a written

complaint containing a brief statement of the facts constituting such conduct."  28 U.S.C. §

351(a).  "Then, the chief judge of the circuit is tasked with reviewing the complaint and

determining an appropriate course of action." *Fletcher v. Tymkovich*, 786 F. App'x 826, 828

(10th Cir. 2019) (citing 28 U.S.C. § 352).  A complaint pursuant to the Act may be dismissed if it

is "directly related to the merits of a decision or procedural ruling." *Killingsworth*, 2023 WL 2486552, at *3 (citing 28 U.S.C. § 352(b)(1)(A)(ii)).

Here, to the extent that Plaintiff is seeking a review of actions that Defendant Brouillete took as an Oneida County Family Court Judge pursuant to 28 U.S.C. §§ 351-364, I recommend that those claims be dismissed.  First, it is not alleged that Defendant Brouillete is a United States Circuit, District, Bankruptcy, or Magistrate Judge, and thus, her actions are not subject to review pursuant to 28 U.S.C. §§ 351-364.  Second, this claim is not properly before the Court because, to the extent that a person seeks review pursuant to the Act, the proper procedure is to file the complaint with the clerk of the court of appeals for the circuit.  28 U.S.C. § 351(a); *see Beitman v. Correct Care Solutions*, 22-15716, 2023 WL 2552333, at *1 n.7 (9th Cir. Mar. 17, 2023) (declining to consider any complaint that the plaintiff "may have attempted to lodge against Judge Teilborg pursuant to 28 U.S.C. § 351(a): it was not properly before the district court and is not before us now.").  Third, it appears that Plaintiff is merely seeking a review of what she perceives to be incorrect judicial decisions by Defendant Brouillete, which is not permissible under the Act.  28 U.S.C. § 352(b)(1)(A)(ii).  For each of these reasons, I recommend that Plaintiff's claims pursuant to 28 U.S.C. § 351-364 be dismissed for failure to state a claim upon which relief may be granted.

### F.    Claim Pursuant to 42 U.S.C. § 1983 and the First Amendment

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under color of state "statute, ordinance, regulation, custom or usage."  42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, <u>and</u> (2) the right was violated by a person acting under the color of state law, or a "state actor."  *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

### 1.    Claim Against Defendant Land

Generally, private parties are not state actors, and are not liable under § 1983.  *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . .") (internal quotation marks and citations omitted).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)).  A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)).  Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law . . . collaborated with a private person . . . to deprive the plaintiff of a constitutional right."  *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

However, "mere use, and even misuse, of state courts does not turn private parties into state actors."  *Koziol v. King*, 14-CV-0946, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015) (Sharpe, C.J.) (citing *Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983."); *Dahlberg v. Becker*, 748 F.2d 85, 89-90 (2d Cir. 1984) (dismissing § 1983 action because allegations of "misuse of a state statute" did not give rise to § 1983 action)).

Here, the Complaint fails to allege facts plausibly suggesting that Defendant Land, who rented Plaintiff a room for a period of time, was a state actor for purposes of liability pursuant to 42 U.S.C. § 1983. *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *7 (N.D.N.Y. Sept. 29, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant mother of his child because her alleged misuse of the state court system did not turn her into a state actor), *report and recommendation adopted by* 2022 WL 16551700 (N.D.N.Y. Oct. 31, 2022) (Sannes, C.J.); *Koziol*, 2015 WL 2453481, at *11-12 (dismissing the plaintiff's claims against his ex-wife based on the plaintiff's allegations that she "abuse[d] joint custody rights" and filed "false claims" and "specious petitions"). As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Land be dismissed for failure to state a claim upon which relief may be granted.

### 2.    Claims Against Defendant Brouillete

Plaintiff's claims under § 1983 against Defendant Brouilete, who acted as the state family court judge, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Further, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial

capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff asserts claims arising from the efforts of Defendant Brouillete, in her capacity as a New York Family Court Judge, to resolve issues between Plaintiff and Defendant Land. Defendant Brouillete is therefore immune from suit under the doctrine of judicial immunity.

As a result, I recommend that Plaintiff's claims against Defendant Brouillete pursuant to 42 U.S.C. § 1983, be dismissed under the doctrine of judicial immunity. *See* 28 U.S.C. § 1915(e)(2)(b).[6]

## V.    OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint

---

[6]    Moreover, to the extent that Plaintiff is seeking an order enjoining conduct that is the subject of an ongoing state court proceeding, I recommend that it be dismissed based on the doctrine of *Younger* abstention. *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Morpurgo v. Incorp. Vill. of Sag Harbor*, 327 F. App'x 284, 285 (2d Cir. 2009) (citation omitted). In addition, and in the alternative, the Anti-Injunction Act, 28 U.S.C. § 2283 bars federal courts from enjoining ongoing state court proceedings, and thus, I recommend that any request by Plaintiff for such relief be dismissed.

gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[7]

Here, I find that leave to replead would be futile with respect to Plaintiff's claims pursuant to: (1) New York State and federal criminal provisions (including 18 U.S.C. §§ 241-242, 245, and N.Y. Pen. Law §§ 240.50, 240.36, 135.60, 155.05, 155.25, 210.45, 210.35, 120.15, 130.52, 175.35, 200.00, and 200.04); (2) 28 U.S.C. §§ 518, 351-364; (3) 42 U.S.C. §§ 3631, 14141, and (4) 42 U.S.C. § 1983 and the First Amendment of the United States Constitution against Defendant Brouillete, because the issues with those claims are substantive such that a better pleading will not cure them.  *See Maretta-Brooks v. Comm'r of Soc. Sec.*, 22-CV-1261, 2023 WL 2655195, at *6 (N.D.N.Y. Mar. 27, 2023) (Lovric, M.J.) (recommending dismissal

---

[7]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

without leave to replead the plaintiff's claims alleging violations of criminal statutes "because

the problem with those claims is substantive such that a better pleading will not cure it");

*Maretta-Brooks v. Hanuszczak*, 2018 WL 2921480 (recommending dismissal without leave to

amend the plaintiff's claims pursuant to 34 U.S.C. § 12601); *Cruz*, 2017 WL 6021838, at *23

(recommending dismissal with prejudice the plaintiff's claims pursuant to 42 U.S.C. §§ 3631,

14141); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *5 (N.D.N.Y. Apr. 26, 2013)

(D'Agostino, J.) (dismissing without leave to amend the plaintiff's claims seeking to enforce New

York State criminal statutes); *Gonzalez v. Sharpe*, 06-CV-1023, 2006 WL 2591065, at *3

(N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend claims that were

barred based on doctrine of judicial immunity).

      Although I have serious doubts about whether Plaintiff can replead to assert an actionable

claim pursuant to 42 U.S.C. § 1983 and the First Amendment of the United States Constitution

against Defendant Land, given that this is Plaintiff's initial complaint, out of an abundance of

caution, I recommend that she be permitted to replead her Complaint with respect to that claim.

      If Plaintiff chooses to file an amended complaint, she should note that the law in this

circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of

a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp.

35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.

1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y.

May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth

facts that give rise to the claims, including the dates, times, and places of the alleged underlying

acts, and each individual who committed each alleged wrongful act. In addition, the revised

pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

ACCORDINGLY, it is

ORDERED that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 3) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further respectfully

RECOMMENDED that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to: (1) New York State and federal criminal provisions; (2) 28 U.S.C. §§ 518, 351-364; (3) 42 U.S.C. §§ 3631, 14141, and (4) 42 U.S.C. § 1983 and the First Amendment of the United States Constitution against Defendant Brouillete; and it is further respectfully

RECOMMENDED that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to 42 U.S.C. § 1983 and the First Amendment of the United States Constitution against Defendant Land, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[8]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: April  7  , 2023
        Binghamton, New York


_____
Miroslav Lovric
U.S. Magistrate Judge

---

[8]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[9]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

KeyCite Yellow Flag - Negative Treatment

Distinguished by   U.S. v. $6,787.00 in U.S. Currency,   N.D.Ga.,   February 13, 2007

1999 WL 1067841

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,

v.

UNITED STATES OF AMERICA, Defendant.

Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

|

Nov. 8, 1999.

*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000. [1]

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A.   *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

### 1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir.1998) (quoting Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes and citation omitted); *see also* Tapia–Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." Tapia–Ortiz, 185 F.3d at 11.

### 2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* Star v. Burlington Police Dep't, 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii)

of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see* Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

> a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

Gomez v. USAA Federal Sav. Bank, 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* Spencer v. Doe, 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of

official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's

Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

2. *Due Process*

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil

forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing seizure of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

> is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

> is liable to perish or to waste or to be greatly reduced in value by keeping, or

> that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over \$ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546) ]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

### 3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative

defense on the claimant." 🚩 *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable.

*See* 🚩 28 U.S.C. § 2680(h); *see also* 🚩 *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 🚩 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see* 🚩 *Gomez,* 171 F.3d at 796, these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1067841

---

**Footnotes**

1    *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

---

2021 WL 3518439
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)

|

Signed 04/13/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, 841 Western Avenue, Apartment
2A, Albany, New York 12203, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES
MAGISTRATE JUDGE

#### I. In Forma Pauperis

**\*1** Plaintiff pro se Myrna Althia Alicia Walker purported
to commence this action on October 28, 2020, by submitting
a complaint and application to proceed in forma pauperis
("IFP") in lieu of paying the Court's filing fee. See Dkt.
No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff
submitted a supplement to her complaint. Dkt. No. 4. On
April 6, 2021, plaintiff submitted an additional filing entitled
"Emergency Petition for the Death Penalty Against Adethia
Keshia Fitten and Others on the Principle Found in the Law of
Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted
additional 86 pages to supplement to her complaint. Dkt. Nos.
6, 7. On April 8, 2021, plaintiff submitted additional exhibits
and a letter requesting to file those exhibits under seal. Dkt.
No. 8.

The Court has reviewed plaintiff's IFP application and
determines that she financially qualifies to proceed IFP for
purposes of filing only. [1]

#### II. Legal Standards

Section 1915(e) of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court
shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It
is a court's responsibility to determine that a plaintiff may
properly maintain his complaint before permitting her to
proceed with her action. As plaintiff is representing himself,
the court must afford plaintiff special solicitude; thus, it is
to consider her claims "liberally" and "interpret them 'to
raise the strongest arguments that they suggest.' " Cold Stone
Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir.
2010) (summary order) (quoting Brownell v. Krom, 446
F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of
Civil Procedure. Specifically, Rule 8 provides that a pleading
which sets forth a claim for relief shall contain, inter alia,
"a short and plain statement of the claim showing that the
pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2).
"The purpose ... is to give fair notice of the claim being
asserted so as to permit the adverse party the opportunity to
file a responsive answer, prepare an adequate defense and
determine whether the doctrine of res judicata is applicable."
Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999)
(internal quotation marks and citations omitted). Rule 8 also
requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's
> jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that
> the pleader is entitled to relief; and
>
> (3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is
required," the Federal Rules make clear that each allegation
contained in the pleading "must be simple, concise, and
direct." Id. at 8(d).

**\*2** Further, Rule 10 of the Federal Rules provides in
pertinent part that:

> [a] party must state its claims or
> defenses in numbered paragraphs,

each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III. Initial Review

#### A. Plaintiff's Complaint

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, et seq. On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." Id.

Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. Included with the exhibits to the complaint is an Equal Employment Opportunity Commission ("EEOC") dismissal notice [2] noting that plaintiff's EEOC charge was not timely filed and the EEOC was closing its file. Dkt. No. 1-1. The remainder of the exhibits appended to the complaint appear to be an 80-page letter relating to apparent visa fraud that plaintiff sent to The US Department of Justice; the United States Department of Homeland Security, Immigration and Customs Enforcement; and the Federal Bureau of Investigation; as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff. Dkt. No. 1-2 at 81-82.

**\*3** The supplement plaintiff filed on March 15, 2021, is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. Id. The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State

incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021, appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." See dkt. no. 7.

Plaintiff's complaint discusses Allison Carolyn Rattray, the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. Id. Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill the employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." Id. at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," force plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. Id. at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom stables has visual and audio devices inside of them." Id. at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. See generally Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was

celebrated, that is Easter and Good Friday.

Id. at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC FirstCaribbean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

Id. at 14. Plaintiff asks the Court for

As for plaintiff's causes of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

**\*4** Dkt. No. 1 at 69. As for a second cause of action is

employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had be fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

Id. at 70. Third cause of action is listed as employment discrimination - compensation: denied increases in my salary verbally communicated to be by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to be by my Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt." Id. In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2)An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

Id. at 71.

### B. Analysis

First, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Her complaint does not present a short and plain statement of the claim showing that she is entitled to relief. FED. R. CIV. P. 8. Further, she does

not present her claims in numbered paragraphs, limited to one "circumstance" per paragraph. FED. R. CIV. P. 10. Instead, her complaint is a lengthy, disjointed, difficult to follow narrative. Her complaint clearly "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales, 167 F.R.D. at 355.

Second, plaintiff's claims, insofar as she seeks to bring them under Title VII are (1) barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII.[3] To the extent plaintiff suggests that she was discriminated against in violation of Title VII insofar as she was told that she was inadequate due to her race or denied promised promotions because of her race, dkt. no. 1 at 70, even if plaintiff could provide additional factual support and clarification for the alleged discrimination, plaintiff provides that the alleged discrimination occurred as early as 1995 until 2004, and would be beyond the statute of limitations of Title VII. Indeed, plaintiff's entire employment with defendant occurred outside of the statute of limitations as she suggests that her employment began in January 1995 and that she was terminated in March 2009. Dkt. No. 1 at 52-53. Thus, the complained-of actions occurred more than 300 days prior to when plaintiff appears to have filed a complaint with the EEOC. See Gunning v. New York State Just. Ctr. for Prot. of People with Special Needs, No. 1:19-CV-1446 (GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) ("Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency, and, therefore, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).") (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)). The undersigned notes that plaintiff does not indicate when she filed a complaint with the EEOC. However, she submits the EEOC's dismissal letter, dated September 10, 2020, which states that plaintiff did not timely file a complaint with the EEOC. Dkt. No. 1-1. As plaintiff likely filed her EEOC complaint in 2020,[4] appears to have been last employed by defendant in 2009, and complains of alleged employment discrimination occurring as early as 1995, her filing of an EEOC complaint in 2020 is clearly more than 300 days after the alleged discrimination occurred. Thus, any

cognizable Title VII claims arising out of her employment with defendant are barred by the statute of limitations.

 **\*5**  However, even if the statute of limitations was not an issue, plaintiff's claims still must fail because plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails establish this Court's jurisdiction under federal question or diversity jurisdiction. [5] Plaintiff makes several disjointed, confusing claims about being sold as a prostitute against her will by defendant's employees and other nonparties, defendant's employees and others murdering innocent people, defendant's employees drinking plaintiff's blood, and being stalked and prostituted by various officials from Jamaica and employees of defendant's company. See generally dkt. nos. 1, 4, 6, 7. Plaintiff makes several allegations against her former supervisor, Ms. Rattray, and says the various physical wrongdoings Ms. Rattray committed against plaintiff were all due to "The employment agreement between The Plaintiff and CIBC FirstCarribean Jamaica." Dkt. No. 1 at 60-61. Although plaintiff's submissions seem to suggest that she was employed by defendant at some point in time, and that a supervisor told her she could not be a lawyer due to her race and denied promised salary increases for unclear reasons, nothing about the factual allegations pleadings suggest that she presents a valid employment discrimination claim under Title VII or any other statute.

The Court is at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in murder scheme that is somehow related to her Easter birthday. See Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

Further, to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction. See generally Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); McFadden v. Ortiz, 5:12-CV-1244(MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013) (noting that there is no private right of action to enforce either state or federal criminal statutes).

Next, plaintiff files an "emergency motion" for the Death Penalty, [6] which appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. See Dkt. No. 5. As discussed above, this Court does not have the authority or jurisdiction to sua sponte impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial.

 **\*6**  Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be

dismissed with prejudice."). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint."). Thus, although the Court must show special solicitude to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and is to exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

Even if, arguendo, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." See Bennett v. Mnuchin, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that

"describ[e] fantastic or delusional scenarios."); Brown v. New York State Educ. Dept., 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing pro se plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be granted for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be **DISMISSED**; and it is further

**RECOMMENDED**, that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

**All Citations**

Slip Copy, 2021 WL 3518439

Walker v. CIBC Limited, Slip Copy (2021)

## Footnotes

1     Plaintiff is still financially responsible for any other fees or costs she may incur.

2     It appears that the EEOC dismissal notice is dated September 10, 2020. Dkt. No. 1-1.

3     A plaintiff establishes "a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) overruled on other grounds Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018).

4     As the EEOC dismissal notice is dated September 10, 2020, the Court makes the reasonable inference that plaintiff filed her EEOC complaint some time in 2020.

5     Even if this Court were to assess this case as seeking to proceed under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the plaintiff has also failed to set forth a cognizable state law claim. Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a)) (noting that diversity jurisdiction "confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.' ").

6     This "emergency motion" notes that it is presented to the United States Supreme Court, but contains a caption including this Court. It is unclear if this is a document plaintiff intends to submit before this Court, or before the United States Supreme Court. See dkt. no. 5.

7     If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3204860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 07/29/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, Albany, NY, Pro Se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** This case was before the Hon. Christian F. Hummel, United States Magistrate Judge, for an initial review of plaintiff's complaint and other filings pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Hummel recommends that plaintiff's complaint (dkt. no. 1) be dismissed with prejudice; that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed; and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *See* April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Plaintiff did not file objections directed to Judge Hummel's recommendations, and the time to do so has expired. Plaintiff did, however, file an amended complaint. For the reasons that follow, the Court adopts Judge Hummel's recommendations, and independently reviews plaintiff's amended complaint and finds it fails to assert viable causes of action.

## II. DISCUSSION

### a. Complaint

As Judge Hummel explains, plaintiff *pro se* Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint.

Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keisha Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted an additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, *et seq.* On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." *Id.* Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. The exhibits include an 80-page letter relating to apparent visa fraud that plaintiff sent to the US Department of Justice, the United States Department of Homeland Security, Immigration and Customs Enforcement, and the Federal Bureau of Investigation, as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff.

The supplement plaintiff filed on March 15, 2021 is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before the Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. *Id.* The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program

Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021 appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." *See* dkt. no. 7.

**\*2** Plaintiff's complaint discusses Allison Carolyn Rattray, allegedly the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. *Id.* Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." *Id.* at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," forced plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. *Id.* at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom staples [sic] has visual and audio devices inside of them." *Id.* at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. *See generally* Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have

men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

*Id.* at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC First Carribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

*Id.* at 14.

As for plaintiff's first cause of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a
> career path to be an Attorney-At-Law.
> Allison Carolyn Rattray (maiden name
> Smith) my (former) then manager at
> CIBC had me fired; told me that (1)
> I am not worthy to be an Attorney-at-
> Law because of my Race (2) I was not
> worthy to be in the same Profession
> as her. She has been defaming my
> character ever since.

*Id.* at 70. The third cause of action is listed as

> employment    discrimination    -
> compensation: denied increases in my
> salary verbally communicated to me
> by Ms. Cherlyn Blackman my Senior
> Manager of 3% in 2004; Denied
> Promotion communicated to me by
> Human Resources Regional Director,
> Jerime Cjnttihs-Bell; denied fringe
> benefits that accompanied my five (5)
> CIBC Achievers awards – my salary
> was split and part paid to my aunt.

*Id.* In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal
> Indictment(s) of Allison Carolyn
> (Smith) Rattray, Corporate Secretary
> and Legal Counsel CIBC for her
> forced Prostitution of The Plaintiff and
> Others; (2) An Injunction to prevent
> and stop all Prostitution or abuse of
> The Plaintiff; (3) Restitution(s) by
> CIBC for lost Incomes and fringe
> benefits[; and] (4) Job Reference letter
> from CIBC and an apology and my
> land Title Deed.

*Id.* at 71.

Judge Hummel found (a) that plaintiff's complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8 and 10, *see* Dkt. 10 at 8-9; (b) plaintiff's claims under Title VII (1) are barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII, *see id.* at 9-10; and (c) apart from the Title VII claims, "plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails [to] establish this Court's jurisdiction under federal question or diversity jurisdiction." *Id.* at 10. Judge Hummel indicated that he was

> **\*3** at a loss as to how the allegations in the
> complaint relate to a valid employment discrimination
> claim or any valid legal claim. Plaintiff presents a
> difficult to comprehend series of allegations against
> various individuals – many of whose connections to her
> apparent former employer is difficult, if not impossible, to
> comprehend – who she alleges forced her into prostitution,
> performed plastic surgeries on her against her will, installed
> "spying devices" into plaintiff's body, forced her to undergo
> various injections, and involved plaintiff in a murder
> scheme that is somehow related to her Easter birthday. *See*
> Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained
> allegations that appear to involve Ms. Rattray and others,
> such as "an abuse of a veteran of the United States Army by
> the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff
> submits dozens of pages of exhibits and supplements that
> appear to relate to cases filed in other courts, orders
> of protection obtained in other courts, unemployment
> insurance issues, police reports, and documents sent to
> various federal agencies. See dkt. nos. 4, 5, 6, 7. The
> relevance of this deluge of documents is entirely unclear.

*Id.* at 11.

Judge Hummel also concluded that to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. *Id.* at 11-12.

As to plaintiff's "emergency motion" for the Death Penalty, Judge Hummel found that it appears to ask the United States Supreme Court to enforce the death penalty against various

individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a leash [sic]," and other similar allegations. *See* Dkt. No. 5. Judge Hummel concluded that "this Court does not have the authority or jurisdiction to *sua sponte* impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial." Dkt. 10 at 12.

Judge Hummel concluded that although the Court must show special solicitude to *pro se* litigants, and is to exercise "extreme caution ... in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *id.* at 14 (quoting *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted)), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. Id.* Judge Hummel concluded:

> Even if, *arguendo,* the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." *See Bennett v. Mnuchin,* 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); *Brown v. New York State Educ. Dept.,* 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing *pro se* plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

**\*4** *Id.* at 14. As indicated above, Judge Hummel also recommends that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed, and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *Id.* at 15.

After examining the record, this Court has determined that the recommendations in the Report-Recommendation and Order are not subject to attack for plain error or manifest injustice. Further, even if plaintiff's amended complaint is treated as an objection, the Court has completed a *de novo* review and has determined to adopt Magistrate Judge Hummel's recommendations for the reasons stated in his report.

**b. Amended Complaint**

As indicated, plaintiff filed an amended complaint after Judge Hummel recommended that the complaint be dismissed with prejudice. After a review of the amended complaint, the Court finds that it too must be dismissed with prejudice.

Plaintiff's amended complaint is a form Title VII complaint. *See* dkt. no. 11. She indicates that the defendant is "CIBC Limited/Michael Capatide CEO CIBC." *Id.* at ¶ 3(b). [1] Plaintiff checks the boxes indicating that the defendant discriminated against her on account of her "race or color," "religion," "sex (or sexual harassment)," "national origin," and "other" indicating on the line that follows: "my right to marry; my right to life; my right to work and provide for my daily living expenses." *Id.* at ¶ 6. Where plaintiff is asked to indicate what the complained-of conduct involves, she checked the boxes for "failure to employ," "termination of employment," "failure to promote," "unequal terms and conditions of employment," "retaliation," and "other acts as specified below" after which she writes: "I am being sex trafficked by CIBC First Caribbean staff in lieu of my salary." *Id.* at ¶ 7. In the section of the amended complaint asking for the facts underlying her claims, plaintiff asserts she is being sex trafficked because she was born on Easter and that the sex trafficking is in lieu of her salary paid to her by CIBC First Caribbean Jamaica." *Id.* ¶ 8. She also asserts that "the force" of the Jamaican Police, the Jamaican Judiciary, the Jamaican Hospital, and the University of the West Indies are conspiring with her "Walker relatives used to commit crimes with my identity using identity theft of Myrna Suzette Walker employed by Jamaican government Judge Barrington Andrew Rattray & Allison Carolyn Rattray." *Id.* In addition, she asserts that "Adethia Keisha Fitten is physically cutting me to create presumed consent for the crimes organized by Judge Barrington Andrew Rattray." *Id.*

The First Cause of Action alleges "forced organized criminality using the salary that was paid to the plaintiff by CIBC First Caribbean Jamaica January 1, 1995 to March 28, 2009." It also asserts that Myrna Suzette Walker "is a thief," and that "Allison Carolyn Rattray ... hired Myrna Suzette Walker and her five (5) children and Adethia Keisha Fitten to steal and to say that the stealing was done by the plaintiff." Plaintiff also appears to indicate that "to do the stealing," Myrna Suzette Walker "and others" repeatedly physically injure plaintiff. As discussed by Judge Hummel, these allegations do not provide plaintiff with a timely Title VII cause of action, *see, e.g.,* Am. Compl. attach. 4, dkt. no. 11-4 at 1, [2] nor do they provide a basis for the relief plaintiff seeks. *See* Dkt. 11, at 5. [3]

**\*5** The Second Cause of Action asserts violations of the "Human Rights Act of 1998." The Human Rights Act of 1998 appears to be a law or act of Parliament in the United Kingdom. *See Brady v. Wks. Med. Ctr.*, No. 19-CV-00655-SM, 2019 WL 6529870, at \*2 (D.N.H. Nov. 12, 2019)("A law in effect in the United Kingdom bears that title.")(citing Human Rights Act 1998, ch. 42, http://www.legislation.gov.uk/ukpga/1998/42/contents), *report and recommendation approved*, No. 19-CV-655-SM, 2019 WL 6529459 (D.N.H. Dec. 4, 2019); *Simpson v. Dauphin Cty. Hous. Auth.*, No. 1:16-CV-01747, 2017 WL 2375702, at \*2, n. 4 (M.D. Pa. Apr. 26, 2017) ("Simpson also references a 'Human Rights Act of 1998,' which as best we can tell refers to an Act of Parliament of the United Kingdom, not applicable in this jurisdiction."), *report and recommendation adopted*, No. 1:16-CV-1747, 2017 WL 2362510 (M.D. Pa. May 31, 2017). The Human Rights Act of 1998 does not provide plaintiff with a viable cause of actions against the defendant for any events occurring in the Northern District of New York over which this Court would have jurisdiction. *See Brady*, 2019 WL 6529870, at \*2.

The Third Cause of Action is confusing but appears to be a claim seeking unpaid wages. *See* dkt. no. 11 at 4 (stating at the start of Third Cause of Action: "The right to my paycheck."). Plaintiff asserts that her aunt Myrna Suzette Walker "assisted by CIBC First Caribbean staff Allison Carolyn Rattray has been falsely selling me as a whore in lieu of my current income(s) from JC Penney, Aerotek, Walmart, Fidelis Care and more." However, Myrna Suzette Walker, Allison Carolyn Rattray, JC Penney, Aerotek, Walmart, or Fidelis Care are not defendants in this action. Further, plaintiff does not assert when it was that she worked at JC Penney, Aerotek, Walmart, or Fidelis Care, or when or where it was that Myrna

Suzette Walker and Allison Carolyn Rattray purportedly took actions preventing plaintiff from receiving her wages from these employers. The claim in this regard fails to assert a viable cause of action under Title VII. In addition, in nearly incomprehensible fashion plaintiff ends the Third Cause of Action by asserting: "The rapes of me by co-workers is [sic] recorded and published. Walmart staff a [sic] man named Donnell she [sic] gave permission to live in my apartment as well as Fidelis Care Health Insurance staff- Rashid Rardon." These allegations fail to provide a sufficient basis for the Court to discern any viable cause of action under Title VII or any other law or statute over which the Court would have jurisdiction.

Accordingly, for the reasons set forth above plaintiff's amended complaint will be dismissed. Because the allegations in the amended complaint are factually frivolous, and because plaintiff filed an amended complaint that did not cure the pleading defects pointed out by Judge Hummel, dismissal will be with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be futile.

### III. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Judge Hummel's recommendations in the April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Thus, it is hereby

**ORDERED** that plaintiff's complaint (dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) is **DENIED and DISMISSED**; and it is further

**ORDERED** that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) is **DENIED and DISMISSED as moot**.

Based on the Court's review of the amended complaint, it is hereby

**ORDERED** that plaintiff's amended complaint (dkt. No. 11) is **DISMISSED with prejudice**.

The Clerk of the Court may mark this file as closed.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 3204860

## Footnotes

1   At paragraph 3(a) asking to identify the defendant, plaintiff writes: "Not Applicable"

2   Dkt. no. 11-4 is a letter from Maureen Kielt, Director of the EEOC Buffalo Local Office to plaintiff in the matter of *Walker v. CIBC* confirming that plaintiff indicated that her "last date of harmed occurred on March 24, 2009, when [she] was terminated," thus making her EEOC administrative claim against CIBC untimely. Dkt. No. 11-4 at 1.

3   In the Prayer for Relief, plaintiff requests the Court to grant the following relief:

   1. The plaintiff <u>do</u> <u>not</u> [sic] want to be a party to the religious killing business of Myrna Suzette Walker; her five children; and CIBC First Caribbean Jamaica staff, Allison Carolyn Rattray and her husband Judge Barrington Andrew Rattray, Supreme Court of Jamaica;

   2. The plaintiff do not [sic] want cocaine nor any thing to ingest from anyone, by force or otherwise.

   3. The plaintiff wants full restitution socially, physically, professionally.

   Dkt. 11, at 5 (emphasis in original).

---

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1789593
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alexander McFADDEN, Plaintiff,

v.

Jose D. ORTIZ, Executive Officer Chase JP
Morgan Chase & Co., and James Simon, Manager
Chase JP Morgan Chase & Co., Defendants.

No. 5:12–CV–1244 (MAD/ATB).
|
April 26, 2013.

**Attorneys and Law Firms**

Alexander McFadden, Pine City, NY, pro se.

Jose D. Ortiz, Executive Officer for Chase JP Morgan Chase & Co., Houston, TX.

James Simon, Manager for Chase JP Morgan Chase & Co., New York, NY.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

**\*1** Plaintiff *pro se* Alexander McFadden ("McFadden"), an inmate at the Southport Correctional Facility ("SCF"), filed this action pursuant to 🚩 42 U.S.C. § 1983. In his complaint, Plaintiff appears to allege that Defendants, two executives of Chase JP Morgan Chase & Co. ("Chase"), violated his constitutional rights through conduct that, in some way, involved a bank account. *See* Dkt. No. 1 at ¶ 4.

On August 7, 2012, Magistrate Judge Andrew T. Baxter issued an Order and ReportRecommendation, recommending that the Court dismiss Plaintiff's complaint in its entirety with prejudice, pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5. Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's August 7, 2012 Order and ReportRecommendation.

**II. BACKGROUND**

In his Order and Report–Recommendation dated August 7, 2012, Magistrate Judge Baxter recommended that Plaintiff's motion to proceed *in forma pauperis* ("IFP") should be denied by the Court and, upon review of the complaint, that this action be dismissed in its entirety with prejudice pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9. Further, Magistrate Judge Baxter recommended that if the Court approves his report, the Court should certify that any appeal from this matter will not be taken in good faith pursuant to 🚩 28 U.S.C. § 1915(a)(3). *See id.*

Regarding Plaintiff's complaint, Magistrate Judge Baxter's Order and ReportRecommendation recommends that because there is no indication that either Defendant acted under "color of state law," and because there are no allegations that either or both Defendants "conspired" with any state actors to bring this action under 🚩 section 1983, Plaintiff's complaint should be dismissed. *See* Dkt. No. 5 at 5.

Regarding Plaintiff's claim that Defendants violated New York Penal Law by offering false documents for filing, tampering with public records, and falsifying business records, Magistrate Judge Baxter recommended that because there is no private right of action to enforce either state or federal criminal statutes, Plaintiff is barred from bringing a claim to enforce these provisions of the New York State Criminal Law. *See* Dkt. No. 5 at 6.

Accordingly, Magistrate Judge Baxter recommended this Court hold that, due to Plaintiff's failure to state a claim under 🚩 42 U.S.C. § 1983 upon which relief can be granted, combined with the courts inability to determine what venue might be appropriate, Plaintiff's motion for IFP should be denied, and Plaintiff's complaint should be dismissed in its entirety with prejudice pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9.

In his "objections" to Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff simply provides the Court with language from various cases discussing various types of objections and the Court's authority to review unpreserved errors. *See* Dkt. Nos. 14, 15.

### III. DISCUSSION

**A. Review of a magistrate judge's decision**

**\*2**  If a party files specific objections to a magistrate judge's report-recommendation, the district court performs a *"de novo* determination of those portions of the report of specified proposed findings or recommendations to which objections is made." 28 U.S.C. § 636(b)(1) (2006). However, if a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that were presented] to the magistrate judge," the court simply reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). At the conclusion of the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. *In Forma Pauperis* application**

In order for a plaintiff to proceed without payment of any fees, he must first meet the financial criteria for IFP status. *See* 28 U.S.C. § 1915(a)(1). The plaintiff must submit an affidavit, including a statement of all assets, establishing his inability to pay the filing fee of $350.00. *See id.* Here, Plaintiff submitted a standard IFP application form, but answered only some of the relevant questions. Furthermore, while Plaintiff is incarcerated and has filed a motion to proceed IFP, his application states that, in the past twelve months, he has had income from "[b]usiness, profession or other self employment," and has "millions of dollars" in "cash, checking or savings accounts." *See* Dkt. No. 2 at ¶¶ 3, 4. Plaintiff, however, does not answer the question that asks him to "describe the source of money and state the amount received and what you expect you will continue to receive ." *See id.* at ¶ 3. Plaintiff answers "yes" to the questions asking whether he owns "real estate, stocks, bonds, securities, other financial instruments, automobile or any other assets." *See id.* at ¶ 5. Once again, however, Plaintiff does not complete the question by describing the property and stating its value. *See id.* Lastly, the form indicates that Plaintiff only has $9.60 in his prison account, and that during the last six months prior to this application, the average balance in his prison account was $4.03. *See* Dkt. No. 2 at 2.

If Plaintiff's claims are true and he does in fact have millions of dollars and real estate or other valuable property, then he cannot meet the financial requirements for proceeding IFP. Generally, when plaintiff has failed to properly complete the IFP request, the court will deny IFP without prejudice and allow plaintiff to resubmit the form with proper information. However, in this case, based upon the inadequacy of Plaintiff's responses, combined with his failure to state a plausible cause of action and the fact that amendment would be futile as discussed below, even if Plaintiff met the financial requirements for IFP, the Court would still find dismissal of this action to be proper.

**C. Sufficiency of the complaint**

*1. Legal Standard*

**\*3**  In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

*2. Application*

*a. Color of state law*

Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. To state a claim under section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges as secured by the Constitution of the United States. *See Annis v.*

County of Westchester, 136 F.3d 239, 245 (2d Cir.1998). Under extremely limited circumstances not alleged here, private actors, such as Defendant, may be held liable under section 1983. *See White v. Monarch Pharmaceuticals,* Inc., No. 08–CV–0430, 2009 WL 3068217, *1 (2d Cir. Sept. 28, 2009); *see also Rendell—Baker v. Kohn,* 457 U.S. 830, 838–42 (1982). The law does not reach private conduct, no matter how "discriminatory or wrongful." *Annis,* 136 F.3d at 245 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)).

In the present matter, Plaintiff names two executives of Chase as Defendants. Along with being very difficult to determine what these Defendants allegedly did to Plaintiff, there is no indication that either Defendant acted under color of state law. Moreover, the complaint does not allege or suggest that Defendants conspired with a state actor to violate his constitutional rights. Further, Plaintiff does not allege any conduct attributable to either Defendant sufficient to establish their personal involvement in any alleged constitutional deprivation. *See* *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss the complaint.

### b. Criminal statutes

Plaintiff states in the "Causes of Action" section of his complaint that Defendants violated the New York Penal Law regarding falsifying business records, tampering with public records, and offering false documents for filing. *See* Dkt. No. 1 (citing N.Y. PENAL LAW §§ 175.10, 175.25, and 175.35). Even if this is true, however, there is no private right of action to enforce either state or federal criminal statutes. *See* *Abrahams v. Incorporated Village of Hempstead,* No. 08–CV–2584, 2009 WL 1560164, *8 (E.D.N.Y. June 2, 2009)* (holding that dismissal of civil suit for perjury was proper because there is no private right of action for perjury under New York Law). Therefore, even assuming, *arguendo,* that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York Criminal Law.

**\*4** As such, Magistrate Judge Baxter correctly recommended the Court find that Plaintiff has failed to allege a plausible cause of action.

### c. Venue

Venue in federal-question cases is generally determined by 28 U.S .C. § 1391(b) which provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In this case, one of the Defendants is listed with a Houston, Texas address, while the other Defendant is listed as having a New York City address. *See* Dkt. No. 1 at ¶¶ 3(a) and (3)(b). Thus, neither of the Defendants reside, or are located, in the Northern District of New York. Plaintiff is incarcerated at Southport Correctional Facility, located in the Western District of New York. Therefore, since both Plaintiff and one of the Defendants are New York residents, this case could clearly not be brought as a diversity action. Moreover, under Plaintiff's section 1983 claim, venue is not proper in the Northern District of New York. All Defendants do not reside in the same state, neither Defendant is located in this district, and the complaint does not allege any conduct that occurred in the Northern District of New York.

Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Second Circuit has suggested that "a district court should not dismiss for improper venue on its own motion except in extraordinary circumstances." *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369 (2d Cir.1966).

In the present matter, the Court finds and agrees with Judge Baxter's Order and ReportRecommendation that this case presents precisely the extraordinary circumstances making it proper for the Court to dismiss for improper venue *sua sponte.*

### d. Leave to amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted); *see also* *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

**\*5** Here, the Court agrees with Magistrate Judge Baxter that any attempt by Plaintiff to amend his complaint would be futile. As discussed, although Plaintiff alleges "due process violations," section 1983 does not permit such actions to be brought against private individuals absent some involvement by the state. Moreover, Plaintiff does not have the right to enforce New York State criminal statutes.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss Plaintiff's complaint with prejudice.

### IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's August 7, 2012 Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further **ORDERS** that Plaintiff's application to proceed *in forma pauperis* is **DENIED;** and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2013 WL 1789593

   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2068248
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Anthony J. HALL, Plaintiff,

v.

Frank SAMPSON, et al., Defendants.

CIVIL ACTION No. 21-CV-4839
|
Signed 06/08/2022

**Attorneys and Law Firms**

Anthony J. Hall, Philadelphia, PA, Pro Se.

**MEMORANDUM**

YOUNGE, District Judge

**\*1** Plaintiff Anthony J. Hall, a convicted prisoner incarcerated at the Federal Detention Center in Philadelphia, filed this civil action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), based on allegations that he was illegally prosecuted, convicted and imprisoned on conspiracy and drug charges. (ECF No. 2.) ("Compl.") For the following reasons, the Court will dismiss the Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

**I. FACTUAL ALLEGATIONS** [1]
Hall's claims arise from criminal proceedings presided over by the Honorable Wendy Beetlestone and the criminal investigation that resulted in those proceedings. *United States v. Gordon*, Crim. A. No. 15-0496-9 (E.D. Pa.). On August 17, 2016, Hall was charged with one count of conspiracy to distribute phencyclidine ("PCP") and one count of possession with intent to distribute PCP. The charges were included in the Second Superseding Indictment in the multi-defendant case. *Id.* (ECF No. 94.) Thereafter, a bench warrant issued for Hall's arrest; Hall was detained at SCI-Graterford at the time. *Id.* (ECF No 105.) On September 14, 2016, Hall appeared at a hearing before a Magistrate Judge at which he pled not guilty and stipulated to pretrial detention. *Id.* (ECF No. 159.) Following a 22-day jury trial before the Honorable Wendy

Beetlestone, on December 19, 2018, the jury returned no verdict on the charges against Hall. *Id.* (ECF No. 780.)

On August 6, 2019, Hall was charged with 4 counts of possession with intent to distribute PCP and one count of conspiracy to distribute PCP. *Id.* (ECF No. 866 at 2-3, 60-63.) The charges were included in the Third Superseding Indictment in the same multi-defendant case. Following a six-day jury trial before the Honorable Wendy Beetlestone, on October 13, 2019, the jury returned a verdict of guilty against Hall on two counts of possession with intent to distribute PCP and one count of conspiracy to distribute PCP. (ECF No. 943.) Hall was found not guilty on the remaining two counts of possession with intent to distribute. (*Id.*) A sentencing hearing is currently scheduled for July 19, 2022. *Id.* (ECF No. 1135.)

Hall's Complaint names the following Defendants: (1) Drug Enforcement Agency ("DEA") Special Agent Frank Sampson; (2) DEA Task Force Officer Efrain Torres; (3) Assistant United States Attorney ("AUSA") Sozi Pedro Tulante; (4) AUSA Mary Teresa Soltis; (5) DEA Task Force Officer Kyle Boyd; (6) DEA Group Supervisor Raymond Franklin; (7) AUSA Anthony J. Wzorek; and (8) Judge Beetlestone. The Defendants are sued in their individual and official capacities. (Compl. at 4.) The gist of Hall's claims is that the investigation resulting in the charges against him was riddled with error, and that the decision to try him a second time following his acquittal on similar charges was the result of vindictive prosecution.

**\*2** Hall includes lengthy, detailed allegations regarding the investigation and prosecution of the charges against him. In short, Hall claims that the DEA, its agents, its task force officers, and the AUSAs assigned to his criminal case "conducted a constitutionally inadequate investigation ... planted evidence, falsified documents, committed perjury, to falsely arrest, indict and convict the Plaintiff." (*Id.* at 41.) He alleges that the "evidence against Plaintiff is exclusively recorded telephone conversation captured over the Title III wiretap, which the Government believes the Plaintiff was a participant. The Government has not to date produced no evidence, visual or physical, that the Plaintiff sold or purchase PCP. The Plaintiff is facing a mandatory ten (10) years to life imprisonment." (*Id.* at 33-34.)

Hall asserts the following claims pursuant to 42 U.S.C. § 1983 – violations of his Fourth, Fifth, Eighth and Fourteenth amendment rights, and violations of 42 U.S.C. § 1985 and

various criminal statutes.[2] He raises the following claims under *Bivens* – illegal seizure, and due process and equal protection violations. (*Id.* at 3, 34.) He seeks an award of compensatory and punitive damages. (*Id.* at 41.) He also requests that his conviction be overturned, that a new Judge be appointed to his case, and that he be granted a new trial on the charges included in the Second Intervening Indictment only. (*Id.* at 36-37.)

## II. STANDARD OF REVIEW

Although Hall has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See* *Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

**\*3** Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* *Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at \*1 (E.D. Pa. June 19, 1997); *see also* *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). " 'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[ ] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, ... contains facts sufficient to state a plausible [ ] claim.' " *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not

suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Hall is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Hall brings constitutional claims against federal actors pursuant to 42 U.S.C. § 1983 and *Bivens.* However, because § 1983 does not apply to federal actors, the Court will construe all of Hall's claims as having been raised pursuant to *Bivens. Bivens* provides a judicially recognized remedy for constitutional violations committed by federal actors in limited circumstances.[3] Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017). The Supreme Court has recognized an implied private action against federal officials in only four cases: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment; and (4) *Farmer v. Brennan*, 511 U.S. 825 (1994), which concerned a claim under the Eighth Amendment against prison officials for failure to protect a prisoner from violence by another prisoner. *Shorter*, 12 F.4th at 371-373 ("*Farmer* made clear[ ] ... that an Eighth Amendment *Bivens* remedy is available to a transgender prisoner who has been assaulted by a fellow inmate.").

**\*4** Because expanding *Bivens* is "a 'disfavored' judicial activity," *see* *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), a "rigorous inquiry ... must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200.

That inquiry involves determining whether the case presents a new context for a *Bivens* claim that has not been recognized by the Supreme Court and, if so, asking whether "special factors counsel hesitation in expanding *Bivens*." *Mack v. Yost, 968 F.3d 311, 320 (3d Cir. 2020); see also* *Abbasi,* 137 S. Ct. at 1857-58.

Here, Hall alleges that his conviction and incarceration are the result of a constitutionally deficient investigation and irregularities in his prosecution. Hall's claims concerning his arrest, detention and criminal prosecution are best construed as claims for malicious prosecution, as he was detained pursuant to a warrant. *See Johnson v. United States,* No. 20-3256, 2021 WL 1626521, at *2 (3d Cir. Apr. 27, 2021) (*per curiam*) ("[T]he Magistrate Judge correctly concluded that because Johnson was arrested pursuant to a warrant, his claims for false arrest and false imprisonment were, in essence, malicious prosecution claims."). Thus, based on the allegations therein, the Court construes Hall's Complaint as presenting claims for malicious prosecution, as well as claims that the Defendants conspired to secure his unlawful conviction by, among other things, fabricating evidence against him. [4] Whether or not these claims present viable *Bivens* claims is immaterial at present, because the claims may not proceed at this time.

The Supreme Court has held that "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck,* 512 U.S. at 486-87 (footnote and citation omitted); *see also* *Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)); *Vanderklok,* 868 F.3d at 199 (the Supreme Court has only recognized a *Bivens* remedy in a handful of contexts and "has plainly counseled against creating new *Bivens* causes

of action"). "Although *Heck* involved a § 1983 action by a state prisoner, the reasoning in *Heck* has been applied to bar *Bivens* claims." *Lora-Pena v. F.B.I.,* 529 F.3d 503, 506 n.2 (3d Cir. 2008).

**\*5** The favorable termination doctrine applies to malicious prosecution claims, as well as claims based on alleged fabrication of evidence. *Floyd v. Attorney Gen. of Pennsylvania,* 722 F. App'x 112, 114 (3d Cir. 2018) (*per curiam*) ("Because Floyd's malicious prosecution and fabrication of evidence claims do not accrue until the criminal proceedings have terminated in Floyd's favor, and Floyd has not demonstrated as much, they are barred by *Heck.*"). Additionally, *Heck* has been applied to preclude claims under § 1985. *Zhai v. Cedar Grove Municipality,* 183 F. App'x 253, 255 (3d Cir. 2006) (*per curiam*) (civil rights claims under §§ 1985 and 1986 were barred by *Heck*).

Here, success on Hall's claims would necessarily undermine the validity of his intact conviction because his Complaint challenges the constitutionality of his prosecution, conviction and related imprisonment. Accordingly, his claims for damages are barred by *Heck. See Garrett v. United States,* 771 F. App'x 139, 141 (3d Cir. 2019) (*per curiam*) ("Here, because Garrett's claims directly challenged the validity of his federal conviction and sentence—which have not been invalidated— his complaint sought the sort of relief that is plainly barred by *Heck.*" (internal quotations omitted)); *Murphy v. Bloom,* 443 F. App'x 668, 669 (3d Cir. 2011) (*per curiam*) (holding that *Heck* barred *Bivens* claims where plaintiff "alleged that the defendants conspired to alter his trial transcript and to include a false declaration in his sentencing memorandum"); *Stuler v. United States,* 301 F. App'x 104, 106 (3d Cir. 2008) (*per curiam*) (*Heck* applied in *Bivens* action in which the bulk of plaintiff's complaint was "little more than a thinly veiled attempt to attack his criminal conviction ... under the guise of a civil action"). Accordingly, Hall's claims will be dismissed without prejudice to Hall filing a new case only in the event his conviction is first invalidated, whether on appeal or otherwise. [5]

### IV. CONCLUSION

**\*6** For the foregoing reasons, the Court will dismiss Hall's Complaint as legally baseless, pursuant to 28 U.S.C. § 1915A(b)(1). Although leave to amend would be futile, the Court will dismiss Hall's challenges to his conviction without

prejudice to him filing a § 2255 motion in his criminal case, and will dismiss his remaining claims without prejudice to reassertion in a new civil action only in the event his conviction is reversed, vacated, or otherwise invalidated. *See* ⚑ *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016).

An appropriate Order follows, which shall be docketed separately.

**All Citations**

Slip Copy, 2022 WL 2068248

## Footnotes

1   The following facts are taken from the Complaint, exhibits to the Complaint, and public records, which the Court may consider in evaluating Hall's claims. *See* ⚑ *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

2   Hall asserts claims under ⚑ 18 U.S.C. §§ 241 and ⚑ 242. These sections establish criminal liability for certain deprivations of civil rights and conspiracy to deprive civil rights. ⚑ *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001); *Figueroa v. Clark*, 810 F. Supp. 613, 615 (E.D. Pa. 1992); *see* 🚩 *United States v. Philadelphia*, 644 F.2d 187 (3d Cir. 1980) (declining to create civil remedy under ⚑ 18 U.S.C. §§ 241 and ⚑ 242). However, a plaintiff cannot bring criminal charges against defendants through a private lawsuit, and these sections do not give rise to a civil cause of action. *U.S. ex rel. Savage v. Arnold*, 403 F. Supp. 172, 174 (E.D. Pa. 1975). Hall also cites 18 U.S.C. § 71, which relates to theft from interstate shipments. The Court assumes that he intended to cite 18 U.S.C. § 371, relating to conspiracy, which also does not provide for a private right of action. *See Walthour v. Herron*, No. 10-1495, 2010 WL 1877704 at *3 (E.D. Pa. May 6, 2010) (no private right of action exists under ⚑ 18 U.S.C. § 241, ⚑ 242, ⚑ 245, ⚑ 247, 371 or ⚑ 1951); *Jones v. Lockett*, No. 08-16, 2009 WL 2232812 at *8 (W.D. Pa. July 23, 2009) ("It is clear that the criminal statutes invoked by Plaintiff, i.e., ⚑ 18 U.S.C. §§ 241, 371 and ⚑ 1341 do not provide for a private cause of action.") Hall also cites 18 U.S.C. § 1519 relating to destroying, altering or falsifying documents in a federal investigation, and 18 U.S.C. § 1623 relating to perjury, which also do not provide a private right of action. *Antonelli v. Kennedy Hosp.*, No. 17-13780, 2018 WL 443455, at *2 (D.N.J. Jan. 16, 2018) (no private right of action under 18 U.S.C. 1519).

3   Although *Bivens* provides a remedy against federal actors, "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also* ⚑ *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Ynfante v. United States*, Civ. A. No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("[A] *Bivens* claim can only be asserted against individual officials."). Accordingly, the constitutional claims against the Defendants in their official capacities are in essence claims against the United States that must be dismissed on sovereign immunity grounds. *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D.

Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

4    The Court notes that "[m]otions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution," although § 2241 may be used when the remedy provided by § 2255 is "inadequate or ineffective." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). In other words, a § 2255 motion is the proper way to challenge a federal conviction, rather than a *Bivens* action. *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("Okoro adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas corpus statute or its federal-defendant equivalent, 28 U.S.C. § 2255."); *Beverly v. Reno*, 23 F.3d 158, 159 (7th Cir. 1994) (federal prisoner cannot circumvent § 2255 "by bringing an independent civil action"); *see generally Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."). The Court will not construe Hall's Complaint as such a motion because the sentencing Judge is in a better position to determine the validity of any challenges to his conviction. Furthermore, this Court does not possess the authority to revoke or alter an order issued by a federal judge in another federal proceeding. *See Smith v. Meyers*, 843 F. Supp. 2d 499, 505 (D. Del. 2012) ("The structure of the federal courts does not allow one judge of a district court to rule directly on the legality of another district judge's judicial acts or to deny another district judge his or her lawful jurisdiction.").

5    There are other reasons why Hall's claims fail. Notably, judges are entitled to absolute immunity from liability based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Similarly, prosecutors are entitled to absolute immunity from liability for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and ... presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). However, the Court need not address these or other defects in Hall's Complaint as alternative reasons for dismissal. Moreover, to the extent the Complaint could be construed as raising claims based on the DEA's investigation consideration of which would not be barred by *Heck*, it is apparent from the face of the Complaint that those claims are time-barred because Hall knew or should have known of those violations more than two years before he filed the Complaint in the instant action.

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 45 of 212

Patterson v. Patterson, Not Reported in Fed. Supp. (2019)

2019 WL 1284346
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

John P. PATTERSON, Plaintiff,

v.

Joel M. PATTERSON, Sergeant, Five Points
Correctional Facility, Shari L. Kampnich, Correctional
Officer, Five Points Correctional, William S. Palmer,
Correctional Officer, Five Points Correctional Facility,
Matthew R. Piotrowski, Correctional Officer, Five Points
Correctional Facility, and Joanne L. Springer, Facility
Nurse, Five Points Correctional Facility, Defendants.

1:16-CV-00844 EAW
|
Signed 03/20/2019

**Attorneys and Law Firms**

John P. Patterson, Marcy, NY, pro se.

Joel J. Terragnoli, New York State Attorney General, Buffalo,
NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

**\*1**  Plaintiff John P. Patterson ("Plaintiff"), proceeding *pro
se*, is an inmate currently housed at the Marcy Correctional
Facility ("Marcy"). Plaintiff brings the instant action pursuant
to ⚑ 42 U.S.C. § 1983 and New York Penal Law Article
130, alleging that defendants Joel M. Patterson ("Sergeant
Patterson"), Shari L. Kampnich ("Kampnich"), William S.
Palmer ("Palmer"), Matthew R. Piotrowski ("Piotrowski"),
and Joanne L. Springer ("Nurse Springer") (collectively
"Defendants") committed various violations of Plaintiff's
state and constitutional rights arising from an alleged assault
that occurred while he was housed at the Five Points
Correctional Facility ("Five Points"). (Dkt. 12).

Presently before the Court is Plaintiff's motion for a
preliminary injunction (Dkt. 21), and Defendants' partial
motion to dismiss (Dkt. 22). For the reasons that follow,

Plaintiff's motion for a preliminary injunction is denied, and
Defendants' partial motion to dismiss is granted.

**BACKGROUND**

**I. Factual History**
The following facts are taken from Plaintiff's Amended
Complaint (Dkt. 12), the operative complaint in the instant
action. As is required at this stage of the proceedings, the
Court has treated Plaintiff's allegations as true.

On November 22, 2013, Plaintiff was housed at Five Points, one
of three maximum security prisons in the state of New
York that has a residential mental health unit ("RMHU").
(*Id.* at ¶¶ 12-13). He was in his RMHU cell when a nurse
made her evening rounds with Officer Kimball to administer
medication. (*Id.* at ¶ 13). Officer Kimball asked Plaintiff
why he had his pants down when Plaintiff's pants were not
actually down. (*Id.*). The nurse said that Plaintiff's pants were
not down, and Plaintiff got into an argument with Officer
Kimball. (*Id.* at ¶ 14). Officer Kimball then threatened to take
Plaintiff across to the infirmary, an area with no cameras, so
that he could beat Plaintiff up. (*Id.*). In response, Plaintiff
became suicidal and swallowed the arms of his glasses. (*Id.*
at ¶ 15).

At approximately 7:00 p.m., Plaintiff was transported to the
Cayuga Medical Center in Ithaca, New York by Piotrowski
and Kampnich so he could get an endoscopy to remove the
glasses arms from his stomach. (*Id.* at ¶ 16). The procedure
could not be performed at that time, and Plaintiff returned
to Five Points, arriving at approximately 12:30 a.m. (*Id.*
at ¶¶ 17-18). Piotrowski escorted Plaintiff to the infirmary
while Kampnich returned the transport vehicle. (*Id.* at ¶ 19).
Palmer was at the infirmary's desk when Plaintiff checked
in, and Plaintiff was placed in the infirmary holding pen.
(*Id.*). Sergeant Patterson and Kampnich joined Piotrowski
and Palmer at the infirmary desk, and Kampnich referred to
Plaintiff as "the Penis Flasher." (*Id.* at ¶ 20). Nurse Springer
entered the infirmary and took Plaintiff's vital signs. (*Id.* at
¶ 21). Sergeant Patterson informed Plaintiff that until the
objects he swallowed were removed, he would have to spend
the night in a dry cell. [1] (*Id.* at ¶ 22).

**\*2**  Palmer opened up the door to the dry cell, and Plaintiff
was told to step inside. (*Id.* at ¶ 23). Plaintiff had on handcuffs,
a waist chain, and leg restraints. (*Id.*). As Plaintiff stepped in,
Sergeant Patterson pushed him from behind, and Kampnich

tripped him. (*Id.*). Unable to catch himself because of his restraints, Plaintiff fell to the ground and struck his face. (*Id.* at ¶ 24). Palmer then kicked the left side of Plaintiff's face, fracturing Plaintiff's upper left molar. [2] (*Id.* at ¶ 25). Sergeant Patterson told Palmer "not the face" because Plaintiff had to return to the medical center in the morning. (*Id.* at ¶ 26). Then Sergeant Patterson, Palmer, Piotrowski, and Kampnich kicked and punched Plaintiff in the head, back, ribs, and legs, causing bruises and contusions on his legs, exacerbating a low-back injury, and busting his lip. (*Id.* at ¶¶ 27-28). Piotrowski grabbed Plaintiff by his shirt collar, causing him to pass out momentarily. (*Id.* at ¶ 29).

When Plaintiff came to, the corrections officers were forcing him to stand with his face shoved in the corner of the cell, getting blood from his lip onto the wall. (*Id.* at ¶ 30). Plaintiff was then ordered to kneel on the bed so his leg restraints could be removed, and afterwards he was told to stand. (*Id.* at ¶¶ 31-32). Kampnich and Palmer held Plaintiff on either side by his shirt, and one of them lifted his collar. (*Id.* at ¶ 33). Plaintiff jumped back, and he was punched on his head, back, and ribs before being thrown to the ground on his stomach with his pants around his thighs. (*Id.* at ¶¶ 33-34). Palmer held his upper body down, one or two of the other correctional officers held down his legs, and Kampnich said, "So you like showing your dick!" (*Id.* at ¶ 35). Plaintiff's underwear was pulled down further and either Sergeant Patterson, Kampnich, or Piotrowski pulled on Plaintiff's penis and then penetrated his anus with a small object. (*Id.*). Plaintiff tried to yell out, but Palmer covered his mouth to keep him from screaming. (*Id.*). One of the corrections officers choked Plaintiff by his shirt collar, causing him to pass out again. (*Id.* at ¶ 36).

When Plaintiff regained consciousness, Defendants were gone. (*Id.* at ¶ 37). Sergeant Brinkeroff banged on his door, and Plaintiff told him he needed to report a sexual assault and be looked at by Nurse Springer. (*Id.* at ¶ 38). Sergeant Brinkeroff said Nurse Springer would be there shortly. (*Id.*).

At approximately 12:45 a.m., Plaintiff was seen by Nurse Springer. He was stripped down to his boxers, and Nurse Springer looked him up and down and began to leave. (*Id.* at ¶ 40). Plaintiff told her he had been sexually assaulted and listed his injuries, but Nurse Springer just said "yeah, yeah," before walking out of the room. (*Id.*). She came back two minutes later and gave Plaintiff a wet paper towel to wipe the blood off his face and ignored Plaintiff when he asked if she had reported the sexual assault. (*Id.* at ¶ 42). In the medical report

about the appointment, Nurse Springer stated that Plaintiff had no visible injuries. (*Id.* at ¶ 48).

At 8:00 a.m. on November 23, 2013, Plaintiff returned to the Cayuga Medical Center for the endoscopy. (*Id.* at ¶ 43). He told the first nurse he saw that he had been sexually and physically assaulted at Five Points. (*Id.* at ¶ 44). His doctor notified the New York State Police and the Inspector General's Office about his claims, and while Plaintiff was waiting for his medical procedure, an Inspector General officer came to speak with him. (*Id.* at ¶¶ 46-47). At approximately 10:00 a.m., Plaintiff was given a sexual assault nurse exam ("S.A.N.E. exam"), where the nurse reported the following injuries: (1) three small rectal tears and a small amount of bleeding; (2) an abrasion on his lower lip; (3) a fracture on his left upper molar tooth; (4) a tender, red mid-back; (5) an abrasion on his right shin; and (6) a small abrasion on his lower leg. (*Id.* at ¶¶ 48-49). Plaintiff had the endoscopy to have the glasses arms removed from his stomach, and he returned to Five Points around 1:30 p.m. (*Id.* at ¶ 50).

**\*3** From November 22 to December 20, 2013, Plaintiff was held at Five Points under suicide watch and with a camera order. (*Id.* at ¶ 51). On December 20, 2013, he was sent to the Central New York Psychiatric Center where he stayed for three months, and then he was placed in the mental health behavioral unit at the Great Meadow Correctional Facility ("Great Meadow"). (*Id.*).

On February 20, 2014, Plaintiff filed a grievance regarding the November 23, 2013, incident. Around February or March 2014, after Plaintiff filed his grievance, Plaintiff was served with a misbehavior report alleging that he had assaulted Five Points staff. (*Id.* at ¶ 59). The report stated that Plaintiff initiated the altercation and included the medical report where Nurse Springer stated Plaintiff had no visible injuries. (*Id.* at ¶ 62). A disciplinary hearing was conducted, and the charges against Plaintiff were dismissed due to Kampnich's conflicting testimony. (*Id.* at ¶ 67). Plaintiff requested the hearing disposition and tape number, which he never received. (*Id.*). On March 27, 2016, Plaintiff submitted a request pursuant to New York's Freedom of Information Law ("FOIL request") for the papers related to the incident as well as the hearing disposition and tape number. (*Id.* at ¶ 69). On April 27, 2016, Plaintiff received a response that said there were "no such documents to give" to Plaintiff. (*Id.* at ¶ 71). Plaintiff contacted the Prisoners Legal Service of New York ("PLS"), and a PLS attorney called Great Meadow about the hearing and was told it was still pending. (*Id.* at ¶ 74).

Sometime between 2013 and 2016, Plaintiff was transferred to Attica Correctional Facility, and on November 28, 2016, he was transferred to Marcy. (Dkt. 6). On February 9, 2017, he was transferred to Great Meadow (Dkt. 9), and then back to Attica on July 19, 2017 (Dkt. 14). Sometime in 2018, Plaintiff was transferred to Five Points (Dkt. 21), and on October 29, 2018, he was transferred to the Central New York Psychiatric Center. (Dkt. 26). As of December 19, 2018, Plaintiff resides at Marcy. (Dkt. 28).

## II. <u>Procedural History</u>

Plaintiff filed the instant lawsuit on October 21, 2016. (Dkt. 1). On April 14, 2017, he was granted leave to proceed *in forma pauperis*, and the Court allowed his 🚩 § 1983 claims for excessive use of force, deliberate indifference, and conspiracy to proceed. (Dkt. 11). Plaintiff was also given the opportunity to amend his complaint so as to properly assert a retaliation claim based on his allegations that Defendants filed a false misbehavior report. (*Id.* at 12). On May 8, 2017, Plaintiff filed an Amended Complaint re-alleging the false misbehavior report claim, and also asserting claims for equal protection against Nurse Springer, retaliation against Nurse Springer, and violations of New York Penal Law. (Dkt. 12). On April 18, 2018, the Court dismissed Plaintiff's false misbehavior report claim and directed service of the Amended Complaint, original complaint, and the April 14, 2017, and April 18, 2018, Orders on Sergeant Patterson, Kampnich, Palmer, Piotrowski, and Nurse Springer. (Dkt. 18).[3]

 **\*4** On June 22, 2018, Plaintiff moved for a preliminary injunction. (Dkt. 21). On July 19, 2018, Defendants filed a partial motion to dismiss Plaintiffs claims for equal protection, violations of New York Penal Law, retaliation, conspiracy, injunctive relief, and against them in their official capacities. (Dkt. 22). No responses were filed to either motion. Palmer passed away on September 9, 2018.[4] (Dkt. 25).

## <u>DISCUSSION</u>

## I. <u>Motion for Preliminary Injunction</u>

After Plaintiff was transferred to Five Points sometime in 2018, he filed a motion for a preliminary injunction, asking to be moved from Five Points to a different correctional facility.

(Dkt. 21 at 5). Plaintiff was moved from Five Points to the Central New York Psychiatric Center on October 29, 2018 (Dkt. 26), and then to Marcy on December 19, 2018 (Dkt. 28). As Plaintiff is no longer housed at Five Points, Plaintiff's motion is denied as moot. *See, e.g., McPherson v. Coombe, 992 F. Supp. 229, 232 (W.D.N.Y. 1997)* (holding the transfer of the inmate to a different correctional facility rendered his preliminary injunction motion moot).

## II. <u>Motion to Dismiss</u>

### A. <u>Legal Standards</u>

#### 1. 12(b)(1) Motion to Dismiss

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that the court retains jurisdiction." 🚩 *Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)*. "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." 🚩 *Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)*. "[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." 🚩 *Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002)*. "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. ML Vernon Neighborhood Health Ctr., 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003)*, *aff'd*, 249 F. App'x 851 (2d Cir. 2007). "The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits." *Young v. United States, No. 12-CV-2342 ARR SG, 2014 WL 1153911, at \*6 (E.D.N.Y. Mar. 20, 2014)* (quotation omitted).

#### 2. 12(b)(6) Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)*. A court should consider

the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N. Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ).

**\*5** "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B. Official Capacity Claims and Request for Injunctive Relief

Plaintiff alleges claims against Defendants in their official capacities and requests injunctive relief that he not be housed at Five Points at any time in the future. (Dkt 12 at 44). Defendants seek to dismiss Plaintiff's request for injunctive relief and his claims against them in their official capacities. (Dkt. 22-1 at 6-7, 18-21).

Under the Eleventh Amendment, states and their agencies are immune from suits brought by private parties in federal court, unless Congress "unequivocally expresses its intent" to abrogate that immunity and "acts pursuant to a valid exercise of power," or a state waives its immunity. *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (quotations and citation omitted). This jurisdictional bar applies "whether the relief sought is legal or equitable." *Papasan v. Allain*, 478 U.S. 265, 276 (1986). The protections of the Eleventh Amendment extend to state officials acting in their official

capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009); *K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999). "This is so because ... a judgment against a public servant in his official capacity imposes liability on the entity that he represents[.]" *Graham*, 473 U.S. at 169 (quotations and citation omitted).

However, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). When determining whether a claim "avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment) ).

"Neither the Supreme Court nor the Second Circuit has directly addressed whether a violation that is not currently in progress may nevertheless be considered 'ongoing' where the possibility of a future violation exists." *Babyrev v. Lanotte*, No. 16 Civ. 5421 (ER), 2018 WL 388850, at \*4 (S.D.N.Y. Jan. 11, 2018). However, the other circuits that have examined this issue "have held that the challenged action need not literally 'be in progress' to defeat a claim of sovereign immunity; rather, 'where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied.' " *Doe v. Annucci*, No. 14 Civ. 2953(PAE), 2015 WL 4393012, at \*16 (S.D.N.Y. July 15, 2015) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) ); *see Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) ("The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent."); *Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir. 1996) ("[T]he *Young* exception permits relief against state officials only when there is an ongoing or threatened violation of federal law."); *Han v. U.S. Dep't of Justice*, 45 F.3d 333, 338 (9th Cir. 1995) (holding the Eleventh Amendment bars suits where "[t]here is no allegation that the

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 49 of 212

Patterson v. Patterson, Not Reported in Fed. Supp. (2019)

state defendants are likely to approve third party agreements in the future or that plaintiffs otherwise face a threat of harm from the state defendants' future actions").

**\*6** Plaintiff fails to allege an ongoing violation or threat of future enforcement of federal law that would entitle him to injunctive relief. Plaintiff requests that he not be transferred back to Five Points, alleging that if he is, Defendants will retaliate against him by assaulting him and tampering with his mail and food. (Dkt. 12 at 45). Such statements merely speculate as to possible future conduct by Defendants; Plaintiff does not allege that Defendants are currently engaging in unconstitutional behavior or that a policy could be enforced against Plaintiff in violation of his constitutional rights. *See Lee v. O'Harer*, No. 9:13-CV-1022, 2014 WL 7343997, at \*11 (N.D.N.Y. Dec. 23, 2014) (dismissing the plaintiffs request for injunctive relief because "[e]ven plaintiff's retaliation claim, if it were to proceed, does not allege anything other than speculative future conduct. There is no allegation of any ongoing policy that could be enjoined"); *see also* Vega v. Semple, No. 3:17-CV-107 (JBA), 2018 WL 4656236, at \*12 (D. Conn. Sept. 27, 2018) (allowing a claim for prospective injunctive relief to go forward because the plaintiffs' allegations "are not merely speculative" and state a continuous violation of law), *appeal filed*, No. 18-3176 (2d Cir. Oct. 24, 2018). [5]

The Court therefore finds Plaintiff's request for injunctive relief is insufficient to avoid the protections extended to state actors by the Eleventh Amendment, as are his claims against Defendants in their official capacities, and they are accordingly dismissed.

### C. Equal Protection Claim

Plaintiff alleges that Nurse Springer violated his equal protection rights. (Dkt. 12 at ¶ 83). For the reasons that follow, the Court finds the Amended Complaint fails to state an equal protection claim.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quotation omitted). " 'Unless a classification trammels fundamental personal rights or

is drawn upon inherent suspect distinctions such as race, religion, or alienage,' the courts must presume that the distinctions made are constitutional as long as they are 'rationally related to a legitimate state interest.' " *Robles v. Dennison*, 745 F. Supp. 2d 244, 301 (W.D.N.Y. 2010) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976), *aff'd*, 449 F. App'x 51 (2d Cir. 2011) ).

However, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.' " *Id.* "To state an equal protection claim based on a theory of selective enforcement, a plaintiff must plausibly allege ... that he was treated differently from other similarly situated individuals." *Lanning v. City of Glen Falls*, 908 F.3d 19, 29 (2d Cir. 2018). "He also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.' " *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001) ).

**\*7** Plaintiff has failed to allege either that he was a member of a protected class or that he was treated differently from other similarly situated individuals. *See, e.g., Roman v. Donelli*, 347 F. App'x 662, 663 (2d Cir. 2009) (holding the prisoner's equal protection claim was properly dismissed because he "has not established that he is a member of a protected class, nor has he established an equal protection violation under a 'class of one' theory"); *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016) (dismissing the prisoner's equal protection claim because he did not allege that he was a member of a protected class or that he was treated differently from a similarly situated inmate). Plaintiff alleges that Nurse Springer "neglecting to report my sexual assault complaint was an act of discrimination in violation of my equal protection [rights] under the United States Constitution." (Dkt. 12 at ¶ 83). Plaintiff's conclusory statements are not sufficient to state an equal protection claim. *See A'Gard v. Perez*, 919 F. Supp. 2d 394, 406 (S.D.N.Y. 2013) (holding the plaintiff failed to state a claim for denial of equal protection "because the Amended Complaint states no facts demonstrating that the plaintiff was treated differently from similarly situated inmates"); *Marrero v. Kirkpatrick*,

Patterson v. Patterson, Not Reported in Fed. Supp. (2019)

Case 6:23-cv-00086-MAD-ML   Document 7   Filed 04/07/23   Page 50 of 212

659 F. Supp. 2d 422, 424-25 (W.D.N.Y. 2009) (dismissing the prisoner's equal protection claim because he made the allegation "in conclusory fashion"). Accordingly, the Court grants Defendants' motion to dismiss as to this claim.

### D. New York Penal Law Claims

Plaintiff alleges that Defendants violated ⚑New York Penal Law §§ 130.20(1), ⚑130.25(1), ⚑130.55, and ⚑130.60. The Court dismisses these claims for the reasons that follow.

Under New York law, "[i]n the absence of an express private right of action, plaintiffs can seek civil relief in a plenary action based on a violation of the statute only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013) (quotation omitted). Determining whether a private right of action exists depends on three factors: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme."

⚑ *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 (1989). Defendants do not contest the first two factors, but rather whether a private right of action for these New York Penal Law sections would be consistent with the legislative scheme. (Dkt. 22-1 at 9-10); *see* ⚑*Sheehy*, 73 N.Y.2d at 634 ("[W]e must, most importantly, determine the consistency of [finding a private right] with the purposes underlying the legislative scheme." (internal alteration, quotation, and emphasis omitted) ).

Plaintiff does not have a private right to bring claims pursuant to ⚑ New York Penal Law §§ 130.20(1), ⚑130.25(1), ⚑130.55, and ⚑130.60. New York courts decline "to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself." *Cruz*, 22 N.Y.3d at 71. Courts within this Circuit have accordingly held consistently that criminal charges under New York law "cannot be prosecuted by a private person." ⚑*Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009); *see, e.g.*, *Ong v. Park Manor (Middletown Park) Rehab. And Healthcare Ctr.*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (discussing that a provision of N.Y. Penal Law "cannot form the basis of a civil claim, nor can it form the basis of a

⚑ § 1983 or related claim given that those statutes apply only to violations of federal constitutional rights"); *Peterec v. Hilliard*, No. 12-CV-3944 (CS), 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013) ("[P]rivate citizens do not have a private cause of action for criminal violations." (quotation omitted) ); *Smith v. N.Y.C. Police Dep't*, No. 06 Civ. 15436(JSR)(KNF), 2010 WL 423039, at *5 (S.D.N.Y. Feb. 4, 2010) ("[A]n individual cannot bring a private cause of action for alleged criminal violations."), *report and recommendation adopted*, 2010 WL 2008839 (S.D.N.Y. May 17, 2010); *Moore v. N.Y.C. Dep't of Educ.*, No. 03 Civ.2034(LAP), 2004 WL 691523, at *5 (S.D.N.Y. Mar. 31, 2004) ("These claims [pursuant to N.Y. Penal Law] must be dismissed because plaintiff has set forth no authority to support his claim that a private right of action to enforce rights allegedly created by these provisions exists.").

 **\*8** Moreover, the New York state legislature provided a civil cause of action for victims who have suffered from the acts defined under various sections of New York Penal Law Article 130. *See* ⚑Civil Practice Law and Rules ("CPLR") § 213-c ("[A] civil claim or cause of action to recover from a defendant ... for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in ⚑section 130.35 of the penal law, or criminal sexual act in the first degree as defined in ⚑section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in ⚑section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in ⚑section 130.75 of the penal law may be brought within five years."). The legislature's designation of express provisions of Article 130 of New York Penal Law that may be pursued in a civil action indicates that the legislature did not intend for there to be a private right to pursue the remaining provisions, including those invoked by Plaintiff. *See* ⚑*Sheehy*, 73 N.Y.2d at 636 ("Where the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy ... at least where ... the two statutes address the same wrong."); *see also* ⚑*People ex rel. Spitzer v. Grasso*, 42 A.D.3d 126, 135, 836 N.Y.S.2d 40 (1st Dep't 2007) (applying *expressio unius* to disallow the state Attorney General from bringing causes of action against corporate officers "other than the [five] causes of

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 51 of 212

Patterson v. Patterson, Not Reported in Fed. Supp. (2019)

action the Legislature expressly authorized" in the statute). Additionally, the phrasing of the statute indicates that the New York Legislature only intended for the victims of defendants convicted of, or at least charged with, those crimes to be able to pursue civil claims under the statute's purview. *See* CPLR § 213-c ("[A] civil claim or cause of action to recover from a defendant ... for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant[.]").

Moreover, the state civil statutes that specifically reference the provisions invoked by Plaintiff either discuss legal consequences that stem from a conviction under those sections of the New York Penal Law or use them to articulate term definitions. *See, e.g.*, Dom. Rel. §§ 170, 200 (citing behaviors defined in N.Y. Penal § 130.20 as a cause for filing an action for separation or divorce); Veh. & Traff. § 509-cc (listing N.Y. Penal §§ 130.20, 130.25, and 130.55 as offenses that disqualify a person from being a school bus driver); Alco. Bev. Cont. § 53.1 (stating a conviction under N.Y. Penal §§ 130.55 or 130.60 may cause revocation of a license or permit issued pursuant to the Alcohol Beverage Control Law). Not one of these statutes indicates that the legislature intended for there to be a private right of action pursuant to New York Penal Law §§ 130.20(1), 130.25(1), 130.55, or 130.60.

The Court accordingly finds that a private right of action for Plaintiff's New York Penal Law claims would not be consistent with New York's legislative scheme, and grants Defendants' motion to dismiss them.

### E. Retaliation Claim

Plaintiff alleges that Nurse Springer violated his First Amendment rights after he told her that Sergeant Patterson, Kampnich, Piotrowski, and Palmer had assaulted him on November 23, 2013. (Dkt. 12 at ¶ 83). He claims she retaliated against his verbal report by ignoring his medical concerns related to the incident. (*Id.*). The Court grants Defendants' motion as to this claim for the following reasons.

To make out a § 1983 retaliation claim, an inmate must show the following: (1) he was engaged in constitutionally protected conduct; and (2) the prison officials conduct was taken in retaliation for the inmate's protected conduct.

*Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A prisoner's claims of retaliation are examined with "skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "Prisoner plaintiffs may rely on circumstantial evidence to prove their retaliation claims, such as temporal proximity of events, but in doing so, the plaintiff also must usually provide some non-conclusory evidence that raises an inference of retaliatory animus in order to proceed to trial." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 331 (D. Conn. 2015) (quotation omitted).

"While courts in this Circuit have found that verbal complaints may be protected for the purposes of a First Amendment retaliation claim, the Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate." *Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *17 (S.D.N.Y. Mar. 31, 2018). *Compare McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) ("[T]here is authority in the Second Circuit for the proposition that verbal complaints can be protected action for purposes of a First Amendment retaliation claim."), *with Allah-Kasiem v. Sidorowicz*, No. 09 Civ. 9665(DLC), 2012 WL 2912930, at *9 (S.D.N.Y. July 17, 2012) ("Having chosen not to use the grievance process provided by [DOCCS], [the plaintiff] cannot claim that his comments to [the defendant] are entitled to the same protection that adheres to properly filed grievances."). Additionally, the vast majority of cases that address whether a prisoner's verbal complaints may constitute protected speech do so in the context of prisoners complaining to corrections officers—the Court's research found only one case in this Circuit where instead a law librarian was implicated, *see White v. Westchester County*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *1, *16 (S.D.N.Y. Dec. 21, 2018) ("Plaintiff has plausibly alleged that he was engaging in protected speech both when he approached [the defendant] to notarize his notice of claim against [the other defendants] and when he confronted [the defendant] about her harassment of him."), and none involving complaints made to medical staff. [6]

**\*9** "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v.*

*Patterson v. Patterson, Not Reported in Fed. Supp. (2019)*

*Fitzgerald*, 457 U.S. 800, 818 (1982) ). " 'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590.

Nurse Springer is entitled to qualified immunity as to Plaintiff's retaliation claim. Assuming the truth of Plaintiff's claims, Nurse Springer's alleged conduct occurred on November 23, 2013, and the law surrounding whether a prisoner's verbal complaints are protected speech was unsettled then, and is still unsettled as of the issuance of this Decision. *See Booker*, 2018 WL 1614346, at *17 (holding the defendants were entitled to qualified immunity at the pleadings stage as to the First Amendment retaliation claim "[b]ecause the law is not well-settled regarding whether an inmate's verbal complaint constitutes protected speech"); *Ford v. Martuscello*, No. 9:14-cv-01566 (DNH/DEP), 2016 WL 5322166, at *4 (N.D.N.Y. June 23, 2016) ("[T]he Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate[.]"), *report and recommendation adopted*, 2016 WL 5256901 (N.D.N.Y. Sept. 22, 2016); *see also Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995) (granting qualified immunity where an officer allegedly retaliated against a prisoner for verbally defending another inmate because there was "no clearly established First Amendment right to approach and speak to" the officer).

Accordingly, the Court grants Defendants' motion as to Plaintiff's retaliation claim. [7]

### F. Conspiracy to Cover-Up Claim

Plaintiff alleges Defendants conspired to file a false misbehavior report against him to cover up their unlawful use of force. The Court dismisses Plaintiff's conspiracy claim for the reasons that follow.

To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

The intracorporate conspiracy doctrine provides that "if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers[ ] and employees, each acting within the scope of his employment[,] there can be no actionable conspiracy." *O'Diah v. Neth*, No. 6:10-CV-6592(MAT), 2013 WL 6440610, at *4 (W.D.N.Y. Dec. 9, 2013) (quotation and citation omitted) (alterations in original). "[A]n exception to the doctrine applies when individual employees are pursuing personal interests wholly separate and apart from the entity[.]" *Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006).

**\*10** "While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.' " *Graham v. Peters*, No. 13-CV-705JTC, 2013 WL 5924727, at *2 (W.D.N.Y. Oct 31, 2013) (quoting *Anilao v. Spota*, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011) ). Plaintiff is required to " 'make an effort to provide some details of time and place and the alleged effects of the conspiracy.' In addition, a plaintiff must plead facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ).

Plaintiff has failed to allege that Defendants acted to inflict an unconstitutional injury on him. The Amended Complaint alleges that Defendants conspired to file a false misbehavior and medical report against Plaintiff regarding the events of November 23, 2013, to cover up their unlawful use of force on Plaintiff. (Dkt. 12 at ¶¶ 62-63). "[T]here is no constitutional right to be free from the cover-up of a past constitutional violation." *Lewis v. Havernack*, No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *12 (N.D.N.Y. Mar. 28, 2013), *report and recommendation adopted*, 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013); *see James v. Annucci*, No. 9:17-CV-0843 (GTS/DEP), 2018 WL 4565771, at *4 (N.D.N.Y. Sept. 24, 2018) ("General allegations that a party conspired to cover up a past constitutional violation are insufficient to establish liability under Section 1983."); *De Ponceau v. Bruner*, No. 9:09-CV-0605 (GTS/DEP), 2012 WL 1030415,

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 53 of 212

Patterson v. Patterson, Not Reported in Fed. Supp. (2019)

at *7 (N.D.N.Y. Feb. 21, 2012) ("A claim that a prison employee has taken steps to conceal evidence of a past constitutional violation which is not ongoing does not alone state a cognizable constitutional claim under 42 U.S.C. § 1983."), *report and recommendation adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012). Rather, Plaintiff must allege that the conspiracy itself inflicted some sort of unconstitutional injury, such as a deprivation of due process rights. *See Barrett v. United States,* 798 F.2d 565, 578 (2d Cir. 1986) (finding the existence of a constitutional deprivation when a cover-up resulted in a lower settlement figure).

The Court previously addressed how Defendants' alleged conduct impacted Plaintiff's due process rights in its April 14, 2018, and April 18, 2018, Orders in the context of Plaintiff's false misbehavior report claim. (Dkt. 11 at 11-12; Dkt. 18 at 2-3). "In general, a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Willey v. Kirkpatrick,* 801 F.3d 51, 63 (2d Cir. 2015) (quotation omitted). There are two exceptions to this rule: "when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Id.* (quotation omitted). The Court found Plaintiff has not alleged that he was disciplined because of the conspiracy or allegedly false misbehavior report (Dkt. 18 at 3)—in fact, he alleges that the charges brought against him were dismissed after a disciplinary hearing or are still pending (Dkt. 12 at ¶¶ 67, 74). As Plaintiff alleges that he was not disciplined, he has failed to allege, nor could he allege, that any agreement between Defendants resulted in a deprivation of his due process rights. *See McCloud v. Prack,* 55 F. Supp. 3d 478, 483 (W.D.N.Y. 2014) (holding the plaintiff's allegations could not establish a constitutional deprivation because "the

misbehavior reports issued against plaintiff, arising out of the incidents in question, were dismissed").

*11 Plaintiff also alleges that Nurse Springer falsified her medical report as part of the cover-up. (Dkt. 12 at ¶ 62 ("Defendant Joann L. Springer, misrepresented the altercation of Nov. 23, 2013 by falsifying the medical report, which she wrote in conspiracy with [the other defendants], that Plaintiff (me) had no [visible] injuries[.]") ). A guard or nurse's failure to document an inmate's injuries is not a constitutional deprivation, and bare allegations that a medical report was used to cover up a conspiracy are not sufficient to state a conspiracy claim pursuant to § 1983. *See Tavares v. N.Y.C. Heath and Hosps. Corp.,* No. 13-cv-3148 (PKC) (MHD), 2015 WL 158863, at *9 (S.D.N.Y. Jan. 13, 2015) (holding the plaintiff's allegations that medical staff tried to cover-up for the defendants in their medical report was not sufficient to state a conspiracy claim); *Evans v. Murphy,* No. 12CV365, 2013 WL 2250709, at *3 (W.D.N.Y. May 22, 2013) ("[T]he plaintiff asserts that [a prison official] failed to document [the plaintiff's] injuries to cover-up the incident. Such a claim does not state a constitutional claim."). [8]

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's conspiracy claim.

## CONCLUSION

For the forgoing reasons, Plaintiff's motion for a preliminary injunction (Dkt. 21) is denied, and Defendants' partial motion to dismiss (Dkt. 22) is granted.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1284346

## Footnotes

1      A dry cell is a cell with no sink or toilet; only a bedframe and mattress. (Dkt. 12 at ¶ 22).

2      The tooth was so severely damaged that it later had to be removed. (Dkt. 12 at ¶ 25).

Case 6:23-cv-00086-MAD-ML   Document 7   Filed 04/07/23   Page 54 of 212

Patterson v. Patterson, Not Reported in Fed. Supp. (2019)

3      To the extent the Court's April 18, 2018, Order references Plaintiff's deliberate indifference claim as being dismissed (Dkt. 18 at 2), any such statement was in error. Only the false misbehavior report claim was dismissed, as stated in the decretal section of the Order. (*Id.* at 4). Plaintiff's deliberate indifference claim has not been dismissed and may proceed to discovery.

4      An order will issue under separate cover addressing the procedural implications raised by Defendants' filing of the suggestion of death of Palmer.

5      Although this argument was not raised by Defendants, another potential problem with Plaintiff's request for injunctive relief is that any Defendants named in the instant lawsuit do not appear to have the authority to decide where Plaintiff is housed, and therefore it is not certain that Plaintiff's injury could be redressed if he is granted the injunctive relief he seeks. *See* NY Correction Law § 72.2 ("The commissioner, or the superintendent or director of an institution in which an inmate is confined, may permit an inmate to be taken, under guard, to any place or for any purpose authorized by law[.]").

6      Liberally construing Plaintiff's allegations, as is required when a plaintiff proceeds *pro se*, Plaintiff could claim that Nurse Springer retaliated against him for telling Sergeant Brinkeroff that he needed to report a sexual assault. (Dkt. 12 at ¶ 38). However, the Court finds that even if that were Plaintiff's claim, Nurse Springer would still be entitled to qualified immunity for the reasons discussed below.

7      In its April 14, 2017, Order, the Court noted that while filing a grievance is a constitutionally protected activity for retaliation purposes, Plaintiff did "not allege that his filing of the grievance was the substantial or motivating factor behind the Misbehavior report." (Dkt. 11 at 11-12). The Court afforded Plaintiff leave to file an amended complaint to cure this defect (*id.* at 12), but Plaintiff's Amended Complaint failed to do so (Dkt. 12 at 23-31). Accordingly, the Court dismissed Plaintiff's false misbehavior report claims in its April 18, 2018, Order. (Dkt. 18 at 3).

8      Additionally, as discussed above, to the extent that Plaintiff alleges Nurse Springer engaged in retaliatory conduct by issuing a false medical report in response to his verbal complaint, she is entitled to qualified immunity. Moreover, Plaintiff has not alleged facts demonstrating "that [D]efendants entered into an agreement, express or tacit," to retaliate against him—his conspiracy claim instead centers around Defendants' alleged cover-up. *Warren*, 33 F. Supp. 2d at 177; *see supra* note 7.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1877704
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Victor WALTHOUR, Sr., Plaintiff,

v.

Judge Jon HERRON, Defendant.

Civil Action No. 10–01495.
|
May 6, 2010.

**Attorneys and Law Firms**

Victor Walthour, Sr., Garnet Valley, PA, pro se.

Geri Romanello St. Joseph, Administrative Office Of Pennsylvania Courts, Philadelphia, PA, for Defendant.

***OPINION AND ORDER***

SLOMSKY, District Judge.

**\*1** This case was instituted by *pro se* Plaintiff, Victor Walthour, Sr., on April 5, 2010. The Complaint (Doc. No. 1) alleges that on March 24, 2010 Defendant, the Honorable John W. Herron (improperly captioned as "Judge Jon Herron"), signed a decree removing Plaintiff as the legal guardian of Plaintiff's wife, Mrs. Rosalyn Walthour. (Compl., 3.) The only further averments are that a person named Sheila Gibson was also involved and that court reporters witnessed this event. (*Id.*) The Complaint asserts federal question jurisdiction under 18 U.S.C. §§ 241, 242, 245, 247, 371 and 1951, and 42 U.S.C. §§ 1983, 1985, 1986, and 3631. (*Id.* at 2.) The relief sought by Plaintiff includes:

> Removal of decision making duties[.] Everything he has now and in the future [.] Everything his wife has now and in the future[.] Everything any offspring has now and in future[.] Everything his in-laws have now and

> in future [.] Everything his parents have now and in future[.]

(*Id.* at 3–4.)

Before the Court is a Motion to Dismiss (Doc. No. 3) and supporting Memorandum of Law (Doc. No. 4) filed by Judge Herron. Plaintiff filed a response in the form of a Motion (Doc. No. 6) requesting that Judge Herron's Motion to Dismiss be denied (hereinafter "Plaintiff's Response in Opposition"). Plaintiff's Response in Opposition states in full:

> Now this day 16 April 2010 I ask that the motion to dismiss be denied.

> 1) Knowledge is power, I have the knowledge that a Judge cannot open and alter a settlement brokered by another Judge who ordered it sealed!

(Pl.'s Response in Opposition, 1.)

Attached to Plaintiff's Response in Opposition is a copy of a March 24, 2010 Interim Order and Opinion from the Court of Common Pleas of Philadelphia, Orphan's Court Division, signed by Judge Herron (hereinafter "Exhibit A"). From this Opinion, it is apparent that Plaintiff's wife is incapacitated and is the beneficiary of a trust for her care and maintenance, which is worth approximately $9,649,643. (*Id.* at Exhibit A, 1.)

On February 16, 2010, Judge Herron held a hearing regarding the proposed spending plan under Mrs. Walthour's trust. (*Id.*) After this hearing, Judge Herron Ordered that Plaintiff be removed as co-guardian of his wife's estate because the proposed spending plan was wasteful of Mrs. Walthour's assets. (*Id.*) The proposed spending plan would have resulted in a projected annual income deficit of approximately $368,500. (*Id.*) The concluding paragraphs of Judge Herron's Opinion state that:

> Victor Walthour, co-guardian, fails to appreciate the significant financial issues and in consideration of his testimony during the proceedings, this Court deems him unqualified to serve as co-guardian and orders that he cease to serve in this capacity.

> A further hearing shall take place on April 13, 2010 at 10:00 a.m. in Courtroom 416 City Hall at which time the remaining guardian Ms. Hobkirk shall appear and present

an alternative care plan for the Incapacitated Person [i.e., Rosalyn Walthour].

**\*2**  (*Id.* at Exhibit A, 2.)

For reasons stated below, the Court will grant Defendant's Motion and dismiss the Complaint in its entirety.

## I. MOTION TO DISMISS STANDARD

The motion to dismiss standard has undergone recent transformation, culminating with the Supreme Court's Opinion in *Ashcroft v. Iqbal,* ——U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). After *Iqbal* it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" in defeating a motion to dismiss. *Id.* at 1949; *see also Bell Atlantic Corp. V. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Applying the principles of *Iqbal,* the Third Circuit in *Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009), articulated a two part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a motion to dismiss.

First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. *Id.* (citing *Phillips v. County of Allegheny* 515 F.3d 224, 234–35 (3d Cir.2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1950. This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In this case, the allegations contained in Plaintiff's Complaint will be liberally construed, as pleadings filed by *pro se* plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus,* 551

U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *see also* Fed.R.Civ.P. 8(e) ("[p]leadings must be construed so as to do justice"). Plaintiff has not indicated whether he is suing Judge Herron in his official or personal capacity. Therefore, in deciding this Motion to Dismiss and construing Plaintiff's Complaint liberally, the Court will infer that Plaintiff intended to sue Judge Herron in both his official and personal capacity.

## II. DISCUSSION

### A. Failure to State a Claim Upon Which Relief May be Granted

### 1. Claims Under Criminal Statutes: 18 U.S.C. §§ 241, 242, 245, 247, 371 and 1951

A private individual may sue under a federal statute only when Congress intended to create a private right of action. *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ("where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit").

**\*3**  In this case, Plaintiff asserts a violation of his rights under the following federal criminal statutes: 18 U.S.C. §§ 241, 242, 245, 247, 371 and 1951. (Compl., 2.) These statutes do not provide a private right of action under which Plaintiff may sue. *See Powers v. Karen,* 786 F.Supp. 46, 51 (E.D.N.Y.1991) ("because [18 U.S.C. §§ ] 241 and 242 do not provide for a private right of action, plaintiff's reliance on them is misplaced"), *aff'd,* 963 F.2d 1522 (2d Cir.1992); *People ex rel. Snead v. Kirkland,* 462 F.Supp. 914, 920 (E.D.Pa.1978) ("[18 U.S.C. § 245] permits federal prosecution for interference with a long list of federally protected activities; it confers neither substantive rights nor a private right of action for damages"); *Vega v. Daniels,* No. 07–1193, 2009 WL 80434, \*10 (E.D.Cal. Jan.13, 2009) (noting that 18 U.S.C. § 247 does not provide a "basis for Plaintiff to pursue claims of violation of his constitutional rights"); *Rockefeller v. U.S. Court of Appeals Office for Tenth Circuit Judges,* 248 F.Supp.2d 17, 23 (D.D.C.2003) (finding that there is no private right of action under 18 U.S.C. § 371); *Peterson v. Philadelphia Stock Exchange,* 717 F.Supp. 332, 336 (E.D.Pa.1989) ("The Hobbs Act [ 18 U.S.C. §

1951] contains no language which suggests it can provide civil relief.")

It is clear that none of the criminal statues cited by Plaintiff provide him with a private right of action. Generally, crimes are prosecuted by the government not by private citizens. Therefore, Plaintiff's claims under 18 U.S.C. §§ 241, 242, 245, 247, 371 and 1951 will be dismissed for failure to state a claim upon which relief may be granted.

**2. Claims Under Civil Rights Statutes: 42 U.S.C. §§ 1983, 1985, 1986, and 3631**

*a. Claims Under 42 U.S.C. § 1983*

The civil rights statute 42 U.S.C. § 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, in order to properly plead a Section 1983 claim, Plaintiff must allege (1) conduct by a person, (2) who acted under color of state law, (3) which caused a deprivation of a federally protected right. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Although a state official, such as Judge Herron, is literally a "person," a suit for money damages against a state official in his official capacity is, in reality, a claim against the state itself. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). A state is not a "person" within the meaning of Section 1983. *Id.* at 64. As the Supreme Court explained in *Will:*

> *\*4* Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.... Congress, in passing
>
> § 1983, had no intention to disturb the States' Eleventh Amendment immunity ...

*Id.* at 66. In other words, a claim against Judge Herron in his official capacity is simply a claim against the state, and a state cannot be sued under Section 1983 for money damages. [1]

Moreover, to adequately plead a § 1983 claim, Plaintiff must allege a deprivation of a federally protected right. Plaintiff has failed to do so. The primary factual allegation contained in the Complaint is that Judge Herron signed a decree removing Plaintiff as the guardian of his wife. This factual averment does not demonstrate a violation of any federally protected right by Judge Herron. Therefore, Plaintiff's Section 1983 claim must be dismissed for failure to state a claim upon which relief may be granted.

*b. Claims Under 42 U.S.C. § 1985*

Section 1985(3) allows an action to be brought by one harmed by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3); *Farber v. City of Patterson,* 440 F.3d 131, 134 (3d Cir.2006). To state a claim under Section 1985(3), Plaintiff must allege:

(1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber,* 440 F.3d at 134 (quoting *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).

This civil rights provision was not "intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.' " *Id.* at 135 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Rather, Plaintiff must allege "some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *Griffin,* 403 U.S. at 102) (emphasis in original). Thus, the conspiracy alleged must have been motivated by discriminatory animus against an identifiable class, and the discrimination must have been invidious. *Id.*

Plaintiff's Complaint is devoid of any allegations of any of the elements required to establish a Section 1985 claim. Therefore, Plaintiff's Section 1985 claim will be dismissed.

**c. Claims Under 42 U.S.C. § 1986**
Section 1986 provides in relevant part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to

be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented ...

**\*5** 42 U.S.C.A. § 1986.

Thus, to state a claim under Section 1986, Plaintiff must have stated a valid claim under 42 U.S.C. § 1985. *Bieros v. Nicola,* 839 F.Supp. 332, 336 (E.D.Pa.1993). As noted above, Plaintiff has failed to do so. Accordingly, Plaintiff's Section 1986 claim will be dismissed.

**d. Claims Under 42 U.S.C. § 3631**
Section 3631 is a violations and penalties provision under the Fair Housing Act. It provides that penalties may be imposed against:

Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—

(a) any person because of his race, color, religion, sex, handicap ..., familial status ..., or national origin and because he is or has been selling, purchasing, renting, financing, occupying, or contracting or negotiating for the sale, purchase, rental, financing or occupation of any dwelling ...

42 U.S.C. § 3631.

Plaintiff's allegation that Judge Herron signed a decree removing Plaintiff as Mrs. Walthour's guardian fails to demonstrate any willful interference with Plaintiff's rights under the Fair Housing Act. Even construing the *pro se* Complaint liberally, the Court is unable to discern any relationship between Plaintiff's Fair Housing Act claim and the allegations in the Complaint. Therefore, Plaintiff's Section 3631 claim will be dismissed.

**B. Judicial Immunity**

Notwithstanding the fact that Plaintiff has failed to state any claims upon which relief may be granted, the Court also finds that Judge Herron is entitled to judicial immunity for all claims against him in his personal capacity. A judicial officer, in the performance of his duties as a judge, is absolutely immune from suit in his personal capacity and is not liable for his judicial acts. *Azbuko v. Royal,* 443 F.3d 302, 303 (3d Cir.2006) (*per curiam* ). A judge will not be deprived of his judicial immunity even if his actions were in error, or in excess of his authority, or were taken with malice. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Azbuko,* 443 F.3d at 303. "[O]nly when he has acted in the 'clear absence of all jurisdiction' " will a judge be subject to liability. *Stump,* 435 U.S. at 356–57.

The allegations in Plaintiff's Complaint involve actions that were clearly taken in the performance of Defendant's duties as a judge. There are no facts to suggest that Judge Herron's conduct relates to actions taken in the clear absence of all jurisdiction. Accordingly, Judge Herron is entitled to judicial immunity for all claims against him in his personal capacity.

## III. CONCLUSION

For all of the aforementioned reasons, Plaintiff's Complaint will be dismissed in its entirety. An appropriate Order follows.

### *ORDER*

AND NOW, this 6th day of May, 2010, upon consideration Plaintiff's Complaint (Doc. No. 1), Defendant's Motion to Dismiss and supporting Memorandum of Law (Doc. Nos. 3 and 4), and Plaintiff's response thereto (Doc. No. 6), it is ORDERED that Defendant's Motion to Dismiss is GRANTED, this case is DISMISSED, and all pending motions are DENIED AS MOOT.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1877704

## Footnotes

1    After the 1996 amendments to Section 1983, it is clear that a judicial officer may be sued in his official capacity for injunctive relief (i.e., non-monetary damages), but only where a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983; *Catanzaro v. Cottone,* 228 Fed. App'x 164, 167 (3d Cir.2007). This is a very narrow avenue for relief and Plaintiff has failed to adequately allege that a declaratory decree was violated or that declaratory relief was unavailable to him.

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 60 of 212

Byrd v. KTB Capital LLC, Not Reported in Fed. Supp. (2019)

2019 WL 652529
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Vickie Dianne BYRD, Plaintiff,

v.

KTB CAPITAL LLC, d/b/a Grove Street
Management Corporation and Barbara
Manor Apartments LLC, Defendants.

No. 6:16-cv-06017(MAT)
|
Signed 02/15/2019

**Attorneys and Law Firms**

Vickie Dianne Byrd, Rochester, NY, pro se.

Amy L. Hemenway, Anna S.M. McCarthy, Harter, Secrest
and Emery LLP, Buffalo, NY, for Defendants.

**DECISION and ORDER**

HON. MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

**\*1** On January 11, 2016, Vickie Dianne Byrd ("Plaintiff"),
proceeding pro se, instituted this action against KTB Capital
LLC, d/b/a Grove Street Management Corporation ("Grove
Street") and Barbara Manor Apartments LLC ("Barbara
Manor") (collectively, "Defendants"),[1] alleging, inter alia,
discrimination based on race and disability in violation of
the Fair Housing Act, ⚑ 42 U.S.C. § 3601, et seq. ("FHA")
and the New York State Human Rights Law, ⚑ N.Y. Exec.
Law § 290 et seq. ("NYSHRL"). Presently before the Court is
Defendants' Motion for Summary Judgment (Docket No. 60)
pursuant to Rule 56 of the Federal Rules of Civil Procedure
("Rule 56").

**II. Factual Background**

The following factual summary is based on Defendants'
detailed and well-supported Statement of Material Facts
("Defs' SOF") (Docket No. 60-2), along with Defendants'
Appendix of Exhibits to Local Rule 56 Statement of Facts
("Defs' App.") (Docket No. 60-3 through Docket No. 60-24).

Grove Street is a real estate asset management company
that, during the relevant period, acted as the rental agent
and property manager for apartments located at Emerson
Street and Mount Read Boulevard in the City of Rochester,
New York. These apartments were owned by defendant
Barbara Manor. Plaintiff entered into a lease agreement with
Grove Street to rent the unit located at 1403 Emerson Street,
Apartment C. The initial lease term commenced November
30, 2012, and was set to terminate on November 30, 2013.
The monthly rental fee was $545 per month, which included
water, heat, and trash removal.

In the fall of 2013, Grove Street proposed renewing Plaintiff's
lease at the rate of $555 per month, for a one-year term
starting November 1, 2013. Plaintiff refused the $10-increase
and requested that her rent remain the same. Grove Street
acquiesced, and Plaintiff signed a new lease on September 23,
2013, with her rent payment continuing at $545 per month.

About a year later, on September 9, 2014, Grove Street
proposed renewing Plaintiff's lease at a rate of $565 per month
for a one-year term. This was below the market rate for her
apartment unit, which was $575.00. Plaintiff refused, saying
she could not afford the $20-increase and requesting that
she be allowed to keep her current rate of $545.00. Grove
Street requested that Plaintiff either sign the lease renewal and
accept the $565-per-month rate, or provide a notice to vacate
in accordance with Section C.5 [2] of the lease agreement.

**\*2** Plaintiff neither signed the lease agreement nor provided
a notice to vacate. Plaintiff did not submit her rental payment
until October 6, 2014, five days after it was due on October 1,
2014. Because it was late, Grove Street imposed a $25-late-
fee, in accordance with Section B.1 [3] of the lease agreement.
However, on October 10, 2014, Grove Street waived the late-
fee as a one-time courtesy and asked her to come into the
office to sign the lease renewal paperwork.

When Plaintiff did not respond, Grove Street sent another
letter on October 14th, reminding Plaintiff that her November
rent would increase to $565 per month plus an additional
$50 per month because she did not have a current lease. The
letter also notified Plaintiff that her lease would terminate on
November 30, 2014, unless she responded.

On October 21, 2014, Grove Street sent a letter reiterating
that Plaintiff's rent would increase as of November 1, 2014,
and that she needed to vacate her apartment by November 30,
2014. Grove Street sent another reminder letter dated October

30, 2014, regarding Plaintiff's need to quit the premises by November 30th.

November 30, 2014, came and went, and Plaintiff remained in her apartment.

On December 4, 2014, Grove Street commenced an eviction proceeding in Rochester City Court. The parties appeared in court for a hearing on December 23, 2014. Plaintiff stated she was willing to pay the increased rental fee of $565 per month and had only proceeded to the eviction proceeding because she "want[s] [Defendants] to be responsible for making repairs." Defs' SOF ¶ 21 (quotation and citation omitted). She said, "I don't have a problem paying what they're asking.... I just need to have somebody to vent— to hear me. I wanted Your Honor to hear my complaints." Id. (quotation and citation omitted). Plaintiff did not make allegations of discrimination during the eviction proceeding. Id. (citing Defs' Ex. M (Docket No. 60-16) ). The City Court judge was able to assist the parties in reaching a resolution of the eviction proceeding whereby Plaintiff's lease was extended, from January 1, 2015, to October 31, 2015, at the rate of $565 per month. Id. ¶¶ 23-24 (citations omitted).

On September 17, 2015, Grove Street sent Plaintiff a letter informing her that it would not be renewing her lease and that she was required to vacate her apartment by October 31, 2015. Id. ¶ 25 (citations omitted).

October 31, 2015, passed without Plaintiff vacating her rental unit.

On November 5, 2015, Plaintiff visited Grove Street's office and requested that it accept her November rent payment in the amount of $565. Tamra James ("James"), Senior Vice President of Grove Street, advised Plaintiff that Grove Street would not accept the rent because a notice of non-renewal had already been sent to her, and because her lease had terminated as of October 31, 2015. Defs' SOF ¶ 30-31. Because Plaintiff had not vacated her apartment, Grove Street considered her to be a holdover tenant, subject to eviction under Section C.5, see n. 2, supra, of the rental agreement. Defs' SOF ¶ 31.

Grove Street commenced an eviction proceeding on November 10, 2015, in Monroe County Court. At a hearing on November 24, 2015, the County Court judge issued a judgment and warrant of eviction for holdover, ordering Plaintiff to vacate her apartment by December 3, 2015. Plaintiff complied with this order.

## III. Procedural Status

**\*3**  On June 25, 2018, the Court issued a Decision and Order (Docket No. 47) disposing of Defendants' Motion for Judgment on the Pleadings as follows: the unlawful eviction claim under N.Y. Real Prop. Acts. Law § 853 was dismissed with prejudice; any claims seeking damages under FHA Section 3604(a) or Section 3617 for injuries that post-dated the state court judgment allowing Defendants to evict her were dismissed with prejudice; the remaining claims under FHA Section 3604(a) and Section 3671 were allowed to proceed because they were not barred by the Rooker-Feldman doctrine or res judicata; the claims under NYSHRL survived to the extent that the FHA claims did; and any claims under 18 U.S.C. § 1001 were dismissed with prejudice.

The matter was referred again to Magistrate Judge Jonathan W. Feldman for completion of discovery. On August 31, 2018, Judge Feldman ordered that all motions for summary judgment were due by November 8, 2018. Docket No. 58.

On November 8, 2018, Defendants filed their Motion for Summary Judgment (Docket No. 60). Plaintiff filed a Declaration (Docket No. 62) and her own Motion for Summary Judgment (Docket Nos. 63 & 64). Defendants filed their Reply/Response (Docket No. 67) on January 7, 2019. Plaintiff filed a Response (Docket No. 68), Declaration (Docket No. 69), and Continuation of Exhibits (Docket No. 71). The summary judgment motion was submitted without oral argument on January 24, 2019. Docket No. 72.

## IV. Rule 56 Standard

Rule 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. When considering a motion for summary judgment, the court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 62 of 212

Byrd v. KTB Capital LLC, Not Reported in Fed. Supp. (2019)

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252 (emphasis supplied). To defeat summary judgment, therefore, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and she "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted). At the summary judgment stage, the nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998); accord Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (holding that district court did not err in granting defendants' motion for summary judgment on the basis that the plaintiff's "testimony—which was largely unsubstantiated by any other direct evidence —was 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint") (quotation omitted).

## V. Plaintiff's Summary Judgment Motion

### A. Plaintiff's Motion Is Untimely

**\*4** Pursuant to Magistrate Judge Feldman's Order dated August 31, 2018 (Docket No. 58), dispositive motions were due by November 8, 2018. However, Plaintiff filed her motion for summary judgment on December 6, 2018, nearly a month late. As Defendants point out, Plaintiff presented no reason for her tardy filing; nor did she seek a modification of the scheduling order or an extension of time in which to file her motion. Accordingly, the Court finds that dismissal of her motion as untimely is warranted. See, e.g., Bailey-Lynch v. Prot. One Alarm Monitoring, Inc., No. 02-CV-0615E(SC), 2005 WL 1334870, at \*3 (W.D.N.Y. June 6, 2005) (finding pro se plaintiff's motion untimely where all dispositive motions had to be filed by January 10, 2005, pursuant to scheduling order, and plaintiff's motion was filed on January 12, 2005); NAS Elecs., Inc. v. Transtech Elecs. Pte Ltd., 262 F. Supp.2d 134, 150 (S.D.N.Y. 2003) (holding that, where the plaintiff's motion for summary judgment was filed a month late, "[t]he failure to abide by the [c]ourt's scheduling order without any showing of good cause is sufficient grounds to deny the ... motion").

### B. Plaintiff's Motion Improperly Attempts to Amend Her Complaint

Even if the Court were to find Plaintiff's motion timely, it improperly raises new claims not presented in any previous filing. As Defendants point out, the claims to be adjudicated in this case were clarified by the Court in its Decision and Order dated August 31, 2018. Specifically, the claims under FHA Sections 3604(a) and 3617 and the NYSHRL claims survived, while the remainder of Plaintiff's claims were dismissed with prejudice. In her motion papers, however, Plaintiff refers to new statutory provisions such as 42 U.S.C. § 3631, a provision of the FHA relating to criminal violations and penalties; 42 U.S.C. § 3614, a provision of the FHA dealing with enforcement actions by the United States Attorney General; and New York Real Property Law § 235-B, the warranty of habitability provision.

It is clearly improper for a litigant to assert new claims for the first time at the summary judgment stage. E.g., Sec. & Exch. Comm'n v. Yorkville Advisors, LLC, 305 F. Supp.3d 486, 531 (S.D.N.Y. 2018) (holding that plaintiff "cannot now amend their complaint merely by raising new facts or theories in their briefs") (citing Alali v. DeBara, No. 07 Civ. 2916(CS), 2008 WL 4700431, at \*3 n.6 (S.D.N.Y. Oct. 24, 2008) ) (refusing to "consider these [new] allegations in deciding this motion because it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment"); Kearney v. Cty. of Rockland, 373 F. Supp.2d 434, 440–41 (S.D.N.Y 2005) (plaintiff alleged, in opposition brief to summary judgment motion, a Title VII hostile work environment claim for the first time; district court refused to consider Title VII claim because nothing in complaint and EEOC charge put defendants on notice of the new allegation). To the extent Plaintiff purports to assert any new claims, the Court shall not consider them.

### C. Plaintiff's Motion Is Procedurally Deficient

When confronted with a properly supported motion for summary judgment, Rule 56 requires the non-movant to produce evidence in admissible form. Fed. R. Civ. P. 56(c). Local Rule of Civil Procedure for the Western District of New York ("W.D.N.Y. L.R.") 56 further provides that

> [t]he papers opposing a motion for summary judgment shall include a response to each numbered paragraph

Byrd v. KTB Capital LLC, Not Reported in Fed. Supp. (2019)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 63 of 212

in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

W.D.N.Y. L.R. 56(a)(2).

**\*5** Plaintiff submitted a pleading captioned "Re: Buttal Statement of Pro Se Facts" (Docket No. 64-2) that purports to be a statement of facts for purposes of W.D.N.Y. L.R. 56(a)(2). However, as Defendants observe, Plaintiff failed to address nearly all of Defendants' factual averments, which were supported by evidence in admissible form. Rather, Plaintiff specifically addressed only three of the 56 paragraphs in Defendants' Statement of Material Facts, and then only with conclusory or self-serving allegations.

As Plaintiff is a frequent litigator in this Court, she presumably has been made aware of how to oppose a summary judgment motion, including the requirement that the non-movant must specifically respond to the moving party's statement of facts. Indeed, in one of Plaintiff's other cases, this Court recently held that the defendants' statement of facts "must be deemed admitted" because Plaintiff failed to comply with W.D.N.Y. L.R. 56's requirements. Byrd v. NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D., No. 6:14-CV-06470 (MAT), 2018 WL 6119777, at \*3 (W.D.N.Y. Nov. 22, 2018).

Because Plaintiff failed to specifically respond to or otherwise address Defendants' Statement of Material Facts, she has admitted any uncontested facts as true. See id.; see also, e.g., Hamilton v. Robinson, No. 6:12-cv-06449(MAT), 2018 WL 4334769, at \*2 (W.D.N.Y. Sep. 11, 2018) (holding that to the extent the pro se "failed to offer a declarative statement of fact in a correspondingly numbered paragraph in opposition to each factual averment in [the defendant]'s Statement of Material Facts Not in Dispute," "such factual averments [were

deemed] admitted"); Davis v. Castleberry, 364 F. Supp.2d 319, 322 (W.D.N.Y. 2005) (same).

## VI. Defendants' Summary Judgment Motion

### A. Plaintiff's FHA Claims Fail as a Matter of Law

#### 1. The FHA and the Three-Step Burden-Shifting Framework

The FHA provides that "it shall be unlawful ... to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race[,]" 42 U.S.C. § 3604(b), or handicap. Id. § 3604(f). "An FHA violation may be established on a theory of disparate impact or one of disparate treatment." LeBlanc–Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995). Plaintiff's claims in this action are based on a theory of disparate treatment.

Housing discrimination claims are evaluated under the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). E.g., Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (citing Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1038 (2d Cir. 1979) ). The elements of a prima facie case of housing discrimination are as follows: (1) the plaintiff is a member of a protected class; (2) the plaintiff sought and was qualified to rent or purchase the housing; (3) the defendant denied the plaintiff the opportunity to rent or purchase the housing; and (4) the housing opportunity remained available to other renters or purchasers." Mitchell, 350 F.3d at 47. "[O]nce a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." Mitchell, 350 F.3d at 47 (citing McDonnell Douglas Corp., 411 U.S. at 802–03).

"If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." Id. (citing Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) ). Importantly, "although the McDonnell Douglas presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff.' " St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); emphasis and brackets in original).

### 2. The Failure-to-Renew-Lease Claim Fails

**\*6** Plaintiff alleges that she wanted to renew her lease and attempted to make the necessary payment, but Defendants declined to either renew her lease agreement or accept her payment and then commenced an ejectment proceeding against her. Plaintiff asserts that Defendants intended to discriminate against her based on her race and disabled status.

The Courts assumes arguendo that Plaintiff has made out a prima facie case; she alleges that she is African-American and suffers from mental and physical disabilities; she appears to have been qualified to rent the unit in question insofar as she did so for several years; Grove Street declined to renew her lease; and the unit she had inhabited remained available to rent. See, e.g., Frazier v. Rominger, 27 F.3d 828, 831 (2d Cir. 1994) ("There is no dispute that the plaintiffs established a prima facie case at trial, namely, that [the plaintiff] is African–American, that the couple was qualified for the housing, that the couple did not get the housing, and finally that the housing remained open.") (citing 42 U.S.C. § 3604(a); other citation omitted).

Defendants have fulfilled their burden of production by coming forward with ample evidence demonstrating that they had legitimate, non-discriminatory reasons for declining to renew her lease. Grove Street has submitted declarations from its Senior Vice President Tamra James ("James") and former Assistant Property Manager Briana Mendez ("Mendez") detailing Plaintiff's lack of cooperation during each lease-renewal process, obdurate refusal to pay modest rent increases; bellicose and abusive behavior towards staff, which escalated in the period between the first eviction proceeding and September 2015; and disruption of other tenants' enjoyment of their apartments. See Declaration of Tamra James ("James Decl.") (Docket No. 60-25) ¶¶ 27-30; Declaration of Briana Mendez ("Mendez Decl.") (Docket No. 60-26) ¶¶ 6-20. For instance, Mendez recounts that because Plaintiff paid her rent in cash, she made in-person visits to Grove Street's offices to remit her rent

payment. Mendez Decl. ¶ 7. Mendez recalls that Plaintiff "[o]ften ... would make extreme scenes in the office," engage in "belligerent behavior" and declare that "Grove Street was 'against' her." Id. Mendez explains that "[i]t was impossible to have a conversation with [Plaintiff] during these in-person interactions because she refused to listen to any of the office workers...." Id. On one visit, Plaintiff started yelling and waving her cane at the employees in the office, almost hitting Mendez in the head. Id. ¶ 8.

James corroborates Mendez's observations about Plaintiff's belligerent and unreasonable behavior. See James Decl. ¶¶ 28-29. James recalls that on April 6, 2015, when Plaintiff came to the office to pay a late fee, she became "verbally abusive, [started] swearing, and disrupted the whole office." Id. ¶ 28. In addition, Plaintiff raised her cane to eye level, which James personally perceived as threatening. Id. James explains that during 2015, the tenant who occupied the unit below Plaintiff's apartment complained to her and other staff members that Plaintiff "was loud and yelled in her apartment, to a point where it disrupted his enjoyment of his own unit." James Decl. ¶ 30. When it came time for this tenant to renew his lease at the end of 2015, James states, he "conditioned his renewal on [Plaintiff]'s eviction (which was then pending)." Id. & Defs' Ex. U (Docket No. 60-24) (note from tenant).

**\*7** Plaintiff has not fulfilled her burden of persuading the Court that Defendants' reasons are false or in any way pretextual. At this stage in the McDonnell-Douglas framework, the litigant "may satisfy [her] ultimate burden "either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant]'s proffered explanation is unworthy of credence." Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (citing Burdine, 450 U.S. at 256). In order to defeat a well-supported summary judgment motion, "conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)." Id. at 998 (citing Zahorik v. Cornell Univ., 729 F.2d 85, 94 (2d Cir. 1984); Mason v. Continental Illinois Nat. Bank, 704 F.2d 361, 366 (7th Cir. 1983); other citations omitted).

In opposition to Defendants' motion, Plaintiff offers only her personal belief that Defendants were "out to get her" and that they discriminated and retaliated against her in essentially every interaction she had with them. These conclusory and unsupported assertions are belied by Grove Street's repeated

Case 6:23-cv-00086-MAD-ML   Document 7   Filed 04/07/23   Page 65 of 212

Byrd v. KTB Capital LLC, Not Reported in Fed. Supp. (2019)

efforts to accommodate her demands. For instance, in the fall of 2013, when Plaintiff refused a $10-per-month rent increase and said she wanted to continue to rent the apartment at the same rate ($545 per month), Grove Street agreed. See Defs' SOF ¶¶ 5-6 & Defs' Ex. E (Docket No. 60-8). The following year, when Grove Street proposed to renew her lease at $565 per month, Plaintiff again refused. While Grove Street did not acquiesce this time in Plaintiff's demand to maintain her rent at $545 per month, the Court notes that the proposed rent of $565 was still below the fair market value of Plaintiff's unit, $575 per month. See Defs' SOF ¶¶ 7, 9 & Defs' Ex. H (Docket No. 60-11). And, Grove Street attempted to negotiate with Plaintiff over the next month to arrive at mutually agreeable lease terms, but those efforts were unsuccessful. During the ensuing eviction proceeding, Plaintiff admitted in open court that she actually did not object to the proposed rental increase; she just wanted to have the chance to "vent" to the judge. Although Grove Street certainly was legally entitled to a judgment and warrant of eviction at that time, it nevertheless agreed to allow Plaintiff to rent her apartment for another year.

Where, as here, the plaintiff "has failed to show that there is evidence that would permit a rational factfinder to infer that the [defendant]'s proffered rationale is pretext, summary judgment dismissing the claim is appropriate[.]" Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (citing Smith v. American Express Co., 853 F.2d 151, 154–55 (2d Cir. 1988) (affirming summary judgment in light of plaintiff's failure to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext) ); see also Waldo v. New York City Health & Hosps. Corp., No. 06CV2614(SLT)(LB), 2009 WL 2777003, at *5 (E.D.N.Y. Aug. 31, 2009) (discrimination plaintiff's unsupported assertion that the "motive" behind his placement on medical leave was not "intended for safety reason[s]" but rather to "hurt the plaintiff" and to "terminate [him] permanently" were "conclusory allegations" that could not defeat the defendants' summary judgment motion) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (dismissing discrimination claim where employer showed valid, unrefuted reasons for plaintiff's termination and plaintiff offered nothing but conclusory allegations regarding defendant's actions); other citations omitted).

### 3. The Failure-to-Repair Claim Fails

**\*8** Plaintiff also accuses Defendants of failing to make necessary repairs that she had requested. She argues that this represents discrimination based on her race and disabled status. As noted above, the FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of ... rental of a dwelling, or in the provisions of services or facilities in connection therewith, because of race," 42 U.S.C. § 3604(b), or "because of a handicap," 42 U.S.C. § 3604(f)(2)(A). Title 42 U.S.C., § 3604(b) and (f) prohibit, inter alia, "[f]ailing or delaying maintenance or repairs of sale or rental dwellings" on the basis of race or handicap. 24 C.F.R. § 100.65(b)(2).

As an initial matter, the Court notes that Defendants have submitted detailed documentation regarding all of the service and repair requests by Plaintiff that they have in their records, as well as the timing and substance of their responses to those requests. See Defs' SOF ¶ 41 (citing James Decl. ¶¶ 43-45 & Defs' Ex. R (Docket No. 60-21) ). Defendants point out that Plaintiff admitted, at her deposition, that maintenance personnel came and fixed her refrigerator, windows and window screens, bathroom sink, hall lights, and garbage disposal. See id. ¶ 43 (citing Excerpts from Deposition of Vickie D. Byrd ("Byrd Dep.") (Docket No. 60-6) at 16-18, 19, 21, 22, 26).

The only repairs and improvements that Plaintiff asserts were not made are (1) repairs to her kitchen cabinets; and (2) installation of a peephole in her front door. Defendants admit that these repairs were not made. The Court therefore will assume arguendo that Plaintiff has made out a prima facie case under FHA Section 3604(b) and (f) regarding these two items.

With regard to both the kitchen cabinets and the peephole, Defendants have offered a legitimate, nondiscriminatory reason for not putting in a service call—namely, that they never received a request from Plaintiff to make such repairs. See Defs' SOF ¶ 44 (citing James Decl. ¶ 46). Plaintiff has not met her burden by showing that this was merely a pretext and that the real reason for not fixing her cabinets and installing the peephole was discriminatory. Significantly, when questioned at her deposition as to why she believed Defendants ignored her repair requests, Plaintiff testified that

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 66 of 212

Byrd v. KTB Capital LLC, Not Reported in Fed. Supp. (2019)

she had " 'no idea.' " Defs' SOF ¶ 46 (quoting Byrd Dep. at 28 (Q: Why do you think Grove Street and Barbara Manor ignored your requests? A: I have no idea. I have no idea.") ); see also id. (quoting Byrd Dep. at 30 (Q: I asked you why you thought they ignored your request, and your answer was you have no idea; correct? A: Well, I want to say they ignored my request because–I have no idea. Maybe they wanted me to do them myself.") ). Plaintiff thus concedes that she has no direct or circumstantial evidence of any discriminatory animus on Defendants' part in connection with their alleged failure to make repairs to Plaintiff's apartment.

### 4. The Retaliation Claim Fails

Plaintiff asserts that Grove Street, in commencing the second eviction proceeding against her, sought to retaliate against her for having filed a discrimination complaint with the NYSDHR and "winning" the first eviction proceeding.

Section 3617 of the FHA prohibits retaliation for exercising rights under the FHA. See 42 U.S.C. § 3617 (making it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [, inter alia, 42 U.S.C. §§ 3604, 3605, and 3606]"). To state a claim for retaliation under the FHA, a plaintiff must allege that (1) she was engaged in protected activity, (2) the defendant was aware of that activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54 (2d Cir. 2002). "Protected activity under the FHA refers to 'action taken to protest or oppose statutorily prohibited discrimination.' " Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II, 457 F. Supp.2d 126, 131 (E.D.N.Y. 2006) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) ).

**\*9**  Assuming arguendo that Plaintiff has established the first three elements of a prima facie case of retaliation under the FHA in connection with her filing of the NYSDHR complaint, she cannot make out the fourth element—that is, the requisite "causal connection" between the protected activity (the filing of a discrimination complaint with the NYSDHR) and the adverse action (the eviction proceeding in Monroe County Court). It is true that, "[i]n this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.' " Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (citation and quotation marks omitted in original; alteration in original; emphasis supplied) ). Here, however, the adverse action preceded the protected activity. Therefore, Plaintiff cannot demonstrate a causal connection between the two events.

With regard to her claim that Defendants retaliated against her after she "won" the 2014 eviction proceeding, Defendants point out that Plaintiff did not "win" anything insofar as the City Court judge made no findings in her favor. Rather, with the judge's assistance, the parties reached a settlement whereby Plaintiff agreed to the rent increase originally proposed by Grove Street, and Grove Street agreed to extend her lease for a period of time. Even disregarding this fact, Plaintiff has failed to make out a prima facie retaliation claim because her opposition to Grove Street's eviction petition in December 2014, does not qualify as protected activity. The Court has reviewed transcript of the proceeding in City Court, which reveals that Plaintiff never asserted discrimination under the FHA or NYSHRL. See Defs' Ex. M (Docket No. 60-16). Rather, Plaintiff informed the judge that she refused to pay the requested rent increase—even though "[m]oney was never an issue," id. at 15—and proceeded to court simply because she wanted someone to "vent" to. Id. at 11.

Without complaints about actions prohibited by the FHA, there is no protected activity. Fincher v. S. Bend Hous. Auth., 612 F. Supp.2d 1009, 1024 (N.D. Ind. 2009) (dismissing FHA retaliation claim due to lack of evidence showing plaintiff was engaged in protected activity; plaintiff's filing of a previous lawsuit against the housing authority alleging that it failed to comply with federal rules issued by the United States Department of Housing and Urban Development pertaining to due process hearing rights of tenants but there was "no suggestion" that plaintiff complained about discrimination or tried to enforce any other right that could be construed as protected by the FHA).

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 67 of 212

Byrd v. KTB Capital LLC, Not Reported in Fed. Supp. (2019)

To the extent Plaintiff argues that she was protesting discrimination because she told the City Court judge that she "wanted [Defendants] to be responsible for making repairs," Defs' Ex. M at 11, and she believes that Defendants' alleged failure to make repairs was discriminatory, the Court finds this unavailing. As the City Court judge pointed out at the hearing, Defendants had informed her that they were willing to make the repairs that she requested in the marked-up copy of the lease she sent back to them—provided that she signed the lease and agreed to the rent increase, which is what she ultimately agreed to do. Furthermore, as discussed elsewhere in this Decision and Order, there is no evidence that Defendants failed to make any repairs of which they had been made aware. Likewise, there is no evidence that discriminatory intent was behind Defendants' failure to repair the kitchen cabinets and install a peephole. Rather, the evidence establishes that Defendants simply were not aware of these issues because Plaintiff had not notified Defendants about them.

**\*10** Even assuming that Plaintiff's statements in court during the 2014 eviction proceeding counted as protected activity —which the Court finds not to be the case—Plaintiff cannot show an adverse action by Defendants in response. As noted above, Defendants agreed to extend her lease until October 31, 2015, and to make all of the repairs with which she had annotated her lease agreement.

In sum, Plaintiff cannot make out a prima facie claim of retaliation with regard to either of the allegedly protected activities in which she engaged. Accordingly, dismissal of her retaliation claims as a matter of law is warranted.

**VII. The State Law Claims Fail**

Because Plaintiff is pro se, the Court liberally construed her First Amended Complaint as raising the State law claims under the NYSHRL, codified at ⚑ N.Y. Exec. Law § 290 et seq., that she presented in her verified complaint to the NYSDHR. Subject to exceptions not relevant here, the NYSHRL contains provisions prohibiting housing discrimination similar to those in the FHA. See ⚑ N.Y. Exec. Law § 296(5)(a)(2). [4] Claims under the FHA and ⚑ N.Y. Exec. Law § 296 are "evaluated under the same framework." ⚑ Olsen v. Stark Homes, Inc., 759 F.3d 140, 153 (2d Cir. 2014) (citation and quotation marks omitted). As discussed above, Plaintiff's claims under the FHA fail as a matter of law. As the NYSHRL claims are also evaluated under the same McDonnell Douglas framework, they fail as a matter of law for the identical reasons the FHA claims do. Defendants therefore are entitled to summary judgment as to the NYSHRL claims. E.g., ⚑ Francis v. Kings Park Manor, Inc., 91 F. Supp.3d 420, 434 (E.D.N.Y. 2015); see also Haber v. ASN 50th St. LLC, 847 F. Supp.2d 578, 588 (S.D.N.Y. 2012) (because plaintiff's "discriminatory treatment claims under the FHA fail under the McDonnell Douglas test," the claims under the NYSHRL "must fail as well").

**VIII. Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 60) is granted in its entirety, and Plaintiff's Motion for Summary Judgment (Docket No. 63) is denied in its entirety. The First Amended Complaint (Docket No. 33) is dismissed with prejudice. In light of the Court's dismissal of Plaintiff's First Amended Complaint, her Motion for Punitive Damages (Docket No. 54) is denied as moot. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 652529

---

**Footnotes**

1    Defendants indicate in their Answer to the First Amended Complaint (Docket No. 34) that the correct legal name of the entity identified by Plaintiff in the caption as "Grove Street Management Corporation" is KTB Capital LLC d/b/a Grove Street Management. In addition, they state that the correct legal name of the entity identified as "Barbara Manor LLC" is Barbara Manor Apartments LLC. The Clerk of Court has been directed to amend the caption accordingly.

**Byrd v. KTB Capital LLC, Not Reported in Fed. Supp. (2019)**

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 68 of 212

2      Section C.5 provides as follows: "In the event you do not vacate the Apartment at the end of the term, we may use legal process to remove you. Or, if we accept rent for any period after the end of the Lease term, then you shall be deemed a holdover Resident and your tenancy shall be month-to-month, with monthly rent at the current market rate plus an additional monthly fee of Fifty Dollars ($50.00). Either you are [sic] we can terminate the month-to-month lease as of the last day of any calendar month by giving at least one calendar month's written notice to the other party." Defs' SOF ¶ 4 (citations omitted).

3      As pertinent here, Section B.1 provides as follows: "If you pay the monthly rent installment after the end of the 5th day of the month, but before the end of the 10th day of the month, you will be obligated to pay as additional rent a Late Fee in the amount of Twenty Five Dollars ($25.00)...." Defs' SOF ¶ 4 (citations omitted).

4      "It shall be an unlawful discriminatory practice for the owner, ... or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, ... or any agent or employee thereof: (2) To discriminate against any person because of race ... [or] disability ... in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith." N.Y. Exec. Law § 296(5)(a)(2).

---

**End of Document**                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 69 of 212

2017 WL 6021838
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-00510 (BKS/TWD)
|
Signed 10/26/2017
|
Filed 10/27/2017

**Attorneys and Law Firms**

KIPLIND L. CRUZ, 5825 Townline Road, Cincinnatus, NY 13040, pro se.

### ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** This matter has been referred to the undersigned by the Hon. Brenda K. Sannes, U.S. District Judge, for a report and recommendation on the initial review of *pro se* Petitioner/ Plaintiff (hereinafter "Plaintiff") Kipland L. Cruz's motions to amend his complaint and for a temporary restraining order ("TRO") and preliminary injunction. (Dkt. Nos. 8, 9 and 11.)

The Court also has before it the initial review under 28 U.S.C. § 1915(e) of Plaintiff's original filings (Dkt. Nos. 1, 1-1, and 1-2.) For the reasons explained herein, the Court recommends that (1) none of the state court proceedings Plaintiff has described in his removal notice and exhibits be deemed to have been properly removed to, or to be subject to removal to, federal district court [1]; (2) his petition for a writ of habeas corpus be dismissed with prejudice on initial review; (3) his motion to amend be denied; (4) civil rights complaint be dismissed on initial review; and (5) his motion for a temporary restraining order and preliminary injunction be denied as moot or, in the alternative, on the merits.

## I. BACKGROUND

### A. Plaintiff's Original Filings
On May 9, 2017, Plaintiff Kipland L. Cruz, individually and on behalf of his two minor children, submitted for filing by the Clerk a notice of removal to federal court, pursuant to 28 U.S.C. § 1443, and with it a habeas corpus petition under 18 U.S.C. §§ 242, 1512(b)(3), and 1513(b). [2] The various state court proceedings identified by Plaintiff, and out of which his habeas corpus petition arises, involve unpaid child support, child custody, and visitation disputes between Plaintiff and his estranged wife Nicole A. Cruz. (*See generally* Dkt. Nos. 1; 1-1 at 1-3. [3] )

Plaintiff also filed a civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. Nos. 1 and 1-2.) Plaintiff named nearly seventy defendants whom he presumably believes to have been involved in matters related, either directly or indirectly, to the subject matter of the state court proceedings, reports made to the New York State Central Register of Child Abuse and Maltreatment ("SCR"), or his former employment. (*See generally* Dkt. No. 1-2.) The complaint contains factual allegations similar to those in Plaintiff's removal/habeas corpus papers. [4]

**\*2** In addition to his federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff has asserted claims for unfair employment practices and discrimination; claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. §§ 245 (federally protected activities), § 2258 (sexual exploitation of children), and 18 U.S.C. § 3509 (child victims and witnesses rights); and Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 101-105, *et seq.* [5] (Dkt. No. 1-2 at 16.) Plaintiff's complaint seeks money damages, along with declaratory and injunctive relief. *Id.* at 29-31.

### B. Stay Order
In May of this year, the Clerk sent Plaintiff's notice of removal with habeas petition and civil rights complaint to the Court for initial review pursuant to 28 U.S.C. § 1915(e). The Court, noting that Plaintiff, who is not an attorney, was impermissibly seeking to represent both his own and the interests of his two minor children in the case, issued an Order finding that initial review was premature and staying the action for ninety days in order to give Plaintiff time to retain counsel to represent the interests of his children. [6]

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 70 of 212

Cruz v. New York, Not Reported in Fed. Supp. (2017)

(Dkt. No. 6 at 6.) The Order advised Plaintiff if the Court did not receive notice by September 11, 2017, that Plaintiff had retained counsel with regard to all claims being pursued on behalf of his minor children, moved for appointment of counsel, or filed an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children, it would issue a Report-Recommendation to the assigned District Court judge recommending dismissal of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint without prejudice. *Id.*

### C. Plaintiff's Failure to Comply with the Court's Stay Order

Plaintiff has failed to comply with the Court's Order regarding counsel for his minor children. (Dkt. No. 6.) He has, however, filed motions to amend and for a TRO and preliminary injunction in which he has omitted his minor children from the caption and has identified himself as "Man-prosecutor." (Dkt. Nos. 8-9, 11.) Therefore, the Court concludes that Plaintiff, whom the Court notes has requested that he be called by his natural name, Beau Jangles, [7] intends to proceed in federal district court solely on his own behalf. As such, the Court will conduct its initial review of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint under 28 U.S.C. § 1915(e), in conjunction with its review of Plaintiff's motions to amend and for a TRO and preliminary injunction, with the understanding that Plaintiff is appearing solely on his own behalf. It is the express intention of the Court that the recommendations made by it with respect to claims that may relate in some fashion to his minor children have no affect whatsoever on the minor children's right to have those claims properly pursued by them, or by counsel on their behalf, in any other proceeding.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** 28 U.S.C. § 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis

either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 71 of 212

they suggest. 🚩 *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."

🚩 *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." 🚩 *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. NOTICE OF REMOVAL AND HABEAS CORPUS PETITION

**\*4**  On May 9, 2017, Plaintiff submitted to the Clerk a petition which he entitled:

> 5 Day Notice: Petition for Writ of Habeas Corpus in United States District Court pursuant of 🚩 18 USC 1512(b)(3) & 18 U.S.C. § 1513(b)[;] 🚩 18 USC § 242[;] Defendants Federal Removal from State of New York, County of Cortland, Chenango, Onondaga, New York State[;] Cortland County Combined Court to US District Court pursuant to 28 U.S.C. § 1443[;] State of New York, County Court Case # 9788 Docket#v-01361/1362 16/16A file # 9788 docket #v01361-16/17B file #9788 docket#v-1361/1362 16/17F file #9788 docket # v-1361/1362 16/17F and any other unlawfully ordered hearings of cases Federal Removal pursuant of 28 U.S.C. § 1443 child abuse cover-up U.S. Code § 241 For witness and victim Retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of Justice, Unlawful Activities, slander, perjury, false

> Statements, violations and denial of movants Constitutional I, V, VI & XIV Amendment Rights's, privileges, and immunities, Civil Human Universal, International & Fundamental

(Dkt. No. 1 at 1-2.)

Plaintiff has named as Respondents in his removal notice and petition for a writ of habeas corpus the State of New York, Cortland County, Chenango County, Onondaga County, Hon. William Ames, Hon. Julie Campbell, Chenango and Cortland County Departments of Social Services, CPS/DSS, Court appointed Law Guardian Ad Litem Natalie Miner, Nicole Cruz, and S. Francis Williams, attorney for Nicole Cruz. (Dkt. No. 1 at 1.) Plaintiff has identified his grounds for removal to federal district court under 28 U.S.C. § 1443 and for a writ of habeas corpus as: (1) deprivation of rights under color of law in violation of criminal statute 🚩 18 USC § 242; (2) witness and victim retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of justice, unlawful activities, slander, perjury, false statements in violation of criminal statutes 🚩 18 U.S.C. §§ 1512(b)(3) and 1513(b), the United States Constitution Amendments I, V, VI and XIV, and civil human, universal, international, and fundamental rights. *Id.* at 4.

### A. Plaintiff's Affidavit in Support of Removal and his Habeas Corpus Petition

In an affidavit submitted by Plaintiff in support of his notice of removal and petition for a writ of habeas corpus, he describes a child support proceeding in Chenango County Family Court in which he planned to place a lien and judgment on real property of his estranged wife, Nicole Cruz, that had a pending sale during the spring and summer of 2016. (Dkt. Nos. 1 at 5-7; 1-1 at 1-4; 8-5 at 2.) Nicole Cruz owed Plaintiff back child support in the amount of $7,813.97. *Id.* In response, Nicole Cruz filed what Plaintiff claims to have been a fraudulent contempt proceeding against him claiming violation of her visitation rights with the couple's minor children. *(*Dkt. No. 1-1 at 5-8.)

According to Plaintiff, a hearing was held on August 10, 2016, behind closed doors with the Judge and counsel, after which

his attorney came out and told him that the Judge had made him an offer that he should accept. (Dkt. No. 1 at 11.)

**\*5** Plaintiff's employment with the New York State Education Department was terminated on September 19, 2016, and Plaintiff claims the termination was unlawful. (Dkt. No. 1 at 32.) Thereafter, the superintendent and administration at Unadilla Central School began to make false allegations against Plaintiff, his home was broken into and recordings of court hearings were stolen, and he was forced to move to Cayuga County. *Id.* at 33.

On October 7, 2016, Plaintiff was advised by his counsel that his former wife had no intention of continuing a relationship with his minor children, and the Judge was forcing the children to go with abusers. *Id.* at 34. On December 21, 2016, Plaintiff appeared for a custody hearing in Cortland County Family Court, planning to submit documentary evidence that would result in dismissal of the case. *Id.* at 37. Instead, the Judge denied Plaintiff's right to be heard and appointed a guardian ad litem for the minor children. (Dkt. No. 1 at 37.)

On January 3, 2017, Plaintiff realized everything was a conspiracy in which his counsel were members, and his minor children were being targeted by Chenango, Cortland, and Onondaga County, and the State of New York. *Id.* at 38. The same day he emailed his attorney, demanding that she recuse herself and informing her of his findings of fraud and malpractice. *Id.* at 39; Dkt. No. 1-1 at 24. In another email to his attorney the same day, Plaintiff stated that his children had been abused for five years. (Dkt. No. 1-1 at 24.)

Plaintiff received a January 9, 2017, letter from the Cortland County Department of Social Services informing him that a suspected child abuse or maltreatment report against him had been received by the SCR. (Dkt. Nos. 1 at 39; 1-1 at 27-28.) From that point forward, Plaintiff has constantly received summonses for preliminary conferences held by a clerk or county attorney in the Judge's chambers, with a woman named J. Kuhn impersonating Nicole Cruz at the hearings. *Id.* at 40.

On March 30, 2017, Plaintiff tried to serve a federal removal notice on Cortland County Family Court but was told he could not serve it because he had no case in the court. *Id.* at 41. On April 5, 2017, the Cortland County Family Court Judge dismissed all petitions. *Id.* Plaintiff claims retaliation against him and his children by the Cortland County Sheriff, Cortland County DSS/CPS, and the Cortland County Family

Court since he served removal papers. *Id.* at 43. According to Plaintiff, they have ignored his removal notice. *Id.*

**B. Removal**
Plaintiff seeks to remove Cortland County Family Court proceedings involving child support, custody, and visitation, which Plaintiff has stated are no longer be pending (*see* Dkt. No. 1 at 41), to federal district court pursuant to 28 U.S.C. § 1443, which provides that:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

> **(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

> **(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**\*6** 28 U.S.C. § 1443.

28 U.S.C. § 1446(a) provides that "a defendant ... shall file in the district court ... a notice of removal containing a short and plain statement of the grounds for removal, with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446. Plaintiff's notice of removal identifies two state court proceedings his petition for child support and Nicole Cruz's petition to hold Plaintiff in contempt for violating a visitation order. (Dkt. Nos. 1 at 5-6; 1-1 at 1-8.) Plaintiff has also submitted documentation regarding a custody/visitation proceeding commenced by Nicole Cruz in Cortland County Family Court, FF No. 9788, Dkt. No. V-01361/132-16/16A, for enforcement of a preliminary conference agreement reached on August 10, 2016, in connection with the proceeding referenced in the notice of removal. (Dkt. No. 1-1 at 35-42.)

1. No Action or Proceeding is Pending in State Court

Under the clear language of § 1443, a state court action must be pending in order for the provision to apply. *See, e.g., Nuccio v. Heyd,* 299 F.Supp. 939, 940 (E.D. La. 1969) (there

must exist either a civil action or criminal prosecution to invoke federal jurisdiction under § 1443; otherwise there is nothing to remove). Plaintiff has stated in his affidavit that the Cortland County Family Court Judge dismissed all state court petitions on April 5, 2017. (Dkt. No. 1 at 40.) Documentation submitted by Plaintiff shows that Nicole Cruz's petition in FF No. 9788 was dismissed by the Family Court Judge on April 5, 2017. (Dkt. No. 1-1 at 36-37.) Therefore, by Plaintiff's own admission, there is no federal removal jurisdiction under § 1443.

Furthermore, even if the child support proceeding against Nicole Cruz were still pending, as petitioner in that proceeding, Plaintiff lacks authority to remove the proceeding to federal district court under the applicable federal removal statutes. *See* 28 U.S.C. §§ 1441(a), (b); 1443(a); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (no section in the removal statutes provides for removal by a plaintiff).

## 2. The Court is Without Removal Jurisdiction under 28 U.S.C. § 1443

Even if Nicole Cruz's visitation contempt and custody/ visitation proceedings were presently pending in state court, Plaintiff has failed to show the state court proceedings are subject to removal under § 1443. [8] In *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), the Supreme Court concluded that the phrase " 'any law providing for ... equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *See also* *Chestnut v. People of State, N.Y.*, 370 F.2d 1, 3-4 (2d Cir. 1966) (only due process and equal protection claims which specifically involve racial equality can support a valid claim for removal under § 1443(1)).

**\*7** Plaintiff has not alleged the violation of his civil rights based on race as a ground for removal under § 1443, nor has he identified himself as a member of a racial minority. (*See generally* Dkt No. 1.) Furthermore, Plaintiff is identified in SCR records as "White." (Dkt. No. 8-10 at 7.) Therefore, the Court finds Plaintiff has failed to make a plausible showing that removal is available under § 1443(1).

Removal is likewise unavailable under § 1443(2). In *People of State of N.Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965), the Second Circuit described the phrase "color of authority" in § 1443(2) as "primarily aimed" at "acts of officers or quasi-officers," and concluded it was necessary that the party seeking removal not be "relying on a general constitutional guarantee but on a special statute or order telling him to act." *Id.* The Court determined that "[a] private person claiming the benefit of § 1443(2) can stand no better; he must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him." *Id.* Plaintiff has failed to point to any law directing or encouraging him to act in a certain manner with regard to his estranged wife's visitation contempt or custody/visitation proceedings which he seeks to remove to federal court.

The "refusal to act clause" of § 1443(2) is available "to state officers, and those acting with or for them including local and municipal officers." [9] *White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980); *see also* *Wells Fargo Bank, N.A. v. Stephens*, No. 3:14-cv-1982 (VLB), 2015 WL 6551782, at *3 (D. Conn. Oct. 29, 2015) [10] (citing *White*, 627 F.2d at 585). Plaintiff has not alleged facts plausibly showing that he is a state officer or that he was or is acting with or for state actors in connection with the proceedings on which he seeks removal.

## 3. The Domestic Relations Exception Would Divest the Court of Subject Matter Jurisdiction in Any Event

In *Ex Parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890), the Supreme Court held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State and not to the laws of the United States." A century later, in *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the Supreme Court reaffirmed what had become known as "the domestic relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees."

Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction. *See, e.g., Sobel v. Prudenti*, 25 F.Supp.3d 340 (E.D.N.Y. 2014) (federal district court without jurisdiction to hear child

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 74 of 212

Cruz v. New York, Not Reported in Fed. Supp. (2017)

support claims); ⚠ *Neustein v. Orbach*, 732 F.Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation ..."). Courts have relied on the domestic relations exception to dismiss complaints and petitions removed to federal court under 28 U.S.C. § 1443 for lack of subject matter jurisdiction on initial review under 🚩28 U.S.C. § 1915(e). *See, e.g., Steele v. Steele*, No. 1:12-cv-439 (KLL), 2012 WL 3061028 (S.D. Ohio July 3, 2012) (dismissal on initial review on removal dealing with dispute over child support and custody in state court domestic relations proceeding). It is clear that even if there were a pending state court proceeding subject to removal jurisdiction under 28 U.S.C. § 1443, the district court would be without subject matter over claims related to custody, child support, and visitation under the domestic relations exception. [11]

**\*8** Based upon the foregoing, the Court recommends that none of the state court proceedings Plaintiff has described in his removal notice or with respect to which he has submitted documentation be deemed to have been properly removed to, or to be subject to removal to federal district court.

### C. Habeas Corpus Petition

Plaintiff has filed his writ for a petition for habeas corpus under 🚩18 U.S.C. §§ 242, 🚩1512 (b)(3), and 1513(b). All three are criminal statutes. 🚩Section 242 is for criminal deprivation of rights under color of law. Section 1512(b)(3) is for hindering, delaying, or preventing communication to a law enforcement officer or federal judge relating to the possible commission of a federal offense or violation of conditions of probation, supervised release, parole, or release pending judicial proceedings. Section 1513(b) is for "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damages to the tangible property of another person, or threaten[ing] to do so, with the intent to retaliate against a person for (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in any official proceeding; or (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer." 18 U.S.C. § 1513.

None of the three criminal statutes provides a private right of action. *See Weinstein v. City of New York*, No. 13 Civ. 06301 (LGS), 2014 WL 2991000, at \*4 (S.D.N.Y. April 8, 2014) (collecting cases). Nor has the Court found any legal support for seeking a writ of habeas corpus under any of the criminal statutes. Furthermore, the Supreme Court long ago held that a habeas petition under 🚩28 U.S.C. § 2254 could not be used to collaterally attack a state decree awarding child custody.

🚩*Lehman v. Lycoming Co. Children's Services Agency*, 458 U.S. 502, 515-16, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at \*2 (N.D.N.Y. Feb. 27, 2017) ("It is well established that a petitioner for habeas relief pursuant to 🚩section 2254 is not an appropriate vehicle for challenging a child custody determination.") (citing *Davis v. Baldwin*, 594 Fed.Appx. 49, 50 (2d Cir. 2015)).

The Court, therefore, recommends that Plaintiff's petition for a writ of habeas corpus be dismissed with prejudice.

### IV. PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Plaintiff has filed a civil rights complaint under 🚩42 U.S.C. §§ 1983, 🚩1985, and 1986 with his notice of removal and habeas corpus petition. (Dkt. No. 1-2.) As noted above, the Court's initial review of Plaintiff's complaint presumes he is proceeding solely on his own behalf.

### A. Named Defendants in Plaintiff's Complaint, Including Parties added in Joinder and as Necessary Parties

Plaintiff's complaint names nearly seventy Defendants including those named in the caption and those identified as "required parties in joinder." (Dkt. No. 1-2 at 1-5.) Party Defendants named in the caption of Plaintiff's complaint include:

> Chenango, Cortland, Onondaga Counties, the State of New York & the following additional defendants in joinder: Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; Joseph

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 75 of 212

McBride, District Attorney; Steven M. Dunshee, Chenango County First Assistant District Attorney; Chenango County Public Defender; Sabrina Dier Public Defenders Office; James Taylor, Esq.; James H. Fertig, Esq., Court appointed Guardian ad Litem; Chenango County Sheriff's Office; Ernest R. Cutting, Sheriff; Joe Warren owner of Lakeside Rentals— landlord; Ben Bergman part owner of Jackson Bergman LLP; Alyssa Cogden, Jackson Bergman LLP; Hon. William Ames; Kristen Monroe, Commissioner Cortland County DDS; David K. Knickerbocker, Director of Administrative Services, Cortland County DDS; Cortland County CPS; Melissa Archer, CPS; Colin [CPS], Supervisor Cortland County Child Advocacy Center; Jane Doe, Cortland County; 2 Cortland County Officer John Does; S. Francis Williams, Esq.; Cincinnatus CSD— Board of Education; Thomas Durkot, Elementary Principal; Cathy Aitchison LCSW, Cincinnatus CSD; Carnitra White, County Director of Human Resources at Anne Arundel CSCU, City of Annapolis, State of Maryland; Nicole Cruz, Broward County, Davie, State of Florida.

Flores, Esq.; DCMOBOCES Board of Education Superintendent Doreen Rowe, Deputy Superintendent Kim Corcoran, District School Lunch Director, Connie Bambino, Asst. District School Lunch Director, Pam Rowe, School Lunch Cook; City of Norwich Fire Department, Terry Kuhn; Johanna Kuhn, City of Norwich Police Department; Chief Joseph Angelino; Sergeant John Doe; Norwich Central School District Board of Education President Joseph McBride, Vice-President Tom Sutton, and member Howie Sullivan; Gerrard O'Sullivan Superintendent; Karrie Stainbauer Director of Special Education; Nicole A. Cruz, Special Education Teacher; Christine Bienick, NYSUT President, Unadilla Valley Teacher Assoc.; Dr. Alfred Barnes; Unadilla Valley Central School District Board of Education President Kristen Romavicz, Vice-President Mark Davis, Vicky Gregory, Kim Murray, and Robert Mackey; Superintendent Mike Brown; Business Official Frank Johnson; Building Principal Chris Harper; Elementary Principal Sherri Houck; Elementary School Counselor; Chris Wilkinson, Labor Negotiations; and Mike Lyn, Regional President.

**\*9** (Dkt. No. 1-2 at 1-2.) The following Defendants have been joined by Plaintiff as necessary defendants:

(Dkt. No. 1-2 at 3-5.)

Brian J. Doliver, Second Ward Alderman; Detective John Fern; Sheila J. Poole, Acting Commissioner NYS Central Register OFCS; Sarah Simon, Regional Director of Child Welfare Services; Betty Osborne, Commissioner, Cathy Lavoli, Supervisor, Beth Beers, and CPS Patricia Luca, Chenango County DSS; Sarah Fitzpatrick, Esq., Chenango County DSS; Irene A.

Another group of defendants added in joinder include Cortland County Sheriff's Department; Hon. Julie Campbell, Cortland County Family Court; three Jane Doe Cortland County Family Court Clerks; and four John Doe officers. *Id.* at 6.

### B. Factual Allegations in the Complaint

The factual allegations in Plaintiff's complaint and his claims for relief arise in substantial part out of the child support, custody, and visitation disputes between the Plaintiff and Nicole Cruz. (*See generally* Dkt. No. 1-2.) Reference is also

made to both Nicole Cruz and the Plaintiff having been made the subject of reports of child abuse or maltreatment received by the SCR. *Id.* at 12; Dkt. No. 1-1 at 27-28. In addition, there are references in the complaint to the transfer and subsequent termination of Plaintiff's employment. (Dkt. No. 1-2 at 13-14.)

Plaintiff has made specific factual allegations against a mere fraction of the Defendants named by him in his original complaint. They include the following.

### 1. Defendants Nicole Cruz, Terry Kuhn, and Johanna Kuhn

Plaintiff alleges that beginning in June 2012, he and estranged wife Nicole were in the process of starting a business in the City of Norwich and were approved for loans from the City and Chamber of Commerce. (Dkt. No. 1-2 at 10-11.) Plaintiff claims that Terry Kuhn, acting out of power and jealousy, along with his wife Johanna Kuhn, forced Nicole to force Plaintiff from his home and to default on the loans and a business Plaintiff and Nicole were buying. *Id.* at 11. A short time later, Terry Kuhn, through the abuse of his power as a local firefighter, conspired with his friends at the Chenango County Sheriff's office and buddy Frank Revoir and conjured up baseless false statements about Plaintiff. *Id.* at 11-12. Terry Kuhn also allegedly has the Chenango County Sheriff's Department and the court in his pocket. *Id.* at 19.

**\*10** The alleged conspiracy caused a temporary order for protection to be issued against Plaintiff, who received no due process, not even a hearing. *Id.* at 12. Plaintiff was required to pick his children up at the police department for three years while one of the Kuhns was president of the Union, and he was harassed and discriminated against the entire time. *Id.* From December 2012 to the present, Nicole Cruz had three indicated reports of child abuse and two indicated reports for child maltreatment. *Id.* Copies were given to Plaintiff by Defendant Sheila Poole, Acting Commissioner of the New York State Office of Children and Family Services ("OCFS"). *Id.*

Plaintiff alleges that Nicole Cruz fled the State in July 2016 in the middle of a child abuse trial, owing Plaintiff over $8,000 in back child support since October 2015. *Id.* at 13. On August of 2016, Plaintiff learned that Nicole had moved to North Carolina. (Dkt. No. 1-2 at 13.) Plaintiff has also alleged:

18. Complainant(s) have been subjected to and have witnessed as well as fell subject to multiple crimes and actions committed by the defendants, including crimes committed and against minor children under the ages of 5 years old. The Complainants minor children were victims of repeated sexual abuse, mental and emotional abuse, and child maltreatment by N. Cruz an elementary Special Education teacher, abused the oldest Minor Child while on duty at work in the School, Johanna Kuhn, Terry Kuhn City of Norwich Paid Fireman, and from (sic) I been told the President of the Union for the Fireman and Police officers, see NYS Registry case # the defendants have committed multiple federal felonies and misdemeanor crimes and actions committed against the complainant.

19. The complainant alleges that the defendants Nicole A. Cruz, Johanna Kuhn and Terry Kuhn, recently have committed Multiple federal crimes including HUD Fraud, mail fraud, recent S. Francis Williams Esq., and Johanna posing as N. Cruz, (I have documentary evidence and eye witnesses to this crime False Impersonation in Cortland County Family Court), falsifying government documents, perjury libel in writing on court documents, Multiple at least 40 counts of False information and Hoaxes placed against the complainant, child abuse, child exploitation, public corruption, Unlawful transfer and Unlawful termination of the complainants tenure position with the NYSED, and conspiracy with 5 counties, 4 in the State of NY and 1 in the State of Maryland.

(Dkt. No. 1-2 at 14-16.)

Plaintiff further alleged that "Nicole Cruz appeared before Chenango County Court and Hon. Kevin M. Dowd in violation of a federal Felony owing the complainants over $8,000 in back non-paid child support, and also had fled the state in the middle of a child abuse custody trial, this abuse was repeated sexual abuse ..." *Id.* at 20.

### 2. Chenango County Sheriff's Department

Plaintiff alleges that members of the Chenango County Sheriff's Department conspired with Terry Kuhn to conjure up baseless false statements against Plaintiff. (Dkt. No. 1-2 at 11.) Plaintiff also alleges that Terry Kuhn has the Chenango County Sheriff's Department in his pocket. *Id.* at 19.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML   Document 7   Filed 04/07/23   Page 77 of 212

### 3. Hon. Kevin M. Dowd, New York State Supreme Court Justice, Chenango County

Plaintiff alleges that after purposefully postponing a custody trial between Plaintiff and Nicole Cruz for over a year, during which time Nicole fled the State, Judge Dowd held a "surprise" initial appearance "that apparently overruled the complaints (sic) due process mandated by the congressional act of CAPTA Act of 2010 and the Adam Walsh Act 2006." (Dkt. No. 1-2 at 13.) Plaintiff claims that he was deprived of the opportunity to be heard and call witnesses, and that Judge Dowd, who met with counsel behind closed doors for almost an hour, then told Plaintiff that Nicole had moved and explained an offer being made to Plaintiff. *Id.*

**\*11** Plaintiff also alleges that Judge Dowd had his brother-in-law and his assistant pay a staff member at the Public Defender's Office to impersonate a child care provider at a non-profit childcare center paid for by Plaintiff without financial assistance from his estranged wife. *Id.* at 19. In addition, Plaintiff contends that Judge Dowd's order, received by Plaintiff via email fifty-nine days after the hearing, was completely illegal and unconstitutional, and that Judge Dowd is in contempt and in violation of an act of Congress as well as international law and treaties. *Id.* at 20. Plaintiff claims that Judge Dowd's order is null and void under the Supremacy Clause, Cannon Law, and the Fourteenth Amendment, and that Judge Dowd became a witness and denied Plaintiff his rights under the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments continuously, and purposely, and engaged in a completely premeditated action with malice. (Dkt. No. 1-2 at 21.)

### 4. Hon. William Ames, Cortland County Family Court

In the affidavit in support of his notice of removal and habeas corpus petition, Plaintiff stated that certain petitions had been transferred to Cortland County Family Court, and Plaintiff reported for a hearing before Judge Ames on December 21, 2016. (Dkt. No. 1 at 37.) The sole allegation regarding Judge Ames in Plaintiff's civil rights complaint is that:

> The complainant appeared before the Hon. Ames at Cortland County

Family Court locked and loaded with enough documentation to tear the Court house down, the complainant aske (sic) Honorary W. Ames to be herd (sic) at this very hearing, my 1st amendment right as a US Citizen, not to mention Son of the Revolution. The Complainant explained clearly and sternly that he had the documentation to have the petition dismissed on the ground of documentary defense, not to mention the defendant N. Cruz petition also lacks validity nor executes any claim. Hon. W. Ames denied the complainants right to be heard as well as right as a pro se litigant, Hon. Ames is also guilty of misappropriate of Federal funds by hiring a Law Guardian for an act of fraud and conspiracy.

(Dkt. No. 1-2 at 20.)

### 5. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's counsel in the Family Court proceedings involving child support and visitation issues. (*See* Dkt. No. 1 at 38.) In his civil rights complaint, Plaintiff appears to allege that Williams appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole Cruz. (Dkt. No. 1-2 at 15.)

Attorney James Taylor, Esq. was Plaintiff's counsel prior to April 2016. (Dkt. No. 1 at 40.) In his civil rights complaint, Plaintiff alleges that Judge Dowd had his brother-in-law, the Chenango County Public Defender, and his assistant, an associate of Taylor, pay a staff member at the Public Defender's Office "to impersonate a child care provider at a non-profit childcare center" paid for by Plaintiff. (Dkt. No. 1-2 at 19.)

Attorney James Fertig was appointed as Guardian ad Litem for Plaintiff's children in connection with the child support and visitation proceedings. (Dkt. Nos. 1 at 6; 1-2 at 1.) In his civil rights complaint, Plaintiff alleges that Fertig, as law guardian, engaged in misconduct and malpractice by: (1) violating the Child Abuse Prevention and Treatment Act

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML   Document 7   Filed 04/07/23   Page 78 of 212

("CAPTA"), 42 U.S.C. §§ 5101- 5106, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act; and (2) violating 18 U.S.C. § 3509, and the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911 *et seq.*, transferred to 34 U.S.C. § 20911 (eff. September 1, 2017), thereby denying Plaintiff the services and privileges he deserved. (Dkt. No. 1-2 at 21-22.)

### 6. Sheila Poole, Acting Commissioner of OCFS

Plaintiff has alleged that Sheila Poole, the Acting Commissioner of the OCFS (Dkt. No. 1-2 at 4), released three indicated reports of child abuse and two indicated reports of child maltreatment, including sealed reports, from December 2012 to the present to Plaintiff. *Id.* at 12.

### 7. Chenango County Department of Social Services

**\*12**  It is not clear from Plaintiff's complaint that he named the Chenango County Department of Social Services ("Chenango County DSS") as a Defendant. He has, however, named Chenango County. (Dkt. No. 1-2 at 4.)

Plaintiff alleges that the Chenango County DSS and CPS (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly 42 U.S.C. §§ 16911 *et seq.*, thereby denying Plaintiff the protection, safety, services, and privileges he deserved by failing to prosecute defendants. (Dkt. No. 1-2 at 21-22.)

### 8. Cortland County Department of Social Services, Commissioner Kristen Monroe, and Director of Administrative Services David Knickerbocker

It is also not clear from Plaintiff's complaint that he named the Cortland County Department of Social Services ("Cortland County DSS") as a Defendant. He did, however, name Kristen Monroe, Commissioner; David Knickerbocker, Director of Administrative Services; and employees in CPS. (Dkt. No.

1-2 at 2, 5.) Plaintiff alleges that Commissioner Monroe and Knickerbocker tried to trick and then force Plaintiff to rent Monroe's parents' house and stole $1000 from Plaintiff's grandmother, who last he knew was left in a home with no shower or means to take one. (Dkt. No. 1-2 at 2, 19.)

Plaintiff also alleges that the Cortland County DSS and CPS, which is within the Department: (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911, *et seq.*, thereby denying Plaintiff the protection, safety, services and privileges he deserved by failing to prosecute defendants. *Id.* at 21-22.

### 9. DCMO BOCES and Unadilla Valley Central School District

Plaintiff alleges that he was illegally transferred from DCMO BOCES to Unadilla Valley Central School District ("Unadilla"). Plaintiff's employment at Unadilla was terminated effective October 3, 2016. (Dkt. No. 1-1 at 15.) Plaintiff alleges that the termination was unlawful, and that he was denied tenure and rights under the Taylor Law, and section 75. (Dkt. No. 1-2 at 13.)

Plaintiff's complaint includes no factual allegations against named Defendants Mike Lyn or Lynch, Unadilla Principal Chris Harper, Superintendent Robert Mackey, Business Officer Mike Brown, Food Service Director Kim Corcoran, and Cook Manager Pamela Rowe. In his affidavit in support of his notice of removal and petition for habeas corpus, Plaintiff states that when he was illegally transferred to Unadilla, he was stripped of his benefits and forced to fill two full time management positions at Unadilla while he had custody of his children. (Dkt. No. 1 at 33.) Plaintiff also claims that following his termination, Superintendent Robert Mackey, named as a Defendant, and unidentified members of the administration at Unadilla, began to make false allegations against Plaintiff. *Id.*

Furthermore, in his motion papers on his motion for a TRO and preliminary injunction, Plaintiff claims that Lyn or Lynch was involved in denying Plaintiff a hearing, tenure, and section 75 rights. (Dkt. No. 8-7 at 8.) Plaintiff also claims that he was subjected to involuntary servitude and

Case 6:23-cv-00086-MAD-ML Document 7 Filed 04/07/23 Page 79 of 212

Cruz v. New York, Not Reported in Fed. Supp. (2017)

peonage, purposefully harassed at work, and bullied by Harper, Mackey, Brown, Corcoran, and Rowe. *Id.*

### 10. Conspiracy

**\*13** Plaintiff alleges in conclusory fashion that Defendants acted in a premeditated conspiracy for the one objective of covering up the sexual abuse by an elementary school special education teacher somehow connected to Terry and Johanna Kuhn. (Dkt. No. 1-2 at 23.) Plaintiff has identified the membership in the conspiracy as follows:

> The Defendants constructed a conspiracy, this conspiracy was premeditated, and it was 5 counties wide, including the total of three states, 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee. Defendants continually denied the complainant(s) (sic) rights.

*Id.* Plaintiff alleges that the conspirators are "guilty of intentionally interfering, denying, absolutely stripping the complainant of [his] Constitutional privileges, rights, and protections, and did so with malice. The complainant[ ]'s 1 [st], 2 [nd], 4 [th], 5 [th], 6 [th] 8 [th], 9 [th], 10 [th], 13 [th] (sec. 1) and 14 [th] (equal protection of the law)." (Dkt. No. 1-2 at 23-24.)

### C. Claims and Relief Requested

Plaintiff has identified "actions" against the Defendants under: (1) 42 U.S.C. § 1983 civil action for deprivation of rights, including violation of Amendments 1, 4-8, 10, and 14 to the Constitution; (2) 42 U.S.C. § 1985 (1)-(3) for conspiracy to interfere with civil rights; (3) 42 U.S.C. § 1986 for neglect to prevent action; (4) 42 U.S.C. § 3631 for criminal interference with right to fair housing; (5) 18 U.S.C. § 245 federally protected activities; (6) 42 U.S.C. § 14141 for pattern and practice; and (7) 18 U.S.C. § 2258 for failure to report child abuse. [12] (Dkt. No. 1-2 at 16.) Plaintiff also claims to have been the victim of sex discrimination in his employment and to have filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

Plaintiff seeks monetary damages for sex discrimination; defamation; retaliation and prevention of his business venture in Norwich; loss of tier 4 State retirement benefits; loss of family and loved ones; destruction of social relationships, friendships, and his family relationship; unlawful labor practices; unlawful termination; disruption of the parent child relationship; past, present, and future medical expenses, court and attorney's fees; and the cost of providing a nanny for the children until age eighteen. *Id.* at 30. Plaintiff also seeks damages in the amount of $60,000,000, with the ability to seize retirement and properties for illegal actions. *Id.*

**\*14** In addition, Plaintiff seeks appropriate injunctive and declaratory relief in his complaint. *Id.*

### V. MOTION TO AMEND

Prior to the Court's initial review of his original filings under 28 U.S.C. § 1915(e), Plaintiff submitted to the Clerk an ex parte motion to amend. On September 11, 2017, Plaintiff filed a "Motion to Amend due to failure to comply By the State of New York, *et al.*" (Dkt. No. 9 at 1.) Plaintiff's request to amend his complaint arises out of: (1) New York State's stonewalling his request under the State Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90, his appeals, and his requests for crucial information necessary to amend his complaint; (2) the Defendants/Respondents' failure to return a waiver of service of the summons, object to removal, seek remand, file an answer, file Plaintiff's requests, file any motions; and (3) an unidentified Defendant's actions in

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 80 of 212

Cruz v. New York, Not Reported in Fed. Supp. (2017)

exceeding his or her jurisdiction by repeatedly and irreparably injuring Plaintiff, unlawfully kidnaping his children, and seizing his property. *Id.* at 2.

Plaintiff also filed a document entitled "Motion to Amend State Action for violation of a man's I, IV, V, XIV, VI amendments of the US constitution, ⚑42 U.S.C. 1983." (Dkt. No. 9-1.) In the motion, Plaintiff has added as Defendants New York State Governor Andrew Cuomo; Attorney General Eric Schneiderman; Cortland County Sheriff Mark E. Helms; Budd Rigg, Cortland County Undersheriff; Captain Robert Derkson; Sgt. Paul Knapp; and Jane Doe, Deputy. *Id.* at 1. Plaintiff alleges in what he has identified as a "complaint" in the motion to amend that he has served three notices, three requests for waiver of summons, electronic and certified mailings to all of the Defendants in the action, and that because this Court ordered a stay "this means ALL matters pursuant of the case, if this court Cortland County Family Court or Chenango County Family Court or either County department of Social Services Proceed any further in any more unlawful and fraudulent actions against the complainant the complainant will take this matter to the United States Attorney's Office Immediately proceeds any further this will be yet another trespass on the complainant and his people." (Dkt. No. 9-1 at 2.)

Plaintiff also alleges that the Defendants have all been served with FOIL requests and requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as well as the complaint, and that State has stonewalled his FOIL requests and is engaged in a conspiracy to cover up the abuse of his children by a special education teacher and a Norwich fireman in violation of the Federal Child Kidnaping laws.[13] *Id.* at 3.

# VI. MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On September 11, 2017, Plaintiff submitted to the Clerk a "Motion for Verbal Argument and ORDER to Show Cause, before Honorable Daniel J. Stewart ... for Preliminary ORDER and complaint RULE 72 Pretrial Order."[14] (Dkt. No. 8.) Included among Plaintiff's submissions in support of his motion for a TRO and preliminary injunction are: (1) Table of Authorities with father's rights case law (Dkt. No. 8-1); (2) Table of Authorities with case law involving removal of children from the home (Dkt. No. 8-2); (3) "DEMANDANTS DEMAND WRIT OF QUO WARRANTO DEMAND TO VACATE CPLR 5015(a)(4)," in which Plaintiff demands that Respondents vacate and dismiss immediately any New

York State matters for lack of subject matter jurisdiction pursuant to CPLR 5015(a)(4) (Dkt. No. 8-3); (4) "NOTICE: Ex parte Motion for Order to Show Cause for a Writ of Mandamus for Writ of Habeas Corpus; Ex Parte motion for Order to Show Cause for Writ of Mandamus; Order to Show Cause for preliminary injunction and Temporary Restraining order; prayer for remedies for irreparable harm pursuant to Invidious Gender Discrimination, ⚑18 U.S. Code § 1201, Kidnaping, ⚑18 U.S. Code § 242 Deprivation of rights under color of law, and ⚑18 U.S. Code § 241 Conspiracy against rights (RUL 72 Pretrial Order)" (Dkt. No. 8-4); (5) Plaintiff's "Declaration, Proclamation and Reclamation to His natural rights as Son of the revolution & The Original Republic of 1789" (Dkt. No. 8-5); (6) "Written Objections to Chenango and Cortland County Family Court for Lack of Subject Matter & Personal Jurisdiction & Cross Claim" (Dkt. No. 8-6); (7) "Affidavit in support of written objections to the State of New York et al. For Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Cross Claim" (Dkt. No. 8-7); (8) "NOTICE: ex parte Motion Order to Show Cause for Writ of Habeas Corpus ex parte Motion for Order to Show Cause for Writ of Mandamus" (Dkt. No. 8-8); (9) July 15, 2017, "Actio Contrcto Actio Vi Bono Rum Raptorum Actio Ex Contractu Actio Mixta Actio Personum Actio Ex Delicto" to Governor Andrew Cuomo (Dkt. No. 8-9); (10) records from the SCR labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 8-10); (11) "Order to Show Cause for Injuries of Irreparable Injury caused by Trespass exceeding Jurisdiction Discrimination, and Malice (Ex Parte)" (Dkt. No. 8-11); (12) "Memorandum of the Law and Laws of a Writ of Quo Warrento (Rule 72 Pretrial order)" (Dkt. No. 8-12); (13) "Affidavit and Memorandum of the law in Support of a Writ of Quo Warrento and Complaint pursuant to US federal Codes: ⚑18 U.S.Code § 1201 Kidnaping, ⚑18 U.S. Code § 242 Deprivation of rights under color of law, ⚑18 U.S. Code § 241 Conspiracy against rights 28 U.S.C. § 1343(a)(3)" (Dkt. No. 8-13); and (14) collection of statutory provisions labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 14.)

**\*15** Unfortunately, Plaintiff's voluminous submissions consist largely of irrelevant material, repetitive accusations, conclusory assertions, and hard to follow open ended allegations against frequently unidentified Defendants, with few nonconclusory assertions of wrongdoing by specific Defendants, and an ill-defined request for the injunctive relief

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 81 of 212

Cruz v. New York, Not Reported in Fed. Supp. (2017)

being sought. As best the Court can ascertain, Plaintiff's request for injunctive relief is based at least in part on his mistaken belief that the Court's earlier Order staying this action stayed all state court proceedings and in essence enjoined any actions by the multitude of Defendants named by him with regard to matters about which Plaintiff complains herein. (*See* Dkt. No. 9-1 at 2.) Plaintiff, failing to understand that his notice of removal, petition for a writ of habeas corpus, and civil rights complaint have yet to be accepted for filing by the District Court, also appears to justify his request for injunctive relief on the absence of any response to those papers by Defendants, for whom summonses will not be issued unless and until those papers are accepted by the District Court and Defendants are directed by the District Court to respond in some fashion. (*See* Dkt. No. 9 at 2.)

Plaintiff may be seeking a mandatory injunction directing Defendants to respond to his notice of removal habeas petition, and civil complaint. (Dkt. 8-3 at 2.) Plaintiff has also raised the State Defendants' failure to respond to his FOIL requests and may be seeking a mandatory injunction directing a response. (Dkt. Nos. 8-11 at 5; 8-13 at 2-3.) Plaintiff claims that the day after he commenced this action/proceeding, his children were unlawfully seized and taken to Florida by unidentified "respondents" in violation of federal kidnaping laws, and he may be seeking injunctive relief with regard to the allegedly illegal seizure. (Dkt. 8-11 at 2.) Plaintiff also claims he is being harassed, defamed, and attacked; he has had false allegations placed against him on the SCR; and the State has black balled him from future state employment. (Dkt. No. 8-11 at 3-4.) Plaintiff may be seeking injunctive relief with regard to those claims as well. In addition, Plaintiff is seeking a mandatory injunction directing the payment of back wages and health care benefits; placing him back on the payroll with benefits; and returning various property taken from him. *Id.* at 5-7.

## VII. LEGAL ANALYSIS OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT, MOTION TO AMEND, AND MOTION FOR A TRO AND PRELIMINARY INJUNCTION

### A. Elements of a 42 U.S.C. §§ 1983 Claim

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, —— U.S. ——, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[15] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

Case 6:23-cv-00086-MAD-ML   Document 7   Filed 04/07/23   Page 82 of 212

Cruz v. New York, Not Reported in Fed. Supp. (2017)

**\*16** In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do more than plead in conclusory fashion that a defendant "conspired" with a state actor. [16] *Ciambriello,* 292 F.3d at 324; *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The elements of a conspiracy claim under § 1983 are: "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999).

**B. Personal Involvement Requirement of § 1983**

A § 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Raspardo v. Carlone,* 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant ... 1983 requires individualized, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Corr. Servs.,* 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint. *See McAvoy v. Suffolk County Sheriff DeMarco,* No. 14-CV-6293 (SJF) (AKT), 2015 WL 1802601, at \*5 (E.D.N.Y. April 16, 2015);

*McClenic v. Shmettan,* No. 15-CV-00705 (SJF) (SIL), 2015 WL 1930088, at \*5 (E.D.N.Y. April 28, 2015); *Rogue v. Iannotti,* No. 3:11-cv-2012 (SRU), 2012 WL 3939922, at \*2 (D. Conn. Sept. 10, 2012).

Therefore, the Court recommends dismissal of Plaintiff's complaint as against Defendants Onondaga County, Chenango County District Attorney Joseph McBride, Steven M. Dunshee (First Assistant District Attorney), Sabrina Dier, Sheriff Ernest R. Cutting, Joe Warren, Ben Bergman, Alyssa Cogden, Melissa Archer, Colin Supervisor Cortland County Advocacy Center), Cortland County Jane Doe, two Cortland County Officer John Does, Thomas Durkot, Cathy Aitchison, Carnita White, Brian Doliver, Detective John Fern, Sarah Simon, Betty Osborne, Cathy Lavoli, Beth Beers, Patricia Luca, Sarah Fitzpatrick, Irene Flores, Connie Bambino, Joseph Angelino, Norwich Sgt. John Doe, Norwich School District Board of Education President Joseph McBride, Tom Sutton, Howie Sullivan, Gerrard O'Sullivan, Karrie Stainbauer, Christine Bienick, Dr. Alfred Barnes, Kristen Romavicz, Mark Davis, Vicky Gregory, Kim Murray, Frank Johnson, Sherri Houck, Chris Wilkinson, three Jane Doe Cortland County Family Court Clerks, and four John Doe Officers. [17]

**\*17** Although Plaintiff would ordinarily be granted leave to amend to allege facts plausibly showing that the Defendants listed above had violated his constitutional rights under § 1983, for reasons discussed below, the Court finds that allowing amendment in this case would be futile.

**C. Eleventh Amendment Immunity**

Plaintiff has sued New York State. (Dkt. No. 1-2 at 1.) It is well settled that in the absence of consent by the state or abrogation of immunity by Congress under the Fourteenth Amendment, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55-56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment also bars suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Board of Regents of the Univ. System of*

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 83 of 212

*Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Although the allegations in Plaintiff's complaint are inadequate to provide notice of any claim against the State, in his motion to amend Plaintiff complains of the State's alleged bad faith in stone-walling his FOIL request and his appeals and failing to provide information necessary to finish his complaint. (Dkt. No. 9 at 1.) Federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios v. New York Executive Dept. of Parole*, No. No. 07-CV-3598 (DLI) (LB), 2008 WL 150209, at * 2 (E.D.N.Y. Jan. 14, 2008). Plaintiff's recourse is the commencement of a CPLR Article 78 proceeding in state court. *Id.*

In addition, although Plaintiff has not named the OCFS as a Defendant in his complaint, he has alleged that the State agency was a member of a conspiracy to deny Plaintiff of his constitutional rights. (Dkt. No. 1-2 at 23-24.) Were the agency a named Defendant, Plaintiff's conspiracy claim under § 1983 against it would be barred by the Eleventh Amendment.

Finding that Plaintiff has failed to allege any claim against New York State with respect to which there has been consent to suit by the State or an abrogation of Eleventh Amendment immunity by Congress, the Court recommends that Plaintiff's complaint be dismissed with prejudice against the State of New York and to the extent Plaintiff intended to name the OCFS as a Defendant, against the agency as well.

### D. Judicial Immunity

In his original complaint, Plaintiff has named as Defendants the Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; the Hon. William Ames, Cortland County Family Court; and the Hon. Julie Campbell, Cortland County Family Court. [18] (Dkt. No. 1-2 at 1, 4, 6.) All are sued in connection with the support, visitation, and custody proceedings involving Plaintiff and his estranged wife Nicole. (*See generally* Dkt. Nos. 1, 1-2, and 9-1.)

**\*18** It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) (holding

that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. A judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of authority." *Id. at 13, 112 S.Ct. 286* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

Because the allegations in Plaintiff's complaint indicate that his claims against Judges Dowd, Ames, and Campbell, and Support Magistrate Dunshee were all related to the support, visitation, and/or custody proceedings between Plaintiff and Nicole Cruz, the Court finds that they are all entitled to judicial immunity and recommends dismissal of Plaintiff's complaint against them with prejudice on judicial immunity grounds.

### E. Plaintiff's Conspiracy Claim

Plaintiff has alleged a conclusory claim for conspiracy against:

> 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child

Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee.

(Dkt. No. 1-2 at 23.)

Plaintiff claims that those Defendants conspired for the sole purpose of covering up the sexual abuse, apparently of Plaintiff's children, by an elementary school special education teacher connected to Terry and Johanna Kuhn, possibly Nicole Cruz. *Id.* at 23-24. Plaintiff's complaint is devoid of facts regarding the alleged sexual abuse, and is equally devoid of facts plausibly showing that the identified parties conspired to interfere with, deny, or strip Plaintiff of his constitutional rights. *Id. See* 🚩 *Dwares*, 985 F.2d at 100 (requiring allegations of specific acts of misconduct as a part of the conspiracy). Furthermore, because the rights of Plaintiff's minor children would clearly be implicated in any conspiracy to cover up sexual abuse by a teacher, the Court finds that consideration of the issue without proper representation of the interests of the children would be improper.

Therefore, the Court recommends that Plaintiff's conspiracy claim against 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD, City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz['s] Attorney, the OFCA Albany, NY, the Law Guardian Ad Litem, Plaintiff's own Self hired attorneys, and the Hon. Dowd and Hon. Dunshee be dismissed.

## F. Chenango and Cortland Counties

**\*19** Plaintiff has named Chenango and Cortland Counties as Defendants. (Dkt. No. 1-2 at 1.) Plaintiff has asserted claims against both the Chenango and Cortland County Departments of Social Services and Sheriff's Departments. Because the Departments of Social Services and Sheriff's Departments are administrative arms of their respective counties, the Court will treat Plaintiff's claims against the County Departments as claims against the Counties themselves and recommend dismissal of the complaint with prejudice against both the Departments of Social Services and Sheriff's Departments. *See Mulvihill v. New York*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013).

1. Claims Against the Departments of Social Services

Plaintiff claims in wholly conclusory fashion that the Chenango and Cortland County Departments of Social Services violated CAPTA, 🚩 18 U.S.C. § 3509, and SORNA, 🚩 34 U.S.C. §§ 20911, *et seq.*, formerly cited at 🚩 42 U.S.C. §§ 16911, *et seq.* (Dkt. No. 1-2 at 21-22.) CAPTA does not create a private right of action for sexual and physical abuse, neglect, and maltreatment while in foster care. *See Alger v. County of Albany, New York*, 489 F.Supp.2d 155, 159 (N.D.N.Y. 2006) (collecting cases). Moreover, it if did that would be a claim that should not be addressed in this action in which the interests of Plaintiff's minor children are not represented by counsel. *See, e.g., Ingrao v. County of Albany, NY*, No.1:01-CV-730 (TJM), 2006 WL 2827856 (N.D.N.Y. Oct. 2, 2006) (counseled lawsuit raising unsuccessful CAPTA claim by plaintiffs as parents and natural guardian of an infant).

🚩 18 U.S.C. § 3509, which is entitled "Child victims' and child witnesses' rights," is a criminal statute that provides for the manner in which child victims and their right to privacy is protected in connection with the judicial process in criminal matters involving abuse, including sexual abuse. If by chance a person were found to have a private right of action under the provision, it would be Plaintiff's minor children, whose interests are not before the Court in this litigation. SORNA provides for the registration of convicted sex offenders and appears to have no relevance whatsoever to Plaintiff's lawsuit.

2. Claims Against the Sheriff's Departments

The sole claim against the Chenango County Sheriff's Department is that members of the Department conspired with Terry Kuhn to conjure up baseless claims against Plaintiff resulting in the issuance of a temporary protective order against Plaintiff. (Dkt. No. 1-2 at 11-12.) Plaintiff's conclusory claim of conspiracy is inadequate to state a claim

under § 1983. *See* *Pangburn,* 200 F.3d at 72. Plaintiff has alleged no specific facts plausibly showing wrongdoing by the Cortland County Sheriff's Department resulting in the violation of Plaintiff's constitutional rights under § 1983.

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cause of action against either Chenango or Cortland County and recommends that the complaint be dismissed as against them.

### G. Nicole Cruz and Terry and Johanna Kuhn

Although the relationship between Nicole Cruz and Terry and Johanna Kuhn is not well explained in the complaint, the Kuhns appear to be Nicole's friends. The allegations in the complaint indicate that Nicole and Johanna Kuhn are private actors. Terry Kuhn is a member of the City of Norwich Fire Department. (Dkt. No. 1-2 at 14-16.) However, except for wholly conclusory allegations that Terry Kuhn abused his power as a Norwich fireman by conspiring with his friends at the Chenango County Police Department to conjure up baseless false statements against Plaintiff which resulted in issuance of a temporary order of protection against Plaintiff, the allegations against him arise of out his actions as an individual rather than a state actor. [19] *Id.* at 11-12.

**\*20** Nicole Cruz is alleged to have joined with the Kuhns in forcing Plaintiff from his home and causing him to default on a loan Plaintiff and his estranged wife had on a business they were buying. *Id.* at 11. Plaintiff alleges that Nicole fled the State in July of 2016 in the middle of a child abuse trial owing Plaintiff over $8,000 in child support. *Id.* at 13. According to Plaintiff, Nicole and Terry and Johanna Kuhn are guilty of multiple federal felonies and misdemeanors against him including HUD fraud, mail fraud, false impersonation, falsifying government documents, and unlawful termination of Plaintiff's tenured position in the New York State Education Department. ("NYSED"). *Id.* at 14-16.

The factual allegations against the three do not plausibly show that they were acting under color of state law with regard to Plaintiff's claims. *See* *Cornejo,* 592 F.3d at 127. Moreover, the allegations of conspiracy by Terry Kuhn are wholly conclusory and therefore inadequate to make a plausible showing that he was acting in concert with state actors. *See* *Dwares,* 985 F.2d at 100. Therefore, the Court recommends that the complaint be dismissed as against Nicole Cruz and Terry and Johanna Kuhn for failure to state

a claim under § 1983. The Court further recommends that the dismissal be with prejudice given the absence of factual allegations in the complaint suggesting Plaintiff could state a cause of action against them under § 1983 if given leave to amend.

### H. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's attorney in connection with the child support, visitation, and custody dispute and is alleged to have appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole. (Dkt. Nos. 1 at 38; 1-2 at 15.) Attorney Taylor was Plaintiff's attorney in the domestic relations dispute for a period of time. (Dkt. No. 1 at 40.) The sole allegation against Taylor in Plaintiff's complaint is that an associate of his was involved in paying a third party to impersonate a child care provider at the daycare center attended by Plaintiff's children. (Dkt. No. 1-2 at 19.) Attorney James Fertig was appointed as a guardian ad litem for Plaintiff's children, and Plaintiff has alleged that he engaged in misconduct and malpractice in violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Private attorneys do not act under color of state law and are not state actors for purposes of § 1983 simply by virtue of their state-issued licenses to practice law. *See* *Fine v. City of N.Y.,* 529 F.2d 70, 74 (2d Cir. 1975) (private attorney not a state actor). Similarly, public defenders and court-appointed counsel do not act under color of state merely by virtue of their position. *Harrison v. New York,* 95 F.Supp.3d 293, 328-29 (E.D.N.Y. 2015) (collecting cases). Guardians ad litem are included among court-appointed counsel who do not act under color of state law by virtue of their position. *Neustein v. Orbach,* 732 F.Supp. 333, 346 (E.D.N.Y. 1990). Furthermore, Plaintiff has failed to plead any nonconclusory facts showing that the three attorneys were conspiring with state actors. *See* *Dwares,* 985 F.2d at 100.

Moreover, for the reasons set forth above in the analysis of Plaintiff's claims against Defendants Chenango and Cortland Counties, the Court finds that Plaintiff has failed to state a claim against Fertig violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed as against Defendants

Williams, Taylor, and Fertig with prejudice inasmuch as a better pleading will not correct the deficiencies in Plaintiff claims.

### I. Kristen Monroe and David Knickerbocker

**\*21** Plaintiff claims that Monroe and Knickerbocker, both officials in the Cortland County DSS, attempted to trick and then force Plaintiff to rent Monroe's parents' house. (Dkt. No. 1-2 at 2, 19.) Plaintiff has not alleged facts plausibly showing that Monroe and Knickerbocker were acting under color of state law in connection with the rental of Monroe's parents' house. Nor has he alleged facts showing that Monroe or Knickerbocker deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* 🚩 *Cornejo,* 592 F.3d at 127.

Therefore the Court recommends that the complaint be dismissed as against Monroe and Knickerbocker, and because the allegations against them do not remotely support the existence of a civil rights claim against them under 🚩 § 1983, that the complaint be dismissed against them with prejudice.

### J. Sheila Poole

While Plaintiff has alleged that Poole, in her capacity as Acting Commissioner of the NYS OCFS, released indicated reports of child abuse and mistreatment of Plaintiff children by him and Nicole Cruz, his complaint is devoid of factual allegations plausibly showing that she deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States by doing so. *See* 🚩 *Cornejo,* 592 F.3d at 127.

Therefore, the Court recommends that the complaint be dismissed as against Poole, and that in light of the failure by Plaintiff to allege any facts suggesting he might be able to plead a 🚩 § 1983 claim against Poole the dismissal be with prejudice. [20]

### K. DCMO BOCES and Unadilla Valley Central School District

Plaintiff claims, *inter alia,* that his transfer from DCMO BOCES to Unadilla was illegal, that his termination was unlawful in that he was denied tenure, rights under the Taylor Law, and Section 75 rights, and that Defendant Lyn or Lynch was involved in the denial. (Dkt. Nos. 1-1 at 15; 1-2 at 13;

8-7 at 8.) Plaintiff also claims that he was harassed, bullied, and forced into involuntary servitude by Defendant Harper, Mackey, Brown, Corcoran, and Rowe at Unadilla. (Dkt. No. 8-7 at 8.) According to Plaintiff, he was also the victim of sex discrimination in his employment and has filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." *Baumgart v. Stony Brook Children's Serv., P.C.,* 249 Fed.Appx. 851, 852 (2d Cir. 2007). Public employees covered under the Public Employees' Fair Employment Act ("Taylor Law"), 🚩 N.Y. Civ. Serv. Law § 201(7) are precluded from filing federal claims under the LMRA. *See Sales v. Clark,* No. 14-CV-8091 (PAC)(SN), 2017 WL 892609, at \*5 (S.D.N.Y. Feb. 3, 2017). Plaintiff concedes he is covered under the Taylor Law. (Dkt. No. 1-2 at 13.)

Furthermore, Plaintiff's claims, if any, against the individual Defendants for involuntary servitude, harassment, and bullying are state law claims over which this Court has no jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v.* 🚩 *Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (🚩 28 U.S.C. § 1332). *See* 🚩 *Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir. 2002). Federal question jurisdiction exists if a plaintiff's claim "aris[es] under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

**\*22** Plaintiff's claims against DCMO BOCES and Unadilla and the individual Unadilla Defendants do not present a federal question. [21] Moreover, diversity jurisdiction requires complete diversity between Plaintiff and all of the Defendants, which does not exist in this case. *See* 🚩 *Cushing v. Moore,* 970 F.2d 1103, 1106 (2d Cir. 1992) ("complete diversity [is required] between all plaintiffs and all defendants.").

In addition, it is not clear from the complaint that the amount in controversy exceeds $75,000. "A party invoking the jurisdiction of the federal court has the burden of proving

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 87 of 212

that it appears to be a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." 🔖 *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago,* 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted); *see also* 🔖 *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time action is commenced. 🔖 *Id.*

Finally, Plaintiff claims to have filed a sex discrimination complaint with the New York Human Rights Division but has provided no information regarding the nature and status of that claim, including whether the EEOC has issued a right to sue letter. Therefore, the Court recommends dismissal.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed against DCMO BOCES, Unadilla, Harper, Mackey, Brown, Corcoran, and Rowe, and that with the exception of his sex discrimination claim against his employer, that the dismissal be with prejudice.

### L. Domestic Relations Exception

The Court has recommended dismissal on various grounds of all of Plaintiff's claims either with or without prejudice. Even if it had not, with the exception of Plaintiff's employment claims, all of the claims asserted by him in his civil rights complaint fall within the domestic relations exception discussed above, which divests the district court of subject matter jurisdiction because the claims relate, directly or indirectly, to the issues of support, custody, and visitation. *See* 🔖 *Ankenbrandt,* 504 U.S. at 703, 112 S.Ct. 2206. Therefore, the Court recommends that Plaintiff's complaint, with the exception of his employment related claims, be dismissed with prejudice under the domestic relations exception. [22]

### M. Plaintiff's Motion to Amend

Plaintiff's motion to amend his complaint does not change the Court's recommendation that his civil rights action be dismissed. Plaintiff's notice to amend involves the failure of the State and perhaps other Defendants to respond to his FOIL requests, Defendants' failure to return waivers of summonses and to respond to papers he has served on them in the action, and the alleged kidnaping of his children. (Dkt. No. 9 at 2.) As noted above, federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios,* 2008 WL 150209, at *2. Furthermore, inasmuch as Plaintiff's complaint has not yet been accepted for filing, Defendants are

under no obligation to return service waivers or respond to any of Plaintiff's papers.

**\*23** Finally, there is no private right of action under 🔖 18 U.S.C. § 1201, the federal criminal statute relating to kidnaping. *See* 🔖 *Giano v. Martino,* 673 F.Supp. 92, 95 (E.D.N.Y.), *aff'd,* 853 F.2d 1429 (2d Cir. 1987) (Table). Moreover, to the extent the alleged kidnaping of Plaintiff's minor children is a part of the custody dispute between Plaintiff and his estranged wife, Plaintiff's claim falls within the domestic relations exception to subject matter jurisdiction. [23]

Therefore, the Court recommends that Plaintiff's motion to amend (Dkt. No. 9) be denied.

### N. Motion for a TRO and a Preliminary Injunction

Inasmuch as the Court is recommending dismissal of Plaintiff's complaint, its recommends that Plaintiff's motion for a TRO and a preliminary injunction be denied as moot. *See Melnitzky v. Lopreto,* No. 06 Civ. 13206 (SHS), 2006 WL 3500016, at *4 (S.D.N.Y. Dec. 4, 2006) (request for a TRO and preliminary injunction moot where underlying complaint dismissed). Even if the request were not moot, the Court would recommend denial because Plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits of his claims to make them a fair ground for litigation, and a balance of hardships decidedly tipping in his favor. *See* 🔖 *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010).

Therefore, the Court recommends that Plaintiff's motion for a TRO and preliminary injunction (Dkt. No. 8) be denied as moot, or in the alternative, on the merits.

**ACCORDINGLY**, the Court hereby

**RECOMMENDS** that if there are presently any state court proceedings that arguably could be covered by Plaintiff's notice of removal (Dkt. No. 1) that the District Court issue an order remanding them to state court, and if not, that the Court find that no state court proceedings have been properly removed to state court; and it is further

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 88 of 212

**RECOMMENDED** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to amend his complaint (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1-2) be **DISMISSED** on initial review under 28 U.S.C. 1915(e)(2)(B)(ii), and that with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be **WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion for a TRO and a preliminary injunction (Dkt. No. 8) be denied as moot or, in the alternative, on the merits; and it is further

**RECOMMENDED** that the District Court order that the determination in this matter have no effect on the legal rights of Plaintiff's minor children; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [24] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6021838

## Footnotes

1    Since Plaintiff has acknowledged there are no pending state court proceedings, remand does not appear to be an option. (Dkt. No. 1 at 40.)

2    Plaintiff also submitted an application for leave to proceed *in forma pauperis* (Dkt. No. 2), which was granted by the Court in its June 13, 2017, Order. (Dkt. No. 6.)

3    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

4    Plaintiff's complaint also contains factual allegations that his minor children were subjected to repeated sexual, mental, and emotional abuse. (Dkt. No. 1-2 at 15.) Those allegations will be considered solely to the extent, if at all, they are relevant to claims asserted by Plaintiff solely on his own behalf.

5    The applicability of the statutes cited by Plaintiff will be addressed only to the extent, if at all, they are relevant to claims asserted by him solely on his own behalf.

6    The only effect of the Court's ninety-day stay Order was to place the Court's initial review of the lawsuit on hold while Plaintiff pursued legal representation for his minor children. (Dkt. No. 6 at 6.) The stay did not, as Plaintiff appears to claim in his motion papers, have any impact on the ability of those individuals and entities whom Plaintiff has named as Defendants herein to take action or refrain from taking action, or upon the jurisdiction, orders, or other actions of the New York State courts. (See Dkt. Nos. 8-3 at 3; 9-1 at ¶ 1.)

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 89 of 212

Plaintiff's apparent attempted service of summonses and papers to which Defendants would be required to respond was premature and unauthorized.

7    Plaintiff, who describes himself as an American Patriot, has also filed as a part of his motion for a preliminary injunction, a "Declaration, Proclamation and Reclamation to his natural rights as Son of the Revolution & The Original Republic of 1789," in which he describes his ancestors as having included soldiers in the French and Indian War, the American Revolution, and the Civil War. (Dkt. No. 8-5.)

8    Plaintiff's notice of removal also appears to be untimely since it was filed more than thirty-days after he received the petitions in the contempt and custody/visitation proceedings. *See* 28 U.S.C. § 1446(b). However, because the thirty-day requirement, while mandatory, is procedural rather than jurisdictional, and can be waived by the plaintiff/petitioner in the state court action, the Court finds that Plaintiff's failure to file a timely notice of removal does not provide grounds for *sua sponte* dismissal on initial review. *See Flood v. CSX Transp., Inc.,* No. 11-CV-162S (WMS), 2012 WL 464189, at * 2 (W.D.N.Y. Feb. 13, 2012) (while the thirty-day time limit under § 1446(b) is mandatory, failure to adhere to it constitutes a procedural rather than a jurisdictional defect) (citing *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.,* 422 F.3d 72, 75 (2d Cir. 2005)).

9    In *White v. Wellington,* 627 F.2d 582, 585 n.4 (2d Cir. 1980), the Second Circuit opined that the statutory language would also allow removal by federal officials.

10   Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

11   The papers do not provide the Court with sufficient information to determine on initial review whether the *Younger* abstention, (*see Younger v. Harris,* 401 U.S. 37, 53-54 (1971)), or *Rooker Feldman* doctrines apply to Plaintiff's filings. *See Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal courts may not sit in direct review of state court judgments unless directly authorized by Congress).

12   There is no private right of action under 42 U.S.C. § 3631 (*see DeSouza v. Taiman,* No. 3:16-cv-00490 (MPS), 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases)); 42 U.S.C. § 14141 (*see Miller v. Carpinello,* No. 06 CV 12940 (LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); 18 U.S.C. § 245 (*see, Gunter v. Long Island Power Auth./Keyspan,* No. 08 CV 498 (RRM) (LB), 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011)); or 18 U.S.C. § 2258. *See Davis v. City of New Haven,* No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Con. March 30, 2014).

13   In his complaint, Plaintiff identifies the abuser of his children as N. Cruz. (Dkt. No. 1-2 at 14-16.) However, because Plaintiff never specifically identifies the alleged abuser as his estranged wife, Nicole Cruz, the Court is uncertain as to whether that is the case.

14   The undersigned, not Judge Stewart, is the U.S. Magistrate Judge to whom the case has been assigned.

15   A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee,* No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML   Document 7   Filed 04/07/23   Page 90 of 212

16    Plaintiff has also alleged a conspiracy under 42 U.S.C. § 1985(3) and a claim under 42 U.S.C. § 1986. (Dkt. No. 1-2 at 1.) However, under § 1985(3), "the conspiracy must [ ] be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Securities, Corp.*, 7 F.3d 1085, 1088 (2d Cir. 2d Cir. 2000), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). As noted above, Plaintiff has been identified as White, and there are no facts in any of Plaintiff's submissions suggesting any otherwise class-based animus. When a claim under 42 U.S.C. § 1985(3) fails, a claim under 42 U.S.C. § 1986 fails as well. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

17    The Court has not included Defendants Lyn or Lynch, Harper, Brown, Corcoran, or Rowe on the list of those against whom dismissal is recommended for failure by Plaintiff to include any allegations of wrongdoing by them in the complaint because of the allegations against them in his TRO and preliminary injunction papers. (Dkt. No. 8-7 at 8.) The Court has recommended dismissal against school board members and administrators at the Cincinnatus School District and Norwich Central School for lack of factual allegations against them in the complaint. Because it appears that they have been named as Defendants with respect to claims involving Plaintiff's minor children, which should not be addressed by the District Court without the interests of the children being properly represented, the Court would recommend dismissal even if Plaintiff had included allegations to that effect.

18    While Plaintiff did not include specific factual allegations against Judge Campbell in his complaint, he did contend in his habeas corpus petition that Judge Campbell dismissed all of his Cortland County Family Court petitions and "apparently" placed a conditional discharge against Plaintiff. (Dkt. No. 1 at 41-42.)

19    Plaintiff also alleges that Terry Kuhn's buddy Frank Revoir was involved in the conspiracy. (Dkt. No. 1-2 at 11-2.) That is the sole mention of Revoir in the complaint. He has not been identified as a state actor and the wholly conclusory allegation that he was part of a conspiracy is insufficient to state a claim against him under § 1983. *See Dwares*, 985 F.2d at 100. Therefore the Court recommends dismissal of the complaint against Revoir and that the dismissal be with prejudice since the allegations in the complaint give no indication Plaintiff could state a claim against him.

20    As noted above, Plaintiff has alleged that the OCFS was part of a conspiracy to cover up sexual abuse against Plaintiff's minor children by a special education teacher which the Court has recommended be dismissed. There are no allegations in Plaintiff's complaint suggesting that Poole played any role in the alleged conspiracy.

21    A plaintiff bears the burden of establishing subject matter jurisdiction over his claims, including citing the relevant federal statute. *Cherry v. New York City Dept. of Corr.*, 698 Fed.Appx. 27, 2017 WL 4457140 (Mem), at *1 (2d Cir. Oct. 5, 2017.)

22    The Court intends for its recommendation for dismissal with prejudice to apply solely to Plaintiff and to have no impact on pursuit of the minor children's claims.

23    The Court has refrained from considering the legal rights the minor children may have in connection with the alleged kidnaping.

24    If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 91 of 212

6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3444672
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Hailee R. DESOUZA, Plaintiff,
v.
Edward TAIMAN, Defendant.

No. 3:16-cv-00490
|
Signed 08/10/2017

**Attorneys and Law Firms**

Hailee R. DeSouza, Vernon, CT, pro se.

Kerry R. Callahan, Melanie A. Orphanos, Updike, Kelly &
Spellacy, PC, Hartford, CT, for Defendant.

### RULING ON MOTION TO DISMISS

Michael P. Shea, U.S.D.J.

**\*1** Plaintiff Hailee DeSouza, *pro se*, sues Defendant Edward
Taiman, Mr. DeSouza's former attorney, based on allegations
arising from a state court eviction action in which Mr.
Taiman represented Mr. DeSouza against a landlord seeking
to evict him. In his seven-count First Amended Complaint
("Compl."), Mr. DeSouza alleges that, motivated by racial
animus, Mr. Taiman conspired with the landlord's counsel
and court officials to violate Mr. DeSouza's constitutional and
statutory rights. (ECF No. 35.) Specifically, Mr. DeSouza's
First Amended Complaint alleges (i) interfering, coercing or
intimidating Mr. DeSouza regarding his housing rights in
violation of 42 U.S.C. § 3617 (count one), (ii) violations
of Mr. DeSouza's First, Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendment rights under 42 U.S.C. § 1983
(count two), (iii) conspiring to interfere with Mr. DeSouza's
civil rights in violation of 42 U.S.C. § 1985(2) and (3)
(count three), (iv) denying Mr. DeSouza equal protection
under the law in violation of 42 U.S.C. § 1981 (count
four), (v) interfering with Mr. DeSouza's rights under the
Fair Housing Act, 42 U.S.C. § 3631 et. seq. (count five),
(vi) conspiring to violate Mr. DeSouza's constitutional rights
under 18 U.S.C. § 241 (count six), and (vii) depriving
Mr. DeSouza of constitutional rights under color of law in
violation of 18 U.S.C. § 242 (count seven).

Mr. Taiman moves to dismiss Mr. DeSouza's complaint
under Rules 12(b)(1) and 12(b)(6) of the Federal Rules
of Civil Procedure. For the reasons stated below, the Court
GRANTS Mr. Taiman's motion to dismiss all counts because
Mr. DeSouza fails to allege facts that plead federal claims.

### I. FACTUAL BACKGROUND

Mr. DeSouza is a resident of Park West Apartments located
in Vernon, Connecticut. (Compl. at 2.) Mr. DeSouza retained
Mr. Taiman as his attorney when Mr. DeSouza's landlord sued
him for eviction on June 14, 2014. (*Id.* at 3.) Mr. DeSouza
alleges that shortly after being retained, Mr. Taiman suggested
that Mr. DeSouza "move out" of his apartment at the end of
his lease. (*Id.* at 3.) Mr. DeSouza alleges that he instructed Mr.
Taiman that he had done nothing wrong and that he wanted to
take his case to trial against his landlord. (*Id.*) On August 29,
2014, during a scheduled court date at the Rockville-Vernon
Courthouse, Mr. Taiman allegedly lied to him as part of a
conspiracy with the landlord's counsel and a representative
of the court to coerce Mr. DeSouza into signing a settlement
agreement in his eviction case. (*Id.* at 3-7.) According to
Mr. DeSouza, the conspiracy aimed to prevent him from
appearing in front of a superior court judge, to intimidate him,
and to hold him in the court employee's office until he agreed
to a settlement. (*Id.* at 7.)

Allegedly, on September 12, 2014, the agreement he was
coerced into signing was used against him in court and,
subsequently, Mr. Taiman allowed him to be called as a
witness for Mr. DeSouza's landlord against his wishes. (*Id.*
at 9.) Mr. DeSouza also alleges that Mr. Taiman's failure
to demand a trial for Mr. DeSouza during the August 29
court appearance caused Mr. DeSouza to be terminated from
his construction job because of "constant unlawful, nuisance
harassment calls to Mr. DeSouza['s] employer." (*Id.* at 11.)

**\*2** As a result of Mr. Taiman's actions, Mr. DeSouza claims
he suffered damages, including extreme stress, anxiety, loss of
sleep, stress disorder, emotional pain and distress, heartburn,
ulcers, mental anguish, elevated heart rate, irregular heartbeat,
and an increased need for treatment and medication. (*Id.* at
12.)

### II. PROCEDURAL HISTORY

Mr. DeSouza filed his initial complaint on March 25, 2016 (ECF No. 1), and Mr. Taiman moved to dismiss on May 31, 2016. (ECF No. 17.) I granted Mr. Taiman's motion to dismiss on Rule 8 grounds, finding that the complaint did not contain "a short and plain statement of the grounds for the court's jurisdiction," or "a short and plain statement of the claim showing that the pleader is entitled to relief." (ECF No. 30) (quoting Fed. R. Civ. P. 8(a)(1),(a)(2)). I granted Mr. DeSouza leave to file an amended complaint addressing deficiencies in his original complaint. (ECF No. 30.)

Mr. DeSouza filed his First Amended Complaint on March 23, 2017 [1] and Mr. Taiman filed the current motion to dismiss for lack of jurisdiction on April 19, 2017. (ECF No. 36.)

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d. Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court construes the complaint liberally and accepts all factual allegations as true. *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

#### B. Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A court may allow a case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible

on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When a plaintiff submits a *pro se*, the court must construe the allegations liberally, raising "the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F. 3d 509, 515 (2d Cir. 2013)("[A] *pro se* complaint must state a plausible claim for relief.")(citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

### IV. DISCUSSION

**\*3** As Mr. Taimen has moved to dismiss the complaint under Rule 12(b)(1) and Rule 12(b)(6) of Fed. R. Civ. P., I first consider the jurisdictional arguments raised by him. "Where ... a motion to dismiss is made on the ground that the court lacks subject matter jurisdiction as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first, since lack of subject matter jurisdiction may render the other challenges moot." *Nat'l Shooting Sports Found v. Malloy*, 986 F. Supp. 2d 118, 122 (D. Conn 2013)(citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

A. Mr. DeSouza Has Alleged an Injury in Fact that is Fairly Traceable to the Challenged Actions of Mr. Taiman (Counts One to Seven)

Mr. Taiman argues that the Court lacks subject matter jurisdiction over Mr. DeSouza's claims because Mr. DeSouza lacks standing. Specifically, he contends, Mr. DeSouza has not alleged any causal connection between his conduct and Mr. DeSouza's alleged injuries and a favorable decision would not redress his alleged injuries. (ECF No. 36 at 5.)

A plaintiff has standing to sue if he has "(1) suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 94 of 212

DeSouza v. Taiman, Not Reported in Fed. Supp. (2017)

(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Nat'l Shooting Sports Found.* 986 F. Supp. 2d at 122. "If after considering all of the relevant materials, we are unable to discern a basis for the plaintiff's standing, the complaint must be dismissed." *Thompson*, 15 F.3d at 249.

Mr. DeSouza satisfies the constitutional standing requirement because he claims emotional distress, a concrete and actual injury, as a result of Mr. Taiman's actions. (ECF No. 35 at 12.) Mr. DeSouza alleges his injuries stem from a conspiracy between Mr. Taiman, court officials, and counsel for Mr. DeSouza's landlord. While, as discussed below, his allegations are insufficient to plead a cognizable federal claim, they are adequate to plead standing. *See, e.g.* *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 185 (2d Cir. 2001)(emotional trauma suffered as a result of a hostile work environment was an "injury ... sufficient to establish standing under Article III.")

### B. Mr. DeSouza Fails to State a Claim for Which Relief Can Be Granted (Counts One to Seven)

#### 1. Fair Housing Act (Count One)

In his first count, Mr. DeSouza alleges that Mr. Taiman coerced, intimidated, threatened, or otherwise interfered with his rights in violation of 42 U.S.C. § 3617, a provision of the Fair Housing Act. Section 3617 provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The rights protected by Sections 3603-3606 include the right to be free from discrimination on the basis of race, color, religion, sex, family status, national origin, or handicap, in the purchase or rental of a dwelling and related transactions. *See* 42 U.S.C. §§ 3603- 06.

"In order to prevail on a § 3617 claim, a plaintiff must show: "(1) that the plaintiff was engaged in a protected activity; (2) that the defendant was aware of this activity; (3) that the defendant took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity

and the adverse action." *Robbins v. Conn. Inst. for the Blind*, No. 3:10-cv-1712 (JBA), 2012 WL 3940133, at *6 (D. Conn. Sept. 10, 2012).

**\*4** Mr. DeSouza's complaint fails to allege any facts suggesting that Mr. Taiman interfered with his exercise of any rights protected by the Fair Housing Act, because it fails to allege that Mr. DeSouza was engaged in any transaction related to the rental or purchase of a dwelling. Mr. Taiman, as alleged in the complaint, was acting as a lawyer representing a client in a lawsuit, not as a renter or seller of real property or as a real estate agent, broker, or appraiser. The complaint's description of the eviction proceeding concerning Mr. DeSouza's apartment does not suffice to bring this case under the Fair Housing Act because an eviction proceeding is not a rental or sale transaction and does not otherwise fall within the statute. Further, Mr. DeSouza does not make any non-conclusory allegations that Mr. Taiman's actions were in retaliation for the exercise of his Fair Housing rights; he alleges no facts suggestive of a retaliatory motive. *See Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016)(affirming dismissal of a claim under Section 3617 because "a retaliation claim does require a showing of a particular state of mind, i.e. a retaliatory motive," and because "[n]o non-conclusory allegation of fact showing such a motive is in the complaint.") Thus, Mr. DeSouza's 42 U.S.C. § 3617 claim is dismissed.

#### 2. Section 1983 (Count Two)

In his second count, Mr. DeSouza alleges that Mr. Taiman deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997). "[T]he acts of private attorneys are not deemed to be under color of state law, and an otherwise private person acts under color of state law only if he or she conspires with state officials to deprive another of federal rights." *Kash v. Honey*, 38 Fed. Appx. 73, 75-76 (2d Cir. 2002)(internal citations and quotation marks omitted).

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 95 of 212

DeSouza v. Taiman, Not Reported in Fed. Supp. (2017)

To state a claim against a private entity on a 🚩 section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act. Put differently, a private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents. A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a 🚩 § 1983 claim against the private entity.

*Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)(internal citations and quotation marks omitted).

Mr. DeSouza does not allege any facts, beyond merely conclusory allegations, to suggest that Mr. Taiman was a state actor or that there was a conspiracy to deprive him of his constitutional rights between Mr. Taiman and any state actor. In the absence of any factual basis to support a conspiracy, and because Mr. Taiman himself is not a state actor, but instead a private attorney, Mr. DeSouza fails to state a claim under 🚩 42 U.S.C. § 1983.

3. 🚩 Section 1985 (Count Three)

In his third count, Mr. DeSouza alleges that Mr. Taiman conspired to deter him from attending or testifying in court by use of force, threats or intimidation in violation of 🚩 42 U.S.C. § 1985(2). A conspiracy claim under 🚩 Section 1985(2):

[R]equires (1) a conspiracy (2) for the purpose of impeding, hindering, obstructing, or defeating in any manner, (3) the due course of justice in any [state court], (4) with intent to

deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

*Marshall v. Webster Bank, N.A.*, No. 3:10-cv-908, 2011 WL 219693 at *9 (D. Conn., Jan. 21, 2011). Mr. DeSouza also alleges that Mr. Taiman conspired to deprive him of his right to equal protection under the law by preventing him from advocating for himself in a legal proceeding under 🚩 42 U.S.C. § 1985(3). A conspiracy claim under 🚩 Section 1985(3):

**\*5** [R]equires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). In order to prevail under either claimed subsection of 🚩 42 U.S.C. § 1985, Mr. DeSouza must "provide some factual basis supporting a meeting of the minds, such that defendant[ ] entered into an agreement, express or tacit, to achieve the unlawful end." *Kalderon v. Finkelstein*, 495 Fed. Appx. 103, 108 (2d Cir. 2012).

Mr. DeSouza's 🚩 Section 1985(2) claim provides no facts to support a meeting of the minds, and further, provides no facts to prove intent on Mr. Taiman's part to impede justice or deny Mr. DeSouza equal protection under the law. To the contrary, Mr. DeSouza's complaint alleges that he attended

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 96 of 212

DeSouza v. Taiman, Not Reported in Fed. Supp. (2017)

court and testified on his own behalf. *See* ECF No. 35 at 9. Mr. DeSouza's ⚑Section 1985(3) claim similarly fails to plead any facts establishing a conspiracy or any intent to deprive his equal protection or property rights. Further, Mr. DeSouza pleads no facts suggesting racial or class-based discriminatory animus. For all these reasons, he fails to state a claim under ⚑42 U.S.C. § 1985.

### 4. ⚑Section 1981 (Count Four)

In his fourth count, Mr. DeSouza alleges that Mr. Taiman interfered with Mr. DeSouza's "right ... to make and enforce contracts, to sue, be [a party], give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." ⚑42 U.S.C. § 1981(a). "To establish a ⚑§ 1981 claim, a plaintiff must show: 1) that he is a member of a racial minority; 2) an intent to discriminate on the basis of race by the defendant; and 3) that the discrimination concerned one or more of the activities enumerated in ⚑§ 1981." *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000). While Mr. DeSouza's complaint alleges sufficient facts to meet the first prong, it stumbles on the second and third prongs. The second prong requires "alleged facts which give plausible support to a minimal inference of discriminatory motivation." ⚑*Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Mr. DeSouza's complaint does not allege any facts to support even a "minimal inference of discriminatory motivation," relying instead solely on conclusory allegations. In support of his claim that Mr. Taiman intended to discriminate against him on the basis of his race, Mr. DeSouza provides only conclusory remarks such as "oppressive RACISTS bias motives contrary to and in violation of the law," (ECF No. 35 at 13), "defendant with evil and demonic RACISTS intent," (*Id.*), and "[t]he defendant, a deviant, evil conman with oppressed racial motives...." (*Id.* at 6.) Further, as noted above, the complaint provides no facts suggesting that Mr. Taiman interfered with Mr. DeSouza's right to be a party, give evidence, or take any of the other actions identified in the statute. As noted, the complaint alleges that Mr. DeSouza was a party to an eviction action and testified at trial. Therefore, his ⚑42 U.S.C. § 1981 claim is dismissed.

### 5. Mr. DeSouza's Claims Under ⚑18 U.S.C. §§ 241, ⚑242 and ⚑42 U.S.C. § 3631 Invoke Criminal Statutes That Provide No Private Right of Action (Counts Five, Six and Seven)

**\*6** Mr. DeSouza alleges that Mr. Taiman violated ⚑18 U.S.C. §§ 241 and ⚑242, and ⚑42 U.S.C. § 3631. Because these are criminal statutes, they provide no private cause of action. *Xu v. Neubauer*, 166 F. Supp. 3d. 203, 207 (D. Conn. 2015) ("Federal criminal statutes do not provide private rights of action."). *See also* ⚑*Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints."); *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009)("[F]ederal criminal statutes do not provide private causes of action"). Thus, Mr. DeSouza has failed to state a claim in these counts. *Hill v. Didio*, 191 Fed. Appx. 13, 14 (2d Cir. 2006)("[T]here is no private right of action under ⚑section 242 ... nothing in the language or structure of section[ ] 241 ... suggests that Congress intended to create a private right of action...."; *See also* ⚑*Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308, 311–12 (2d Cir. 2000); ⚑*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). *Branson v. Malott*, No. 1:11-CV-807, 2012 WL 1950274, at \*7 (S.D. Ohio 2012)(Noting ⚑42 U.S.C. § 3631 is "criminal in nature and there is no private right of action for violation of this section.") *See also Blechinger v. Sioux Falls Housing and Redevelopment Comm'n*, No. 12-4004, 2012 WL 174653, at \*3 (D.S.D. Jan. 20, 2012); *Jack v. Stubblefield*, No. 5:09–cv–46, 2009 WL 1809931, at \*2 (W.D. Va. June 22, 2009).

### V. CONCLUSION

For the reasons stated above, the motion to dismiss (ECF No. 36) is GRANTED because Mr. DeSouza has failed to state a claim for which relief can be granted.

IT IS SO ORDERED.

DeSouza v. Talman, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 97 of 212

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3444672


## Footnotes


1   Plaintiff initially filed his First Amended Complaint on March 20, 2017 (ECF No. 32), and subsequently refiled
    with minor edits on March 23, 2017. (ECF No. 35.) The Court will treat Plaintiff's most recent filing (ECF No.
    35) as the operative complaint.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 98 of 212

2017 WL 6001833
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-0510 (BKS/TWD)
|
Signed 12/04/2017

**Attorneys and Law Firms**

Kiplind L. Cruz, Cincinnatus, NY, Plaintiff, pro se

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**\*1** On May 9, 2017, pro se Plaintiff Kiplind L. Cruz initiated this action by filing a document described as a "petition for writ of habeas corpus" and "defendants federal removal from State of New York, County of Cortland, Chenango, Onondaga, New York State Cortland County Combined Court" to this Court (Dkt. No. 1), with an attached "Complaint" under 42 U.S.C. §§ 1983, 1985, and 1986 (Dkt. No. 1-2). Plaintiff later filed a motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) and a motion to amend (Dkt. No. 9). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on October 27, 2017, issued an Order and Report-Recommendation recommending that: 1) any state court proceedings arguably covered by Plaintiff's notice of removal be remanded to state court, and the Court find that no state court proceedings have been properly removed; 2) Plaintiff's petition for writ of habeas corpus be dismissed with prejudice; 3) Plaintiff's motion to amend be denied; 4) Plaintiff's complaint be dismissed on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), and, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be with prejudice; 5) Plaintiff's motion for a temporary restraining order and a preliminary injunction be denied as moot, or in the alternative, on the merits; and 6) the Court order that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children. Dkt. No. 15. Magistrate Judge

Dancks advised Plaintiff that, under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. *Id.* at 49. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 15) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's petition for writ of habeas corpus (Dkt. No. 1) is **DISMISSED WITH PREJUDICE;** and it is further

**ORDERED** that no state court proceedings have been properly removed to this Court; and it is further

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1-2) is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal is **WITH PREJUDICE**; and it is further

**\*2 ORDERED** that Plaintiff is granted leave to file an amended complaint with respect to the sex discrimination claim which is the subject of his Human Rights Division complaint, within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within the thirty (30) days, that this action be closed without further Order of the Court; and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) is **DENIED AS MOOT**; and it is further

**ORDERED** that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children, and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6001833

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4207282

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Daniel MILLER, Plaintiff,

v.

Sharon E. CARPINELLO, R.N. Ph.D.,

Commissioner, New York State Office

of Mental Health, et al., Defendants.

No. 06 CV 12940(LAP).

|

Nov. 20, 2007.

*MEMORANDUM AND ORDER*

LORETTA A. PRESKA, District Judge.

**\*1** Plaintiff *pro se,* a former inpatient at Mid-Hudson and Kirby Forensic Psychiatric Centers, brings this action for injunctive and monetary relief. Plaintiff seeks recovery under 📁 42 U.S.C. §§ 1983, 📁 1985 & 1986, 📁 1997, and 📁 14141; 📁 18 U.S.C. §§ 1961 *et seq.;* and for common law medical malpractice, defamation, and assault and battery Defendants Sharon E. Carpinello (the "Commissioner"), Richard Miraglia, Howard Holanchock, William McKenna, Vincent Spizzo, Salil Kathpalia, Muhammed Malik, Warren Skov, Intezar Shah, Brent Firester, Cheryl Fidanque, Steve Willis, Ronald Massotti, Steven Jackson, Michael Beattie, Ernest Fortune, Ronald Cadet, John Monteforte, Thomas Catizone, Eileen Consilvio, Josephine Jermott, James Hicks, Cristina Musat, "John" Chuchwocha, "Jane" Meyers, Paul Sanon, Daniel Sellig, S. Machanical, Carolyn Todd, M. Epps, and the New York State Commission on Quality of Care and Advocacy for Persons with Disabilities ("CQC") (collectively, the "State Defendants") move to dismiss the Complaint pursuant to 📁 Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.[1]

For the reasons set out below, all of plaintiff's federal claims are dismissed with prejudice, and his state claims are dismissed without prejudice.

**FACTS**[2]

Plaintiff was arrested in May 2003 for "inter alia" criminal possession of stolen property. Complaint, ¶ 44. He was found incompetent to stand trial under Article 730 of the New York Criminal Procedure Law and was admitted to Mid-Hudson. *Id.,* ¶¶ 44, 49, 50, 52. Clinicians at Mid-Hudson found plaintiff fit to proceed to trial, but plaintiff subsequently was found incompetent and, on June 2, 2004, was admitted to Mid-Hudson for a second time. *Id.,* ¶¶ 54-57. After his second admission to Mid-Hudson, about 3,500 pages of legal papers from plaintiff's criminal papers were found to be missing. *Id.,* ¶¶ 61-65. On June 4, 2004, a treatment plan was prepared for plaintiff. *Id.,* ¶ 67.

On the evening of June 11, 2004, SHTAs Parlinski and Neznanyj took plaintiff to a quiet room. Plaintiff alleges that Neznanyj knocked some papers out of his hand and accused him of bringing in contraband, that Parlinski told Neznanyj to leave and then threatened plaintiff. *Id.,* ¶¶ 68-73. Later, Plaintiff alleges, Neznanyj took plaintiff back to the quiet room and struck plaintiff with his fist and hand. *Id.,* ¶ 74. Neznanyj was arrested, tried, and convicted of two counts of assault on plaintiff. *Id.,* ¶ 78.

Clinicians at Mid-Hudson found plaintiff fit to proceed on his criminal charges, but the criminal court again determined that plaintiff was unfit to proceed. In October 2004, plaintiff was admitted to Kirby, where he allegedly was verbally harassed. *Id.,* 90, 93, 95, 102. While at Kirby, several psychiatrists determined that he was fit to proceed to trial on his criminal charges. *Id.,* ¶ 111 & Exh. J. One psychiatrist concluded that plaintiff did not need medication, and two other psychiatrists allegedly disagreed with that determination but did not challenge it. *Id.,* ¶¶ 107-09. In November 2004, Dr. Hicks, Kirby's Clinical Director, filed a competency report with the criminal court stating that plaintiff was fit to proceed to trial and that plaintiff was malingering. *Id.,* ¶ 111 & Exh. J.

**Analysis**

**I. PLAINTIFF'S CLAIMS AGAINST CQC AND CLAIMS FOR MONETARY DAMAGES AGAINST THE STATE DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE DISMISSED**

**\*2** The Eleventh Amendment bars suits in federal court by citizens against a state and its agencies, absent waiver

of immunity and consent to suit by the state or abrogation of constitutional immunity by Congress. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993);*

*Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 97-100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The State of New York has neither consented to suit in federal court nor waived its Eleventh Amendment immunity. *See Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir.1977). In enacting Section 1983, Congress did not abrogate the states' Eleventh Amendment immunity. *See Dube v. State Univ. of New York,* 900 F.2d 587, 594 (2d Cir.1990).

CQC is an agency within the executive department of the State of New York. *See* N.Y. Mental Hygiene Law § 45.03(a) (McKinney 2006); *In the Matter of Reckess v. New York State Commission on Quality of Care for the Mentally Disabled,* 7 N.Y.3d 555, 557, 825 N.Y.S.2d 178, 179, 858 N.E.2d 772 (2006). As such, CQC is constitutionally immune from suit in federal court, and plaintiff's claims against CQC are dismissed.

The Eleventh Amendment also bars claims against state employees sued in their official capacities. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 § 1991); *Pennhurst,* 465 U.S. at 102. [3]  All of the individual State Defendants are employees of OMH, and plaintiff sues them in their official and individual capacities. Complaint, I, at 3. As part of the relief sought, plaintiff demands compensatory and punitive damages. Id-/ VI, C, at 35-36. Based on Eleventh Amendment immunity, all claims for compensatory and punitive damages against the individual State Defendants in their official capacities are dismissed.

## II. PLAINTIFF'S CLAIMS FOR PROSPECTIVE INJUNCTIVE RELIEF ARE DISMISSED

A plaintiff seeking prospective injunctive relief must show that he is realistically threatened by a repetition of the experience for which he seeks the injunction. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105-06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Plaintiff seeks to enjoin the State Defendants from using excessive force against patients in OMH facilities, enforcing the collective bargaining agreement between NYSCOPBA and OMH, and transferring

any assets or property during the pendency of this action. Complaint, VI, B, at 35. Because Plaintiff has not shown that he is realistically-threatened with being committed to a psychiatric center and with assault, theft of property, or other serious misconduct while committed, he lacks standing to seek prospective injunctive relief. Accordingly, all such claims are dismissed. *See* id. at 105-06.

## III. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 ARE DISMISSED

### A. Plaintiff Identifies No Right That the State Defendants Violated

Section 1983 authorizes an aggrieved party to bring a claim but does not create any substantive rights. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114, *reh. denied* 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688 (1994); *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 618, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). As a result, to assert a claim under Section 1983, a plaintiff must allege that the defendants violated a right protected by the United States Constitution or a federal statute other than Section 1983. *See Albright,* 510 U.S. at 271 (citations omitted).

 **\*3**  Plaintiff alleges only that "[a]s a result of the acts of the defendants, and each of them, plaintiff has suffered gross violations of his civil rights under 42 U.S.C. § 1983, all to his damage." Complaint, ¶ 112. Plaintiff thus merely alleges that the State Defendants violated Section 1983. Because plaintiff does not identify the Constitutional or statutory right that the State Defendants allegedly violated, or a state which acts by which State Defendants allegedly violated a Constitutional or statutory right, all claims under Section 1983 are dismissed.

### B. The Section 1983 Claims Are Also Dismissed Because Plaintiff Fails To Show Personal Involvement In Any Violation

A defendant's personal involvement in an alleged deprivation of a federal right is a prerequisite to a finding of liability against him under Section 1983. *See Hernandez v. Keane,* 341 F.3d 137, 144-45 (2d Cir.2003), *cert. denied,* 543

U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005). Personal involvement means "direct participation or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (citation omitted). A supervisor's receipt of notice asserting that conduct is improper or unlawful is insufficient to allege his or her personal involvement. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Rivera v. Goord,* 119 F.Supp.2d 327, 344 (S.D.N.Y.2000). In addition, verbal harassment is insufficient to state a claim of constitutional deprivation under Section 1983. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)); *Sloane v. Mazzuca,* 2006 U.S. Dist. LEXIS 79817, *39, 2006 WL 3096031 (S.D.N.Y., October 31, 2006).

Plaintiff fails to show participation in any alleged violation of any federal right because he does not allege that any of the State Defendants participated directly in any of the conduct complained of, created any policy or practice under which that conduct occurred, failed to remedy a wrong, or was grossly negligent in managing subordinates.

Plaintiff's sole allegations concerning the Commissioner, the head of OMH, and Mr. Miraglia, the Director of OMH's Bureau of Forensic Services, are that they received a letter demanding that a decision by doctors at Mid-Hudson finding plaintiff fit to proceed to be rescinded (Complaint, ¶ 90), and that plaintiff's family contacted them concerning plaintiff's placement at a psychiatric facility. *Id.,* ¶ 94.

Plaintiff alleges that William McKenna, Mid-Hudson's Director of Forensic Services, received a letter demanding that a decision by doctors at Mid-Hudson finding plaintiff fit to proceed be rescinded. *Id.,* ¶ 90.

Plaintiff alleges that Howard Holanchock, Mid-Hudson's Executive Director, and Vincent Spizzo, Mid-Hudson's Forensic Coordinator, received a copy of letter demanding that a decision by doctors at Mid-Hudson finding plaintiff fit to proceed be rescinded. *Id.* Plaintiff also alleges that Mr. Holanchock received a letter stating that plaintiff had been assaulted by an SHTA (*id.,* ¶ 77), and that Mr. Spizzo received a copy of a letter asserting that plaintiff's legal papers were missing (*id.,* ¶ 66).

**\*4** Plaintiff alleges that defendants Muhammed Malik, Mid-Hudson's Chief Medical Examiner, and Warren Skov, a unit chief at Mid-Hudson, received a copy of a letter asserting that plaintiff's legal papers were missing. *Id.,* ¶ 66.

Plaintiff's only allegations against defendant Steve Willis, a registered nurse at Mid-Hudson, are that he was in a treatment team room when defendant Neznanyj told plaintiff to leave his property at the SHTA desk (*id.,* ¶ 61), and that he prepared a treatment plan (*id.,* ¶ 67).

Plaintiff alleges that defendant Brent Firester, a social worker, and Cheryl Fidanque, a psychologist, were in a treatment team room when defendant Neznanyj told plaintiff to leave his property at the SHTA desk (*id.,* ¶ 61), that they received a copy of a letter concerning missing legal papers (*id.,* ¶ 66), and that they prepared a treatment plan (*id.,* ¶ 67).

Plaintiff alleges that defendant Dr. Kalil Kathpalia, Mid-Hudson's Clinical Director, and Dr. Intezar Shah, a psychiatrist, received a copy of a letter concerning alleged missing legal papers (*id.,* ¶ 66), and converted plaintiff's treatment plan by finding that he was fit to proceed to trial (*id.,* ¶¶ 89-90). Similarly, plaintiff alleges that defendant Dr. Intezar H. Shah, a psychiatrist, was in a treatment team room when defendant Neznanyj told plaintiff to leave his property at the SHTA desk. *Id.* ¶ 61. A physician's receipt of a letter about missing property and his clinical determination that a psychiatric patient who has been charged with a crime is fit to proceed to trial do not establish personal involvement in the deprivation of any federal right.

Plaintiff's only allegation against SHTA Massotti is that he prepared a comprehensive treatment plan. *Id.,* ¶ 67.

Plaintiff's only specific factual allegations against SHTAs Jackson, Fortune, Cadet, Monteforte, Catizone, and Beattie are that Jackson prepared a treatment plan and that Jackson, Fortune, Cadet, and Beattie were at the SHTA desk when defendant Neznanyj told plaintiff to leave his property near the desk. [4] *See id.,* ¶¶ 61, 67.

Plaintiff alleges that he was verbally harassed at Kirby on several occasions and that he sent a copy of a complaint about this harassment to defendant Consilvio, Kirby's Executive Director. *Id.,* ¶¶ 102, 104.

Plaintiff's only allegation concerning defendant Jermott, Kirby's Risk Manager, is that plaintiff filed a complaint with her concerning verbal harassment by others. *Id.,* ¶¶ 102-03.

Plaintiff alleges that Drs. Sellig and Musat verbally harassed him and that Drs. Musat, Chuchwocha, and Hicks accused him of malingering and told him they would interfere with his criminal case. *Id.,* ¶¶ 98, 102, 107. In addition, plaintiff alleges that Musat removed him from medication. *Id.,* ¶ 107. A psychiatrist's decisions that a patient facing criminal charges is competent to stand trial and does not need medication do not constitute a violation of a federal right.

**\*5** Plaintiff alleges that Dr. Sanon, a psychiatrist, and Dr. Meyers, also a psychiatrist, told him that they did not agree with the decision to remove him from medication but that they would not interfere with that decision. *Id.,* ¶¶ 108-09. Plaintiff provides no support for the proposition that psychiatrists violate a patient's federal rights by telling him that, though they disagree with another psychiatrist, they will adhere to his or her treatment decision, and the Court is aware of no such authority.

Plaintiff alleges that defendant S. Machanical, a treatment team leader, Carolyn Todd, a social worker, and M. Epps, an SHTA, verbally harassed him. *Id.,* U 102.

None of these allegations shows that any State Defendant was personally involved in wrongdoing, and, accordingly, plaintiff's 🚩 Section 1983 claims are dismissed.

### IV. PLAINTIFF'S CLAIMS UNDER 🚩 42 U.S.C. §§ 1997 and ❓ 14141 ARE DISMISSED

Plaintiff's claims under the Civil Rights of Institutionalized Persons Act, 🚩 42 U.S.C. §§ 1997, *et seq.,* and the Violent Crime Control and Law Enforcement Act, ❓ 42 U.S.C. §§ 14141, *et seq.,* are dismissed because those statutes do not provide a private right of action. *See* 🚩 *Kee v. Hasty,* 2004 U.S. Dist. LEXIS 6385, \*82, 2004 WL 807071 (S.D.N.Y., April 14, 2004) (🚩 Sections 1997 and 1997a do not provide a private right of action); *Greer v. Hillsborough Co. Sheriff's Dept.,* 2005 U.S. Dist. LEXIS 40917, \*8, 2005 WL 2416031 (M.D.Fla., September 30, 2005) § ❓ Section 14141 does not provide a private right of action); *Inkel v. Bush,* 2004 U.S.

Dist. LEXIS 21138, \*9, 2004 WL 2381747 (D.Conn., October 19, 2004) (no private right of action under ❓ Section 14141).

### V. PLAINTIFF'S CLAIMS UNDER 🚩 42 U.S.C. §§ 1985 and 1986 ARE DISMISSED

Plaintiff alleges, pursuant to 🚩 42 U.S.C. §§ 1985 and 1986, that defendants Carpinello, Miraglia, Holanchock, McKenna, Spizzo, Kathpalia, Malik, Shah, Skoc, Fidanque, Firester, Jackson, Massotti, Consilvio, Jermott, Hicks, Musat, Chuchwocha, Machanical, Sellig, Meyers, Sanon, Todd, Epps, and CQC conspired to violate his rights under 🚩 42 U.S.C. §§ 1983, 🚩 1997, and ❓ 14141.

🚩 Section 1985(2) creates a cause of action against persons who conspire to obstruct justice and intimidate litigants, witnesses or jurors. [5] *See* 🚩 42 U.S.C. § 1985(2). Similarly, 🚩 Section 1985(3) creates a cause of action against persons who conspire for the purpose of depriving any person of equal protection, or equal privileges and immunities, under the laws. *See* 🚩 *id., § 1985(3).* To establish a claim under either 🚩 Section 1985(2) or 🚩 (3), a plaintiff must allege facts showing that "class-based discriminatory animus" motivated the alleged conspiracy. *See* ⚠️ *Williams v. The City of Mount Vernon,* 428 F.Supp.2d 146, 160 (S.D.N.Y.2006); *Jones v. National Communication and Surveillance Networks,* 409 F.Supp.2d 456, 472 (S.D.N.Y.2006) (citations omitted). Plaintiff fails to allege that he is a member of any particular class or that any deprivation of his rights occurred on account of class-based discrimination.

**\*6** 🚩 Section 1986 creates a cause of action against any person who, knowing of wrongs done in violation of 🚩 Section 1985 and having power to prevent those wrongs, fails to use reasonable diligence to prevent them. *See* U.S.C. § 1986. Plaintiff's claims under Section 1986 are dismissed because any claim under Section 1986 " 'must be predicated upon a valid [🚩 Section] 1985 claim.' " *Jones,* 409 F.Supp.2d at 473 (quoting 🚩 *Brown v. City of Oneonta,* 221 F.3d 329, 342 (2d Cir.2000) and *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993)). As demonstrated above, plaintiff has no 🚩 Section 1985 claim and, thus, no Section 1986 claim.

## VI. PLAINTIFF'S RICO CLAIMS ARE DISMISSED

### A. Plaintiff Lacks Standing to Bring a RICO Claim

A plaintiff has standing to bring a RICO claim only if he has been injured in his business or property by the conduct constituting the RICO violation and only when his actual loss is clear and definite. *See Penney v. Deutsche Bank AG,* 443 F.3d 253, 266 (2d Cir.2006) (citations omitted). *See also Dornberger v. Metropolitan Life Ins. Co.,* 961 F.Supp. 506, 521 (S.D.N.Y.1997) (RICO plaintiff must allege some actual, definite pecuniary loss). A plaintiff cannot bring a RICO claim based on physical or emotional injuries. *See Williams v. Dow Chem. Co.,* 255 F.Supp.2d 219, 225 (S.D.N.Y.2003) (citations omitted).

Plaintiff lacks standing to bring a RICO claim because he alleges no injury to his business or property. Instead, plaintiff's principal claim is that he suffered physical and emotional injuries (*see* Complaint, ¶¶ 73, 88-89, 117-18), which cannot support a RICO claim. *See Williams v. Dow Chem. Co.,* 255 F.Supp.2d at 225. Although plaintiff does allege that certain property-legal papers from his criminal cases-was stolen (Complaint, ¶¶ 64, 87), plaintiff does not identify any pecuniary or other clear and definite loss that he incurred because of the alleged theft of legal papers. Consequently, plaintiff does not allege an injury to his business or property and lacks standing to bring a RICO claim.

### B. Plaintiff Fails to State a Substantive RICO Claim

To state a RICO claim, a plaintiff must allege a violation of 18 U.S.C. § 1962, the substantive RICO statute, and allege that violation caused his injury. *See Kirk v. Heppt,* 423 F.Supp.2d 147, 150 (S.D.N.Y.2006). To plead a claim under Section 1962, plaintiff must allege:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an

enterprise (7) the activities of which affect interstate or foreign commerce.

*Id.* (citations and internal quotation marks omitted). To establish a pattern of racketeering activity, the plaintiff must allege that the defendant engaged in two or more of the "predicate acts" listed in Section 1961(1). *See Hoatson v. New York Archdiocese,* 2007 U.S. Dist. LEXIS 9406, ----8-ll, 2007 WL 431098 (S.D.N.Y., February 8, 2007); *Kirk,* 423 F.Supp.2d at 150.

**\*7** Plaintiff fails to state a claim under Section 1962 because the acts he cites as RICO violations do not constitute predicate acts or acts proscribed by Section 1961(1). Plaintiff cites five acts as predicate acts of racketeering activity. Complaint, ¶¶ 84-88. The alleged predicate acts are: (1) conspiring to assault a particular patient in violation of 18 U.S.C. § 1959(a)(6); (2) assaulting that same patient in violation of 18 U.S.C. § 1959(a) (6); (3) stealing plaintiff's property and harassing plaintiff in violation of 18 U.S.C. §§ 1512 and 1513; (4) conspiring to assault plaintiff in violation of 18 U.S.C. § 1959(a)(6) and 18 U.S.C. §§ 1512 and 1513; and (5) assaulting plaintiff in violation of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. §§ 1512 and 1513.

18 U.S.C. § 1959 is not listed in 18 U.S.C.1961(1), and thus a violation of it does not constitute a RICO predicate act. *See Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 586 (S.D.N.Y.1995) (the offenses that may serve as predicate acts are exclusively listed in 18 U.S.C. § 1961(1)). As a result, plaintiff may not rely on alleged violations of Section 1959 to establish a RICO claim, and the first two acts that he cites do not constitute predicate acts.

Although 18 U.S.C. §§ 1512 and 1513 are listed in 18 U.S.C. § 1961(1), and a violation of them may constitute predicate acts, plaintiff fails to allege facts sufficient to state a violation of either Section 1512 or 1513. In essence, Section 1512 proscribes using physical force, threats, or persuasion to tamper with a witness in an "official

proceeding" or to hinder, delay or prevent the communication to a law enforcement official or federal judge of information relating to the possible commission of a federal offense. *See* 18 U.S.C. § 1512 (West 2000 & Supp.2006). In essence, Section 1513 proscribes knowingly-causing bodily injury to a person or damaging a person's property, or threatening to do so, with intent to retaliate against any person for being a witness at an official proceeding or providing information relating to the commission of a federal offense. *See id.,* § 1513 (West 2000 & Supp.2006).

Plaintiff does not allege that any official proceeding was pending at the time that the alleged physical force, threats, persuasion, or damage to property occurred.[6] In addition, plaintiff does not allege that any State Defendant hindered, delayed, or prevented the communication of information to any law enforcement official or federal judge relating to any federal offense. Plaintiff also does not allege that any State Defendant knowingly caused him bodily injury or damaged his property, or threatened to do so, to retaliate against him for being a witness at an official proceeding or for providing information relating to the commission of a federal offense. Consequently, plaintiff may not rely on alleged violations of Sections 1512 and 1513 as predicate acts to support a RICO claim.

 **\*8** Plaintiff also fails to state a substantive RICO claim because he does not allege that the enterprise is a continuing unit that exists separate and apart from its alleged illegal activities. *See Hoatson,* 2007 U.S. Dist. LEXIS 9406, ----9-10, 2007 WL 431098. Plaintiff alleges that the enterprise consists of defendants NYSCOPBA, Parlinski, Neznanyj, Fortune, Cadet, Beattie, Catizone, and Jackson, who are members of NYSCOPBA, and that the enterprise engages in "acts and threats involving assault, tampering with witnesses, victims and informants, and retaliating against witnesses, victims and informants, which acts and threats are chargeable and punishable as felonies ...." Complaint, ¶¶ 79, 82-83. Plaintiff thus simply alleges that a group of union members committed some illegal acts. Because plaintiff fails to allege that this supposed unit has any independent or continuing existence apart from the illegal acts, he fails to allege the existence of an enterprise.

Plaintiff fails to allege a substantive RICO claim for the additional reason that he fails to show that the enterprise is engaged in, or that its activities affect, interstate commerce. According to plaintiff, the enterprise receives and distributes firearms and ammunition that previously had been shipped in interstate commerce and uses computers, telephones, communication devices, and the United States mail. *Id.,* ¶ 80. Individuals working at a psychiatric facility cannot be said to be engaged in interstate commerce, or in activities that affect interstate commerce, simply because they use equipment previously shipped in interstate commerce or because they use communication devices or services.

## VII. PLAINTIFF'S COMMON-LAW CLAIMS ARE DISMISSED WITHOUT PREJUDICE

A district court should decline to exercise supplemental jurisdiction over state law claims when it has dismissed all of the claims over which it has original jurisdiction.

*See Sadallah v. City of Utica,* 383 F.3d 34, 40 (2d Cir.2004) (citations omitted). Plaintiff asserts the state law claims of medical malpractice, defamation, and assault and battery. Complaint, ¶¶ 117-18. As demonstrated above, all of plaintiff's federal claims, which, if viable, would provide a basis for federal jurisdiction, are dismissed. Accordingly, the Court declines to exercise jurisdiction over the state law claims.

## CONCLUSION

For all the foregoing reasons, the State Defendants' motion to dismiss [dkt. no. 42] is granted. Dismissal is with prejudice as to plaintiff's federal law claims and without prejudice as to his state law claims.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4207282

## Footnotes

1    Plaintiff also sues the New York State Correction Officers and Police Benevolent Association ("NYSCOPBA") and Cheryl Parlinski and Taras Neznanyj, two security hospital treatment assistants ("SHTAs") at Mid-Hudson. It does not appear that Ms. Neznanyj has been served.

2    The facts set forth are taken from the allegations of the Complaint and its attachments.

3    A narrow exception to this bar is that when a plaintiff alleging a violation of federal law sues a state employee, the court may award prospective injunctive relief against the employee's future official conduct.

      *See* 🚩 *Pennhurst,* 465 U.S. at 102-03. *See generally Ex Parte* 🚩 *Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

4    Plaintiff also alleges, conclusorily, that these defendants conspired to assault him, also an insufficient allegation. *E.g., Bussey v. Phillips,* 419 F.Supp.2d 569, 586 (S.D.N.Y.2006).

5    Plaintiff does not specify the subdivision of 🚩 Section 1985 that he alleges was violated. 🚩 Section 1985(1) concerns claims against persons who conspire to injure anyone entitled to hold, or holding, an office of the United States and is thus inapplicable. Accordingly, only subdivisions 1985(2) and (3) are even conceivably applicable here.

6    In particular, plaintiff fails to identify any federal proceeding pending at the time of the alleged witness tampering. Proceedings in state courts or before state administrative bodies are not official proceedings, and witness tampering with respect to them does not violate 🚩 Section 1512 or constitute a predicate act under RICO. *See Park South Assoc. v. Fischbein,* 626 F.Supp. 1108, 1113 (S.D.N.Y.), *aff'd,* 800 F.2d 1128 (2d Cir.1986).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4777256
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL; and
Jesus Christ Ministries, Plaintiffs,
v.
CITY OF SYRACUSE; Sgt. Carleo, Syracuse
Police Officer; Sisley, Syracuse Police Officer;
Wolfe, Syracuse Police Officer; Kimpel, Syracuse
Police Officer; Marcus DeBottis, Jr., Syracuse
Police Officer; Lago, Syracuse Police Officer; and
Ranette Releford, CRB Administrator, Defendants.

5:21-CV-0915 (DNH/ML)
|
Signed 09/16/2021

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Pro se Plaintiff, 1409 South
McBride Street, Syracuse, New York 13202.

### ORDER and REPORT-RECOMMENDATION

Miroslav Lovric, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 2) filed by Bishop Abraham S. Israel ("Plaintiff")
to the Court for review. For the reasons discussed below, I
grant Plaintiff's *in forma pauperis* application (Dkt. No. 2)
and recommend that Plaintiff's Complaint (Dkt. No. 1) be (1)
accepted in part for filing, and (2) dismissed (a) in part without
leave to amend, and (b) in part with leave to amend.

## I. BACKGROUND

On August 13, 2021, Plaintiff [1] commenced this action by
filing a Complaint and a motion to proceed *in forma pauperis*.
(Dkt. Nos. 1, 2.)

Construed as liberally as possible, the Complaint alleges that
Plaintiff's civil rights were violated by Defendants City of
Syracuse, Sgt. Carleo, Sisley, Wolfe, Kimpel, Marcus
DeBottis, Jr., Lago, and Ranette Releford ("Defendants")
during his interactions with them. (*See generally* Dkt. No. 1
[Compl.].)

More specifically, the Complaint alleges that on or about
July 17, 2020, Plaintiff was at a mall in Syracuse, New York
("Destiny USA") preaching the gospel, when Defendants
Sisley and Wolfe approached him, escorted him to a private
room, detained him for approximately twenty minutes, then
escorted him out of Destiny USA and served him with an
appearance ticket—which was ultimately dismissed. (*Id.* at
6-7.) Plaintiff alleges that during this incident, Defendants
Sisley and Wolfe took Plaintiff's passport, "papers," and
$10.00, all without a warrant. (*Id.*) Plaintiff alleges that he
reported this incident to the Citizen's Review Board ("CRB"),
was contacted by Defendant Carleo for an in-person interview
in August 2020, but that Defendant Carleo failed to "rectify[ ]
and safeguard[ ] Plaintiff's civil rights," and thus, "knowingly
and unlawfully participated in the 'racketeering activity.'
" (*Id.* at 6-8.)

Plaintiff alleges that on December 13, 2020, the Syracuse
Police Department was summoned to 1409 South McBride
Street, Syracuse, New York 13202, which is Plaintiff's church
("Jesus Christ Ministries"). (*Id.* at 8-9.) Plaintiff alleges
that Defendant Kimpel responded, entered Jesus Christ
Ministries without a warrant, searched and seized Plaintiff's
sword, and then made Plaintiff and his wife, Natalia Israel,
lock up and leave the premises. (*Id.*) Plaintiff alleges that
approximately one hour later, at an unidentified location,
by an unidentified individual, Plaintiff was assaulted and
suffered minor contusions to his face, a swollen, black
eye, and was hospitalized. (*Id.*) Plaintiff alleges that he
called the Syracuse Police Department, Defendant Kimpel
again responded, Plaintiff reported to Defendant Kimpel who
assaulted him, and Defendant Kimpel informed Plaintiff that a
warrant would be issued for that person's arrest. (*Id.*) Plaintiff
alleges that on December 14, 2020, he called the Syracuse
Police Department and discovered that Defendant Kimpel
wrote a false report for a missing person, instead of the assault
on Plaintiff. (*Id.* at 9-10.)

**\*2** Plaintiff alleges that on April 23, 2021, he and his wife
were engaged in an alleged domestic dispute and Defendant
DeBottis was the responding officer. (*Id.* at 10.) Plaintiff
alleges that when Defendant DeBottis arrived on scene,
Plaintiff was approximately one block away near his vehicle.
(*Id.*) Plaintiff alleges that, without a warrant, Defendant
DeBottis approached Plaintiff, placed him under arrest,
placed handcuffs on him, seized his personal possessions—
including his passport, papers, and identification—and took
him to jail based on unsubstantiated allegations. (*Id.*) Plaintiff

alleges that he spent seventeen days in jail as a result of this incident. (*Id.*)

Plaintiff alleges that on August 12, 2021, he called the police because his wife threatened to shoot him at Jesus Christ Ministries. (*Id.* at 11.) Plaintiff alleges that Defendant Lago responded to the call and when he arrived, Plaintiff was alone. (*Id.*) Plaintiff alleges that he signed an accusatory instrument against his wife and indicated that he wanted to press charges against her. (*Id.*) Plaintiff alleges that Defendant Lago informed him that a warrant would be issued for Ms. Israel's arrest. (*Id.*) Plaintiff alleges that after praying, he changed his mind about pressing charges, so he called the Syracuse Police Department and was informed that there was "no trace of his accusatory instrument he had signed and there was no record of a complaint." (*Id.*)

Plaintiff alleges that on July 27, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendants Sisley and Wolfe at Destiny USA on July 17, 2020, and that on December 23, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendant Kimpel on December 13, 2020. (*Id.* at 12.) However, Plaintiff alleges that Defendant Releford, the CRB administrator, has failed to provide him with any recourse or means to address the unlawful conduct. (*Id.* at 12.)

Based on these factual allegations, the Complaint appears to assert the following twenty causes of action: (1) a claim against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. Chapter 96; (2) a claim against Defendant City of Syracuse for dereliction of duty pursuant to 10 U.S.C. § 892; (3) a claim against Defendant City of Syracuse for law enforcement misconduct pursuant to 42 U.S.C. § 14141(a); (4) a claim against Defendants for harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3); (5) a claim against Defendants for unlawful imprisonment pursuant to N.Y. Penal Law § 135.05; (6) a claim against Defendants for menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1); (7) a claim against Defendants for robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1); (8) a claim against Defendants for criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14; (9) a claim against Defendants for kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1); (10) a claim against Defendants for disruption or disturbance of religious service, funeral, burial, or memorial service, pursuant to N.Y. Penal Law § 240.21; (11) a claim that Plaintiff's right to equal protection of the laws was violated by Defendants pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (12) a claim that Defendants Carleo, Sisley, and Wolfe violated Plaintiff's rights of free speech and freedom of religion pursuant to the First Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (13) a claim of false arrest against Defendants Sisley, Wolfe, and Carleo in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (14) a claim of illegal search and seizure against Defendants Sisley, Wolfe, and Carleo in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (15) a claim of negligence against Defendant Carleo for "failure to deny [P]laintiff the relief of rectifying and safeguarding [P]laintiff's civil right[s]" after Plaintiff filed a CRB complaint regarding the incident that occurred at Destiny USA on July 17, 2020; (16) a claim of illegal search and seizure against Defendant Kimpel pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on December 13, 2020; (17) a claim that Defendant Kimpel failed to protect Plaintiff as a victim of a crime related to the incident on December 13, 2020; (18) a claim of false arrest against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (19) a claim of illegal search and seizure against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; and (20) a claim of negligence against Defendant Releford for failing to provide Plaintiff "recourse" regarding his CRB complaints. (*See generally* Dkt. No. 1.) As relief, Plaintiff seeks an injunction against the City of Syracuse prohibiting any "future Dereliction of Duty" and $3,120,000.00 in damages. (*Id.*)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

**\*3** "When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in forma pauperis* application (Dkt.

No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [3]

### III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**\*4** The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

### IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be accepted in part for filing and dismissed in part.

#### A. RICO Claims [4]

Plaintiff appears to assert a claim against Defendants pursuant to RICO. It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action

permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of " section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under " Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property "by reason of a violation of section 1962." *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (citing *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community,* 136 S. Ct. 2090, 2111 (2016).

Regarding the second element, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To allege an enterprise, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583 (1981). In particular, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette,* 452 U.S. at 583. The Second Circuit has "long recognized [that] the plain language and purpose of the statute contemplate that a person violates the statute by conducting an enterprise through a pattern of criminality. It thus follows that a corporate person cannot violate the statute by corrupting itself." *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 120 (2d Cir. 2013) (citing *Bennet v. U.S. Tr. Co. of N.Y.,* 770 F.2d 308, 315 (2d Cir. 1985)). Accordingly, a plaintiff alleging a civil RICO claim must allege the existence of two distinct entities, a person, and an enterprise. *Chowaiki,* 2020 WL 1974228, at *8; *Cruz,* 720 F.3d at 120.

**\*5** Regarding the third and fourth elements, to sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other. 18 U.S.C. § 1961(5). "Racketeering activity" refers to the predicate acts necessary to establish a RICO claim and includes extortion. *See* 18 U.S.C. § 1961(1) (listing predicate acts that constitute a racketeering activity). To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [ Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' " *Westester Cnty. Indep. Party v. Astorino,* 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir. 1999)). " 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' " *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989) (emphasis in original) (quoting *Sedima,* 473 U.S. at 496 n.4).

Regarding the relationship factor, for predicate crimes to be considered related to each other under RICO, they must be related to both each other (termed "horizontal relatedness") and the enterprise as a whole ("vertical relatedness"). *Reich v. Lopez,* 858 F.3d 55, 60-61 (2d Cir. 2017) (citing *United States v. Cain,* 671 F.3d 271, 284 (2d Cir. 2012)). "Vertical relatedness, which entails the simpler analysis, requires only 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprises' affairs, or because the offense related to the activities of the enterprise.' " *Reich,* 858 F.3d at 61 (quoting *United States v. Burden,* 600 F.3d 204, 216 (2d Cir. 2010)). "[P]redicate acts are *horizontally* related when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 61 (emphasis in original) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 240 (1989)). Therefore, "when dealing with an enterprise that is primarily a legitimate business ... courts must determine whether there is a relationship between the predicate crimes themselves' and that requires a look at, *inter alia,* whether the crimes share 'purposes, results, participants, victims, or methods of commission.' " *Id.* (quoting *H.J.,* 492 U.S. at 240).

Regarding the continuity factor, "[t]o satisfy continuity, the plaintiff must establish either 'a series of related predicate acts extending over a substantial period of time' ('closed-ended continuity') or 'a threat of continuing criminal activity' ('open-ended continuity). *Malvar Egerique*, 2020 WL 1974228, at \*9 (quoting *Cofacredit, S.A.*, 187 F.3d at 242). "RICO targets conduct that 'amounts to or poses a threat of continued criminal activity.' " *Reich*, 858 F.3d at 60 (alterations omitted) (quoting *H.J.*, 492 U.S. at 239). Closed-ended continuity is "primarily a temporal concept" *id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008)), "and it requires that the predicate crimes 'extend over a substantial period of time' " *id.* (quoting *H.J.*, 492 U.S. at 242). Generally, the Second Circuit "requires that the crimes extend over at least two years." *Id.* (citing *Spool*, 520 F.3d at 184). However, criminal activity that by its nature projects into the future with a threat of repetition is considered open-ended continuity and can be established in several ways, including where the predicate acts were the regular way of operating that business, even if the business itself is primarily lawful. *Id.*

**\*6** "Civil RICO [is] an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Am. Fed'n of State, Cnty., and Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2013) (citation omitted).

As an initial matter, claims to enforce RICO cannot be pursued against Defendant City of Syracuse and the individual Defendants to the extent that they are sued in their official capacities, because the municipality cannot form the requisite criminal intent to establish a predicate act. *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 389 (E.D.N.Y. 2013); *see Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at \*12 (E.D.N.Y. Sept. 24, 2013) (collecting cases) ("[A]s many previous courts in this Circuit have held, 'a municipal corporation is incapable of having the criminal intent to support RICO's predicate offense requirement.' ").

With respect to Plaintiff's claims against Defendants in their individual capacities, he fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. Although Plaintiff's claims are against individuals employed by the City of Syracuse, he fails to plead any facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang*, 2013 WL 5366394, at \*13; *see also Peterson v. City of New York*, 2012 WL 75029, at \*3-4 (S.D.N.Y. January 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

As a result, I recommend that Plaintiff's RICO claim be dismissed.

### B. Dereliction of Duty

Plaintiff appears to assert a claim against Defendant City of Syracuse for dereliction of duty pursuant to 10 U.S.C. § 892, which is a violation of the Uniform Code of Military Justice. This statute pertains to military justice law, which is wholly inapplicable to this case. As set forth below in Part IV.D. of this Order and Report-Recommendation, where a private citizen seeks to enforce or prosecute a criminal statute, courts have routinely found that the citizen does not have standing to do so. *See Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 482 n.3 (W.D.N.Y. 2018) (holding that the plaintiff did not have standing to bring a private cause of action pursuant to the punitive articles of the Uniform Code of Military Justice); *see, e.g.*, *Salvador v. State of New York*, 12-CV-7299, 2013 WL 12080930, at \*1 (S.D.N.Y. Feb. 19, 2013) (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981)) ("[A] private party does not have standing to file or prosecute a criminal case because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.' "), *aff'd sub nom. Salvador v. New York*, 550 F. App'x 56 (2d Cir. 2014). As a result, I recommend that Plaintiff's claim against Defendant City of Syracuse for dereliction of duty be dismissed.

### C. Law Enforcement Misconduct

**\*7** Plaintiff appears to assert a claim against Defendant City of Syracuse pursuant to 42 U.S.C. § 14141,[5] which prohibits governmental employees from depriving persons of rights, privileges, or immunities secured or protected under the constitution. (*See generally* Dkt. No. 1.) However, that statute contains no private right of action. *See Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at \*7 (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (citing 34 U.S.C. § 12601(b)) ("Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action."); *see also Steinhardt v. Bernardsville Police Dep't*, 20-2825, 2021 WL 3929321, at \*2 n.2 (3d Cir. Sept. 2, 2021) ("[The plaintiff] also referenced ... 34 U.S.C. § 12601, but [that] provision[ ] contain[s] no private right of action."); *Gumber v. Fagundes*, 21-CV-3155, 2021 WL 3563065, at \*2 (N.D. Cal. Aug. 11, 2021) ("[C]laims under ... 34 U.S.C. § 12601 ... must be dismissed because there is no private right of action."). As a result, I recommend that this claim be dismissed.

### D. Plaintiff's Claims Pursuant to N.Y. Penal Law

Plaintiff attempts to assert the following seven causes of action pursuant to the N.Y. Penal Law: (1) harassment in the second degree (N.Y. Penal Law § 240.26(3)), (2) unlawful imprisonment (N.Y. Penal Law § 135.05), (3) menacing in the second degree (N.Y. Penal Law § 120.14(1)), (4) robbery in the second degree (N.Y. Penal Law § 160.10(1)), (5) criminal tampering in the third degree (N.Y. Penal Law § 145.14), (6) kidnapping in the first degree (N.Y. Penal Law § 135.25(1)), and (7) disruption or disturbance of religious service, funeral, burial, or memorial service (N.Y. Penal Law § 240.21). (Dkt. No. 1.) However, a plaintiff "has no private right of action to enforce either state or federal criminal statutes." *Netti v. New York*, 17-CV-0976, 2018 WL 6258559, at \*3 (N.D.N.Y. Nov. 20, 2018) (Baxter, M.J.) (citing *Carvel v. Ross*, 09-CV-0722, 2011 WL 856283, at \*11-12 (S.D.N.Y. Feb. 6, 2011)). As a result, I recommend dismissal of these causes of action for failure to state a claim.

### E. Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living*

*Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Chaney v. Koupash*, 04-CV-0126, 2008 WL 5423419, at \*20 (N.D.N.Y. Dec. 30, 2008) (Homer, M.J.) (citing *Myers v. Barrett*, 95-CV-1534, 1997 WL 151770, at \*3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.)). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

Plaintiff fails to allege any facts plausibly suggesting that he was treated differently from similarly situated individuals or any other individuals. Vague and conclusory allegations, are insufficient to plausibly suggest an equal protection violation.

*See De Jesus v. Sears Roebuck & Co.*, Inc., 87 F.3d 65, 70 (2d Cir. 1996); *see Byng v. Delta Recovery Servs., LLC*, 13-CV-0733, 2013 WL 3897485, at \*15, n. 5 (N.D.N.Y. July 29, 2013) (D'Agostino, J.) (finding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to anyone or that someone else was treated differently than he was). Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims be dismissed for failure to state a claim upon which relief may be granted.

### F. First Amendment Claims

**\*8** "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [ section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at \*3 (S.D.N.Y. Jan. 24, 1994).

The Second Circuit recently held that "there is no special rule for supervisory liability," and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

To the extent that Plaintiff attempts to assert a First Amendment claim against Defendant Carleo, I recommend that that claim be dismissed because Plaintiff fails to assert any facts plausibly suggesting that Defendant Carleo was personally involved in his removal from Destiny USA on July 17, 2020, while "evangelizing and preaching the Gospel of Jesus Christ." (Dkt. No. 1 at 7.)

However, out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g.,* *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's First Amendment claims against Defendants Sisley and Wolfe.

### G. Fourth Amendment

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. "By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant here, municipalities such as" the City of Syracuse. *Tsinberg v. City of New York*, 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)). It "applies in the civil context as well" as the criminal. *Sodal v. Cook Cnty.*, 506 U.S. 56, 57 (1992) (collecting cases).

### 1. False Arrest

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g.,* *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)).

**\*9** For the reasons set forth above in Part IV.F. of this Order and Report-Recommendation, I recommend that to the extent that Plaintiff attempts to assert a false arrest claim against Defendant Carleo, that claim be dismissed because the Complaint fails to allege facts plausibly suggesting Defendant Carleo's personal involvement in Plaintiff's arrest and confinement at Destiny USA on July 17, 2020. (*See generally* Dkt. No. 1.)

However, out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g.,* *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest claims against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, and (2) DeBottis regarding the incident on April 23, 2021.

### 2. Search and Seizure Claims

A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)). The reasonableness of a seizure is the "ultimate standard under the Fourth Amendment." *Sodal*, 506 U.S. at 61 (citation omitted). The permissibility of any governmental seizure is thus "judged by balancing its

intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."

🚩 *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

For the reasons set forth above in Part IV.F. of this Order and Report-Recommendation, I recommend that to the extent that Plaintiff attempts to assert an unreasonable search and seizure claim against Defendant Carleo, that claim be dismissed because the Complaint fails to allege facts plausibly suggesting Defendant Carleo's personal involvement in the search and seizure at Destiny USA on July 17, 2020. (*See generally* Dkt. No. 1.)

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g.,* 🚩 *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment deprivation of property claim against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (2) Kimpel regarding the incident on December 13, 2020, and (3) DeBottis regarding the incident on April 23, 2021.

### H. Failure to Protect

Plaintiff appears to allege that Defendant Kimpel failed to protect him because Defendant Kimpel did not secure an arrest warrant for the person who assaulted Plaintiff on December 13, 2020. (Dkt. No. 1 at 8-10.) However, a police officer's alleged failure to protect one citizen from another does not violate due process, absent the existence of a special relationship between the police officer and the victim such as a custodial relationship (which is not present here).

🚩 *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195-96 (1989); 🚩 *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993).

As a result, I recommend that Plaintiff's failure to protect claim be dismissed for failure to state a claim.

### I. State Law Negligence Claims

**\*10** "In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.' " 🚩 *Pasternack v. Lab. Corp. of Am.*

*Holdings*, 27 N.Y.3d 817, 825 (N.Y. 2016) (quoting *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g.,* 🚩 *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's negligence claims against Defendants Carleo and Releford.

### J. Municipal Claims

As set forth above in Parts IV.A., B., C., D., and E., of this Order and Report-Recommendation, I recommend that all claims against Defendant City of Syracuse be dismissed. However, in the alternative, I also recommend that the claims against Defendant City of Syracuse—a municipality—be dismissed for failure to state a claim against a municipal entity.

A municipality may only be named as a defendant in certain circumstances. In 🚩 *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under 🚩 Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. 🚩 *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. 🚩 *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." 🚩 *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's

employees. ⚑ *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing ⚑ *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing ⚑ *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of four discrete incidents, during which officers employed by the City of Syracuse allegedly did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with Defendants.

**\*11** As a result, I recommend that Plaintiff's claims against Defendant City of Syracuse be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted by*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### K. Claims Against Defendants in Their Official Capacities

"An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at \*9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by*, 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.). However, for the reasons set forth in Part IV.J. of this Order and Report-Recommendation, I find that Plaintiff in this case has alleged no facts that would state a claim against the City of Syracuse.

As a result, I recommend that to the extent Plaintiff attempts to assert claims against Defendants in their official capacities, those claims be dismissed.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."

⚑ *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." ⚑ *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* ⚑ *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." ⚑ *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

I recommend that Plaintiff's claims for dereliction of duty, law enforcement misconduct, and claims pursuant to the New York Penal law—all of which do not permit private causes of action by Plaintiff—be dismissed without leave to amend.

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims: (1) pursuant to RICO against Defendants; (2) for violation of the right to equal protection pursuant to the Fourteenth Amendment and ⚑ 42 U.S.C. § 1983, against Defendants; (3) for violation of his freedom of speech and religion pursuant to the First Amendment and ⚑ 42 U.S.C. § 1983, against Defendant Carleo; (4) for false arrest pursuant to the Fourth Amendment and ⚑ 42 U.S.C. § 1983, against Defendant Carleo; (5) for an unreasonable search and seizure pursuant to the Fourth Amendment and ⚑ 42 U.S.C. § 1983, against Defendant Carleo; and (6) for failure to protect against Defendant Kimpel. However, in this case, I am unable to conclude with complete certainty that if permitted leave to amend his Complaint, Plaintiff could not assert plausible claims on these grounds. Accordingly, I recommend that leave to amend be granted for these claims.

**\*12** If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **ACCEPTED FOR FILING** with respect to Plaintiff's claims of

(1) That his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(2) False arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(3) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(4) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020;

(5) False arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021;

(6) Unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021; and

(7) Negligence pursuant to New York common law against Defendants Carleo and Releford;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO REPLEAD** with respect to Plaintiff's claims

(1) Pursuant to RICO, against Defendants;

(2) That his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants;

(3) That his right to free speech/religion was violated by Defendant Carleo, pursuant to the First Amendment and 42 U.S.C. § 1983, at Destiny USA on July 17, 2020;

(4) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020;

(5) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020; and

(6) Of failure to protect against Defendant Kimpel;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITHOUT LEAVE TO REPLEAD** with respect to Plaintiff's claims of

(1) Dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants;

(2) Law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendant City of Syracuse;

(3) Harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3), against Defendants;

(4) Unlawful imprisonment pursuant to N.Y. Penal Law § 135.05, against Defendants;

**\*13** (5) Menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1), against Defendants;

(6) Robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1), against Defendants;

(7) Criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14, against Defendants;

(8) Kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1), against Defendants; and

(9) Disruption or disturbance of religious service, burial, or memorial service pursuant to N.Y. Penal Law § 240.21, against Defendants;

and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2021 WL 4777256

---

### Footnotes

1    Plaintiff, who is not an attorney, cannot represent other plaintiffs. Although parties have a statutory right to "plead and conduct their own cases," 28 U.S.C. § 1654, unlicensed laypersons may not "represent anyone else other than themselves." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (internal quotation marks omitted); *see also* *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."). The Complaint names two plaintiffs—Abraham S. Israel and Jesus Christ Ministries. (Dkt. No. 1 at 1.) However, the IFP application is signed solely by Plaintiff. (Dkt. No. 2.) Accordingly, I reviewed this action with Abraham S. Israel as the sole plaintiff. *See Yerushalayim v. Liecthung*, 19-CV-4101, 2019 WL 3817125, at \*2 (E.D.N.Y. Aug. 13, 2019) (reviewing the action as brought by sole plaintiff, Ben-Siyon Ish Yerushalayim, because he was the only signatory on the complaint and IFP application and, as an unlicensed layperson, was incapable of representing the other named plaintiffs).

2    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

4    Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Complaint, Plaintiff has failed to file a Civil RICO statement.

5    Effective September 1, 2017, that section was recodified as 34 U.S.C. § 12601.

6    *See also Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds,* 682 F. App'x 30.

7    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

8    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4773232
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL and
Jesus Christ Ministries, Plaintiffs,
v.
CITY OF SYRACUSE et al., Defendants.

5:21-CV-915
|
Signed 10/13/2021

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Plaintiff, Pro Se, 1409 S. McBride
Street, Syracuse, NY 13202.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On August 13, 2021, *pro se* plaintiff Abraham S. Israel
("plaintiff") filed this action alleging that defendants violated

his civil rights while he was preaching the gospel at a mall in
Syracuse, New York. Dkt. No. 1. Plaintiff also sought leave
to proceed *in forma pauperis* ("IFP"). Dkt. No. 2.

On September 16, 2021, U.S. Magistrate Judge Miroslav
Lovric granted plaintiff's IFP application and advised
by Report & Recommendation ("R&R") that plaintiff's
complaint be accepted for filing in part. Dkt. No. 4. Plaintiff
has not filed objections, and the time period in which to do
so has expired. Upon review for clear error, the R&R will
be accepted and adopted in all respects. *See* FED R. CIV. P.
72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 4773232

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 120 of 212

2018 WL 2021480
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rochelle MARETTA-BROOKS, Plaintiff,

v.

Michael L. HANUSZCZAK, et al., Defendants.

Civil Action No. 5:18-CV-0426 (DNH/DEP)

|

Signed 04/26/2018

**Attorneys and Law Firms**

ROCHELLE MARETTA-BROOKS, c/o RFD, 213 Lilac
Street, Syracuse, NY 13208, pro se.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** *Pro se* plaintiff Rochelle Maretta-Brooks, a frequent
litigator in this district, has commenced this action
against seventeen defendants, including several judges, the
Onondaga County District Attorney, the Onondaga County
Attorney, an unidentified City of Syracuse Police Officer, and
other individuals whose titles are not disclosed. Plaintiff's
complaint, which is largely devoid of factual allegations, as
well as her application for leave to proceed *in forma pauperis*
("IFP") and a motion for appointment of counsel, have been
forwarded to me for consideration. Based upon my review of
those documents, plaintiff's IFP application and motion for
appointment of counsel are denied, and I recommend that her
complaint be dismissed, with leave to amend.

I. BACKGROUND
Plaintiff commenced this action on April 9, 2018. Dkt. No.
1. Plaintiff's complaint is a compilation of five separate
documents prepared on four different forms provided by
the court to prospective litigants. Dkt. No. 1. In particular,
plaintiff has submitted (1) a form for use in commencing a
civil rights action against federal officials pursuant to
*Bivens v. Six Unknown Named Agents of Fed. Bureau
of Narcotics*, 403 U.S. 388 (1971), Dkt. No. 1 at 1-4;
(2) a form for use in asserting employment discrimination
claims pursuant to Title VII of the Civil Rights Act of 1964

("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*,
Dkt. No. 1 at 5-9; (3) two forms for use in bringing an
action under the Americans With Disabilities Act ("ADA"),
42 U.S.C. § 12101 *et seq.*, Dkt. No. 1 at 10-13, 18-21;
and (4) a form for use in asserting civil rights claims
against persons acting under color of state law pursuant
to 42 U.S.C. § 1983, Dkt. No. 1 at 14-17. Included
with plaintiff's complaint are over two hundred pages of
attachments of varying descriptions, none of which have been
identified or referenced in her complaint. Dkt. Nos. 1-1–1-3.
Named as defendants in the various form complaints are the
following individuals: (1) Onondaga County Family Court
Judge Michael L. Hanuszczak, (2) Syracuse City Court Judge
Kate Rosenthal, (3) Onondaga County Family Court Judge
Julie Cecile, (4) Onondaga County Supreme Court Justice
James C. Tormey, (5) Onondaga County Acting Supreme
Court Justice Martha Walsh Hood, (6) Onondaga County
Family Court Judge Michele Pirro Bailey; (7) Syracuse City
Court Judge Ross Andrews; (8) Onondaga County District
Attorney William Fitzpatrick; (9) Onondaga County Attorney
Robert Durr; (10) Attorney Arlene Bradshaw; (11) Joseph
Murphy; (12) Lisa Blitman; (13) Lewis Dettor; (14) William
Balduf; (15) Kevin Haywood; (16) Dorothea Hogan; and (17)
an unidentified City of Syracuse Police Officer. [1] Dkt. No. 1
at 2, 5-7, 11-12, 14-15, 19-20.

Plaintiff's complaint is wholly devoid of factual allegations
upon which her claims are based and fails to disclose
the role played by each of the named defendants in the
circumstances giving rise to her claims. Although this is
far from evident, based on a review of plaintiff's complaint
and attached documents, it appears that her claims center
upon the removal of her two daughters from her custody as
ordered by one or more of the judicial officers named as
defendants in this case, and plaintiff's arrest on March 21,
2018. *See, e.g.*, Dkt. No. 1 at 4, 13, 17; Dkt. No. 1-1 at 17,
27-28. Plaintiff's complaint cites several statutes including

(1) 18 U.S.C. §§ 241, 242, criminal statutes related
to the deprivation of constitutional rights; (2) 42 U.S.C.
§ 14141, [2] which prohibits governmental employees from
depriving persons of rights, privileges, or immunities secured
or protected under the constitution; (3) 18 U.S.C. § 1514A,
which provides whistleblower protection for employees of
publicly traded companies; (4) 18 U.S.C. § 1506, a criminal
provision prohibiting the theft or alteration of record or
process, or false bail; and (5) New York Criminal Penal
Law ("CPL") § 70.10(2), defining the phrase "[r]easonable

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 121 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

cause to believe that a person has committed an offense." *See, e.g.*, Dkt. No. 1 at 3, 7-8, 16. As relief, plaintiff seeks damages in large amounts, designed to increase in the event she is retaliated against, and further enhanced if she is murdered or assassinated. Dkt. No. 1 at 4, 9, 13, 17, 21.

## II. DISCUSSION

### A. Plaintiff's IFP Application

**\*2** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [3] Pursuant to section 1915, when a plaintiff seeks leave to proceed IFP, the court must determine whether she has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). Section 1915 only provides that a court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) ); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915(a) does not require a litigant to demonstrate absolute destitution[.]"); *accord*, *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, section 1915 requires that a plaintiff submit an affidavit reflecting all of her assets. 28

U.S.C. § 1915(a)(1). Without the submission of a completed financial affidavit, a plaintiff's application is incomplete, and this defect alone warrants denial of the IFP application. *See, e.g.*, *United States v. Copen*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission by the party of an affidavit made as required by [ 28 U.S.C. § 1915]."); *accord*, *Bey v. Syracuse Univ.*, 155 F.R.D. 413, 414 (N.D.N.Y. May 1994) (Scullin, J.).

While plaintiff has submitted two declarations in support of her IFP application, they are incomplete. In both forms plaintiff indicates that, although she is not employed, she receives money from outside sources. Dkt. No. 2 at 1; Dkt. No. 2-1 at 2. In the first, however, she neither identifies the source(s) nor the amounts of that income. Dkt. No. 2 at 1. In the second, she does indicate that she is referring to Social Security benefits, but does not state the amounts received, as required. Dkt. No. 2-1 at 2. Plaintiff's IFP application is therefore denied, without prejudice to renewal upon submission of a complete application.

**\*3** Plaintiff is advised that the ability to litigate an action without prepayment of fees is a privilege that can be denied, revoked, or limited based upon a showing of prior abuses. *See In re Anderson*, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons." (quotation marks omitted) ). The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]" 28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald*, 489 U.S. 180, 183 (1989). For this reason, courts are regarded as possessing discretionary authority to deny IFP status to litigants who have abused the privilege. *See Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 309-310 (D.C. Cir. 2008) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 122 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

to 'the number, content, frequency, and disposition of their previous filings[.]' ") (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 444-45 (D.C. Cir. 2007) (citations, alteration omitted) ).

Plaintiff's litigation history in this district suggests that she is on the brink of being found to have abused the privilege of proceeding IFP. Plaintiff was previously known by the name Rochelle Coleman, Dkt. No. 1 at 39, 42-43, 54, 62; Dkt. No. 1-2 at 9. Under that name, she filed seven prior actions in this district in June and July of 2016. *Coleman v. Detter*, No. 16-CV-0834 (N.D.N.Y. filed July 8, 2016); *Coleman v. Engle*, No. 16-CV-0833 (N.D.N.Y. filed July 8, 2016); *Coleman v. Olinski*, No. 16-CV-0838 (N.D.N.Y. filed July 8, 2016); *Coleman v. Sutkowy*, No. 16-CV-0837 (N.D.N.Y. filed July 8, 2016); *Coleman v. Syracuse Police Dep't*, No. 16-CV-0836 (N.D.N.Y. filed July 8, 2016); *Coleman v. Hanuszczak*, No. 16-CV-0735 (N.D.N.Y. filed June 22, 2016); *Coleman v. Levandowsk*, No. 16-CV-0734 (N.D.N.Y. filed June 22, 2016). In 2017, plaintiff appears to have filed one action. *Brooks v. Onondaga Dep't of Children & Family Servs.*, No. 17-CV-1186 (N.D.N.Y. filed Oct. 25, 2017). In all of those previous actions, plaintiff requested, and was granted, permission to proceed without prepayment of fees. Like the complaint in this action, most of the complaints in those cases generally concern plaintiff losing custody of her children and the state actors and attorneys involved. All but one of those actions were dismissed following the court's review of the substance of the factual allegations in the complaints in accordance with 28 U.S.C. § 1915(e). [4]

Common to all of the actions filed by plaintiff in this district (including, as will be discussed below, the current complaint under consideration in this report) is her failure to include factual allegations in her complaints that demonstrate entitlement to relief, and the vagueness concerning the claims that she purports to assert. Accordingly, in the event plaintiff renews her IFP application upon a proper and complete showing of her finances and the application is granted, she is hereby warned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the court, and (2) any further filing of patently frivolous lawsuits may result in the denial of any request to proceed IFP in an action and/or a recommendation to the chief district judge that a filing injunction be issued against plaintiff, barring her from filing any future lawsuits in this district without prior permission.

B. Appointment of Counsel

**\*4** With her complaint, plaintiff has requested appointment of counsel to represent her in this action *pro bono*. Dkt. No. 3. District courts are afforded broad, though not limitless, discretion in determining whether to appoint counsel to represent indigent civil litigants. 28 U.S.C. § 1915(e)(1); *see also Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). In *Hodge*, the Second Circuit noted that, when exercising that discretion, the court should first determine whether the indigent's position seems likely to be of substance. *Hodge*, 802 F.2d at 60. If this threshold requirement is satisfied,

> the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62; *see also Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). [5]

In deciding whether to appoint counsel I note that, although the constitution guarantees indigent litigants "meaningful access" to the courts, it does not assure that all parties in civil actions will receive the benefit of *pro bono* representation. *Hodge*, 802 F.2d at 60. While the appointment of counsel to represent indigent parties in civil suits is authorized by statute, when that authority is exercised the court is required to call upon attorneys to donate their time *pro bono*, to the benefit of indigent litigants and the court. In deference to the limited resources available to the court to serve the interests of the many indigent litigants who pursue claims before them, and recognizing the "thankless burden" associated with such assignments, *Miller v. Pleasure*, 296 F.2d 283, 285 (2d Cir. 1961), the court does not grant such applications indiscriminately, but instead chooses to exercise sound judgment and restraint in doing so. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 123 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

At this juncture, and as will be discussed more completely below, it is difficult to gauge whether plaintiff's position is likely to be of substance in view of the uncertainty of her claims and the scarcity of factual allegations in the complaint to support those claims. Accordingly, based upon my finding that plaintiff's complaint does not disclose the existence of a cognizable cause of action, plaintiff's motion for appointment of counsel is denied.

### C. Sufficiency of Plaintiff's Complaint

#### 1. Standard of Review

Ordinarily, the denial of plaintiff's IPF application would end the court's discussion, and plaintiff, in light of her *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that plaintiff's complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 authorizes the dismissal of the action *sua sponte* "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

**\*5** In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding

that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also* *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 124 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

*Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' "

*Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

2. Analysis

As was noted above in part I. of this report, plaintiff's complaint is generally lacking in factual allegations supporting any purported cause of action. Instead, the complaint largely contains mere repetition of claims against different defendants. On this basis alone, I recommend dismissal of the complaint. In addition, there are several grounds upon which all or some of plaintiff's causes of action are potentially subject to dismissal, all of which are worth discussing in light of the possibility that plaintiff will be afforded an opportunity to amend her complaint.

Plaintiff's claims against the various judges named as defendants are, in all likelihood, precluded by the absolute immunity that they enjoy by virtue of their positions. "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991) ); *see also* *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff." *Young*, 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin*, 320 F. Supp. 2d at 41.

**\*6** Similarly, plaintiff's claims against defendant Fitzpatrick are also likely precluded. It is well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of N.Y.*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) ).

Because portions of plaintiff's complaint appear to relate to proceedings in Onondaga County Family Court regarding the custody of plaintiff's two daughters, it is likely that dismissal of those claims are precluded under the *Rooker-*

*Feldman* [6] doctrine and the domestic relations exception to federal court jurisdiction. With respect to the former, the *Rooker-Feldman* doctrine recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). A district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by* *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

Turning now to the domestic relations exception to federal court subject matter jurisdiction, federal courts do not have the authority to issue divorce, alimony, and child custody decrees. [7] *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *accord,* *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004). The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.* While the Supreme Court has cautioned that this does not preclude jurisdiction over claims in which plaintiffs seek monetary damages for constitutional violations, *Ankenbrandt*, 504 U.S. at 703, in this case, plaintiff seeks money damages, as well injunctive relief, including, the return of her children to her custody. *See, e.g.,* Dkt. No. 1 at 9. Where tort claims "begin and end in a domestic dispute," however, is a question better suited for state courts. *See Schottel v. Kutyba*, No. 06-1577, 2009 WL 230106, at \*1 (2d Cir. Feb. 2, 2009) (affirming, based on

the domestic relations exception, the district court's dismissal of the plaintiff's complaint alleging, *inter alia*, that the defendants "fraudulently misrepresented to the court the former couple's residence in order to file divorce proceedings in New York," and, as a result, plaintiff was "deprived of custody and visitation rights").

**\*7** Finally, several other principles likely preclude plaintiff's claims in this case. To the extent that plaintiff has intended to assert a constitutional cause of action under *Bivens*, Dkt. No. 1 at 1-4, such claim is subject to dismissal in light of the absence of any allegations that any of the defendants are federal officials. *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). In addition, although plaintiff utilized a pre-printed form for actions involving employment discrimination under Title VII, Dkt. No. 1 at 5-9, because the complaint is devoid of any allegations concerning plaintiff's employment (or discrimination in the context of an employment), any claim arising under Title VII should be dismissed.

As was noted above, plaintiff's complaint also invokes 18 U.S.C. §§ 241, 242. Dkt. No. 1 at 3. Neither of those criminal statutes, however, provides a private right of action. *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009). Similarly, 18 U.S.C. § 1506 also does not give rise to a civil action. *Shahin*, 606 F. Supp. 2d at 538. Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action. 34 U.S.C. § 12601(b); *Sathue v. Niagara City Police Dep't*, No. 17-CV-0747, 2018 WL 550520, at \*3 (W.D.N.Y. Jan. 25, 2018). To the extent plaintiff cited CPL § 70.10(2) in an attempt to assert a claim under that provision, Dkt. No. 1 at 16, even assuming any provision under New York's CPL gives rise to a private right of action, CPL § 70.10 is a definitional section only and, therefore, cannot, on its own, serve as a basis for a legal claim. Finally, plaintiff's complaint includes a reference to 18 U.S.C. § 1514A, providing whistleblower protection. Dkt. No. 1 at 3. Setting aside the complete absence of any factual allegations suggesting that section 1514A applies, the claim is subject to dismissal because plaintiff has provided no indication that she filed a complaint with the United States Secretary of Labor prior to commencing this action, as required. 18 U.S.C. § 1514A(b)(A); *Murray v. TXU Corp.*, 279 F. Supp. 2d 799, 802 (N.D. Tex. 2003); *accord, Hoffman v. Bailey*, No. 13-CV-5153, 2017 WL 1505920, at \*3 (E.D. La. Apr. 26, 2017);

*see also Day v. Staples, Inc.*, 555 F.3d 42, 54 n.7 (1st Cir. 2009).

In summary, the difficulty in making any definitive determination as to whether any of the previously discussed legal principles provide grounds for dismissal stems from the fact that plaintiff's complaint is bereft of facts, disjointed, and largely unintelligible. Simply stated, the allegations contained within plaintiff's complaint are not drafted in a manner that allows for the court to meaningfully analyze plaintiff's claims pursuant to 28 U.S.C. § 1915(e), nor would the allegations permit any of the defendants a fair opportunity to intelligently respond and thereby allow this case to proceed in an orderly manner. Because plaintiff's complaint fails to allege any facts that could be construed as giving rise to a cognizable cause of action, I recommend that it be dismissed. *See Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at \*5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

### D. Whether to Permit Amendment

**\*8** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. d1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc.*

*v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, due to the sparse factual allegations in plaintiff's complaint, it is not clear whether better pleading would permit her to state a cognizable cause of action. Nevertheless, out of deference to plaintiff's *pro se* status, I recommend she be granted leave to amend to cure the deficiencies identified in this report. Plaintiff should not be permitted to amend her complaint, however, to include any purported *Bivens* claims or any causes of action purportedly arising under 18 U.S.C. §§ 241, 241, 1514A, and 1506; 34 U.S.C. § 12601; or CPL § 70.10.

If plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint plaintiff must clearly set forth the facts that give rise to her claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed

that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted) ).

### III. SUMMARY, ORDER, AND RECOMMENDATION

Plaintiff's IFP application for leave to proceed without prepayment of fees is incomplete. Accordingly, I deny her IFP application, without prejudice to renewal. Plaintiff's motion for appointment of counsel to represent her *pro bono* is also denied, again without prejudice. Finally, I find that plaintiff's complaint does not comply with the applicable pleading requirements and does not allege sufficient facts to survive review under 28 U.S.C. § 1915(e). Accordingly, it is hereby

**\*9** ORDERED that plaintiff's motions for leave to proceed without prepayment of fees (Dkt. No. 2) and appointment of counsel (Dkt. No. 3) are DENIED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED, with leave to replead, except with regard to any purported claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), or any purported causes of action arising under 18 U.S.C. §§ 241, 241, 1514A, and 1506; 34 U.S.C. § 12601; and CPL 70.10.

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in Fed. Supp., 2018 WL 2021480

**Footnotes**

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 127 of 212

1    The roles and/or titles of defendants Murphy, Blitman, Dettor, Balduf, Haywood, and Hogan are not readily discernible on the face of plaintiff's complaint.

2    Effective September 1, 2017, that section was recodified at 34 U.S.C. 12601.

3    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4    In *Brooks v. Onondaga Dep't of Children & Family Servs.*, No. 17-CV-1186 (N.D.N.Y. filed Oct. 25, 2017), Magistrate Judge Therese Wiley Dancks issued a report on April 9, 2018, recommending dismissal of plaintiff's complaint. That report remains pending before Senior District Judge Gary L. Sharpe.

5    In deciding plaintiff's motion, I have taken into consideration this court's custom and practice, which is to ordinarily assign *pro bono* counsel to represent an indigent *pro se* litigant, upon request, at the time of trial.

6    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

7    "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993) (citations omitted).

---

**End of Document**                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3929321
Only the Westlaw citation is currently available.
United States Court of Appeals, Third Circuit.

Annette L. STEINHARDT, Appellant

v.

BERNARDSVILLE POLICE DEPARTMENT;
Chief Kevin Valentine; Detective Brian Kelly;
Captain Brian Hoey, Somerset County Prosecutor;
Detective Douglas Brownlie; Thomas L. Whitehead;
Detective Paul Kelly, Also Known as Walter P.
Kelley; William Ussery, Retired Chief of Police
Bernardsville; Steven Seipel, Bernardsville Police
Department; Somerset County Prosecutors Office

No. 20-2825
|
Submitted Pursuant to Third Circuit
LAR 34.1(a) September 1, 2021
|
(Opinion filed: September 2, 2021)

On Appeal from the United States District Court for
the District of New Jersey (D.C. Civil Action No. 3-17-
cv-02169), District Judge: Honorable Michael A. Shipp

**Attorneys and Law Firms**

Annette L. Steinhardt, Stowe, VT, Pro Se.

Timothy P. Beck, Esq., DiFrancesco Bateman Coley Yospin
Kunzman Davis & Lehrer, Warren, NJ, for Bernardsville
Police Department, Chief Kevin Valentine, Detective Brian
Kelly, Detective Paul Kelly, William Ussery, Steven Seipel.

Before: CHAGARES, PHIPPS and COWEN, Circuit Judges.

OPINION [*]

PER CURIAM

**\*1** Pro se appellant Annette L. Steinhardt appeals from the
District Court's dismissal of her Fourth Amended Complaint
with prejudice. For the following reasons, we will affirm the
District Court's judgment.

I.

As we write primarily for the parties, who are familiar with
Steinhardt's allegations and the lengthy proceedings before
the District Court, we will only briefly summarize the details
here. This case primarily arises from local law enforcement's
handling of a dispute between Steinhardt and a contractor
who, she alleges, illegally entered her home, destroyed it,
and stole her property. Steinhardt alleges that local police
and officials refused to provide a police report to support
her insurance claim, improperly sided with the contractor,
and retaliated against her. Steinhardt did not pursue a civil
claim against the contractor. The contractor apparently filed
a citizen complaint against Steinhardt in municipal court
alleging theft of some equipment, but the case did not proceed
beyond an initial hearing.

Steinhardt added and removed defendants across her several
complaints but primarily named entities and individuals
associated with either the Borough of Bernardsville or the
Somerset County Prosecutor's Office. The Bernardsville
defendants have fully participated throughout the case and in
this appeal. The three individual Somerset defendants waived
service of the original complaint but did not participate in any
way after that action. [1]

Steinhardt filed her original complaint in March 2017.
The Bernardsville defendants moved to dismiss. Steinhardt
submitted a First Amended Complaint without leave from
the court and beyond the time permitted for amendment as a
matter of course. See Fed. R. Civ. P. 15. The District Court
granted the motion to dismiss the original complaint and
permitted Steinhardt to file a Second Amended Complaint.
The Bernardsville defendants again moved to dismiss, and
the District Court granted their motions. It dismissed two
categories of claims with prejudice: (1) claims against Miles
S. Winder III, a Bernardsville municipal court judge, because
of judicial immunity; and (2) any personal injury claims
that accrued prior to March 2015, because of New Jersey's
applicable two-year statute of limitations.

**\*2** Steinhardt filed a Third Amended Complaint against
a reduced group of defendants. She sought damages under
42 U.S.C. §§ 1983 and 1988. The District Court granted
the remaining Bernardsville defendants' motion to dismiss
and dismissed Steinhardt's complaint. The District Court
dismissed the § 1988 claims with prejudice but otherwise

permitted her "one final opportunity to amend her complaint to comply with the Federal Rules of Civil Procedure, the District Court of New Jersey's Local Civil Rules, and the Court's specific filing instructions." Mem. Op. of Nov. 19, 2019, at 9, ECF No. 73.

In her Fourth Amended Complaint, Steinhardt added defendants and, in addition to her 🚩 § 1983 claims, asserted new claims under 🚩 42 U.S.C. § 1985, 🚩 18 U.S.C. § 1030 (the Computer Fraud and Abuse Act), various constitutional amendments, and state law. [2] The Bernardsville defendants again moved to dismiss. The District Court granted the motion and dismissed Steinhardt's complaint with prejudice.

## II.

We have jurisdiction under 🚩 28 U.S.C. § 1291. We review the District Court's grant of a motion to dismiss de novo. Newark Cab Ass'n. v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018). In doing so, we accept all Steinhardt's factual allegations in her complaint as true and construe those facts in the light most favorable to her. See id. "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.' " 🚩 Fleisher v. Standard Ins., 679 F.3d 116, 120 (3d Cir. 2012) (quoting 🚩 Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). We also review de novo the District Court's determination that amendment would be futile. 🚩 U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P., 769 F.3d 837, 849 (3d Cir. 2014). "We may affirm a district court for any reason supported by the record." Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

## III.

Steinhardt purports to appeal all the District Court's orders dismissing her several complaints. An amended pleading generally supersedes the earlier pleading and renders the original pleading a nullity. 🚩 Palakovic v. Wetzel, 854 F.3d 209, 220 (3d Cir. 2017). The Fourth Amended Complaint was the operative pleading at the time of the District Court's judgment, and we will review the District Court's dismissal of that complaint. Steinhardt has waived appeal of any

earlier dismissals unless repleading the particular cause of action involved would have been futile or she indicated an intent to stand on the dismissed claim. See 🚩 id.; United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 516 (3d Cir. 2007). The District Court dismissed three categories of claims in Steinhardt's earlier complaints with prejudice, so repleading those claims would have been futile. Of these, Steinhardt's arguments on appeal only meaningfully challenge the dismissal of her claims against Miles S. Winder III. [3] We will also review that dismissal.

First, we agree with the District Court that Steinhardt failed to state any plausible federal claim to relief against the Bernardsville defendants in her Fourth Amended Complaint. Steinhardt alleged violations of 🚩 42 U.S.C. § 1983, 🚩 42 U.S.C. § 1985, and various constitutional amendments, but her confused and conclusory allegations do not state plausible claims for relief.

**\*3** To state a claim under 🚩 42 U.S.C. § 1983, a plaintiff must establish "two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." 🚩 Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011). [4] "Rather than conferring any substantive rights, 🚩 section 1983 'provides a method for vindicating federal rights elsewhere conferred.' " 🚩 Hildebrand v. Allegheny Cty., 757 F.3d 99, 104 (3d Cir. 2014) (quoting 🚩 Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

Steinhardt primarily complains that the Bernardsville police did not provide a police report supporting her version of events, dooming her insurance claim. But she has no general federal right to an accurate or satisfactory police report, and she has not shown that the allegedly deficient investigation resulted in the deprivation of another federal right. See 🚩 DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195-96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding that the Due Process Clauses do not create a right to affirmative governmental aid); ⚠ D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1368–69 (3d Cir. 1992); 🚩 Rossi v. City of Chicago, 790 F.3d

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 130 of 212

Steinhardt v. Bernardsville Police Department, Not Reported in Fed. Rptr. (2021)

729, 735 (7th Cir. 2015); Landrigan v. Warwick, 628 F.2d 736, 744 (1st Cir. 1980). Steinhardt alleges that the police's approach led to the denial of her insurance claim, but she did not pursue a civil claim against either her insurer or the contractor. [5] Under these circumstances, Steinhardt's alleged loss of property cannot be attributed to the police. Cf. A.J. ex rel. Dixon v. Tanksley, 822 F.3d 437, 442-43 (8th Cir. 2016) (questioning the viability of any due process claim based on a false police report that causes the denial of an insurance claim or the loss of a civil suit).

Steinhardt's other constitutional claims in the Fourth Amended Complaint are vague, confused, and conclusory. For instance, Steinhardt complains that she was denied a jury trial on the theft charge allegedly initiated by the contractor, but it appears that this charge was dismissed at or prior to an initial hearing. The Fourth Amended Complaint did not provide the Bernardsville defendants with fair notice of the constitutional claims against them and did not state constitutional claims for relief that are plausible on their face. See Twombly, 550 U.S. at 555, 570, 127 S.Ct. 1955. Steinhardt therefore failed to establish that the Bernardsville defendants deprived her of any federal rights and failed to state a claim under § 1983.

Steinhardt's § 1985 claim fares no better. Her allegations are again vague and conclusory and do not provide adequate notice to the defendants. Furthermore, as the District Court noted, Steinhardt's allegations potentially implicate only § 1985(3) or the second portion of § 1985(2). Both of those provisions apply only where a conspiracy involves racial or otherwise class-based invidiously discriminatory animus. See Davis v. Twp. of Hillside, 190 F.3d 167, 171 (3d Cir. 1999) (discussing § 1985(2)); Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (discussing § 1985(3)). Steinhardt did not allege any such class-based animus.

*4 Next, we turn to the District Court's dismissal of Steinhardt's claims against the individual Somerset defendants. The District Court concluded that these non-moving defendants (who may not have been served with the Fourth Amended Complaint, see supra n.1) were similarly situated to the moving Bernardsville defendants. In narrow circumstances, courts have upheld a district court's authority to sua sponte dismiss a complaint against a non-

moving defendant where it is clear the plaintiff cannot succeed, if the plaintiff has notice and an opportunity to respond to the moving defendant's relevant arguments. See Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 7 (1st Cir. 2007)(describing limited circumstances in which sua sponte dismissals under Rule 12(b)(6) are appropriate); Acequia, Inc. v. Prudential Ins. Co. of Am., 226 F.3d 798, 807 (7th Cir. 2000) (stating "where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition"); see also Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994); Bonny v. Soc'y of Lloyd's, 3 F.3d 156, 162 (7th Cir. 1993); cf. Oatess v. Sobolevitch, 914 F.2d 428, 430 n.5 (3d Cir. 1990) (noting, in a different context, that a district court may sua sponte raise the deficiency of a complaint so long as the plaintiff is given an opportunity to respond). We will uphold this aspect of the District Court's ruling under the particular circumstances of this case. Here, Steinhardt's claims against all the defendants were intermixed and suffered from the same structural deficiencies. Given the District Court's dismissal of the claims against the Somerset defendants in the Third Amended Complaint, Steinhardt was certainly on notice that the District Court would scrutinize her claims against those defendants in the Fourth Amended Complaint. While Steinhardt arguably raised one newly added unique claim against a Somerset defendant in the Fourth Amended Complaint, this claim against Brian Hoey under the Computer Fraud and Abuse Act was plainly deficient and relied on the same type of vague and conclusory allegations as her other claims. [6]

The District Court thus permissibly concluded that Steinhardt failed to state any federal claim on which relief could be granted against any defendant in her Fourth Amended Complaint, and, in turn, permissibly declined to exercise supplemental jurisdiction over Steinhardt's state and common law claims. See 28 U.S.C. § 1367(c)(3). [7] Given the District Court's prior allowances to Steinhardt, the District Court did not err in determining that further amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Finally, Steinhardt's challenge to the District Court's dismissal of her claims against Miles Winder III fails. Winder served as the municipal court judge overseeing the theft charge against

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 131 of 212

Steinhardt v. Bernardsville Police Department, Not Reported in Fed. Rptr. (2021)

Steinhardt. Steinhardt did not plausibly allege that Winder acted outside of his judicial capacity, so the District Court properly dismissed Steinhardt claims on the basis of absolute judicial immunity. See 🚩 Mireles v. Waco, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

IV.

Accordingly, we will affirm the judgment of the District Court. [8]

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 3929321

## Footnotes

[*]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1]    Steinhardt named Sean Egan of the New Jersey Department of Criminal Justice as a defendant in her early complaints and the Somerset County Prosecutor's Office itself in her Fourth Amended Complaint. There is no indication in the record that either were ever served or waived service, so they are not parties within the meaning of Federal Rule of Civil Procedure 54(b). See 🚩 United States v. Studivant, 529 F.2d 673, 674 n.2 (3d Cir. 1976).

Steinhardt moved for a default judgment against the individual Somerset defendants prior to the District Court's dismissal of her original complaint, after which the District Court dismissed the motion as moot. Steinhardt did not file any renewed motion for a default judgment after filing her amended complaints. It is not clear from the record whether Steinhardt served any of the amended complaints on these defendants. Since the attorney who filed the waivers of service did not enter an appearance, it is unclear whether the amended complaints were served on that attorney, and there is no evidence that the Somerset individual defendants were served directly. Since the amended pleadings appear to have asserted new claims for relief against these defendants, Federal Rule of Civil Procedure 5(a)(2) does not excuse service. If these defendants were not served the operative Fourth Amended Complaint, they are not parties. See 🚩 id.

[2]    Steinhardt also referenced 🚩 18 U.S.C. § 241 and 🚩 34 U.S.C. § 12601, but these provisions contain no private right of action.

[3]    Steinhardt's does not meaningfully dispute the District Court's dismissals with prejudice of her claims under 🚩 42 U.S.C. § 1988 and her claims that accrued prior to March 2015. In any case, we discern no error in those rulings.

[4]    To state a claim against the Bernardsville Police Department, Steinhardt needed to establish that her rights were violated as a result of a policy or custom. See 🚩 Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); 🚩 Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). Steinhardt did not plausibly allege the existence of any such policy or custom.

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 132 of 212

Steinhardt v. Bernardsville Police Department, Not Reported in Fed. Rptr. (2021)

5    Steinhardt alleges that one of the Bernardsville defendants made false statements to the "New Jersey State Court in Sommerville" but it is not clear what proceeding she is referencing. Fourth Am. Compl. 13, ECF No. 75.

6    Furthermore, the private right of action in the Computer Fraud and Abuse Act is limited to conduct involving certain types of damage. 🚩18 U.S.C. § 1030(g). Steinhardt has not plausibly alleged that any of the applicable types of damage can be traced to Hoey's alleged activity. See 🚩18 U.S.C. § 1030(c)(4)(A)(i).

7    While it appears that Steinhardt was a resident of Vermont when she filed this suit, she never argued that the District Court had jurisdiction based on diversity of citizenship.

8    On appeal, Steinhardt moved for an order requiring discovery from the Bernardsville Municipal Court administrator. 3d Cir. ECF No. 17. We deny that motion. Our review is limited to the record before the District Court. See 🚩In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990) ("This Court has said on numerous occasions that it cannot consider material on appeal that is outside of the district court record.").

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2568300
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Western Division.

Dawn CHAPPEL, Plaintiff,

v.

ADAMS COUNTY CHILDREN'S
SERVICES, et al., Defendants.

Case No. 1:22-cv-747
|
Signed March 17, 2023
|
Filed March 20, 2023

**Attorneys and Law Firms**

Dawn M. Chappel, Winchester, OH, Pro Se.

**SUPPLEMENTAL REPORT
AND RECOMMENDATION**

Karen L. Litkovitz, United States Magistrate Judge

**\*1** Plaintiff, a resident of Winchester, Ohio, filed a pro se civil rights complaint against Adams County Children's Services and caseworker Ashlee Moore. (Doc. 1). By separate Order, plaintiff was granted leave to proceed *in forma pauperis* pursuant to 🚩 28 U.S.C. § 1915. On December 29, 2022, the Court issued a Report and Recommendation that this complaint be dismissed in its entirety pursuant to the Prison Litigation Reform Act of 1995 § 80428 U.S.C. § 1915(e)(2)(B) on the basis of the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and plaintiff's failure to state a claim for which relief could be granted. (Doc. 7). Plaintiff's objection to that Report and Recommendation is pending before District Judge Dlott. (Doc. 9). This matter is now before the Court on plaintiff's subsequent motion for leave to amend her complaint. (Doc. 10).

**I. Plaintiff's proposed amended complaint and attachments thereto**

As summarized in the Court's prior Report and Recommendation, plaintiff's original complaint against Adams County Children's Services caseworker Ashlee Moore alleged violations of her Fourth and Fourteenth Amendment rights in October and November of 2022 in connection with the search of her home and removal of her two minor children on November 14, 2022. (Doc. 7 at PAGEID 123-24). In plaintiff's proposed amended complaint, she adds as defendants Sonya Meyer, Supervisor of the Adams County Child Services Agency; Sharon Anderson of the Adams County Housing Authority, plaintiff's landlord; and Donnie Edginton, Chief of the Winchester Police Department. (Doc. 10 at PAGEID 165). Plaintiff also attaches numerous photos, Facebook posts, Google reviews, text messages, emails, and other documents to her proposed amended complaint that she believes support the claims therein. (*See id.* at PAGEID 197-313). [1]

**\*2** Count one of the proposed amended complaint alleges that defendant Moore obtained a court order to enter plaintiff's home and for protective supervision by "filing a false complaint" and planned this entry with proposed defendants Edgington and Anderson. (Doc. 10-1 at PAGEID 168). Plaintiff appears to allege both substantive and procedural Fourteenth Amendment due process violations as well as a civil rights conspiracy claim under 🚩 42 U.S.C. § 1985(3). [2] (*See id.*). Relatedly, count three of the proposed amended complaint again refers to substantive and procedural Fourteenth Amendment due process violations based on allegations that defendant Moore "tricked" and "coerc[ed]" plaintiff into executing a "safety plan" when she carried out the Adams County juvenile court's protective supervision order (Doc. 1 at PAGEID 8-10). (*Id.* at PAGEID 171-72).

Count two of the proposed amended complaint alleges that plaintiff's home was unlawfully searched on November 14, 2022 in violation of the Fourth Amendment because defendant Moore obtained the Adams County juvenile court protective supervision order by giving false testimony. (*Id.* at PAGEID 170). Plaintiff also alleges that proposed defendants Edgington and Anderson "assisted [defendant] Moore in the unlawful entry to [her] home" on November 14, 2022— the day of the removal—and that proposed defendant Meyer "approved" all of defendant Moore's actions. (*Id.*; *see also id.* at PAGEID 172 (referencing the participation or approval of the proposed defendants in the alleged unlawful search)).

Count four of the proposed amended complaint alleges a conspiracy to "interfere with [plaintiff's] housing rights" by defendants Moore, Meyer, Anderson, and Edgington. (*Id.* at PAGEID 172). Plaintiff cites § 818 of the Fair Housing Act (FHA), 🚩 42 U.S.C. § 3601 *et seq.*, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person

in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. (*See* Doc. 10-1 at PAGEID 173). [3]

Finally, plaintiff's motion to amend references a First Amendment retaliation claim, though it is not set forth as a discrete count of plaintiff's proposed amended complaint. (*See* Doc. 10 at PAGEID 165). Plaintiff alleges that the Fourth and Fourteenth Amendment violations by defendant Moore and proposed defendants Edgington, Anderson, and Meyer were committed in retaliation for "reviews posted and complaints" that plaintiff had made against them in the past. (*Id.*; *see also* Doc. 10-1 at PAGEID 170 ("The acts committed against our family were done out of retaliation for complaints filed and reviews posted....")).

Plaintiff's proposed amended complaint also narratively describes her history with defendant Moore and proposed defendants Edgington, Anderson, and Meyer (Doc. 10-1 at PAGEID 175-93). Briefly summarized, plaintiff first describes a bad relationship with proposed defendant Edgington (Winchester Police Chief) stemming from her dogs and an offensive comment made by a member of plaintiff's family toward defendant Edgington's wife, which she alleges resulted in harassment of plaintiff and her family. (*Id.* at PAGEID 175-178). [4] Plaintiff next describes issues obtaining public housing after a fire burned down her prior residence, and various issues with her lease once it was ultimately obtained—much of which references proposed defendant Anderson (her landlord). (*Id.* at PAGEID 179-185). Finally, plaintiff describes a long history with defendant Moore, proposed defendant Meyer (defendant Moore's supervisor), and Child Protective Services going back to 2014. (*Id.* at PAGEID 185-193).

**\*3** In the prayer for relief in plaintiff's proposed amended complaint, plaintiff no longer asks the Court to "reverse" Adams County juvenile court orders. (Doc. 1 at PAGEID 7). Instead, she appears to seek injunctive relief related to her First Amendment retaliation claim. (*See* Doc. 10-1 at PAGEID 194). Plaintiff also continues to seek $50,000 in compensatory damages and $100,000 in punitive damages. (*Id.* at PAGEID 195). Finally, plaintiff "asks[s] the court to stop the eviction process until [she] can find a place to rent." (*Id.*).

## II. Legal Standard

Federal Rule of Civil Procedure 15(a) governs amendments to the pleadings. A complaint may be amended once as a matter of course within twenty-one days or service of responsive pleadings. Fed. R. Civ. P. 15(a)(1)(B). If a plaintiff wishes to amend the complaint after the twenty-one day period has expired, as is the case here, she must obtain consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 472 F.3d 996, 1001 (6th Cir. 2005). The test for futility is whether the amended complaint "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

As relevant to Rule 12(b)(6), a complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " to withstand a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A

pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

🚩 *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s] devoid of "further factual enhancement." 🚩 *Id.* at 557. The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." 🚩 *Erickson*, 551 U.S. at 93 (citations omitted).

### III. Analysis

#### A. Jurisdictional issues

In its prior Report and Recommendation, the Court discussed the *Rooker-Feldman* doctrine and determined that it barred plaintiff's claim "[t]o the extent plaintiff [sought] an order from this Court 'reversing' the juvenile court magistrate's order temporarily removing plaintiff's children from her custody...." (Doc. 7 at PAGEID 125-26, referring to Doc. 1 at PAGEID 7). Plaintiff no longer seeks this relief. To the extent that plaintiff's proposed amended claims concern defendant Moore and the proposed defendants' "conduct *leading up* to the issuance of [an] ex parte order and executing that order[,]" the *Rooker-Feldman* doctrine is not a jurisdictional bar. *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 964 (6th Cir. 2021). *See also* 🚩 *Alexander v. Rosen*, 804 F.3d 1203, 1206-07 (6th Cir. 2015) (The *Rooker-Feldman* doctrine did not apply where the plaintiff "d[id] not appeal the state court's child support decision; he challenge[d] the conduct of the individuals who happened to participate in that decision.").

**\*4** Decisions following *Cunningham* have been inconsistent in application. *Compare Scharbrough v. S. Cent. Ohio Job & Fam. Servs.*, No. 2:20-cv-4527, 2021 WL 2314848, at \*6-8 (S.D. Ohio June 7, 2021) (claims that the defendants did not investigate the subject child's welfare and did not reconcile known, conflicting information prior to seeking an *ex parte* removal order (i.e., that the *ex parte* order was obtained without probable cause) were not barred under *Rooker-Feldman*), *reconsideration denied*, 2022 WL 615037 (S.D. Ohio Mar. 2, 2022), *with Hall v. Bush*, No. 1:20-cv-731, 2021 WL 4239855, at \*6 (W.D. Mich. July 21, 2021) (finding similar claims barred under *Rooker-Feldman* because the alleged injury stemmed directly from the *ex parte* order), *report and recommendation adopted*, 2021 WL 3750164 (W.D. Mich. Aug. 25, 2021). Given that *Rooker-Feldman*

"applies only to an exceedingly narrow set of cases[,]" the Court finds *Scharbrough*'s related analysis more persuasive.

🚩 *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 400 (6th Cir. 2020) (citing 🚩 *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)). Because plaintiff's proposed amended complaint no longer directly seeks reversal of Adams County juvenile court orders, the Court concludes that the *Rooker-Feldman* doctrine would not bar this Court's jurisdiction over the claims in the proposed amended complaint.

The abstention doctrine articulated in ❓ *Younger v. Harris*, 401 U.S. 37 (1971), however, continues to present a jurisdictional bar to most of plaintiff's claims in her proposed amended complaint. Absent extraordinary circumstances, federal courts may not interfere with pending state proceedings in order to entertain constitutional challenges to the state proceedings. *Id.* Under *Younger*, the federal court must abstain where "[1] state proceedings are pending; [2] the state proceedings involve an important state interest; and [3] the state proceeding will afford the plaintiff an adequate opportunity to raise his constitutional claims." 🚩 *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995) (citing *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989)). *See also* 🚩 *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987); 🚩 *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603-05 (1975). Extraordinary circumstances barring abstention include "great and immediate" irreparable injury, state law that is "flagrantly and patently violative of express constitutional prohibitions," or "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." ❓ *Younger*, 401 U.S. at 46, 53, 54. *See* 🚩 *Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996).

All three factors supporting *Younger* abstention are present in this case. First, it appears the dependency case is currently pending in the Adams County juvenile court. (Doc. 1 at PAGEID 11-12). *See* 🚩 *Huffman*, 420 U.S. at 608; *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003); 🚩 *Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir. 1990). Second, the dependency case implicates the important state interests in child custody and parental rights. *See* 🚩 *Meyers v. Franklin Cnty. Ct. Com. Pl.*, 23 F. App'x 201, 204 (6th Cir. 2001) (*Younger* abstention case stating that "cases out of the Supreme Court and this Court make it clear that

abstention is generally appropriate in matters of family relations such as child custody"). *See also Younger*, 401 U.S. at 43-45. Third, there is no allegation that the state juvenile court proceedings cannot provide an opportunity for plaintiff to raise any constitutional claims in connection with the dependency proceedings. *See Furr-Barry v. Underwood*, 59 F. App'x 796, 797 (6th Cir. 2003) (affirming the application of *Younger* where a case was pending in a Tennessee juvenile court, because "there was no evidence that the state court proceedings did not provide an opportunity for [the plaintiff] to raise her constitutional claims[ ]"). Therefore, abstention under *Younger* is appropriate. [5]

**\*5** Nor has plaintiff alleged facts showing the existence of extraordinary circumstances barring the application of *Younger* abstention. While plaintiff alleges difficulties with an unspecified "grievance policy" (Doc. 10-1 at PAGEID 194), this does not explain why plaintiff could not raise her proposed constitutional claims in the Adams County juvenile court. For the reasons stated above, the Court concludes that adherence to the *Younger* abstention doctrine is required in this case as to plaintiff's First, Fourth, and Fourteenth Amendment claims and ⚐ 42 U.S.C. § 1985 conspiracy claim related to the Adams County juvenile court proceedings.

Plaintiff's only proposed claim that appears unrelated to the Adams County juvenile court proceedings is the FHA claim that, as discussed below, could not survive a Rule 12(b)(6) motion to dismiss.

## B. Rule 12(b)(6)

Plaintiff's proposed FHA claim fails to state a claim upon which relief can be granted. To state a claim for relief under § 818 of the FHA, 42 U.S.C. § 3617, plaintiff must allege "(1) that [she] exercised or enjoyed a right guaranteed by §§ 3603-3606; (2) that the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection between [her] exercise or enjoyment of a right and the defendant's conduct." ⚐ *Wells v. Rhodes*, 928 F. Supp. 2d 920, 931 (S.D. Ohio 2013) (quoting *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 779 (6th Cir. 2004)). Critically, however, a plaintiff must allege facts showing defendants acted with a "discriminatory animus." ⚐ *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012). *See also Cooper v. W. & S. Fin. Grp., Inc.*, 847 F. Supp. 2d

1031, 1037 (S.D. Ohio 2012) (to state a claim for interference under § 3617, "plaintiffs must allege facts to show defendant falls within the scope of the statute, which applies to 'actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus' ") (citing ⚐ *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 236 (6th Cir. 2003)) (citing ⚐ *Mich. Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)).

Plaintiff alleges no discriminatory animus to support any underlying FHA claim. Moreover, plaintiff cites a criminal statute as the basis for a related conspiracy claim, for which there is no private right of action. *See supra* note 3. In any event, "it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." ⚐ *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (quoting ⚐ *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)). Aside from citing a criminal conspiracy statute, the most that plaintiff appears to allege regarding an FHA conspiracy is that proposed defendants' Edgington and Anderson "both tried to interfere with [her] housing rights" and that the former gave the latter information regarding plaintiff. (Doc. 10-1 at PAGEID 172, 178, and 180). These vague and conclusory allegations do not specifically plead a conspiracy. ⚐ *Id.* at 400. Plaintiff's proposed claims related to the FHA would not survive a Rule 12(b)(6) motion.

Plaintiff likewise fails to state a cognizable civil rights conspiracy claim in her proposed amended complaint. ⚐ Section 1985 provides a cause of action for conspiracy to deprive an individual the equal protection of the law. *See* ⚐ 42 U.S.C. § 1985(3). To state a ⚐ § 1985(3) claim, plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person

or property or deprived of any right or privilege of a citizen of the United States.

**\*6** *United Brotherhood. of Carpenters and Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). A § 1985(3) claim must also allege racial or class-based invidiously discriminatory animus driving the conspiracy. *See Scott*, 463 U.S. at 834 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Moreover, "conspiracy ... must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez*, 826 F.2d at 1538-39).

Plaintiff alleges that defendant Moore "planned with [proposed defendants Edgington and Anderson]" to enter her home in connection with the removal of her minor children. (Doc. 10-1 at PAGEID 168). Plaintiff fails to describe any substance of the alleged agreement between defendant Moore and the proposed defendants or any factual context—such as where or when the alleged agreement was reached. Without any such factual content, the Court cannot reasonably conclude that plaintiff states a plausible claim of conspiracy against defendants. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Moreover, plaintiff has made no allegation that the alleged conspiratorial actions in the proposed amended complaint were in any way motivated by racial or class-based animus or an intent to deprive plaintiff of the equal protection of the laws. *See Scott*, 463 U.S. at 834 (citing *Griffin*, 403 U.S. at 102). Therefore, plaintiff's civil rights conspiracy claim under § 1985(3) would not withstand a Rule 12(b)(6) motion.

Turning to plaintiff's proposed constitutional claims, the Court begins with proposed defendant Meyer: defendant Moore's supervisor. There is no plausible basis in the proposed amended complaint for liability against proposed defendant Meyer in her individual or official capacity. Plaintiff alleges only that proposed defendant Meyer "approved" defendant Moore's actions but does not cite any specific conduct by defendant Meyer. (*See* Doc. 10-1 at PAGEID 170, 172). "[T]o impose individual liability upon a [state official] for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the [official]'s involvement to the constitutional infirmity...." *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016). Plaintiff fails to meet that burden in her proposed amended complaint.

Plaintiff's proposed amended complaint does not otherwise identify a specific Adams County or Adams County Child Services policy or practice that would serve as the basis for proposed defendant Meyer's liability in her official capacity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (An entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...."). Plaintiff does not identify a policy or custom of Adams County or its Child Services Agency that allegedly resulted in constitutional injury. Accordingly, to the extent plaintiff's proposed amended complaint alleges claims against Sonya Meyer, it would not withstand a Rule 12(b)(6) motion.

Turning to the Fourteenth Amendment, plaintiff's due process claims against defendant Moore[6] appear to contain both substantive and procedural components. Plaintiff's proposed amended complaint fails to state a substantive due process claim against defendant Moore based on her alleged deprivation of plaintiff's parental rights. In a case directly on point, the plaintiff (a parent) filed suit against a county child services case worker after losing custody of her children, and the Sixth Circuit held:

**\*7** [C]ounty caseworkers cannot be held liable for a juvenile court's decision to deprive a parent of custody "[b]ecause Ohio law refers custody decisions to the juvenile court, which has independent authority to conduct hearings and collect evidence." *Teets v. Cuyahoga Cty.*, 460 F. App'x 498, 502 (6th Cir. 2012) (citing *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011)). "[E]ven intentional misrepresentations by a social worker during an investigation leading up to Ohio custody proceedings do not violate the parent's substantive due process rights because *the social worker has no independent authority to institute the alleged deprivation.*" *Id.* Thus, when "the [plaintiff] seek[s] to hold [county caseworkers] accountable for subsequent criminal or juvenile court actions, that argument also fails." *Id. Arsan v. Keller*, 784 F. App'x 900, 910 (6th Cir. 2019) (emphasis added).

In the instant case, defendant Moore had "no independent ability" to grant Adams County Children's Services temporary custody of plaintiff's minor children. *Id.* Rather, that decision rested with the Adams County juvenile court. Plaintiff's Fourteenth Amendment substantive due process claim would not survive a Rule 12(b)(6) motion to dismiss.

Plaintiff also alleges a procedural due process claim against defendant Moore. Plaintiff alleges that the Adams County juvenile court proceedings resulting in the deprivation of her parental rights were unfair because defendant Moore obtained the protective supervision order authorizing entry into her home under false pretenses and tricked and coerced her into executing a safety plan. (Doc. 10-1 at PAGEID 170-71). In *Arsan*, the Sixth Circuit held:

> When an aggrieved parent sues county caseworkers for their conduct during child custody proceedings culminating in the deprivation of custody by the juvenile court, however, responsibility for procedural deficiencies lies with the juvenile court, not the caseworkers. *Pittman,* 640 F.3d at 730. *When caseworkers give testimony or otherwise participate as legal advocates in custody hearings, quasi-prosecutorial immunity shields them from liability. Id.* at 724. This immunity, which is absolute and applies in the same way as prosecutorial immunity, shields caseworkers from damages even when they knowingly make false or defamatory statements, *id.* at 725, or when their conduct is "unquestionably illegal or improper," [*Cady v. Arenac Cnty.,* 574 F.3d 334, 340 (6th Cir. 2009)]. All that matters is that the alleged illegal conduct stems from the caseworker's "capacity as a legal advocate," such as testifying in

juvenile court. *Pittman,* 640 F.3d at 724.

*Id.* at 911 (emphasis added).

To the extent that plaintiff's proposed amended procedural due process claim involves how defendant Moore secured the Adams County juvenile court order authorizing the search of plaintiff's home, it unquestionably involves defendant Moore's "capacity as a legal advocate." *Id.* (quoting *Pittman,* 640 F.3d at 724). Plaintiff alleges that defendant Moore filed a false complaint and gave false testimony to the juvenile court for the purpose of obtaining protective custody over her children. Defendant Moore would be shielded by quasi-prosecutorial immunity from plaintiff's Fourteenth Amendment procedural due process claim.

To the extent plaintiff's proposed amended procedural due process claim relates to defendant Moore's alleged execution of a safety plan, it still fails. "[W]hen a parent voluntarily consents to a safety plan, 'no hearing of any kind is necessary; hearings are required for deprivations taken over objection, not for steps authorized by consent.' " *Smith v. Williams-Ash,* 520 F.3d 596, 600 (6th Cir. 2008) (adopting the reasoning of and quoting *Dupuy v. Samuels,* 465 F.3d 671-62 (7th Cir. 2006)). Even if plaintiff's statements that she felt coerced to execute the safety plan are taken as true, this does not render it involuntary. *Teets,* 406 F. App'x at 503 (citing *Smith,* 520 F.3d at 600) (an agency's threat of removal to force the execution of a safety plan "does not undermine the voluntary nature of a safety plan"). [7] Plaintiff's proposed procedural due process claim based on her execution of a safety plan would not withstand a Rule 12(b)(6) motion.

**\*8** Plaintiff's proposed Fourth Amendment unlawful search claim likewise would not withstand a Rule 12(b)(6) motion against defendant Moore or any proposed defendant. The Fourth Amendment protects against warrantless searches of a home, including those performed by social workers. *See Andrews v. Hickman Cnty., Tenn.,* 700 F.3d 845, 859 (6th Cir. 2012). "The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances." *Krantz v. City of Toledo Police Dep't,* 197 F. App'x 446, 453 n.5 (6th Cir. 2006) (citing

*Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000); *O'Donnell v. Brown*, 335 F. Supp. 2d 787, 806-07 (W.D. Mich. 2004)). In this case, by plaintiff's own admission and attachments to her original complaint, the search of her home and seizure of her children were done pursuant to an Adams County juvenile court order. (*See* Doc. 1 at PAGEID 8-10).

Plaintiff also alleges that defendant Moore procured this court order by "filing a false complaint" and giving false testimony. (*See* Doc. 10-1 at PAGEID 168, 170). Accepting the truth of these allegations, defendant Moore is nevertheless entitled to immunity. "[F]amily service workers [are] absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings." *Pittman*, 640 F.3d at 724-25 (6th Cir. 2011) (quoting *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989)). That immunity applies regardless of "intentional misrepresentations to the juvenile court in the complaint and affidavits" or inadequate investigation "intimately related" to the custody determination. *Id.* at 726 (quoting *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 423 (6th Cir. 2001)).

Finally, plaintiff's First Amendment retaliation claim would not withstand a Rule 12(b)(6) motion, which requires showings that:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a casual connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff appears to allege that the removal proceedings at issue were retaliation for her criticisms of the Winchester Police Department and Adams County Child Services. (*See, e.g.*, Doc. 10-1 at PAGEID 211 (Google reviews), 229 (what appears to be a Facebook review), 276 (Google review)). To be sure, the "[f]reedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Lucas v. Monroe Cnty.*, 203 F.3d 964, 973-74 (6th Cir. 2000) (quoting *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997)). *See also Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) ("The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.' ") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964)). The adverse action here, however, the removal of plaintiff's minor children, occurred pursuant to the Adams County juvenile court's protective supervision order. A "removal order [i]s equivalent to a judicially authorized warrant[,]" *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 696 (6th Cir. 2018); and the Sixth Circuit has held that where there is probable cause for an arrest, a First Amendment retaliation claim fails as a matter of law. *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006).

### IT IS THEREFORE RECOMMENDED THAT:

 **\*9**  1. The Court **DENY** plaintiff's motion for leave to amend pleading (Doc. 10).

### All Citations

Slip Copy, 2023 WL 2568300

---

### Footnotes

1      Pursuant to Federal Rule of Civil Procedure 10, the exhibits are considered a part of the complaint "for all purposes." *See* Fed. R. Civ. P. 10(c). *Cf. Fishman v. Williams*, No. CV 14-4823, 2016 WL 11484591, at *7

(C.D. Cal. Sept. 21, 2016) ("When screening a *pro se* plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court may consider facts drawn from the complaint and supporting exhibits attached thereto."); *Johnson v. Buffalo Pub. Schools: Adult Educ. Div.*, No. 19-cv-1484, 2021 WL 9455714, at *3 (W.D.N.Y. Jan. 7, 2021) ("The Court deems the attachments and exhibits attached to Johnson's Complaint part of the pleading and considers them, to the extent they are relevant, in its screening decision."). However, the Court declines to comb through the record to raise new claims or make legal arguments for plaintiff. *Cf. Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("Furthermore, although this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."). In addition, plaintiff's proposed amended complaint references Adams County juvenile court proceedings, and the Court therefore considers related documents attached to plaintiff's original complaint—as this appears consistent with plaintiff's intent. *Mattox v. Edelman*, 851 F.3d 583, 591 n.5 (6th Cir. 2017) (quoting *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). *Cf. U.S. ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)) ("[A] court may take judicial notice of another court's opinion, not for the truth of the facts therein, but for the existence of the opinion.").

2    Plaintiff also references 18 U.S.C. § 242, but there is no private right of action under this statute. *Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008) (citing *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)).

3    Plaintiff also cites 18 U.S.C. §§ 241 and 242 in connection with this claim (*see id.* at PAGEID 172-73), neither of which provide a private right of action. *Booth*, 290 F. App'x at 921 (citing *Oguaju*, 76 F. App'x at 581).

4    In this section of the proposed amended complaint (*id.* at PAGEID 178-79), plaintiff makes a passing reference to 42 U.S.C. § 14141, since recodified at 34 U.S.C. § 12601, which makes unlawful the governmental "pattern or practice" of "depriv[ing] persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 34 U.S.C. § 12601(a). There is no private right of action under this statute. *See id.* at § 12601(b) ("*[T]he Attorney General* ... may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.") (emphasis added); *Logue v. U.S. Marshals*, No. 1:13-cv-348, 2013 WL 3983215, at *3 (S.D. Ohio Aug. 1, 2013) (collecting authority within the Sixth Circuit), *report and recommendation adopted*, 2013 WL 5334494 (S.D. Ohio Sept. 23, 2013).

5    As noted above, plaintiff's prayer for relief in the proposed amended complaint requests that the Court enjoin a pending state court eviction proceeding—of which this appears to be the only mention aside from an attached Adams Metropolitan Housing Authority "Notice to Leave the Premises." (*See* Doc. 10-1 at PAGEID 195, 312). All three *Younger* factors support abstention as to that requested relief as well. Eviction implicates important state interests, *see Doscher v. Menifee Circuit Court*, No. 03-5229, 2003 WL 22220534 (6th Cir. Sept. 24, 2003), and there is no indication the plaintiff could not raise federal claims in the context of the ongoing eviction proceeding.

6    Plaintiff does not allege that proposed defendants Edgington or Anderson were involved with the deprivation of plaintiff's parental rights—only that they assisted with an unlawful search. (Doc. 10-1 at PAGEID 170 (Proposed defendants Edgington and Anderson "assisted [defendant] Moore in the unlawful entry to our home.")).

7    In *Schulkers v. Kammer*, the Sixth Circuit distinguished a situation in which the plaintiff parents alleged that children's services officials made specific misrepresentations regarding the safety plan and its ramifications, and the plaintiff parents had repeatedly asked to be released from the safety plan's terms after executing it.

955 F.3d 520, 543 (6th Cir. 2020). Under those circumstances, the court concluded on summary judgment that a triable issue remained on the plaintiff's procedural due process claim. *Id.* Here, in addition to the fact that defendant Moore had a protective supervision order in hand when she asked plaintiff to execute the safety plan (*see* Doc. 1 at PAGEID 8-10), plaintiff's allegations regarding coercion are conclusory. (*See* Doc. 10-1 at PAGEID 171-72, 189-90).

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3563065
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Stephanie Ann GUMBER, Plaintiff,

v.

Keith FAGUNDES, et al., Defendants.

Case No. 21-cv-03155-PJH
|
Signed 08/11/2021

**Attorneys and Law Firms**

Stephanie Ann Gumber, Lemoore, CA, Pro Se.

**ORDER (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DISMISSING COMPLAINT WITHOUT PREJUDICE**

Re: Dkt. No. 11

PHYLLIS J. HAMILTON, United States District Judge

**\*1** The court has reviewed Chief Magistrate Judge Joseph C. Spero's Report and Recommendation Re: plaintiff's motion to remove (Dkt. 8) and plaintiff's motion for emergency injunction (Dkt. 10). The court finds the report correct, well-reasoned and thorough, and adopts it in every respect. Accordingly, plaintiff's motion to remove is **DENIED**, and plaintiff's motion for emergency injunction is **DENIED**.

In addition to considering plaintiff's motions, Judge Spero suggested that the complaint be dismissed pursuant to Title 28 U.S.C. § 1915(e) for failure to state a claim on which relief may be granted. Plaintiff filed an "opposition to motion to dismiss" on July 22, 2021, which the court construes as an objection to the report. Dkt. 13. To the extent plaintiff's brief of July 22 serves as an objection to the report, it is **OVERRULED**. The court considers the issue of dismissal below.

**A. Legal Standard**

Under 28 U.S.C. § 1915(a), "[a]ny court of the United States may authorize the commencement ... of any suit ... without prepayment of fees and costs or security therefor,

by a person who makes affidavit that he is unable to pay such costs or give security therefor." However, in reviewing an application to proceed in forma pauperis, the court may dismiss a case sua sponte if the court determines that the party applying for in forma pauperis status has failed to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." Watson v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing Lopez v. Smith, 203 F.3d 1122, 1127-31 (9th Cir. 2000)). A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B. Discussion**

In the caption of the complaint, plaintiff lists the following causes of action: (1) violation of Title 18 U.S.C. § 241; (2) violation of Title 42 U.S.C. § 1983; (3) violation of Title 18 U.S.C. § 1964(C) (RICO); (4) violation of Title

18 U.S.C. § 1341; (5) 🚩 Title 18 U.S.C. § 1201(c); (6) Title 19 U.S.C. § 912; (7) "violation of Federal Law Foreign Agent Registration Act of 1937" (🚩 22 U.S.C. § 611 et seq.); and (8) violation of 🚩 Title 18 U.S.C. § 1702. Plaintiff refers within the body of the complaint to claims for (9) Title 42 U.S.C. § 1986; (10) 🚩 Title 18 U.S.C. § 242; and (11) 🚩 Title 34 U.S.C. § 12601.

As recommended in the report, the court concludes that the claims under 🚩 18 U.S.C. §§ 241, 🚩 242, 912, 🚩 1341, 🚩 1702, and 🚩 1201(c); 🚩 22 U.S.C. § 611 et seq.; and 🚩 34 U.S.C. § 12601 all must be dismissed because there is no private right of action as to those claims.

Similarly, the claim under Title 42 U.S.C. § 1986 is dismissed with prejudice because plaintiff does not allege a claim under 🚩 Title 42 U.S.C. § 1985. See ⚠️ Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).

The claim under 🚩 Title 18 U.S.C. § 1964(C), for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), is dismissed because the plaintiff does not allege a plausible claim for relief. A plaintiff may pursue a civil remedy for a RICO violation that proximately caused the plaintiff a cognizable injury. 🚩 Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006). Plaintiff's complaint fails to identify a RICO violation and fails to allege any facts that a RICO violation proximately caused her harm, so plaintiff fails to state a claim for a RICO violation under 🚩 Title 18 U.S.C. § 1964(c). However, the court grants plaintiff leave to amend this claim.

The claim under 🚩 § 1983 is also dismissed. As noted by Judge Spero, a prosecutor is entitled to absolute immunity with respect to conduct that is "intimately associated with the judicial phase of the criminal process." Dkt. 11 at 7

(quoting 🚩 Imbler v. Pachtman, 424 U.S. 409, 427, 430-431 (1976)). Plaintiff's 🚩 § 1983 claim is premised on defendants' efforts to charge her with a crime and advancing their criminal case against her in state court. Plaintiff's 🚩 § 1983 claim is therefore dismissed with prejudice based on prosecutorial immunity. However, to the extent plaintiff intends to assert a constitutional violation for something other than her prosecution, plaintiff is granted leave to amend.

**C. Conclusion**

For the reasons stated above, all claims in the complaint are **DISMISSED** under 🚩 28 U.S.C. § 1915 on the basis that the complaint fails to state any valid claim. Plaintiff cannot cure the defects associated with her claims under 🚩 Titles 18 U.S.C. §§ 241, 🚩 242, 912, 🚩 1341, 🚩 1702, and 🚩 1201(c); 🚩 22 U.S.C. § 611 et seq.; and 🚩 34 U.S.C. § 12601 because there is no private right of action as to those claims. Therefore, those claims are **DISMISSED WITH PREJUDICE**. The claim under Title 42 U.S.C. § 1986 is **DISMISSED WITH PREJUDICE** because plaintiff does not allege a claim under 🚩 Title 42 U.S.C. § 1985.

Going forward, plaintiff may not seek to litigate any of the claims dismissed with prejudice. Plaintiff may amend her complaint with respect to only the RICO and 🚩 § 1983 claims dismissed without prejudice as specified in this order. The court allows plaintiff **30 days** from the date of this order to file a first amended complaint correcting all deficiencies in those two claims. No new claims or parties may be added without the agreement of defendants or leave of court.

**\*3  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 3563065

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2486552
Only the Westlaw citation is currently available.
United States District Court, M.D. Louisiana.

Steven Roy KILLINGSWORTH (#728006)

v.

Karla BRINGEDAHL, et al.

CIVIL ACTION NO. 21-337-BAJ-EWD
|
Signed February 23, 2023
|
Filed February 24, 2023

**Attorneys and Law Firms**

Steven Roy Killingsworth, Jackson, LA, Pro Se.

LaKeisha A. Ford, Louisiana Department of Justice-Attorney General, Baton Rouge, LA, for Karla Bringedahl, et al.

**ORDER**

ERIN WILDER-DOOMES, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court is a "Motion for Recusal of Honorable Judge Brian Jackson and Magistrate Judge Erin Wilder-Doomes pursuant to 28 U.S.C.A. 455 and Formal Complaint pursuant to 28 U.S.C.A. 354," [1] filed by Plaintiff Steven Roy Killingsworth ("Killingsworth"), who is representing himself and who is confined at the Dixon Correctional Institution in Jackson, Louisiana. Killingsworth alleges that Judge Jackson and Judge Wilder-Doomes must be part of a conspiracy to infringe upon Killingsworth's substantial rights and as support notes the history and progression of this case. [2]

A motion to recuse is committed to the broad discretion of the targeted judge [3] to determine whether disqualification is appropriate. [4] A judge is presumed to be qualified to preside over a case, [5] so a movant seeking disqualification bears the burden of proving that a judge is not qualified by clear and convincing evidence. [6]

Two statutes govern recusal motions: 28 U.S.C. § 144 and 28 U.S.C. § 455. [7] § 144 states as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Some courts have held that a *pro se* litigant may not obtain disqualification of a judge under § 144 because a *pro se* litigant cannot meet the plain language of the statute requiring "a certificate of counsel of record stating that it [the affidavit in support of recusal] is made in good faith." [8] Even if Killingsworth, who is representing himself, could proceed under § 144, the allegations in his Motion are not sufficient to establish personal bias or prejudice on the part of either of the judges assigned to this case, as more fully explained below in relation to § 455, the provision specifically cited by Killingsworth.

**\*2** § 455 reads, in pertinent part, as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...."

While § 455 does not contain the same procedural requirements as § 144, recusal under § 455 is not warranted here.

In determining whether recusal is appropriate under this statute, the Fifth Circuit has stated that the recusal standard is an objective one. A party seeking recusal must demonstrate that a reasonable and objective person, knowing all the facts and circumstances of the case, would harbor doubts concerning the judge's impartiality. [9] This showing must be based on specific facts so as to avoid giving a party a "random veto over the assignment of judges." [10] Also, a § 455 claim must not be so broadly construed that "recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." [11]

Killingsworth has failed to provide any specific facts that would lead a reasonable and objective person to question the impartiality or to demonstrate any personal bias as to either judge assigned to his case under either § 144 or § 455. The facts relied on by Killingsworth to show a conspiracy and bias are merely statements regarding how the case has progressed, which how civil rights complaints by prisoners normally progress through this Court. For example, Killingsworth complains that the order granting him pauper status directed that service would not be made and that summons should be withheld until further order of the Court. [12] It is standard practice of this Court to withhold service for cases that are subject to the screening provisions of 28 U.S.C. §§ 1915(e) and/or 1915A until the screening process is completed. Similarly, Killingsworth questions why he was required to complete a USM-285 form for service. Again, this is a standard order for all individuals who qualify for service by the United States Marshals Service under Federal Rule of Civil Procedure 4(c)(3). [13] Similarly, Killingsworth complains about the length of time a motion to reinstate his suit after dismissal was pending. The facts provided by Killingsworth are merely facts regarding how a case of this type typically proceeds through the Court system and/or disagreements regarding rulings and orders issued by this Court, which is not a basis for recusal. [14]

**\*3** Killingsworth also references 28 U.S.C. § 354, presumably to make a judicial misconduct complaint. That provision provides, in pertinent part:

(a) Actions Upon Receipt of Report.—

(1) Actions.—The judicial council of a circuit, upon receipt of a report filed under section 353(c)—

(A) may conduct any additional investigation which it considers to be necessary;

(B) may dismiss the complaint; and

(C) if the complaint is not dismissed, shall take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit.

Killingsworth misunderstands the process for filing a judicial misconduct complaint. To the extent he wishes to raise allegations of judicial misconduct, he must do so according to The Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351-364 ("the Act") and the Rules for Judicial-Conduct and Judicial-Disability Proceedings. [15] While the Act authorizes complaints against United States Circuit, District, Bankruptcy, and Magistrate Judges who have "engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts" or who are "unable to discharge all the duties of office by reason of mental or physical disability," this Court is not the proper forum for such complaints. [16] Additionally, Killingsworth is advised that the Act is not intended to facilitate complaints based on what he perceives to be incorrect judicial decisions. A complaint under the Act may be dismissed if it is "directly related to the merits of a decision or procedural ruling." This Court will take no further action related to any complaint by Killingsworth against any judge of this Court under The Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351-364.

After carefully reviewing the matter, there is not sufficient factual support for Killingsworth's allegation of any personal bias or prejudice on the part of either judge assigned to this case to warrant recusal and this Court is not the proper venue for judicial misconduct complaints. Accordingly,

**IT IS ORDERED** that to the "Motion for Recusal of Honorable Judge Brian Jackson and Magistrate Judge Erin

Wilder-Doomes pursuant to ⚑ 28 U.S.C.A. 455 and Formal Complaint pursuant to ⚑ 28 U.S.C.A. 354," [17] filed by Plaintiff Steven Roy Killingsworth, is **DENIED**.

**All Citations**

Slip Copy, 2023 WL 2486552

## Footnotes

1    R. Doc. 31.

2    *See* R. Doc. 31, pp. 1-4.

3    ⚑ *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999).

4    *See, e.g.,* ⚑ *United States v. Mizell*, 88 F.3d 288, 299 (5th Cir. 1996), (citing *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993)).

5    *In re Wilborn*, 401 B.R. 848, 860 (Bankr. S.D. Tex. 2009), citing *In re Betts*, 143 B.R. 1016, 1022 (Bankr. N.D. Ill. 1992) (citing *Idaho v. Freeman*, 478 F.Supp. 33 (D. Idaho 1979)).

6    *See* ⚑ *Kinnear–Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 634 (5th Cir. 1971), *superseded by statute*, ⚑ 28 U.S.C. § 455 (1974), as stated in *Aronson v. Brown*, 14 F.3d 1578, 1582-83 (Fed. Cir. 1994) (noting that ⚑ § 455 was amended in 1974 to, among other things, "omit[ ] the phrase 'in his opinion', in order to eliminate the subjective standard.").

7    *K & F Holdings, Ltd. v. Rouse's Enterprises, L.L.C.*, No. 16-293, 2017 WL 2778345, at *1 (M.D. La. June 27, 2017).

8    *See, e.g., Gibson v. Gusman*, No. 14-2273, 2014 WL 6469507, at *3 (E.D. La. Nov. 17, 2014), citing *Robinson v. Gregory*, 929 F.Supp. 334, 337-38 (S.D. Ind. 1996).

9    ⚑ 🔺 *Patterson*, 335 F.3d at 484; *U.S. v. Spears*, No. 09-19, 2012 WL 112985, at *2 (M.D. La. Jan. 12, 2012).

10   *Capizzo v. State*, Civ. Action No. 99-138, 1999 WL 539439, at * 1 (E.D. La. July 22, 1999).

11   *Spears*, 2012 WL 112985 at * 2.

12   R. Doc. 31, p. 1.

13   R. Doc. 31, p. 2. The instructions for the Form 285 state, in relevant part: "Submit one complete set of this form (USM-285) and one copy of each writ for each individual, company, corporation, etc., to be served or property to be seized or condemned."

14   *See Mandawala v. Northeast Baptist Hospital, Counts 1, 2, and 11*, 16 F.4th 1144, 1156-57 (5th Cir. 2021) ("[A]dverse rulings, without more, do not warrant disqualification for bias. It is obvious why: If we credited [the plaintiff's] theory, every judge would have to recuse, because any ruling in a dispute between parties would supply *prima facie* evidence of bias against the loser."). *See also* ⚑ *Liteky v. U.S.*, 510 U.S. 540, 541 (1994) ("First, judicial rulings alone almost never constitute valid basis for a bias or partiality recusal

motion ... Second, opinions formed by the judge on the basis of facts introduced or events occurring during current or prior proceedings are not grounds for a recusal motion unless they display deep-seated favoritism or antagonism as would make fair judgment impossible.").

15    The provision referenced by Killingsworth only comes into play after an initial complaint is filed with the clerk of the court of appeals for the circuit (□ 28 U.S.C. § 351(a)), which is reviewed by the chief judge of the circuit. Only if a special committee is appointed to investigate and files a written report suggesting that action from the judicial council of the circuit is necessary would the provision cited by Killingsworth be applicable.

16    *See*, Appendix to Local Civil Rules of the Middle District of Louisiana. Written complaints under the Act may be filed at the following office:

Clerk
United States Court of Appeal for the Fifth Circuit
600 Camp Street, Room 102
New Orleans, LA 70130

17    R. Doc. 31.

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2552333
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Lee Michael BEITMAN, Plaintiff-Appellant,

v.

CORRECT CARE SOLUTIONS, LLC, Contracted
Healthcare Provider at ASPC Kingman/Huachuca
Unit, previously named Correct Clear Solutions;
Corizon Health, Inc., Contracted Health Care Provider
at ADOC; Martin Gruenberg; Amber Norton, RN,
BSN, HSA; Dorothy Igwe, NP; D. Schmit, Doctor at
Kingman-Huachuca-GEO; S. Herrick, NP at Kingman-
Huachuca-GEO; Betty Hahn, NP at Florence - South
Unit ASPC; Centurion of Arizona LLC; Charles L. Ryan;
Schmitt, First name unknown, Doctor of Correct Clear
Solutions; Herrick, First name unknown; NP; Unknown
Parties, John Doe 1 and 2, Healthcare Providers
for Correct Care Solutions, Defendants-Appellees.

No. 22-15716
|
Submitted March 16, 2023 * San Francisco, California
|
FILED MARCH 17, 2023

Appeal from the United States District Court for the District
of Arizona, James A. Teilborg, District Judge, Presiding, D.C.
No. 3:17-cv-08229-JAT

**Attorneys and Law Firms**

Lee Michael Beitman, Phoenix, AZ, Pro Se.

Vail C. Cloar, Alexandra Crandall, Dickinson Wright, PLLC,
Phoenix, AZ, Denise Troy, Dickinson Wright/Mariscal
Weeks, Phoenix, AZ, for Defendants-Appellees Correct Care
Solutions, LLC, Contracted Healthcare Provider at ASPC
Kingman/Huachuca Unit, Previously Named Correct Clear
Solutions, Martin Gruenberg, Amber Norton, RN, BSN,
HSA, D. Schmit, Doctor at Kingman-Huachuca-Geo, S.
Herrick, NP at Kingman-Huachuca-Geo.

Anthony J. Fernandez, Quintairos, Prieto, Wood & Boyer,
P.A., Phoenix, AZ, for Defendants-Appellees Corizon Health,
Inc., Contracted Health Care Provider at ADOC, Dorothy
IGWE, NP.

Anthony J. Fernandez, Quintairos, Prieto, Wood & Boyer,
P.A., Phoenix, AZ, Sarah Lynn Barnes, Esquire, Kelley M.
Jancaitis, Broening Oberg Woods & Wilson, PC, Phoenix,
AZ, for Defendant-Appellee Betty Hahn, NP at Florence—
South Unit ASPC.

Sarah Lynn Barnes, Esquire, Kelley M. Jancaitis, Broening
Oberg Woods & Wilson, PC, Phoenix, AZ, for Defendant-
Appellee Centurion of Arizona LLC.

Before: WALLACE, FERNANDEZ, and SILVERMAN,
Circuit Judges.

MEMORANDUM [**]

**\*1** Arizona prisoner Lee Michael Beitman appeals pro se
from the district court's judgment imposed after a jury trial
in his 42 U.S.C. § 1983 action against Defendant Nurse
Practitioner Stephanie Herrick [1] regarding the medical care
she provided after he was assaulted by a fellow inmate on
February 1, 2016. He argues that the district court erred
in allowing information about his prior convictions into
evidence and in denying his motions for appointment of
counsel, for discovery sanctions, and for recusal of the judge.
We affirm.

The district court did not abuse its discretion in denying
Beitman's motions for appointment of counsel. *See* 28
U.S.C. § 1915(e)(1); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th
Cir. 2009); *see also United States v. Hinkson*, 585 F.3d 1247,
1261–63 (9th Cir. 2009) (en banc). It reasonably concluded
that Beitman had little likelihood of success on the merits,
could adequately articulate his claims, and that the issues in
the case were not particularly complex. *See* Wilborn v.
Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Beitman has
not identified the presence of any exceptional circumstances;
the difficulties he points to are common to most pro se
litigants. *See* Wood v. Housewright, 900 F.2d 1332,
1335–36 (9th Cir. 1990).

Likewise, there was no abuse of discretion [2] in the district
court's admission of evidence regarding the fact of Beitman's
felony convictions and the prison sentences he received. That
limited evidence was properly admitted for impeachment

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 149 of 212

Beitman v. Correct Care Solutions, LLC, Not Reported in Fed. Rptr. (2023)

purposes[3] and did not unfairly prejudice Beitman.[4] The jury already knew that Beitman was in prison.

The district court did not abuse its discretion[5] when it denied Beitman's motion for discovery sanctions against Defendant Herrick because of the purported destruction of some X-ray images of his injuries. *See* Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991). Beitman failed to establish that the X-rays had been destroyed, let alone that they had been destroyed by Defendant Herrick or that she destroyed them despite notice of their potential relevance to litigation. *See* United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002); Akiona, 938 F.2d at 161.

Finally, the district court did not abuse its discretion in denying Beitman's motion for Judge Teilborg to recuse himself because of bias. *See* United States v. Johnson, 610 F.3d 1138, 1147 (9th Cir. 2010); *see also* United States v. Sibla, 624 F.2d 864, 867–68 (9th Cir. 1980). The district court reasonably denied Beitman's motion pursuant to 28 U.S.C. § 144 because his affidavit was "devoid of specific fact allegations tending to show personal bias stemming from an extrajudicial source," and was thus insufficient. *Sibla,* 624 F.2d at 868; *see also* Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994). Likewise, his motion was properly denied under 28 U.S.C. § 455 for essentially the same reasons[6]: Beitman pointed to no circumstances requiring Judge Teilborg's recusal, and none is apparent in the record.[7]

**\*2  AFFIRMED.**

## All Citations

Not Reported in Fed. Rptr., 2023 WL 2552333

---

## Footnotes

\*    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1    Beitman's claims against the other defendants were resolved prior to trial, and Beitman did not appeal any rulings as to those defendants.

2    *See* Reese v. County of Sacramento, 888 F.3d 1030, 1047 (9th Cir. 2018).

3    Fed. R. Evid. 609(a)(1)(A); United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009).

4    Fed. R. Evid. 403; United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).

5    *See* Transue v. Aesthetech Corp., 341 F.3d 911, 921 (9th Cir. 2003).

6    Sibla, 624 F.2d at 867–68; Liteky, 510 U.S. at 555–56, 114 S. Ct. at 1157–58.

7    We do not consider any complaint Beitman may have attempted to lodge against Judge Teilborg pursuant to 28 U.S.C. § 351(a): it was not properly before the district court and is not before us now. *See* 28 U.S.C. §§ 351(a), 352(a).

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 150 of 212

Beitman v. Correct Care Solutions, LLC, Not Reported in Fed. Rptr. (2023)

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2453481
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Leon R. KOZIOL, individually and as natural
parent of Child A and Child B, Plaintiff,
v.
Daniel KING et al., Defendants.

No. 6:14–cv–946 (GLS/TWD).
|
Signed May 22, 2015.

**Attorneys and Law Firms**

Leon R. Koziol, New Hartford, NY, pro se.

Daniel King; James Gorman; James Tormey; Robert Rose; John Lahtinen; Edward Spain; Leslie Stein; Monica Duffy; Steven Zayas; John Centra, Hon. Eric T. Schneiderman, New York State Attorney General, The Capitol, Justin L. Engel, Assistant Attorney General, of Counsel, Albany, NY, Nicole Christensen, Schmitt & Lascurettes, LLC, Kelly Hawse–Koziol, William P. Schmitt, Esq., of Counsel, New Hartford, NY, William Koslosky, Costello, Cooney Law Firm, Paul G. Ferrara, Esq., of Counsel, for the Defendants.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

**I. Introduction**

**\*1** Plaintiff *pro se* Leon R. Koziol commenced this action against defendants Daniel King, James Gorman, James Tormey, Robert Rose, John Lahtinen, Edward Spain, Leslie Stein, Monica Duffy, Steven Zayas, John Centra, (collectively, "State Defendants"), Nicole Christensen, defendant *pro se* Kelly Hawse–Koziol, and William Koslosky, pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourth, Ninth, and Fourteenth Amendment rights, and also asserting a claim of *prima facie* tort under New York common law.[1] (Compl., Dkt. No. 1.) Pending are State Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), (Dkt. No. 23), Koslosky's motions for summary judgment, (Dkt. No. 25),

and for sanctions pursuant to Fed.R.Civ.P. 11, (Dkt. No. 27), Christensen's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), (Dkt. No. 36), Hawse–Koziol's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), (Dkt. No. 39), and Koziol's cross motion for disqualification of the court and a preliminary injunction, (Dkt. No. 41). For the reasons that follow, each of defendants' motions are granted, Koziol's cross motion is denied, and his complaint is dismissed.

**II. Background**[2]

Koziol is a suspended attorney and "parental advocate ... seeking to reform th[e] child rearing system." (Compl.¶¶ 6, 58, 60, 66.) Endeavoring to comprehend his verbose, disjointed, and vitriolic complaint has been, to use Koziol's own words, "a chaotic ordeal." (Dkt. No. 45, Attach. 1 ¶ 14.) Nonetheless, the court has waded through all 179 paragraphs, and, after a painstaking review, has gleaned that Koziol's gripes derive from two general sources: (1) divorce, child custody, and chid support proceedings in New York Family Court, throughout which various judges have continuously and systematically violated myriad constitutional rights; and (2) state court decisions suspending him from the practice of law in New York, and the various investigations prior and subsequent to those decisions. (*See generally* Compl.)

Thus, in this case—his fourth filed in the Northern District of New York[3]—Koziol names as defendants eight New York state judges, two former members of New York's Committee on Professional Standards (COPS), a court-appointed Attorney for the Child, a supervisor for the Oneida County Support Collection Unit, and his ex-wife. (*Id.*) Against each of these defendants, he asserts a veritable potpourri of constitutional and state law infractions: violations of his Fourteenth Amendment substantive and procedural due process and equal protection rights, Fourth, Ninth, and Tenth Amendment "parental privacy" rights, First Amendment "free speech, free press, free religion, free association and judicial access" rights, and state tort law. (*Id.* ¶¶ 154–68, 174–75 .) He also seeks declaratory and injunctive relief in the form of the following: (1) "[a] permanent inunction ... upon interacting processes challenged by this action and on custody/support orders and license suspensions issued"; (2) "[a] judgment declaring unconstitutional Section 240(1) of the New York Domestic

Relations Law, the parental classifications enforced in New York, and a practice of censoring out-of-court criticisms"; (3) "[a] judgment declaring unconstitutional Section 8.4(d) and (h) of the New York Attorney Rules of Conduct and the terms of suspension upon [him] which prohibit opinions and employment related to the law in undefined and wide ranging contexts"; and (4) "[o]rders restoring [his] law license in this [c]ourt,[4] sealing the records and parenting time sufficient to overcome child alienations." (*Id.* at 30.)

**\*2** Below, to the extent possible, the court attempts to set forth the relevant facts pertaining to each defendant.

### A. *State Defendants*

#### 1. *Judge King*
Judge King is a County Court judge in Lewis County, New York, and, beginning in 2013, presided over Koziol's Family Court matters. (*Id.* ¶¶ 19, 108.) Specifically, Koziol alleges that, in July 2013, his ex-wife, Hawse–Koziol, filed "specious petitions," and, subsequently, Judge King issued several "bad faith orders," that, among other things, restricted Koziol's alcohol consumption during visits with his children and limited the geographic area in which he could travel with them. (*Id.* ¶¶ 108–12, 115.)

Koziol further alleges that Judge King imposed additional restrictions on him when he sought to take his children to an out-of-town wedding. (*Id.* ¶¶ 119–20.) These restrictions included requiring separate lodging for Koziol's children and fiancée and prohibiting alcohol consumption. (*Id.*) After the wedding, Judge King "ordered [Koziol] to answer violation charges," apparently because Hawse–Koziol alleged that Koziol had violated the visitation conditions established by Judge King. (*Id.* ¶¶ 12126.) Thereafter, Koziol claims that Judge King suspended his parenting time, but that decision was later reversed by the Appellate Division. (*Id.* ¶¶ 126–28.) Later, "in a decision received on Christmas Eve," Judge King "defied the higher court order" and issued "more punitive orders ... solely to discredit [Koziol]'s public criticisms monitored outside of court," presumably on his website. (*Id.* ¶¶ 127–28.) Finally, Koziol alleges that, in January 2014, Judge King conducted a hearing in "contempt of a higher court order," during which he "falsely accus[ed Koziol] of objecting to entire testimony," "directed [Koziol] to 'be quiet' or be 'removed' from the court," "facilitated false testimony," and generally converted the proceedings "to a father-bashing session infected by rumor and innuendo." (*Id.* ¶¶ 130–37.)

#### 2. *Magistrate Gorman*
Magistrate Gorman is a Support Magistrate for Onondaga County, and, in 2012, was assigned to Koziol's "child rearing matters." (*Id.* ¶¶ 20, 95–96.) Koziol alleges that, after he "secured a position projected to satisfy accumulating support arrears," Hawse–Koziol "refused [to] cooperat[e]," which "forc[ed Koziol] to file for [a] downward adjustment." (*Id.* ¶ 95.) Thereafter, Magistrate Gorman "issued a later conceded unlawful order with minor temporary relief that failed to advance [Koziol]'s long term goals." (*Id.* ¶ 96.) Magistrate Gorman also appointed Koslosky to represent Koziol's children in support proceedings. (*Id.* ¶¶ 101, 105.) Additionally, in April 2013, Koziol published a twenty-five page complaint on his website, which was critical of the "inordinate delays and employment injury caused by Magistrate Gorman," and, ten days later, Magistrate Gorman "issued a four month late decision which reversed his unlawful order, imposed lawyer fees contrary to record commitments, imputed income based on a fabricated PhD, and hiked support obligations to unmanageable levels." (*Id.* ¶¶ 103–04.)

#### 2. *Judge Tormey*
**\*3** Judge Tormey is the Administrative Judge for the Fifth Judicial District. (*Id.* ¶ 21.) In this role, Judge Tormey assigned certain judges to Koziol's various family law matters, who then often issued decisions and orders unfavorable to Koziol. (*Id.* ¶¶ 82, 138.)

#### 3. *Justices Rose, Lahtinen, Spain, and Stein*
At the time Koziol filed his complaint, Justices Rose, Lahtinen, Spain, and Stein[5] were Justices of the Supreme Court, Appellate Division, Third Judicial Department. (*Id.* ¶ 22.) These defendants are each named only once in Koziol's complaint. (*Id.*) Koziol has completely failed to provide any factual background elucidating why he has named these individuals as defendants.[6]

#### 4. *Justice Centra*
Justice Centra is a Justice of the Supreme Court, Appellate Division, Fourth Judicial Department. (*Id.* ¶ 26.) Koziol alleges that, in January 2008, Justice Centra presided over his application for a stay of his divorce and child custody and support proceedings. (*Id.* ¶¶ 1–5, 31–38.) Koziol further alleges that, around the same time, an "ethics prosecution" was commenced against him, and Justice Centra "directed"

the prosecution "using means outside of established channels and judicial scope." (*Id.* ¶¶ 40–41.) According to Koziol, Justice Centra "was offended by [Koziol]'s criticisms," and the purpose of the prosecution "was not designed to further any legitimate ethics objective but to make an example of [Koziol] by suppressing his accurate criticisms of Family Court and discouraging long overdue reform." (*Id.* ¶¶ 41–44.)

*5. Zayas and Duffy*

Zayas is a former member of COPS, and Duffy is the former chairperson and current chief counsel. (*Id.* ¶¶ 23–24.) Koziol claims that Zayas and Duffy authorized and led "inquiries" of him and submitted a " 'secret' report" opposing his reinstatement to the bar. (*Id.* ¶¶ 69, 143–44, 146, 150.)

**B.** *Christensen*

Christensen is a supervisor for the Oneida County Support Collection Unit and is assigned to Koziol's income and asset executions. (*Id.* ¶ 25.) Although far from clear, Koziol appears to allege that Christensen aided Hawse–Koziol in "impair[ing] driving and employment liberties," "pursuant to an unlawful [support] intercept to enforce private debts." (*Id.* ¶¶ 98, 100.)

**C.** *Koslosky*

Koslosky was appointed Attorney for the Child for Koziol's two children, and, in that role, he "harmed the long term interests of [the children]." (*Id.* ¶ 28.) Koziol further claims that Koslosky fabricated and submitted a sworn statement "claiming that [Koziol] had sought reinstatement of his law license in Onondaga Family Court in a scam to fabricate lawyer incompetence" and, together with Hawse–Koziol, "lodged false claims ... that [Koziol] had arranged a kidnapping plot in Rio de Janeiro." (*Id.* ¶¶ 71–72, 76–77.) Koziol also alleges that, in July 2013, Koslosky, again with Hawse–Koziol, filed a "round of specious petitions." (*Id.* ¶ 108.)

**D.** *Hawse–Koziol*

**\*4** Hawse–Koziol is Koziol's ex-wife and the mother of his two children. (*Id.* ¶¶ 27, 32, 37.) Koziol claims that Hawse–Koziol "issued an ultimatum which called for a surrender of parenting rights in exchange for an end to child support so that a wealthy, childless substitute could father [Koziol]'s daughters," "abuse[d] joint custody rights by orchestrating a series of career damaging petitions," filed "false claims,"

"motions for contempt," and "specious petitions" against Koziol in Family Court—which resulted in added visitation restrictions, "injury to [Koziol]'s livelihood," and a general loss of parenting rights—and "impair[ed Koziol's] driving and employment liberties" with the aid of Christensen. (*Id.* ¶¶ 35–36, 76, 82, 89, 91–92, 9495, 98, 100, 108–13, 115–16, 137.)

### III. *Standard of Review*

The standards of review under 🚩 Rules 12(b)(1) and 🚩 12(b)(6), which are "substantially identical," 🚩 *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003), are well settled and will not be repeated. For a full discussion of those standards, the parties are referred to the court's decisions in *Unangst v. Evans Law Associates, P.C.,* 798 F.Supp.2d 409, 410 (N.D.N.Y.2011), and 🚩 *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N .Y.2010), respectively. Likewise, the standard of review pursuant to Fed.R.Civ.P. 56 is also well established and need not be repeated here. *See Wagner v. Swarts,* 827 F.Supp.2d 85, 92 (N.D.N.Y.2011), *aff'd sub nom. Wagner v. Sprague,* 489 F. App'x 500 (2d Cir.2012).

Furthermore, in general, *pro se* plaintiffs are "entitled to special solicitude," and the court has a duty to read and interpret a *pro se* party's submissions "to raise the strongest arguments that they suggest." 🚩 *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (internal quotation marks and citations omitted). However, where "a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [him] with knowledge of ... particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." 🚩 *Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir.2010) (internal quotation marks and citation omitted).

### IV. *Discussion*

As an initial matter, because Koziol graduated from law school and, as he points out, spent "more than two decades" practicing law, (Compl.¶ 40), he is undeserving of "the leeway afforded to legal neophytes," 🚩 *NMD Interactive, Inc. v. Chertok,* No. 11 Civ. 6011, 2013 WL 1385213, at

*12 (S.D.N.Y. Mar. 18, 2013), *vacated on other grounds by Streeteasy, Inc. v. Chertok,* 752 F.3d 298 (2d Cir.2014). *See Parent v. New York,* 485 F. App'x 500, 502–03 (2d Cir.2012) (declining to afford Koziol the "special solicitude" afforded to *pro se* plaintiffs).

**A.** *Koziol's Motion For Disqualification of the Court*

**\*5** Invoking due process principles, Koziol seeks the court's recusal .[7] (Dkt. No. 45, Attach. 1 at 2–6; Dkt. No. 45, Attach. 2 at 15, 25–30.) Koziol's motion is denied.

"Consistent with a defendant's due process right to a fair trial, a district judge must recuse himself 'in any proceeding in which his impartiality might reasonably be questioned.' " *United States v. Basciano,* 384 F. App'x 28, 32 (2d Cir.2010) (quoting 28 U.S.C. § 455(a)). A recusal decision rests within the sound discretion of the judge whose recusal is sought. *See United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992). The standard for recusal is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality [might] reasonably be questioned." *Id.* (citation omitted). "Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *Id* . (citation omitted). Notably, recusal is not required where a case "involves remote, contingent, indirect or speculative interests." *Id.* To permit otherwise would be to "bestow upon litigants the power to force the disqualification of judges who are not to their liking." *United States v. Ahmed,* 788 F.Supp. 196, 202 (S.D.N.Y.1992), *aff'd,* 980 F.2d 161 (2d Cir.1992).

First, Koziol contends that recusal is mandated by the court's prior adverse rulings, including the court's denial of his application for a temporary restraining order by order to show cause, (Dkt.Nos.6, 7), and its denial of his motion seeking either reconsideration of that decision or certification to file an interlocutory appeal, (Dkt.Nos.19, 44). (Dkt. No. 45, Attach. 2 at 15, 27–30.) Prior adverse rulings, however, are generally not a basis for disqualification. *See Gallop v. Cheney,* 645 F.3d 519, 521 (2d Cir.2011) (noting that an adverse ruling alone was insufficient to establish the sort of extreme antagonism required for disqualification); *see also Liteky v. United States,* 510 U.S. 540, 555 (1994) (noting that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings,

or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"). Equally unpersuasive is Koziol's insistence that recusal is necessary because the court has been critical of his consistently nonsensical and abusive submissions. (Dkt. No. 45, Attach. 1 at 3, 5; Dkt. No. 45, Attach. 2 at 25.) Indeed, "a judge's comments during a proceeding that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *United States v. Carlton,* 534 F.3d 97, 100 (2d Cir.2008) (quoting *Liteky,* 510 U.S. at 555).[8]

**\*6** Second, Koziol argues that the Second Circuit's decision in *United States v. Cossey,* 632 F.3d 82 (2d Cir.2011), compels recusal. (Dkt. No. 45, Attach. 1 at 2–4; Dkt. No. 45, Attach. 2 at 25–27.) In Cossey, the Second Circuit vacated a sentence imposed by this court on a defendant who pled guilty to one count of possession of child pornography, and held that this court improperly based the sentence on an unsupported theory that the defendant was genetically predisposed to recidivism. *See* 632 F.3d 82. In a Hail Mary attempt to explain how Cossey engenders bias here, Koziol claims that, "[t]his case focuses upon traits of a father and mother which refute disparate treatment under current law," and, as *Cossey* demonstrates, the court is "presumptively infected by an undisclosed bias which ... leads [it] to the discredited sexist conclusion that mothers are genetically programmed to be superior nurturers and fathers accordingly resist their subservient roles as money givers." (Dkt. No. 45, Attach. 1 at 3; Dkt. No. 45, Attach. 2 at 26.) Simply put, Koziol's argument is rejected because Cossey and the matter now before the court could not be any more different, and to say that Koziol's assertions rely upon "remote, contingent, indirect or speculative" theories is an understatement. *Lovaglia,* 954 F.2d at 815.[9]

As the Second Circuit has observed, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda,* 241 F.3d 194, 201 (2d Cir.2001). Koziol's cross motion for recusal or disqualification of the court, (Dkt. No. 41), is therefore denied. Below, the court addresses the relevant arguments advanced by defendants in support of their motions, Koziol's responses in opposition, and, finally, Koziol's remaining cross motion.

**B.** *Personal Involvement*

State Defendants contend that all claims against Judge Tormey and Justices Rose, Lahtinen, Spain, and Stein must be dismissed because Koziol has failed to assert any facts supporting their personal involvement. (Dkt. No. 23, Attach. 1 at 18–19.) Christensen also advances this argument in her submissions, and seeks dismissal on the same grounds. (Dkt. No. 36, Attach. 1 at 5–8.) The court agrees.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Dyno v. Vill. of Johnson City,* 240 F. App'x 432, 434 (2d Cir.2007) (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Personal involvement "can occur by direct participation in the alleged violation, a supervisory official's failure to remedy a wrong, a supervisory official's creation of a policy or custom under which unconstitutional acts occurred, or through a supervisory official's gross negligence in managing his subordinates." *Id.; see* *Ashcroft v. Iqbal,* 556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.,* No. 91 CIV. 8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994), *aff'd,* 40 F.3d 1236 (2d Cir.1994).

**\*7** Here, Koziol has failed to allege personal involvement with respect to Justices Rose, Lahtinen, Spain, and Stein, who are each mentioned only once in the complaint. (Compl.¶ 22.) Thus, because the court is left totally in the dark with respect to their wrongdoing, they are dismissed from this action. Next, with respect to Judge Tormey, all Koziol has alleged is that Judge Tormey assigned certain judges to his family law matters, (*id.* ¶¶ 82, 138), but he has failed to explain how those actions give rise to any cognizable constitutional or state law claim. Judge Tormey, therefore, is also dismissed as a defendant. Finally, with respect to Christensen, a supervisor for the Oneida County Support Collection Unit, all Koziol has alleged is that she aided Hawse–Koziol in "impair[ing] driving and employment liberties," "pursuant to

an unlawful [support] intercept." (*Id.* ¶¶ 25, 98, 100.) These are entirely vague allegations, which leave the court with no understanding of the factual basis for the claims asserted against Christensen, and she is also dismissed from this action. Accordingly, Christensen, Judge Tormey, and Justices Rose, Lahtinen, Spain, and Stein are dismissed for lack of personal involvement.

**C.** *Judicial Immunity*

Next, State Defendants argue that the claims asserted against Judge King and Magistrate Gorman in their individual capacities must be dismissed because they are entitled to absolute judicial immunity .[10] (Dkt. No. 23, Attach. 1 at 6–12.) Koziol counters that judicial immunity does not apply. (Dkt. No. 42, Attach. 3 at 13–14.) The court agrees with State Defendants.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (citation omitted). A judge is not entitled to this immunity, however, if he has acted either beyond his judicial capacity, or "in the complete absence of all jurisdiction." *Id.* at 12. In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is "to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter." *Ceparano v. Southampton Justice Court,* 404 F. App'x 537, 539 (2d Cir.2011) (internal quotation marks and citation omitted). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, *i.e.,* whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity ." *Id.* (internal quotation marks and citation omitted). Moreover, if the judge is performing in his judicial capacity, immunity does not give way even if "the action he took was in error, was done maliciously, or was in excess of his authority." *Id.* (internal quotation marks and citation omitted).

**\*8** Here, Koziol's allegations against Judge King relate primarily to various custody and visitation orders that he issued in matters pending before him. (Compl.¶¶ 108–12, 119–20, 127–28.) Koziol also complains of the way that

Judge King managed his courtroom during a hearing. (*Id.* ¶¶ 130–37.) This conduct is precisely the type that is protected by judicial immunity. *See Davis v. Kushner,* No. 1:14–cv–00511, 2014 WL 5308142, at *5 (N.D.N .Y. Oct. 16, 2014) (holding that family court judge was protected by judicial immunity where the plaintiff alleged that the judge "denied him custodial and visitation rights [with his children] because he is a Muslim"); *Ezeh v. VA Med. Ctr., Canandaigua, N.Y.,* No. 13–CV–06563, 2014 WL 4897905, at *13 (W.D.N.Y. Sept. 29, 2014) (holding that "the conduct of a hearing, the consideration of evidence, and the rendering of a decision are all quintessentially judicial acts"); *Sargent v. Emons,* No. 3:13cv863, 2013 WL 6407718, at *7 (D.Conn. Dec. 9, 2013) (holding that judge was immune from suit where allegations in complaint stemmed "from orders issued by [her] during the pendency of the child custody dispute before her"), *aff'd,* 582 F. App'x 51 (2d Cir.2014). Although Koziol insists that these actions were taken in the absence of Judge King's jurisdiction, (Compl.¶¶ 29–30, 124, 128), that is a legal conclusion, and simply reciting it does not make it so. *See Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir.2014) (noting that, in considering a motion to dismiss, courts "are not required to credit conclusory allegations or legal conclusions couched as factual ... allegations" asserted in a plaintiff's complaint). Simply put, Koziol has not alleged any facts that would indicate that Judge King acted outside of his judicial capacity or in the absence of jurisdiction, and Judge King is therefore entitled to absolute judicial immunity.

Similarly, Magistrate Gorman is entitled to judicial immunity. Koziol's claims against Magistrate Gorman are largely predicated on various orders and decisions—seemingly related to Koziol's child support obligations—which Koziol describes as "unlawful." (Compl .¶¶ 95–96, 10304.) Koziol also appears to take issue with the fact that it was Magistrate Gorman who appointed Koslosky as Attorney for the Child for Koziol's children. (*Id.* ¶¶ 101, 105.) But these actions were taken directly in connection to matters that were before and assigned to Magistrate Gorman, and these are the types of acts that are inherently judicial. *See Bliven,* 579 F.3d at 210 (noting that "acts arising out of, or related to, individual cases before the judge are considered judicial in nature"); *Chestnut v. Gabler,* No. 06–CV–534E(F), 2007 WL 529556, at *2 (W.D.N.Y. Feb. 13, 2007) (holding that judge defendant was protected from suit by judicial immunity where the plaintiff challenged support orders). Further, Koziol does not even allege that Magistrate Gorman acted in the absence of

jurisdiction. Magistrate Gorman, therefore, is also entitled to absolute judicial immunity.

**\*9** Finally, Justice Centra is also entitled to judicial immunity. Koziol alleges that Justice Centra "directed" an "ethics prosecution" against him "using means outside of established channels and judicial scope," because Justice Centra "was offended by [Koziol]'s criticisms." (*Id.* ¶¶ 4044.) However, courts in this District have held that a justice's decisions regarding disciplinary action "falls squarely within the judicial roles of the [Appellate Division] justices." *Koziol,* 2012 WL 4854589, at *6 (citing 22 N.Y.C.R.R. 100.3(D) (3) ("Acts of a judge in the discharge of disciplinary responsibilities are part of a judge's judicial duties.")); *see Bliven,* 579 F.3d at 210 (noting that "disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case" would be considered an act "judicial in nature"). Accordingly, assuming that Koziol's allegations against Justice Centra meet the basic pleading requirements, Justice Centra is immune from suit. [11]

### D. *Quasi–Judicial Immunity*

State Defendants similarly contend that Zayas and Duffy are immune from suit under the doctrine of quasi-judicial immunity. (Dkt. No. 23, Attach. 1 at 12–13.) Koziol does not appear to address this argument. The court again agrees with State Defendants.

"The doctrine of quasi-judicial immunity extends absolute immunity to 'certain others who perform functions closely associated with the judicial process.' " *Feng Li v. Rabner,* No. 15–cv–2484, 2015 WL 1822795, at *4 (S.D.N.Y. Apr. 22, 2015) (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou,* 438 U.S. 478, 513 (1978); *see Cleavinger,* 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell,* 585 F.3d 72, 81 (2d Cir.2009) ("Judicial and quasi-judicial immunity are both absolute immunities ." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson,* 592 F. App'x 16, 19 (2d Cir.2014) (internal quotation marks and

citation omitted). The scope of a judicial officer's jurisdiction, however,

> must be construed broadly in order to allow [him or] her to exercise [his or her] functions with independence and without fear of consequences[; m]ere evidence that an official's action was in error, was done maliciously, or was in excess of [his or her] authority does not undermine [a] claim to absolute immunity so long as it did not fall clearly outside all official authority.

*Id.* (internal quotation marks and citations omitted).

Here, Koziol's claims against Zayas and Duffy—that they authorized and led "inquiries" of him and submitted a " 'secret' report" opposing his reinstatement to the bar, (Compl.¶¶ 69, 143–44, 146, 150)—are entirely related to their investigative roles as members of COPS, and the Second Circuit has "consistently extended quasi-judicial immunity to attorney disciplinary committees ." *Neroni v. Coccoma,* 591 F. App'x 28, 30 (2d Cir.2015) (citing *Anonymous v. Ass'n of the Bar of City of N.Y.,* 515 F.2d 427, 433 (2d Cir.1975)); *see Finn,* 592 F. App'x at 19 (affirming the district court's holding that a member of a grievance committee was entitled to quasi-judicial immunity for her investigation of a misconduct complaint lodged against the plaintiff). Zayas and Duffy, therefore, are entitled to quasi-judicial immunity.

### E. *Eleventh Amendment Immunity*
 **\*10** State Defendants next argue that Koziol's claims against them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment. (Dkt. No. 23, Attach. 1 at 1518.) The court agrees.

The Eleventh Amendment provides a state with sovereign immunity from suit. *See V.A. Office for Prot. & Advocacy v. Stewart,* 131 S.Ct. 1632, 1638 (2011) (citation omitted). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* Generally, New York, its agencies, and its agents enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006). Under the doctrine established in *Ex Parte Young,* however, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint[:] (a) alleges an ongoing violation of federal law[;] and (b)

seeks relief properly characterized as prospective." *Clark v. DiNapoli,* 510 F. App'x 49, 51 (2d Cir.2013) (internal quotation marks and citation omitted).

Here, while Koziol seeks a judgment declaring unconstitutional § 240(1) of the New York Domestic Relations Law and §§ 8.4(d) and (h) of the New York Attorney Rules of Conduct—and this injunctive relief would be appropriately classified as prospective—the 1996 Congressional amendments to § 1983 bar injunctive relief against a judicial actor "*unless* a declaratory decree was violated or declaratory relief was unavailable or *unless* the judge's conduct was clearly in excess of the judge's jurisdiction." *Hodges v. Mangano,* 28 F. App'x 75, 77 (2d Cir.2002) (internal quotation marks and citation omitted); *see McKeown v. N.Y. State Comm'n on Judicial Conduct,* 377 F. App'x 121, 124 (2d Cir.2010). Koziol neither alleges that a declaratory order was violated nor that declaratory relief was unavailable; and, as discussed above, State Defendants did not act in excess of their jurisdiction. *See McKnight,* 699 F.Supp.2d at 523. Thus, State Defendants are also immune from suit to the extent that they are sued in their official capacities. [12] Accordingly, given that all State Defendants have been dismissed in both their official and individual capacities, either based on lack of personal involvement or immunity, no further discussion of Koziol's claims against them is warranted. [13]

### E. *State Action*
Next, Hawse–Koziol and Koslosky seek dismissal of Koziol's claims asserted against them on the theory that they are not state actors, and on the grounds that, to the extent that Koziol has attempted to allege that they conspired with state actors, those claims also fail. (Dkt. No. 25, Attach. 57 at 5–9; Dkt. No. 39 at 3–4.) In response, Koziol simply reasserts the same conslusory statements made in his complaint—that Hawse–Koziol and Koslosky conspired with each other and state actors to violate his constitutional rights. (Dkt. No. 45, Attach. 1 at 7–8.) The court agrees with Hawse–Koziol and Koslosky that they are neither state actors nor co-conspirators with state actors.

 **\*11** "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (citation

omitted). In order to prove a ⚑ § 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." ⚑ *Id.* at 324–25. However, "[a] merely conclusory allegation that a private [individual] acted in concert with a state actor does not suffice to state a ⚑ § 1983 claim against the private [individual]." ⚑ *Id.* at 324 (citation omitted). Instead, a plaintiff must show "a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself."
⚑ *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974).

Here, despite his vehement contentions to the contrary, Koziol has failed to establish that Kosolsky and Hawse–Koziol were state actors for ⚑ § 1983 purposes. With respect to Koslosky, the court-appointed attorney for Koziol's children, it is black letter law that "[p]rivate law firms and attorneys ... are not state actors for ⚑ section 1983 purposes." *Jaffer v. Patterson,* No. 93 Civ. 3452, 1994 WL 471459, at *2 (S.D.N.Y. Sept. 1, 1994) (citing ⚑ *Polk Cnty. v. Dodson,* 454 U.S. 312, 318 (1981)); *see O'Bradovich v. Vill. of Tuckahoe,* 325 F.Supp.2d 413, 419 (S.D.N.Y.2004) ("[P]rivate attorneys and law firms ... do not act under color of state authority." (citation omitted)). More to the point, it is equally well-settled that, "although appointed by the state, an attorney for the child[ ] or law guardian is not a state actor because he ... must exercise independent professional judgment on behalf of the clients [he] represent[s]." *Parent v. New York,* 786 F.Supp.2d 516, 538 (N.D.N.Y.2011), *aff'd* 485 F. App'x 500 (2d Cir.2012); *see* ⚑ *Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) (finding that court appointed legal guardian in custody proceedings was not a state actor, despite her appointment by a New York state court and the fact that she was paid by state funds). Thus, Koslosky is not a state actor for ⚑ § 1983 purposes.

Further, with respect to Hawse–Koziol, Koziol's allegations that she "abuse[d] joint custody rights" and filed "false claims" and "specious petitions," at most, amount to a misuse of the family court system. (Compl.¶¶ 36, 76, 108, 111.) However, mere use, and even misuse, of the state courts does not turn private parties into state actors. *See Cramer v. Englert,* 93 F. App'x 263, 264 (2d Cir.2004) ("[T]he mere

invocation of New York legal procedures does not satisfy the state actor requirement under ⚑ § 1983." (internal quotation marks and citation omitted)); ⚑ *Dahlberg v. Becker,* 748 F.2d 85, 89–90 (2d Cir.1984) (dismissing ⚑ § 1983 action because allegations of "misuse of a state statute" did not give rise to a ⚑ § 1983 action). Hawse–Koziol, therefore, is not a state actor for ⚑ § 1983 purposes.

**\*12** Finally, Koziol also has failed to allege facts giving rise to a conspiracy claim. First, Koziol seemingly attempts to allege that Koslosky and Hawse–Koziol conspired against him to deprive him of parenting rights by "lodg [ing] false claims" and filing "specious petitions," (Compl.¶¶ 7677, 108), but it is beyond cavil that two private citizens, acting together, do not give rise to a conspiracy. *See* ⚑ *Ciambriello,* 292 F.3d at 324–25 (noting that, to prove a conspiracy claim, a plaintiff must allege "an agreement between a state actor and a private party"). Further, any allegations that Hawse–Koziol conspired with state actors by providing information to Judge King regarding Koziol's website and "monitoring [Koziol's] protected activities," are equally meritless. (Compl. ¶¶ 113, 115; Dkt. No. 45, Attach. 1 at 7–8.) "[F]urnishing information to [state actors] does not by itself make someone a joint participant in state action under ⚑ Section 1983."
⚑ *Drayton v. Toys 'R' Us Inc.,* 645 F.Supp.2d 149, 163 (S.D.N.Y.2009). Simply put, Koziol's complaint is riddled with "conclusory, vague, [and] general allegations of a conspiracy," and such allegations "cannot withstand a motion to dismiss." *Martinez v. Queens Cnty. Dist. Attorney,* 596 F. App'x 10, 13 (2d Cir.2015) (internal quotation marks and citations omitted). Accordingly, Koziol's ⚑ § 1983 claims against Koslosky [14] and Hawse–Koziol are dismissed. [15]

### F. State Law Claims

Koziol's sixth cause of action asserts a *prima facie* tort claim under New York common law. (Compl.¶¶ 174–75.) Having dismissed all of his federal claims, the court declines to exercise supplemental jurisdiction of Koziol's remaining state law claim.

"In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." *Butler v. LaBarge,* No. 9:09–cv–1106, 2010 WL 3907258, at *3 (N.D.N.Y. Sept.

30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.,* 455 F.3d 118, 121–22 (2d Cir.2006)). Where, as here, all federal claims have been eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *See Kolari,* 455 F.3d at 122. Accordingly, the court declines to exercise jurisdiction over Koziol's state law claim and it is dismissed from this action.

## G. *Leave to Amend*

Although a *pro se* plaintiff's complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of N.Y.,* 579 F.3d 176, 183 (2d Cir.2009) (internal quotation marks and citation omitted), "leave to amend is not necessary when it would be futile," *Ashmore v. Prus,* 510 F. App'x 47, 49 (2d Cir.2013). As an initial matter, as discussed above, *supra* Part IV, given his legal education and experience, the court, in its discretion, declines to afford Koziol any special solicitude. Moreover, Koziol has not requested leave to amend in any of his submissions. And, in any event, considering the analysis above, any amended complaint would be just as frivolous, baseless, and vexatious as his original, and amendment, therefore, would be futile. Accordingly, Koziol's complaint is dismissed with prejudice.

## H. *Koziol's Cross Motion*

**\*13** Given that the court has granted defendants' dispositive motions, (Dkt.Nos.23, 25, 36, 39), and dismissed Koziol's complaint, his cross motion for a preliminary injunction, (Dkt. No. 41), which seeks essentially the same relief as that requested in his complaint, is denied as moot.

## I. *Sanctions*

Finally, separate from his summary judgment motion, Koslosky has moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that the court should impose sanctions upon Koziol and issue an order enjoining him from commencing any further litigation without prior leave of the court, in order to deter Koziol from continuing to file harassing and frivolous lawsuits against him. (Dkt. No. 27; Dkt. No. 27, Attach. 56 at 2–13.) In response, Koziol reargues the merits of his claims, reproduces, verbatim, several paragraphs of previous submissions, and argues that, if anyone should be sanctioned,

it is Koslosky's attorney. (Dkt. No. 45, Attach. 1 at 8–19.) The court agrees with Koslosky that sanctions are warranted.

Under Fed.R.Civ.P. 11(b)(2),

> By presenting to the court a pleading, written motion, or other paper ... an ... unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims ... and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

A court has authority to sanction a party under Rule 11(c) if it determines that the party has made false, misleading, improper, or frivolous representations to the court in violation of Rule 11(b). *See Williamson v. Recovery Ltd. P'ship,* 542 F.3d 43, 51 (2d Cir.2008). "A claim is legally frivolous for Rule 11 purposes if, under a standard of objective reasonableness, it is clear that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Friedman v. Self Help Cmty. Servs.,* No. 11–CV–3210, 2015 WL 1246538, at \*23 (E.D.N.Y. Mar. 17, 2015) (citing *Caisse Nationale de Credit Agricole–CNCA, N .Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 264 (2d Cir.1994)). Procedurally, "[a] motion for sanctions must be made separately from any other motion," Fed.R.Civ.P. 11(c)(2), and "the motion must first be served upon the offending party, who is then given [twenty-one] days to remedy the sanctionable conduct before the motion may be made to the court," *Finnan v. Ryan,* No. 8:08–CV–259, 2008 WL 4891162, at \*7 (N.D.N.Y. Nov. 7, 2008).

Here, as an initial matter, Koslosky complied with the procedural requirements of Rule 11(c)(2). Indeed, Koslosky served his motion for sanctions upon Koziol more than twenty-one days prior to filing it, and requested that Koziol withdraw his complaint. (Dkt. No. 27, Attachs.54, 55.) After Koziol refused to withdraw his complaint, Koslosky filed his motion for sanctions separate from his motion for summary judgment. (Dkt. No. 27.) Substantively, Koslosky

has also presented compelling arguments that support a finding of frivolousness and the imposition of sanctions. First, as noted above, this is the fourth federal complaint that Koziol has filed. *See supra* note 3. In each of these cases, Koziol has raised similar constitutional challenges to New York's Domestic Relations Law and New York's Rules of Professional Conduct, and named many of the same defendants. *See supra* note 3. Moreover, Koziol's claims against the defendants in those prior cases were dismissed on many of the same grounds as his claims were dismissed here —sovereign and absolute immunity, *Younger* abstention, lack of personal involvement, and failure to allege state action. *See supra* note 3. In one of his prior cases, the court granted one defendant's motion for attorneys' fees, and, in so doing, found that Koziol's complaint was "without legal foundation, and ... baseless." *Koziol v. Peters,* No. 6:12–CV–823, 2012 WL 5986574, at *2–3 (N.D .N.Y. Nov. 29, 2012). In addition, Koslosky has cited several other actions and petitions filed in state court in which Koziol has raised the same constitutional claims, also without success. (*See, e.g.,* Dkt. No. 27, Attachs. 4–5; Dkt. No. 27, Attach. 12; Dkt. No. 27, Attach. 28 at 10–11 (stating that Koziol's "bare assertions that the Family Court proceedings have been biased against men is not sufficient to merit constitutional analysis; indeed, such analysis is impossible because of the vague and conclusory nature of the allegations"); Dkt. No. 27, Attach. 42 at 4 (noting that Koziol "has utterly failed to articulate how his constitutional rights have been violated and the [r]ecord ... contains a complete dearth of information from which one could begin to make a thoughtful decision as to the constitutionality of the statutes asserted to be at issue, or as to any of [Koziol's] other asserted constitutional infirmities").)

**\*14** Nevertheless, Koziol has relentlessly pressed on, and continues to file lawsuits in this District, asserting claims that he should know, by now, are without merit, and naming defendants who he should know, by now, are immune from suit. This case is no different, and by signing the complaint, Koziol made "false, misleading, improper, [and] frivolous representations to the court" in violation of Rule 11(b), thus warranting sanctions pursuant to Rule 11(c). Williamson, 542 F.3d at 51. Therefore, pursuant to both Fed.R.Civ.P. 11(c), and the court's inherent power to impose sanctions, see Marx v. Gen. Revenue Corp., 133 S.Ct. 1166, 1175 (2013), Koziol is sanctioned in the amount of $1,000, and ordered to pay this penalty to Koslosky as part of his attorneys' fees. See Fed.R.Civ.P. 11(c)(4); (Dkt. No. 27, Attach. 56 at 12 (noting that Koslosky has "thus far expended

over $60,000 in unwarranted legal fees defending against [Koziol]'s baseless ... [l]awsuits").) Although the court notes that a full award of reasonable costs and attorneys' fees would also constitute an appropriate sanction here, see Fed.R.Civ.P. 11(c)(4); 42 U.S.C. § 1988(b), it is reluctant to impose those sanctions without documentation upon which the court may quantify those fees. Of course, Koslosky—and all other represented defendants, as the prevailing parties—are free to seek attorneys' fees by subsequent motions.

Finally, the court notes that Koslosky, as part of his motion for sanctions, has sought what is essentially an anti-filing injunction. (Dkt. No. 27, Attach. 56 at 8–13.) While the court finds Koslosky's arguments persuasive, the court has a separate process for issuing orders of this sort. Thus, Koslosky's request is taken under consideration and the court will separately decide whether an anti-filing injunction is warranted.

### V. Conclusion

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that State Defendant's motion to dismiss (Dkt. No. 23) is **GRANTED;** and it is further

**ORDERED** that Christensen's motion for judgment on the pleadings (Dkt. No. 36) is **GRANTED;** and it is further

**ORDERED** that Hawse–Koziol's motion for judgment on the pleadings (Dkt. No. 39) is **GRANTED;** and it is further

**ORDERED** that Koslosky's motion for summary judgment (Dkt. No. 25) is **GRANTED;** and it is further

**ORDERED** that Koziol's cross motion for recusal and/or disqualification of the court and for a preliminary injunction (Dkt. No. 41) is **DENIED;** and it is further

**ORDERED** that Koslosky's motion for sanctions pursuant to Fed.R.Civ.P. 11 (Dkt. No. 27) is **GRANTED** and Koziol is directed to pay a penalty of $1,000 to Koslosky as part of Koslosky's attorneys' fees; and it is further

**ORDERED** that Koziol's complaint is **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

ORDERED that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**\*15  IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2453481

## Footnotes

1    Soon after filing his complaint, Koziol sought a temporary restraining order by order to show cause, (Dkt. No. 6), which the court denied, (Dkt. No. 7).

2    Although the court appreciates that different standards are used in presenting facts on motions to dismiss and motions for summary judgment, because all of Koziol's claims can be dismissed based on pleading deficiencies, the facts recited are drawn from Koziol's complaint, and presented in the light most favorable to him.

3    Notably, Koziol has filed three prior lawsuits in this District, and in each, he alleged similar claims against many of the same defendants named here. Each of those cases were dismissed, and attorneys' fees were awarded in one. *See Koziol v. Peters,* No. 12–CV–823, 2012 WL 4854589, at *1, *10–11 (N.D.N.Y. Oct. 11, 2012) (dismissing complaint in which claims arose "from his custody and child support proceedings in New York state court, his subsequent suspension from the practice of law, and his current inability to cure his suspension," and were asserted against, among other defendants, Rose, Lahtinen, Spain, Stein, Koslosky, Duffy, and Zayas, and characterizing Koziol's complaint as "rambling, disjointed, and nearly incomprehensible"); *Koziol v. Peters,* No. 6:12–CV–823, 2012 WL 5986574, at *2–3 (N.D.N.Y. Nov. 29, 2012) (granting the defendant City of Utica's motion for attorneys' fees and describing the claims asserted in the complaint as "without legal foundation, and ... baseless"); *Parent v. New York,* 786 F.Supp.2d 516, 544–45 (N.D.N.Y.2011) (dismissing lead case, along with member case—Koziol's third case filed in this District, No. 6:10–CV–1361—in which Koziol sued, among other defendants, all of the Justices of the Appellate Division, Fourth Department, the entire Fifth Judicial District Grievance Committee, Hawse—Koziol, and Koslosky), *aff'd* 485 F. App'x 500 (2d Cir.2012).

4    With respect to Koziol's request to restore his law license in the Northern District, the court, at the outset, denies this relief. This District's Local Rule 83.4(d) sets forth the appropriate procedure by which an attorney may seek to modify an order of discipline. Koziol has not complied with that procedure.

5    Justice Stein has since been appointed to the New York Court of Appeals. For the sake of consistency, the court will refer to her as "Justice" Stein throughout this opinion.

6    While the court can surmise that these Justices are named as defendants because they issued decisions unfavorable to Koziol in his disciplinary proceedings, *see In re Koziol,* 107 A.D.3d 1137 (3d Dep't 2013); *In re Koziol,* 76 A.D.3d 1136 (3d Dep't 2010), it is not the court's duty to unearth facts outside of the pleadings, nor is it even appropriate for the court to do so.

7    Contemporaneous with the filing of his motion, Koziol filed a Petition for Mandamus with the Second Circuit, seeking substantially the same relief as he seeks here: the court's disqualification and various forms of declaratory and injunctive relief. (*See generally* Dkt. No. 45, Attach. 2.) He also sought a venue change to the Southern District of New York. (*Id.*) The Second Circuit denied the mandamus petition "because [Koziol did] not demonstrate[ ] that exceptional circumstances warrant the requested relief." (Dkt. No. 46.)

8    Koziol also takes issue with two aspects of the court's September 3, 2014 order denying his request to
     supplement his application for a temporary restraining order. (Dkt. No. 17; Dkt. No. 45, Attach. 2 at 27.) First,
     Koziol argues that the court "utterly ignored" his claims of mail tampering, which he describes, incredibly,
     as "ongoing crimes ... at the core of [his] case." (Dkt. No. 45, Attach. 2 at 27.) In fact, in his thirty-page
     complaint, Koziol uses the phrase "mail tampering" exactly once, and in reference to "crimes committed by
     an ex-secretary," who is neither identified nor named as a defendant in this action. (Compl.¶ 67.) Thus, his
     claims of "mail tampering" are tangential at best. Further, aside from the court's order denying his application
     for a temporary restraining order, which he claims he never received, (Dkt. No. 45, Attach. 2 at 27), Koziol
     appears to have received every other communication from this court. Second, Koziol seems to argue that
     the court improvidently denied his requests to seal the record and permit him to proceed under a fictional
     party name, in contrast to a previous decision from this District granting those requests. (*Id.*) Again, Koziol's
     accusations ignore reality. The court denied his request to seal documents because he failed to comply with
     this District's Local Rules, and the court also ordered him to comply with Local Rule 8.1 with respect to certain
     of his exhibits that contained personal identifiers. (Dkt.Nos.7, 17.)

9    Without any explanation, Koziol also claims that, because "Judge Sharpe's ... son is employed for a federal
     prosecutor who testified at the subject Moreland Commission[,] ... additional bias issues" are triggered. (Dkt.
     No. 45, Attach. 1 at 4; Dkt. No. 45, Attach. 2 at 27.) This argument is also rejected. Under 28 U.S.C. §
     455(b)(5)(ii), recusal is appropriate when "a person within the third degree of relationship to [the judge] ...
     [i]s acting as a lawyer in the proceeding." That is not the case here, as the court has no relation to any of
     the lawyers in this proceeding.

10   Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See
     Ying Jing Gan v.. City of N.Y.,* 996 F.2d 522, 529 (2d Cir.1993); *Martinez v. Queens Cnty. Dist. Attorney,*
     No. 12–CV–06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd,* 596 F. App'x 10 (2d Cir.2015);
     *McKnight v. Middleton,* 699 F.Supp.2d 507, 521–25 (E.D.N.Y.2010), *aff'd,* 434 F. App'x 32 (2d Cir.2011).
     As further discussed below, the Eleventh Amendment, on the other hand, shields judges from suit to the
     extent that they are sued in their official capacities. *See* *Ying Jing Gan,* 996 F.2d at 529.

11   Although Judge Tormey has already been dismissed for lack of personal involvement, *supra* Part IV.B., the
     court notes that he would also properly be entitled to judicial immunity for allegedly assigning Koziol's family
     law matters to certain judges who then rendered decisions unfavorable to Koziol. "[C]ourts have held that the
     assignment of cases is a judicial function and is therefore a protected act under judicial immunity." *Neroni
     v. Coccoma,* No. 3:13–cv–1340, 2014 WL 2532482, at *7 (N.D.N.Y. June 5, 2014), *aff'd,* 591 F. App'x 28 (2d
     Cir.2015); *see Zahl v. Kosovsky,* No. 08 Civ. 8308, 2011 WL 779784, at *9 (S.D.N.Y. Mar. 3, 2011) (holding
     that the alleged manipulation of the case assignment system is protected by judicial immunity), *aff'd,* 471 F.
     App'x 34 (2d Cir.2012).

12   The court also notes that declaratory relief, while equitable in nature, is barred by the Eleventh Amendment
     "when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot
     be properly characterized as prospective." *Kent v. New York,* No. 1:11–CV–1533, 2012 WL 6024998, at
     *7 (N.D.N.Y. Dec. 4, 2012). Here, much of the equitable relief that Koziol seeks is retrospective, and does not
     fall within the *Ex Parte Young* exception. (*See generally* Compl. at 30 (requesting "[a] permanent injunction ...
     on custody/support orders and license suspensions" and "[a] judgment declaring unconstitutional ... the terms
     of suspension upon [his] law license").

13   The court does note, however, that Koziol takes great issue with previous courts dismissing his claims based
     on the abstention doctrine articulated by the Supreme Court in *Younger v. Harris,* 401 U.S. 37 (1971),

and argues that the Supreme Court's recent decision in *Sprint Communications, Inc. v. Jacobs,* 134 S.Ct. 584, 588 (2013) proves that abstention was inappropriate. (Dkt. No. 42, Attach. 3 at 1, 14–20.) At least with respect to Koziol's claims regarding his ongoing disciplinary proceedings, the court disagrees, and those claims may still properly be dismissed based on *Younger.* In *Younger,* the Supreme Court held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See* 401 U.S. at 54. That rule was later extended to claims for declaratory relief and underlying state civil actions. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n.,* 457 U.S. 423, 432 (1982); *Hansel v. Town Court for the Town of Springfield, N.Y.,* 56 F.3d 391, 393 (2d Cir.1995). In *Sprint,* however, the Supreme Court reaffirmed that abstention is appropriate only in three categories of state proceedings: (1) where federal jurisdiction would intrude on pending state criminal proceedings; (2) in civil enforcement proceedings that are "akin to criminal prosecutions"; or (3) in "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." 134 S.Ct. at 588, 591 (internal quotation marks and citations omitted). *Sprint* did not, however, as Koziol suggests, disrupt the notion that abstention from ongoing state disciplinary proceedings is proper, as pending attorney disciplinary proceedings are among those " 'civil enforcement' " proceedings expressly authorized by *Sprint.Id* . at 592 (citing *Middlesex,* 457 U.S. at 433–34); *Neroni,* 595 F. App'x at 94–95. "As the Supreme Court explained in *Sprint,* [a] state-initiated disciplinary proceeding[ ] against a lawyer for violation of state ethics rules, substantiated by a state investigation and the issuance of a formal complaint, was a noncriminal proceeding[ ] bear[ing] a close relationship to proceedings criminal in nature, such that it merited deference under Younger." *Torres v. DeMatteo Salvage Co., Inc.,* 34 F.Supp.3d 286, 291 (E.D.N.Y.2014) (internal quotation marks and citations omitted); *see Frelix v. New York,* No. 15cv0465, 2015 WL 585857, at *2 (S.D.N.Y. Feb. 4, 2015). Because Koziol's disciplinary proceeding is the type of proceeding in which the *Younger* abstention rule still applies, and he has not adequately alleged why this court should intervene, the court declines to do so. Therefore, the court also dismisses Koziol's federal claims for injunctive and declaratory relief related to his disciplinary proceedings under the *Younger* abstention doctrine.

14   Even if the court were to find that Koslosky was a state actor, he would be immune from suit under the theory of quasi-judicial immunity. *See McKnight v. Middleton,* 699 F.Supp.2d 507, 528 (E.D.N.Y.2010), *aff'd,* 434 F. App'x 32 (2d Cir.2011); *see also Yapi v. Kondratyeva,* 340 F. App'x 683, 684–85 (2d Cir.2009); *Gardner by Gardner v. Parson,* 874 F.2d 131, 146 (3d Cir.1989) (holding that guardian ad litem received absolute immunity in acting as an "actual functionary or arm of the court"); *Lewittes v. Lobis,* No. 04 Civ. 0155, 2004 WL 1854082, at *11–12 (S.D.N.Y. Aug. 19, 2004) (applying New York's quasi-judicial immunity to law guardians in a § 1983 action).

15   The court also notes that, citing *Parent v. New York,* Koslosky and Hawse–Koziol also contend that Koziol's claims are barred by res judicata. (Dkt. No. 25, Attach. 57 at 3–5; Dkt. No. 39 at 3–4.) As noted above, Koziol's complaint is difficult to comprehend, but to the extent that he seeks to reassert the same claims that were raised and decided in *Parent,* the court agrees that dismissal on res judicata grounds-and more specifically, claim preclusion-is also appropriate. "Res judicata embraces two concepts: issue preclusion (also known as collateral estoppel) and claim preclusion." *Rivera v. City of N.Y.,* 594 F. App'x 2, 5 (2d Cir.2014). In order for claim preclusion to apply, three requirements must be met: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[ ] or those in privity with [him]; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000). Notably, "[e]ven claims based upon different legal theories

are barred provided they arise from the same transaction or occurrence." 🚩 *L–Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir.1999). In *Parent,* the court dismissed Koziol's claims against Koslosky and Hawse–Koziol because they are not state actors and because Koziol failed to state a claim that they conspired with state actors to deprive him of a constitutional right. 786 F.Supp.2d at 538–40, 543. As noted above, this decision was affirmed by the Second Circuit. *See Parent v. New York,* 485 F. App'x 500 (2d Cir.2012). Thus, to the extent that Koziol asserts the same claims against Hawse–Koziol and Koslosky as he did in *Parent,* those claims are also barred by res judicata.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16556060
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daishawn-Lavon MILLER EX, Plaintiff,

v.

David PRIMO, Chief Clerk; Karen J Stanislaus-
Fung, Court Attorney Referee; Tylyn L Bozeman,
Attorney for mother; Robert Temple, Attorney for
the child; Salvatore Pavone, Court Attorney Referee;
and Tanerra CC Newton, mother, Defendants.

5:22-CV-0680 (BKS/ML)
|
Signed September 29, 2022

**Attorneys and Law Firms**

DAISHAWN-LAVON MILLER EX, Plaintiff, Pro Se, 2363
James Street, Number 547, Syracuse, New York 13206.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 3) filed by Daishawn-lavon Miller Ex ("Plaintiff")
to the Court for review. For the reasons discussed below, I
grant Plaintiff's *in forma pauperis* application (Dkt. No. 3),
and I recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed in its entirety without prejudice (a) in part with
leave to amend, and (b) in part without leave to amend.

### I. BACKGROUND

Liberally construed,[1] Plaintiff's Complaint asserts that
his rights were violated by Defendants David Primo,
Karen Stanislaus, Tylyn Bozeman, Robert Temple, Salvatore
Pavone, Tanerra CC Newton (collectively "Defendants"),
who were all involved in Plaintiff's state court child custody
dispute. (*See generally* Dkt. No. 1.)

In total Plaintiff's Complaint and the ten attachments are 79-
pages long. (*Id.*) The vast majority of Plaintiff's Complaint
and attachments are nonsensical, rambling sentences, that
strongly suggest Plaintiff is proceeding in the present case
on the basis of his purported status as a sovereign citizen.

More specifically, Plaintiff alleges that his due process rights
were violated by Defendants when they failed to take notice
of his attempts to serve them with notice of his "status as the
executor, american national, age of [majority], secured party
creditor" and that Defendants enforced and applied a foreign
and unconstitutional form of law. (*Id.*) In addition, Plaintiff
alleges that Defendants violated his constitutional rights by
determining the custody of his child pursuant to the Family
Court Act, which is "derrived [sic] from the Social Security
Act which was never enacted into positive law." (Dkt. No. 1
at 4.)

Plaintiff alleges that Defendant Primo, the Chief Court Clerk
of Onondaga County Family Court, was present during
Plaintiff's custody trial where he "watched" (1) Plaintiff
question the court's jurisdiction, and (2) Plaintiff's requests
to have his name correctly formatted be ignored.[2] (*Id.* at
6.) Plaintiff alleges that the court failed to take notice of
"NYS authenticated Power of Attorney and Birth Certificates
[Birth Certification is now Authenticated at Federal Level,
Bill of Complaint in Equity, Declaration of Nationality,
Notice of Restricted Special Appearance, invoices/injunction
[cease and desist order], Uniform Commercial Code Financial
Statements." (*Id.*)

Plaintiff alleges that Defendant Temple, the attorney for the
child in Plaintiff's custody action, did not act in Plaintiff's
child's best interest, failed to "honor [Plaintiff's] injunction
(cease and desist order), failed to take notice of [Plaintiff's]
Bill of Complaint in Equity, NYS authenticated Power of
Attorney and Birth Certificate, Declaration of Nationality,
[and Defendant Temple wa]s also responsible for drafting the
order with the NAMES in all caps." (*Id.*)

**\*2** Plaintiff alleges that Defendant Stanislaus-Fung, who
was the court attorney referee in his custody dispute, "failed
to take notice of [Plaintiff's] status," "took joint legal custody
away from [Plaintiff] via the FAMILY COURT ACT," failed
to recuse herself despite Plaintiff's requests, and did not act as
an impartial decision maker in the custody dispute. (*Id.*)

Plaintiff alleges that Defendant Bozeman, who represented
the mother of Plaintiff's child in the custody dispute, failed
to take notice of Plaintiff's "status." (*Id.*) In addition, Plaintiff
alleges that Defendant Bozeman was served with invoices,
a private parenting agreement, and an injunction to cease
and desist but that she failed to properly respond to those
documents. (*Id.*)

Although Plaintiff's Complaint contains virtually no factual detail, it appears to assert one claim that Defendants violated his due process rights. [3] (*See generally* Dkt. No. 1.) Plaintiff does not appear to be seeking any relief. (*See generally* Dkt. No. 1.)

Plaintiff also filed an application to proceed *in forma pauperis.* (Dkt. No. 3.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [4] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 3), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [5]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. 28 U.S.C. § 1915(e); *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam); *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983); *see, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States,* 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[D]ismissal is proper

only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown– that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted). "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

"Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but

also recognized as frivolous and a waste of court resources." *Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) (D'Agostino, J.); *accord, Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (summary order) (noting that "an individual's belief that her status as a 'sovereign citizen' puts her beyond the jurisdiction of the courts has no conceivable validity in American law") (internal quotation marks omitted); *see also United States v. Ulloa*, 511 F. '105, 106 n.1 (2d Cir. 2013) (summary order) ("The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group."); *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3rd Cir. 2008) ("[T]he 'Redemptionist' theory ... propounds that a person has a split personality: a real person and a fictional person called the 'strawman.' The 'strawman' purportedly came into being when the United States went off the gold standard ... and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.... Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers."); *Branton v. Columbia Cnty.*, 15-CV-0005, 2015 WL 3397949, at *2-4 (N.D.N.Y. May 26, 2015) (Hurd, J., adopting Report-Recommendation of Dancks, M.J., dismissing plaintiff's complaint, which was "a classic example of [the] 'redemptionist' or 'sovereign citizen' theory," and denying leave to amend); *Green v. Pryce*, 15-CV-3527, 2015 WL 4987893, at *3-4 (E.D.N.Y. Aug. 18, 2015) (dismissing plaintiff's complaint on initial review and denying leave to amend, where the complaint was based "on the 'redemptionist' theory," included claims "pursuant to federal criminal statutes that do not provide a private right of action," and "failed to set forth any facts to support" his § 1983 claim).

**\*4** Here, Plaintiff's Complaint (1) is comprised of repeated references to his status as an "american national ... secured party creditor," (2) is virtually devoid of factual allegations about the incident or incidents at issue (or any other event based in fact), and (3) contains citations to statutes and references to legal concepts that do not provide a private cause of action. (Dkt. No. 1.) Accordingly, I conclude that Plaintiff's Complaint–predicated as it is on a "sovereign citizen" theory

that is routinely held to have no basis in law–does not allege facts plausibly suggesting any entitlement to relief.

In addition and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from individuals who are immune from suit and for failure to state a claim upon which relief may be granted. [6]

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### A. Immunity

#### 1. Defendant Primo

Courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties." *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see Ali v. Pollak*, 182 F.3d 898 (2d Cir. 1999) (unpublished opinion) (extending judicial immunity to a pro se law clerk); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (extending judicial immunity to a judge's law clerk); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same); *Gibson v. Brown*, 12-CV-0622, 2012 WL 1744845, at *4-5 (E.D.N.Y. May 16, 2012) (extending judicial immunity to a pro se writ clerk)).

**\*5** It appears as though Plaintiff's claim against Defendant Primo arises from actions he took with respect to a case before Defendant Stanislaus-Fung in the Onondaga County

Family Court. Plaintiff fails to allege any facts showing that Defendant Primo acted beyond the scope of his judicial responsibilities or outside of his jurisdiction. Because Plaintiff sues Defendant Primo for "acts arising out of, or related to, individual cases before" Defendant Stanislaus-Fung, he is immune from suit for such claims. *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).

### 2. Defendants Stanislaus-Fung and Pavone

"The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' "); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

As a result, I recommend that Plaintiff's claim against Defendants Stanislaus-Fung and Pavone be dismissed based on the doctrine of absolute judicial immunity.

### 3. Defendant Temple

"Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "In New York, courts have regularly found that attorneys for children in custody proceedings (called 'law

guardians' until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity." *Thomas v. Martin-Gibbons*, 19-CV-7695, 2020 WL 5026884, at *7 (S.D.N.Y. Aug. 25, 2020) (citing *Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012)).

Plaintiff's allegations against Defendant Temple arise out of his court-appointed representation of Plaintiff's child during family court proceedings. As a result, I recommend that Plaintiff's claim against Defendant Temple be dismissed pursuant to the doctrine of quasi-judicial immunity. *Thomas v. Martin-Gibbs*, 2020 WL 5026884, at *7 (citing *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to quasi-judicial immunity)) (dismissing the plaintiff's claims against the Children's Law Center, which arose out of their court-appointed representation of "J.O." during family court proceedings).

Based on the doctrine of judicial immunity, I recommend that Plaintiff's claim against Defendants Primo, Stanislaus-Fung, Pavone, and Temple be dismissed because the Court lacks subject matter jurisdiction.

### B. Failure to State a Claim Upon Which Relief May Be Granted

### 1. Defendant Primo

**\*6**  In the alternative, I recommend that Plaintiff's claim against Defendant Primo be dismissed for failure to state a claim upon which relief may be granted.

"To state a claim for liability under [S]ection 1983 against a government official sued in his or her individual capacity, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, at *3 (2d Cir. June 7, 2022) (summary order) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)). Failing to allege that a defendant was personally involved in, or responsible for, the alleged constitutional violation renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted); *see Dubois v. Beaury*, No. 21-2096, 2022 WL 1701497, at *4 (2d Cir. May 27, 2022) (stating that "personal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983" (internal quotation marks omitted)).

Here, Plaintiff alleges that Defendant Primo "allowed" Plaintiff's rights to be violated "as he sat in on [Plaintiff's custody] Trial and watched [Plaintiff] qu[ ]estion the court['s] jurisdiction, the format of the names in the custodial order." (Dkt. No. 1 at 6.) Plaintiff's allegation that Defendant Primo was present while others allegedly violated his rights, fails to plausibly suggest Defendant Primo's personal involvement in the constitutional violation. *See Roman v. City of Mount Vernan*, 21-CV-2214, 2022 WL 2819459, at *16 (S.D.N.Y. July 19, 2022) (quoting *Arbuckle v. City of New York*, 14-CV-10248, 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016)) (" 'Simply being present at the scene of an arrest does not suffice for personal involvement.' ").

### 2. Defendant Pavone

In the alternative, I recommend that Plaintiff's claim against Defendant Pavone be dismissed for failure to allege Defendant Pavone's personal involvement in any violation of Plaintiff's rights. The Complaint lists Defendant Pavone as a defendant but fails to allege any action taken by Defendant Pavone.

### 3. Defendants Bozeman and Temple

Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendants Bozeman and Temple is inadequately pled because he failed to allege that they acted under color of state law. 42 U.S.C. § 1983; *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).

"Although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) (Hurd, J.). Thus, I recommend that Plaintiff's claim against Defendant Temple be dismissed for failure to state a claim upon which relief may be granted.

Moreover, although it is not clear from the face of the complaint whether Defendant Bozeman was appointed by the court to represent Defendant Newton, or whether

Defendant Newton privately retained Defendant Bozeman, the difference is inconsequential. "It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent*, 786 F. Supp. 2d at 538 (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *accord Agron v. Douglas W. Dunham Esq. & Assocs.*, 02-CV-10071, 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004); *see Walker v. Rivera*, 22-CV-0560, 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (recommending dismissal of the plaintiff's Section 1983 claims against the defendant private attorney and defendant attorney for the child because the plaintiff failed to allege facts plausibly suggesting that they acted under color of state law); *DeRouseau v. Fam. Ct., Westchester Cnty.*, 21-CV-8716, 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."); *Cleveland v. Schenectady Cnty. Dep't of Children and Families*, 16-CV-1235, 2016 WL 8193590, at *6 (N.D.N.Y. Dec. 30, 2016) (Stewart, M.J.) ("It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action.").

 *7  As a result, I recommend that Plaintiff's claim against Defendants Temple and Bozeman be dismissed.

### 4. Defendant Newton

Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendant Newton—the mother of his child—was a state actor. "[M]ere use, and even misuse, of state courts does not turn private parties into state actors." *Koziol v. King*, 14-CV-0946, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015) (Sharpe, C.J.) (citing *Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983.")); *Dahlberg v. Becker*, 748 F.2d 85, 89-90 (2d Cir. 1984) (dismissing § 1983 action because allegations of "misuse of a state statute" did not give rise to § 1983 action)). Thus, Plaintiff has failed to allege facts plausibly suggesting Defendant Newton was a state actor for purposes of liability pursuant to 42 U.S.C. § 1983. *Koziol*, 2015 WL 2453481, at *11-12 (dismissing the plaintiff's claims against his ex-wife based on the plaintiff's

allegations that she "abuse[d] joint custody rights" and filed "false claims" and "specious petitions").

As a result, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to state a claim upon which relief may be granted. [7]

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."

*Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

 **\*8** Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except those against Defendants Bozeman and Newton.

However, in light of Plaintiff's *pro se* status and out of an abundance of caution, a better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's claim against Defendant Bozeman and Newton from being *sua sponte* dismissed on initial review. As a result, I recommend that Plaintiff's claim against Defendant Bozeman and Newton be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are

insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant in the constitutional deprivations alleged in sufficient detail to establish that it was tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Bozeman and Newton, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Primo, Stanislaus-Fung, Temple, and Pavone, because it seeks relief from defendants who are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009)* (per curiam).

**\*9  NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2022 WL 16556060

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

2    Although unclear from the content of the Complaint, it appears that Plaintiff prefers his name be written in entirely lowercase letters but that the caption in the state court proceedings listed the parties' names in all capital letters.

3    Plaintiff's Complaint also contains an extensive list with several legal terms that do not appear to have any meaning in context. (Dkt. No. 1 at 7.) More specifically, under the paragraph in the form complaint asking what relief Plaintiff seeks, states:

see invoices attached, Abuse of Power, Abuse of Process, Appearance in Court, Breach of Contract/ Oath/ Charter, Breach of Duty, Capitis Diminutio Maxima, Check and Balance Violation, Conspiracy/ Collusion, Deceit*, Discrimination/ Vexatious Litigation, Duty of Care Violation, Embezzlement/ Extortion, Entrapment*, Factual Causation*, Fair Hearing Request/ Violation, Fraud Upon the Court, Fraudulent Conveyance/Conversion, Fruit of The Poisonous Tree, Gross Negligence, Malicious Wrongdoing, Mental Anguish, Mis-Application of Statute, Mis-Information/False Evidence, Misappropriation of Funds, Misrepresentation, Mistrial, Natural Law Violation, Obstruction of Justice, Psychological Warfare, R.I.C.O. (Illegal Activities Per Person), Serving in Multiple Capacities, Speedy Trial Violation, Tax Fraud, The Use of Policies to Override The Law, Treason, Trespassing, Undisclosed Policies/Usury, Unholy Alliance, United States Bill of Rights Violation, Unjust Enrichment, Unlawful Taking, Use of injurious or Damaging Laws, Using Public Funds For Private Interests

(Dkt. No. 1 at 7.)

4    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

6    Due to the nature of Plaintiff's Complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims are also likely barred. "The Second Circuit has recently stated that the *Rooker-Feldman* doctrine bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues." *Arena v. Dep't of Soc. Servs. of Nassau Cnty.*, 216 F. Supp. 2d 146, 152 (E.D.N.Y. 2002) (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002)). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying custody state court proceeding remains pending, his request for this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

7    In the alternative, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to allege Defendant Newton's personal involvement in any violation of Plaintiff's rights. Again, Plaintiff listed Defendant Newton as a defendant in this case but failed to allege any action taken by Defendant Newton in the body of the Complaint.

8    *See also* *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16551700
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

daishawn-lavon: MILLER EX, Plaintiff,
v.
David PRIMO, et al., Defendants.

5:22-cv-680 (BKS/ML)
|
Signed October 31, 2022

**Attorneys and Law Firms**

Plaintiff Pro Se: daishawn-lavon: miller ex, [1] Syracuse, New York 13206.

### MEMORANDUM-DECISION AND ORDER

Brenda K. Sannes, Chief United States District Judge:

**\*1** Plaintiff pro se daishawn-lavon: miller ex brought this action on June 27, 2022, alleging, inter alia, that Defendants violated his federal rights. (Dkt. No. 1). This case was referred to United States Magistrate Judge Miroslav Lovric who, on September 29, 2022, issued a Report-Recommendation recommending that Plaintiff's complaint be dismissed in its entirety with leave to amend against Defendants Bozeman and Newton. (Dkt. No. 6, at 17). Further, Judge Lovric recommended that Plaintiff's claims against Defendants Primo, Stanislaus-Fung, Temple, and Pavone be dismissed without prejudice and without leave to amend because Plaintiff seeks relief from Defendants who are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B). (*Id.*). Magistrate Judge Lovric advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the Report, and that the failure to object to the Report within fourteen days would preclude appellate review. (Dkt. No. 6, at 18).

Plaintiff has not filed objections to the Report-Recommendation. For the reasons set forth below, the Report-Recommendation is adopted, and the Complaint is dismissed with leave to amend against Defendants Bozeman and Newton.

This Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it for the reasons stated therein.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation, (Dkt. No. 6), is **ADOPTED** in all respects; and it is further

**ORDERED** that that Plaintiff's Complaint, (Dkt. No. 1), is dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**ORDERED** that Plaintiff's Complaint, (Dkt. No. 1), is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** against Defendants Bozeman and Newton for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**\*2 ORDERED** that Plaintiff's Complaint, (Dkt. No. 1), is **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** against Defendants Primo, Stanislaus-Fung, Temple, and Pavone because it seeks relief from

defendants who are immune from suit pursuant to 🚩28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order; and any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Lovric for review; and

if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 16551700

## Footnotes

1    Plaintiff writes his name in lowercase letters.

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 175 of 212

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

 **\*1**  The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint;

(5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 177 of 212

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. See LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing Ortiz v. Cornette, 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. See Christopher v. Laidlaw Transit, Inc. 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. Id., (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. Id. Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under 🚩 Rule 12(b)(6), 🚩*Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩*Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩§ 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩*Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); 🚩*Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (🚩section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩 § 1983. 🚩*Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩 § 1983. 🚩*Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

### CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 180 of 212

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

**Footnotes**

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2655195
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

ROCHELLE MARETTA-BROOKS, et al. Plaintiff,

v.

COMM'R OF SOCIAL SECURITY, et. al. Defendants.

5:22-CV-1261 (BKS/ML)
|
Filed 03/27/2023

**Attorneys and Law Firms**

APPEARANCES:

ROCHELLE MARETTA-BROOKS, Plaintiff, Pro Se, 107 Wood Ave, Syracuse, New York 13205

### ORDER and REPORT-RECOMMENDATION

Miroslav Lovric U.S. Magistrate Judge

**\*1**  The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* and an application for appointment of legal counsel, filed by Rochelle Maretta-Brooks ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 3.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application, deny Plaintiff's motion for appointment of counsel, and recommend that the Complaint be dismissed in its entirety with leave for Plaintiff to replead violations of her rights to access records of the Social Security Administration pursuant to the Freedom of Information Act ("FOIA") or the Privacy Act. I further recommend that any other claims raised in Plaintiff's Complaint, including any claims raised against defendant Mrs. Hanley and any claims purported to be raised on behalf of minor children F.B. or H.B., be dismissed without leave to amend. (Dkt. No. 1.)

### I. BACKGROUND

Construed as liberally [1] as possible, Plaintiff's Complaint alleges that named defendant "Mrs. Hanley," an employee of the Social Security Administration, refused to provide unspecified governmental records in response to Plaintiff's request in November 2022. (Dkt. No. 1-1, at 1). Plaintiff further alleges that Mrs. Hanley "told me my request for

appeal/review was denied in 2019 so I am being denied my right to records." (*Id.*)

Plaintiff identifies two minor children, "F.B." and "H.B." as other plaintiffs in this matter but does not include any discernible factual allegations relating to them in the Complaint or supporting documents. (*Id.*) She also cites a number of criminal statutes as basis for relief, with references to kidnapping, fraud, identity theft, embezzlement, tax evasion, collusion and a "Ponzi scheme." (Dkt. No. 1 at 3.)

Based on these factual allegations, Plaintiff seeks significant monetary damages, potentially reaching up to three million dollars. (Dkt. No. 1 at 4.)

### II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted for this proceeding. [3]

**\*2**  Plaintiff is advised that the ability to litigate an action without prepayment of fees is a privilege that can be denied, revoked, or limited based upon a showing of prior abuses.

*See* In re Anderson, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the three immediately preceding years, the instant petition was "patently frivolous"); *see also* Cuoco v. United States Bureau of Prisons, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons."). The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]" 28 U.S.C. § 1915(a)(1) (emphasis added);

ROCHELLE MARETTA-BROOKS, et al. Plaintiff, v. COMM'R OF..., Slip Copy (2023)

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 182 of 212

*In re McDonald,* 489 U.S. 180, 183 (1989). For this reason, courts are regarded as possessing discretionary authority to deny IFP status to litigants who have abused the privilege. *See Hurt v. Soc. Sec. Admin.,* 544 F.3d 308, 309-310 (D.C. Cir. 2008) (quoting *Butler v. Dep't of Justice,* 492 F.3d 440, 444-45 (D.C. Cir. 2007) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content, frequency, and disposition of their previous filings[.]' ").

The exhibits included with the Complaint show that Plaintiff was previously known by the name Rochelle Coleman. (Dkt. No. 1-1, at 4). This Court notes that under that name, she was granted IFP status for a number of actions that were dismissed following review of the substance of the factual allegations in the complaints in accordance with 28 U.S.C. § 1915(e). *See Coleman v. Detter,* No. 16-CV-0834 (N.D.N.Y. filed July 8, 2016)*; Coleman v. Engle,* No. 16-CV-0833 (N.D.N.Y. filed July 8, 2016)*; Coleman v. Olinski,* No. 16-CV- 0838 (N.D.N.Y. filed July 8, 2016); *Coleman v. Sutkowy,* No. 16-CV-0837 (N.D.N.Y. filed July 8, 2016); *Coleman v. Syracuse Police Dep't,* No. 16-CV-0836 (N.D.N.Y. filed July 8, 2016); *Coleman v. Hanuszczak,* No. 16-CV-0735 (N.D.N.Y. filed June 22, 2016); *Coleman v. Levandowski,* No. 16-CV-0734 (N.D.N.Y. filed June 22, 2016). Under the name Rochelle Maretta-Brooks, Plaintiff has been granted IFP status in a case that is ultimately dismissed as insufficient pursuant to 28 U.S.C. § 1915(e). *See Brooks v. Onondaga County Dep't of Children & Fam. Svcs.,* No. 17-CV-1186 (N.D.N.Y. filed April 8, 2018). In *Maretta-Brooks v. Hanuszczak,* No. 18-CV-426 (N.D.N.Y. filed April 9, 2018), Plaintiff's IFP application was deemed incomplete, and the complaint was dismissed without prejudice for failure to state a claim.

In light of her litigation history, Plaintiff is hereby cautioned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the court, and (2) filing of patently frivolous lawsuits may result in the denial of any request to proceed IFP in an action and/or a recommendation to the Chief District Judge that a filing injunction be issued against Plaintiff, barring her from filing any future lawsuits in this district without prior permission.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid

the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the Court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Purported Claims on Behalf of Minor Children

A nonlawyer parent ordinarily cannot represent a child's interests *pro se*. See *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (holding that it is "a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child"). Minors "are entitled to trained legal assistance so their rights may be fully protected" and nonlawyer parents are not trained to represent competently the interests of their children. *Cheung*, 906 F.2d at 61. Moreover, "a district court has a duty to raise this issue *sua sponte*." *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009).

Plaintiff has been advised of this prohibition in previous proceedings. *See, e.g.*, *Brooks v. Onondaga County Dep't of Children and Family Svcs.*, No. 17-CV-1186 (N.D.N.Y. filed April 8, 2018) (Dkt. No. 11). Moreover, the custodial status of Plaintiff's minor children and the scope of Plaintiff's parental

rights have been adjudicated in state court proceedings and were a significant issue in an earlier unrelated proceeding before Chief Judge Sannes. *See F.B. v. Saul*, No. 15-CV-148 (N.D.N.Y. filed February 10, 2015) (Dkt. Nos. 94, 95.) Because Plaintiff has not alleged any substantive claims on behalf of F.B. and H.B.in this filing, this Court declines to delve into that potentially sensitive issue here. Rather, in line with well-established caselaw, I recommend that the Court dismiss any claims Plaintiff is purporting to assert on behalf of her minor children.

### B. Claims Alleging Violations of Criminal Laws

**\*4** Without elaboration, Plaintiff cites a number of federal criminal statutes in her Complaint and the accompanying exhibits: 18 U.S.C. §§ 241 (Conspiracy against Rights), 242 (Deprivation of Rights under Color of Law), 245 (Interference with Federally Protected Activities), 246 (Deprivation of Relief Benefits), 247 (Obstruction of Free Exercise of Religion), 249 (Hate Crime Acts), and 1201 (Kidnapping). (Dkt. No. 1 at 1, 3; Dkt No. 1-1 at 1.) She also uses a number of disconnected phrases typically associated with criminal enforcement actions such as "fraud," "theft," "Ponzi scheme," "embezzlement," "tax evasion" and "kidnapping," but provides no factual allegations associated with these terms. (Dkt. No. 1 at 3.)

There is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes."). This court notes that Plaintiff has been advised in prior litigation that she may not enforce criminal statutes in a civil action. *See, e.g.*, *Marietta-Brooks v. Hanuszczak*, 18-CV-426 (N.D.N.Y. filed September 4, 2018) (Dkt. No. 7 at 20.)

As a result, I recommend dismissal of all of Plaintiff's claims that are premised on alleged violations of federal or state

criminal laws. *See Hall v. Sampson*, 21-CV-4839, 2022 WL 2068248, at *2 n.2 (E.D. Pa. June 8, 2022) (collecting cases) (holding that the plaintiff cannot bring criminal charges against the defendants through a private lawsuit and that claims pursuant to, *inter alia*, 18 U.S.C. §§ 241, 371 do not give rise to a civil cause of action); *Patterson v. Patterson*, 16-CV-0844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) (quoting *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009)) ("Courts within this Circuit have accordingly held consistently that criminal charges under New York law 'cannot be prosecuted by a private person.' "); *Walthour v. Herron*, 10-01495, 2010 WL 1877704, at *2 (E.D. Pa. May 6, 2010) (recognizing no private right of action under, *inter alia*, 18 U.S.C. §§ 241, 371).

**C. Purported RICO Claims**[4]

Again without elaboration, Plaintiff's Complaint references the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (Dkt. No. 1 at 1; Dkt. No. 1-1 at 1.)

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property "by reason of a violation of section 1962." *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (citing *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496

(1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

**\*5** Plaintiff has failed to state a RICO claim against either defendant. To begin with, the doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, including suits against federal agencies, unless sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency ...is essentially a suit against the United States, such suits are ...barred under the doctrine of sovereign immunity, unless such immunity is waived."). Any RICO claims against the Social Security Administration or Mrs. Hanley in her official capacity would thus be barred by the doctrine of sovereign immunity.

To the extent that Plaintiff attempts to allege a RICO claim against Mrs. Hanley in her individual capacity, Plaintiff fails to allege any facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *13 (E.D.N.Y. Sept. 24, 2013); *see also Peterson v. City of New York*, 11-CV-3141, 2012 WL 75029, at *3-4 (S.D.N.Y. Jan. 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise). Moreover, Plaintiff fails to allege any facts plausibly suggesting a pattern of racketeering activity. 18 U.S.C. § 1961(5) (To sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other); *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir 1999)) (To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' ").

As a result, I recommend that Plaintiff's RICO claims be dismissed.

#### D. Access to Public Records

As discussed in Section I, the only discernible factual allegations in the Complaint describe a denial of Plaintiff's request for governmental records in November 2022.

The Freedom of Information Act ("FOIA") allows persons to request any public records subject to disclosure. *See* 5 U.S.C. § 552(a)(3). The Privacy Act allows persons to request records pertaining specifically to them. *See* 5 U.S.C. § 552a(d)(1). Both federal statutes allow persons to bring suit in federal district court to challenge an agency's refusal to disclose properly requested records. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(1)(B). Neither statute permits an action against individual governmental employees such as Mrs. Hanley. *See Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir. 2008) ("The private right of civil action created by the Privacy Act is specifically limited to actions against agencies of the United States government."); *Geer v. Pheffer,* No. 14-CV-2829 (CBA), 2015 WL 332996, at *2 (E.D.N.Y. Jan. 23, 2015) ("FOIA only authorizes suits against federal agencies and does not apply to individual officers ...").

There are distinctions between the two records access statutes. In particular, while any individual may make a request for records pursuant to the FOIA, under the Privacy Act, only an individual, or his authorized representative, may request the individual's records. *See* 5 U.S.C. §§ 552, 552a(d)(1). Moreover, while the FOIA applies to any type of record, the Privacy Act narrowly applies to records that agencies maintain within their "systems of records" that are retrievable by an individual's name, social security number or other personal identifier. *See* 5 U.S.C. §§ 552, 552a(d). Additionally, unlike the FOIA, the Privacy Act allows individuals to request that agencies amend their records. *See* 5 U.S.C. § 552a(d)(2).

*6 Under both the FOIA and the Privacy Act, a plaintiff must first exhaust her administrative remedies, including the administrative appeals process, before a court will exercise jurisdiction over a claim based upon an agency's refusal to provide documents. *See Sussman v. United States Dep't of Justice,* No. 03-Civ-3618 (DRH/ETB), 2006 WL 2850608, at *4 (E.D.N.Y. September 30, 2006) (summarizing administrative appeals process). In order to withstand dismissal, both a FOIA and Privacy Act claim require a proper pleading that a plaintiff has exhausted his or her administrative remedies. *Checksfield v. Internal Revenue Svc.,* No. 5:21-CV-1180 (GTS/ML), 2022 WL 2713499, at *8 (N.D.N.Y. July 13, 2022) (collecting FOIA cases); *Cross v. Potter,* No. 3:09-CV-1293 (TJM), 2013 WL 1149525, at *9 (collecting Privacy Act cases).

Plaintiff has failed to state a claim under the FOIA or the Privacy Act because she failed to describe the nature of her alleged request for records, the details of the agency's response, and the exhaustion of available administrative remedies. As a result, I recommend dismissal of Plaintiff's claims alleging denial of access to records.

### V. OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [5]

With respect to Plaintiff's RICO claims and those claims alleging violations of criminal statutes including but not limited to 18 U.S.C. §§ 241, 242, 245, 246, 247, 249, and 1201, I recommend that those claims be dismissed without leave to replead because the problem with

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 186 of 212

ROCHELLE MARETTA-BROOKS, et al. Plaintiff, v. COMM'R OF..., Slip Copy (2023)

those claims is substantive such that a better pleading will not cure it.

I likewise recommend that any purported claims in the Complaint raised by Plaintiff on behalf of F.B and H.B. be dismissed without leave to replead. *See Antonetti, on behalf of C.J.A. v. Dave & Busters 42nd Street Times Square*, 23-CV-0101, 2023 WL 1869012, at 5 (S.D.N.Y. Feb. 6, 2023) (declining leave to amend where the complaint sought to assert claims on behalf of the plaintiff's minor son).

**\*7** However, with respect to potential claims against the Social Security Administration pursuant to the FOIA or the Privacy Act, it is not clear whether better pleading would permit Plaintiff to assert a cognizable claim. Out of deference to Plaintiff's *pro se* status, I therefore recommend that Plaintiff be granted leave to replead those claims. At the same time, I recommend that any claims against Mrs. Hanley pursuant to the FOIA or the Privacy Act be dismissed without leave to replead, because such claims are not viable against individual government employees.

If Plaintiff chooses to avail herself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which she relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting the substance of her records request, any agency response, and any attempt to exhaust administrative remedies. Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See* Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)* ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

## VI. PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 3.) As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Lefridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citation omitted). Furthermore, there is no bright-line test determining whether counsel should be appointed on behalf of an indigent party. Hendricks v. Coughlin*, 114 F.3d 390, 392-393 (2d Cir. 1997)*. Rather, the court must carefully consider a number of

factors, including whether the indigent's claims seem likely to be of substance. *See* Leftridge, 640 F.3d at 69 *(stating that "[t]he court properly denies the plaintiff's motion for counsel if it concludes that his chances of success are highly dubious.") (citations omitted).

As I have recommended dismissal of the instant matter, it cannot be said that Plaintiff's claims are likely to be of substance; therefore, the motion (Dkt. No. 3) must be denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED without prejudice**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) only to the extent that it asserts claims against the Social Security Administration for denial of access to records pursuant to the FOIA or the Privacy Act; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** all other claims raised in Plaintiff's Complaint (Dkt. No. 1), including all claims against defendant Ms. Hanley and all claims purportedly raised on behalf of minor children F.B. and H.B., and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [6]

**\*8** **NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72;

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 187 of 212

ROCHELLE MARETTA-BROOKS, et al. Plaintiff, v. COMM'R OF..., Slip Copy (2023)

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

**All Citations**

Slip Copy, 2023 WL 2655195

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

4    Under General Order No. 14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of her Complaint, Plaintiff has failed to file a Civil RICO statement. (*See generally* docket sheet.).

5    *See also* *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 188 of 212

ROCHELLE MARETTA-BROOKS, et al. Plaintiff, v. COMM'R OF..., Slip Copy (2023)

accurate recitation of the governing law after 🚩 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

6    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with 🚩 *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

7    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 189 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

2018 WL 2021480
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rochelle **MARETTA**-**BROOKS**, Plaintiff,

v.

Michael L. **HANUSZCZAK**, et al., Defendants.

Civil Action No. 5:18-CV-0426 (DNH/DEP)

|

Signed 04/26/2018

**Attorneys and Law Firms**

ROCHELLE **MARETTA**-**BROOKS**, c/o RFD, 213 Lilac Street, Syracuse, NY 13208, pro se.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** *Pro se* plaintiff Rochelle **Maretta**-**Brooks**, a frequent litigator in this district, has commenced this action against seventeen defendants, including several judges, the Onondaga County District Attorney, the Onondaga County Attorney, an unidentified City of Syracuse Police Officer, and other individuals whose titles are not disclosed. Plaintiff's complaint, which is largely devoid of factual allegations, as well as her application for leave to proceed *in forma pauperis* ("IFP") and a motion for appointment of counsel, have been forwarded to me for consideration. Based upon my review of those documents, plaintiff's IFP application and motion for appointment of counsel are denied, and I recommend that her complaint be dismissed, with leave to amend.

I. BACKGROUND

Plaintiff commenced this action on April 9, 2018. Dkt. No. 1. Plaintiff's complaint is a compilation of five separate documents prepared on four different forms provided by the court to prospective litigants. Dkt. No. 1. In particular, plaintiff has submitted (1) a form for use in commencing a civil rights action against federal officials pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Dkt. No. 1 at 1-4; (2) a form for use in asserting employment discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title

VII"), as amended, 42 U.S.C. § 2000e *et seq.*, Dkt. No. 1 at 5-9; (3) two forms for use in bringing an action under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Dkt. No. 1 at 10-13, 18-21; and (4) a form for use in asserting civil rights claims against persons acting under color of state law pursuant to 42 U.S.C. § 1983, Dkt. No. 1 at 14-17. Included with plaintiff's complaint are over two hundred pages of attachments of varying descriptions, none of which have been identified or referenced in her complaint. Dkt. Nos. 1-1–1-3. Named as defendants in the various form complaints are the following individuals: (1) Onondaga County Family Court Judge Michael L. **Hanuszczak**, (2) Syracuse City Court Judge Kate Rosenthal, (3) Onondaga County Family Court Judge Julie Cecile, (4) Onondaga County Supreme Court Justice James C. Tormey, (5) Onondaga County Acting Supreme Court Justice Martha Walsh Hood, (6) Onondaga County Family Court Judge Michele Pirro Bailey; (7) Syracuse City Court Judge Ross Andrews; (8) Onondaga County District Attorney William Fitzpatrick; (9) Onondaga County Attorney Robert Durr; (10) Attorney Arlene Bradshaw; (11) Joseph Murphy; (12) Lisa Blitman; (13) Lewis Dettor; (14) William Balduf; (15) Kevin Haywood; (16) Dorothea Hogan; and (17) an unidentified City of Syracuse Police Officer.[1] Dkt. No. 1 at 2, 5-7, 11-12, 14-15, 19-20.

Plaintiff's complaint is wholly devoid of factual allegations upon which her claims are based and fails to disclose the role played by each of the named defendants in the circumstances giving rise to her claims. Although this is far from evident, based on a review of plaintiff's complaint and attached documents, it appears that her claims center upon the removal of her two daughters from her custody as ordered by one or more of the judicial officers named as defendants in this case, and plaintiff's arrest on March 21, 2018. *See, e.g.,* Dkt. No. 1 at 4, 13, 17; Dkt. No. 1-1 at 17, 27-28. Plaintiff's complaint cites several statutes including (1) 18 U.S.C. §§ 241, 242, criminal statutes related to the deprivation of constitutional rights; (2) 42 U.S.C. § 14141,[2] which prohibits governmental employees from depriving persons of rights, privileges, or immunities secured or protected under the constitution; (3) 18 U.S.C. § 1514A, which provides whistleblower protection for employees of publicly traded companies; (4) 18 U.S.C. § 1506, a criminal provision prohibiting the theft or alteration of record or process, or false bail; and (5) New York Criminal Penal Law ("CPL") § 70.10(2), defining the phrase "[r]easonable

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 190 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

cause to believe that a person has committed an offense." *See, e.g.,* Dkt. No. 1 at 3, 7-8, 16. As relief, plaintiff seeks damages in large amounts, designed to increase in the event she is retaliated against, and further enhanced if she is murdered or assassinated. Dkt. No. 1 at 4, 9, 13, 17, 21.

## II. DISCUSSION

### A. Plaintiff's IFP Application

**\*2** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [3] Pursuant to section 1915, when a plaintiff seeks leave to proceed IFP, the court must determine whether she has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir. 1983). Section 1915 only provides that a court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States,* 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339 (1948) ); *see also Potnick v. E. State Hosp.,* 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915(a) does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.,* 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick,* 701 F.2d at 244 (citing *Adkins,* 335 U.S. at 339).

In support of an IFP application, section 1915 requires that a plaintiff submit an affidavit reflecting all of her assets. 28

U.S.C. § 1915(a)(1). Without the submission of a completed financial affidavit, a plaintiff's application is incomplete, and this defect alone warrants denial of the IFP application. *See, e.g., United States v. Copen,* 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission by the party of an affidavit made as required by [ 28 U.S.C. § 1915]."); *accord, Bey v. Syracuse Univ.,* 155 F.R.D. 413, 414 (N.D.N.Y. May 1994) (Scullin, J.).

While plaintiff has submitted two declarations in support of her IFP application, they are incomplete. In both forms plaintiff indicates that, although she is not employed, she receives money from outside sources. Dkt. No. 2 at 1; Dkt. No. 2-1 at 2. In the first, however, she neither identifies the source(s) nor the amounts of that income. Dkt. No. 2 at 1. In the second, she does indicate that she is referring to Social Security benefits, but does not state the amounts received, as required. Dkt. No. 2-1 at 2. Plaintiff's IFP application is therefore denied, without prejudice to renewal upon submission of a complete application.

**\*3** Plaintiff is advised that the ability to litigate an action without prepayment of fees is a privilege that can be denied, revoked, or limited based upon a showing of prior abuses. *See In re Anderson,* 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco v. United States Bureau of Prisons,* 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons." (quotation marks omitted) ). The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]" 28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald,* 489 U.S. 180, 183 (1989). For this reason, courts are regarded as possessing discretionary authority to deny IFP status to litigants who have abused the privilege. *See Hurt v. Soc. Sec. Admin.,* 544 F.3d 308, 309-310 (D.C. Cir. 2008) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking

to 'the number, content, frequency, and disposition of their previous filings[.]' ") (quoting *Butler v. Dep't of Justice,* 492 F.3d 440, 444-45 (D.C. Cir. 2007) (citations, alteration omitted) ).

Plaintiff's litigation history in this district suggests that she is on the brink of being found to have abused the privilege of proceeding IFP. Plaintiff was previously known by the name Rochelle Coleman, Dkt. No. 1 at 39, 42-43, 54, 62; Dkt. No. 1-2 at 9. Under that name, she filed seven prior actions in this district in June and July of 2016. *Coleman v. Detter*, No. 16-CV-0834 (N.D.N.Y. filed July 8, 2016); *Coleman v. Engle*, No. 16-CV-0833 (N.D.N.Y. filed July 8, 2016); *Coleman v. Olinski*, No. 16-CV-0838 (N.D.N.Y. filed July 8, 2016); *Coleman v. Sutkowy*, No. 16-CV-0837 (N.D.N.Y. filed July 8, 2016); *Coleman v. Syracuse Police Dep't*, No. 16-CV-0836 (N.D.N.Y. filed July 8, 2016); *Coleman v. Hanuszczak*, No. 16-CV-0735 (N.D.N.Y. filed June 22, 2016); *Coleman v. Levandowsk*, No. 16-CV-0734 (N.D.N.Y. filed June 22, 2016). In 2017, plaintiff appears to have filed one action. *Brooks v. Onondaga Dep't of Children & Family Servs.*, No. 17-CV-1186 (N.D.N.Y. filed Oct. 25, 2017). In all of those previous actions, plaintiff requested, and was granted, permission to proceed without prepayment of fees. Like the complaint in this action, most of the complaints in those cases generally concern plaintiff losing custody of her children and the state actors and attorneys involved. All but one of those actions were dismissed following the court's review of the substance of the factual allegations in the complaints in accordance with 28 U.S.C. § 1915(e). [4]

Common to all of the actions filed by plaintiff in this district (including, as will be discussed below, the current complaint under consideration in this report) is her failure to include factual allegations in her complaints that demonstrate entitlement to relief, and the vagueness concerning the claims that she purports to assert. Accordingly, in the event plaintiff renews her IFP application upon a proper and complete showing of her finances and the application is granted, she is hereby warned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the court, and (2) any further filing of patently frivolous lawsuits may result in the denial of any request to proceed IFP in an action and/ or a recommendation to the chief district judge that a filing injunction be issued against plaintiff, barring her from filing any future lawsuits in this district without prior permission.

B. Appointment of Counsel

**\*4** With her complaint, plaintiff has requested appointment of counsel to represent her in this action *pro bono*. Dkt. No. 3. District courts are afforded broad, though not limitless, discretion in determining whether to appoint counsel to represent indigent civil litigants. 28 U.S.C. § 1915(e)(1); *see also Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir. 1986). In *Hodge*, the Second Circuit noted that, when exercising that discretion, the court should first determine whether the indigent's position seems likely to be of substance. *Hodge,* 802 F.2d at 60. If this threshold requirement is satisfied,

> the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Hodge,* 802 F.2d at 61-62; *see also Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir. 1994). [5]

In deciding whether to appoint counsel I note that, although the constitution guarantees indigent litigants "meaningful access" to the courts, it does not assure that all parties in civil actions will receive the benefit of *pro bono* representation. *Hodge,* 802 F.2d at 60. While the appointment of counsel to represent indigent parties in civil suits is authorized by statute, when that authority is exercised the court is required to call upon attorneys to donate their time *pro bono*, to the benefit of indigent litigants and the court. In deference to the limited resources available to the court to serve the interests of the many indigent litigants who pursue claims before them, and recognizing the "thankless burden" associated with such assignments, *Miller v. Pleasure,* 296 F.2d 283, 285 (2d Cir. 1961), the court does not grant such applications indiscriminately, but instead chooses to exercise sound judgment and restraint in doing so. *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989).

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 192 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

At this juncture, and as will be discussed more completely below, it is difficult to gauge whether plaintiff's position is likely to be of substance in view of the uncertainty of her claims and the scarcity of factual allegations in the complaint to support those claims. Accordingly, based upon my finding that plaintiff's complaint does not disclose the existence of a cognizable cause of action, plaintiff's motion for appointment of counsel is denied.

C. Sufficiency of Plaintiff's Complaint

1. Standard of Review

Ordinarily, the denial of plaintiff's IPF application would end the court's discussion, and plaintiff, in light of her *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that plaintiff's complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 authorizes the dismissal of the action *sua sponte* "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

**\*5** In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding

that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 193 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

*Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

2. Analysis

As was noted above in part I. of this report, plaintiff's complaint is generally lacking in factual allegations supporting any purported cause of action. Instead, the complaint largely contains mere repetition of claims against different defendants. On this basis alone, I recommend dismissal of the complaint. In addition, there are several grounds upon which all or some of plaintiff's causes of action are potentially subject to dismissal, all of which are worth discussing in light of the possibility that plaintiff will be afforded an opportunity to amend her complaint.

Plaintiff's claims against the various judges named as defendants are, in all likelihood, precluded by the absolute immunity that they enjoy by virtue of their positions. "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991) ); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young*, 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin*, 320 F. Supp. 2d at 41.

**\*6** Similarly, plaintiff's claims against defendant Fitzpatrick are also likely precluded. It is well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of N.Y.*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) ).

Because portions of plaintiff's complaint appear to relate to proceedings in Onondaga County Family Court regarding the custody of plaintiff's two daughters, it is likely that dismissal of those claims are precluded under the *Rooker-*

*Feldman*[6] doctrine and the domestic relations exception to federal court jurisdiction. With respect to the former, the *Rooker-Feldman* doctrine recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). A district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

Turning now to the domestic relations exception to federal court subject matter jurisdiction, federal courts do not have the authority to issue divorce, alimony, and child custody decrees.[7] *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *accord*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004). The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.* While the Supreme Court has cautioned that this does not preclude jurisdiction over claims in which plaintiffs seek monetary damages for constitutional violations, *Ankenbrandt*, 504 U.S. at 703, in this case, plaintiff seeks money damages, as well injunctive relief, including, the return of her children to her custody. *See, e.g.,* Dkt. No. 1 at 9. Where tort claims "begin and end in a domestic dispute," however, is a question better suited for state courts. *See Schottel v. Kutyba*, No. 06-1577, 2009 WL 230106, at \*1 (2d Cir. Feb. 2, 2009) (affirming, based on

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 194 of 212

Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)

the domestic relations exception, the district court's dismissal of the plaintiff's complaint alleging, *inter alia*, that the defendants "fraudulently misrepresented to the court the former couple's residence in order to file divorce proceedings in New York," and, as a result, plaintiff was "deprived of custody and visitation rights").

**\*7** Finally, several other principles likely preclude plaintiff's claims in this case. To the extent that plaintiff has intended to assert a constitutional cause of action under *Bivens*, Dkt. No. 1 at 1-4, such claim is subject to dismissal in light of the absence of any allegations that any of the defendants are federal officials. *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). In addition, although plaintiff utilized a pre-printed form for actions involving employment discrimination under Title VII, Dkt. No. 1 at 5-9, because the complaint is devoid of any allegations concerning plaintiff's employment (or discrimination in the context of an employment), any claim arising under Title VII should be dismissed.

As was noted above, plaintiff's complaint also invokes 18 U.S.C. §§ 241, 242. Dkt. No. 1 at 3. Neither of those criminal statutes, however, provides a private right of action. *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009). Similarly, 18 U.S.C. § 1506 also does not give rise to a civil action. *Shahin*, 606 F. Supp. 2d at 538. Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action. 34 U.S.C. § 12601(b); *Sathue v. Niagara City Police Dep't*, No. 17-CV-0747, 2018 WL 550520, at \*3 (W.D.N.Y. Jan. 25, 2018). To the extent plaintiff cited CPL § 70.10(2) in an attempt to assert a claim under that provision, Dkt. No. 1 at 16, even assuming any provision under New York's CPL gives rise to a private right of action, CPL § 70.10 is a definitional section only and, therefore, cannot, on its own, serve as a basis for a legal claim. Finally, plaintiff's complaint includes a reference to 18 U.S.C. § 1514A, providing whistleblower protection. Dkt. No. 1 at 3. Setting aside the complete absence of any factual allegations suggesting that section 1514A applies, the claim is subject to dismissal because plaintiff has provided no indication that she filed a complaint with the United States Secretary of Labor prior to commencing this action, as required. 18 U.S.C. § 1514A(b)(A); *Murray v. TXU Corp.*, 279 F. Supp. 2d 799, 802 (N.D. Tex. 2003); *accord, Hoffman v. Bailey*, No. 13-CV-5153, 2017 WL 1505920, at \*3 (E.D. La. Apr. 26, 2017);

*see also* *Day v. Staples, Inc.*, 555 F.3d 42, 54 n.7 (1st Cir. 2009).

In summary, the difficulty in making any definitive determination as to whether any of the previously discussed legal principles provide grounds for dismissal stems from the fact that plaintiff's complaint is bereft of facts, disjointed, and largely unintelligible. Simply stated, the allegations contained within plaintiff's complaint are not drafted in a manner that allows for the court to meaningfully analyze plaintiff's claims pursuant to 28 U.S.C. § 1915(e), nor would the allegations permit any of the defendants a fair opportunity to intelligently respond and thereby allow this case to proceed in an orderly manner. Because plaintiff's complaint fails to allege any facts that could be construed as giving rise to a cognizable cause of action, I recommend that it be dismissed. *See Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at \*5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

### D. Whether to Permit Amendment

**\*8** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. d1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc.*

*v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, due to the sparse factual allegations in plaintiff's complaint, it is not clear whether better pleading would permit her to state a cognizable cause of action. Nevertheless, out of deference to plaintiff's *pro se* status, I recommend she be granted leave to amend to cure the deficiencies identified in this report. Plaintiff should not be permitted to amend her complaint, however, to include any purported *Bivens* claims or any causes of action purportedly arising under 18 U.S.C. §§ 241, 241, 1514A, and 1506; 34 U.S.C. § 12601; or CPL § 70.10.

If plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint plaintiff must clearly set forth the facts that give rise to her claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed

that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted) ).

III. SUMMARY, ORDER, AND RECOMMENDATION

Plaintiff's IFP application for leave to proceed without prepayment of fees is incomplete. Accordingly, I deny her IFP application, without prejudice to renewal. Plaintiff's motion for appointment of counsel to represent her *pro bono* is also denied, again without prejudice. Finally, I find that plaintiff's complaint does not comply with the applicable pleading requirements and does not allege sufficient facts to survive review under 28 U.S.C. § 1915(e). Accordingly, it is hereby

**\*9** ORDERED that plaintiff's motions for leave to proceed without prepayment of fees (Dkt. No. 2) and appointment of counsel (Dkt. No. 3) are DENIED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED, with leave to replead, except with regard to any purported claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), or any purported causes of action arising under 18 U.S.C. §§ 241, 241, 1514A, and 1506; 34 U.S.C. § 12601; and CPL 70.10.

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in Fed. Supp., 2018 WL 2021480

**Footnotes**

**Maretta-Brooks v. Hanuszczak, Not Reported in Fed. Supp. (2018)**

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 196 of 212

1    The roles and/or titles of defendants Murphy, Blitman, Dettor, Balduf, Haywood, and Hogan are not readily discernible on the face of plaintiff's complaint.

2    Effective September 1, 2017, that section was recodified at 34 U.S.C. 12601.

3    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4    In *Brooks v. Onondaga Dep't of Children & Family Servs.*, No. 17-CV-1186 (N.D.N.Y. filed Oct. 25, 2017), Magistrate Judge Therese Wiley Dancks issued a report on April 9, 2018, recommending dismissal of plaintiff's complaint. That report remains pending before Senior District Judge Gary L. Sharpe.

5    In deciding plaintiff's motion, I have taken into consideration this court's custom and practice, which is to ordinarily assign *pro bono* counsel to represent an indigent *pro se* litigant, upon request, at the time of trial.

6    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

7    "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993) (citations omitted).

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1789593
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alexander McFADDEN, Plaintiff,

v.

Jose D. ORTIZ, Executive Officer Chase JP
Morgan Chase & Co., and James Simon, Manager
Chase JP Morgan Chase & Co., Defendants.

No. 5:12–CV–1244 (MAD/ATB).
|
April 26, 2013.

**Attorneys and Law Firms**

Alexander McFadden, Pine City, NY, pro se.

Jose D. Ortiz, Executive Officer for Chase JP Morgan Chase & Co., Houston, TX.

James Simon, Manager for Chase JP Morgan Chase & Co., New York, NY.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

*\*1* Plaintiff *pro se* Alexander McFadden ("McFadden"), an inmate at the Southport Correctional Facility ("SCF"), filed this action pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff appears to allege that Defendants, two executives of Chase JP Morgan Chase & Co. ("Chase"), violated his constitutional rights through conduct that, in some way, involved a bank account. *See* Dkt. No. 1 at ¶ 4.

On August 7, 2012, Magistrate Judge Andrew T. Baxter issued an Order and ReportRecommendation, recommending that the Court dismiss Plaintiff's complaint in its entirety with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5. Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's August 7, 2012 Order and ReportRecommendation.

**II. BACKGROUND**

In his Order and Report–Recommendation dated August 7, 2012, Magistrate Judge Baxter recommended that Plaintiff's motion to proceed *in forma pauperis* ("IFP") should be denied by the Court and, upon review of the complaint, that this action be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9. Further, Magistrate Judge Baxter recommended that if the Court approves his report, the Court should certify that any appeal from this matter will not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See id.*

Regarding Plaintiff's complaint, Magistrate Judge Baxter's Order and ReportRecommendation recommends that because there is no indication that either Defendant acted under "color of state law," and because there are no allegations that either or both Defendants "conspired" with any state actors to bring this action under section 1983, Plaintiff's complaint should be dismissed. *See* Dkt. No. 5 at 5.

Regarding Plaintiff's claim that Defendants violated New York Penal Law by offering false documents for filing, tampering with public records, and falsifying business records, Magistrate Judge Baxter recommended that because there is no private right of action to enforce either state or federal criminal statutes, Plaintiff is barred from bringing a claim to enforce these provisions of the New York State Criminal Law. *See* Dkt. No. 5 at 6.

Accordingly, Magistrate Judge Baxter recommended this Court hold that, due to Plaintiff's failure to state a claim under 42 U.S.C. § 1983 upon which relief can be granted, combined with the courts inability to determine what venue might be appropriate, Plaintiff's motion for IFP should be denied, and Plaintiff's complaint should be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9.

In his "objections" to Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff simply provides the Court with language from various cases discussing various types of objections and the Court's authority to review unpreserved errors. *See* Dkt. Nos. 14, 15.

## III. DISCUSSION

### A. Review of a magistrate judge's decision

**\*2** If a party files specific objections to a magistrate judge's report-recommendation, the district court performs a *"de novo* determination of those portions of the report of specified proposed findings or recommendations to which objections is made." 28 U.S.C. § 636(b)(1) (2006). However, if a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that were presented] to the magistrate judge," the court simply reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). At the conclusion of the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### B. *In Forma Pauperis* application

In order for a plaintiff to proceed without payment of any fees, he must first meet the financial criteria for IFP status. *See* 28 U.S.C. § 1915(a)(1). The plaintiff must submit an affidavit, including a statement of all assets, establishing his inability to pay the filing fee of $350.00. *See id.* Here, Plaintiff submitted a standard IFP application form, but answered only some of the relevant questions. Furthermore, while Plaintiff is incarcerated and has filed a motion to proceed IFP, his application states that, in the past twelve months, he has had income from "[b]usiness, profession or other self employment," and has "millions of dollars" in "cash, checking or savings accounts." *See* Dkt. No. 2 at ¶¶ 3, 4. Plaintiff, however, does not answer the question that asks him to "describe the source of money and state the amount received and what you expect you will continue to receive ." *See id.* at ¶ 3. Plaintiff answers "yes" to the questions asking whether he owns "real estate, stocks, bonds, securities, other financial instruments, automobile or any other assets." *See id.* at ¶ 5. Once again, however, Plaintiff does not complete the question by describing the property and stating its value. *See id.* Lastly, the form indicates that Plaintiff only has $9.60 in his prison account, and that during the last six months prior to this application, the average balance in his prison account was $4.03. *See* Dkt. No. 2 at 2.

If Plaintiff's claims are true and he does in fact have millions of dollars and real estate or other valuable property, then he cannot meet the financial requirements for proceeding IFP. Generally, when plaintiff has failed to properly complete the IFP request, the court will deny IFP without prejudice and allow plaintiff to resubmit the form with proper information. However, in this case, based upon the inadequacy of Plaintiff's responses, combined with his failure to state a plausible cause of action and the fact that amendment would be futile as discussed below, even if Plaintiff met the financial requirements for IFP, the Court would still find dismissal of this action to be proper.

### C. Sufficiency of the complaint

#### 1. Legal Standard

**\*3** In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

#### 2. Application

##### a. Color of state law

Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. To state a claim under section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges as secured by the Constitution of the United States. *See Annis v.*

*County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998). Under extremely limited circumstances not alleged here, private actors, such as Defendant, may be held liable under section 1983. *See White v. Monarch Pharmaceuticals*, Inc., No. 08–CV–0430, 2009 WL 3068217, *1 (2d Cir. Sept. 28, 2009); *see also Rendell—Baker v. Kohn*, 457 U.S. 830, 838–42 (1982). The law does not reach private conduct, no matter how "discriminatory or wrongful." *Annis*, 136 F.3d at 245 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

In the present matter, Plaintiff names two executives of Chase as Defendants. Along with being very difficult to determine what these Defendants allegedly did to Plaintiff, there is no indication that either Defendant acted under color of state law. Moreover, the complaint does not allege or suggest that Defendants conspired with a state actor to violate his constitutional rights. Further, Plaintiff does not allege any conduct attributable to either Defendant sufficient to establish their personal involvement in any alleged constitutional deprivation. *See* Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss the complaint.

### b. Criminal statutes

Plaintiff states in the "Causes of Action" section of his complaint that Defendants violated the New York Penal Law regarding falsifying business records, tampering with public records, and offering false documents for filing. *See* Dkt. No. 1 (citing N.Y. PENAL LAW §§ 175.10, 175.25, and 175.35). Even if this is true, however, there is no private right of action to enforce either state or federal criminal statutes. *See* Abrahams v. Incorporated Village of Hempstead, No. 08–CV–2584, 2009 WL 1560164, *8 (E.D.N.Y. June 2, 2009) (holding that dismissal of civil suit for perjury was proper because there is no private right of action for perjury under New York Law). Therefore, even assuming, *arguendo*, that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York Criminal Law.

**\*4** As such, Magistrate Judge Baxter correctly recommended the Court find that Plaintiff has failed to allege a plausible cause of action.

### c. Venue

Venue in federal-question cases is generally determined by 28 U.S .C. § 1391(b) which provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise

provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In this case, one of the Defendants is listed with a Houston, Texas address, while the other Defendant is listed as having a New York City address. *See* Dkt. No. 1 at ¶¶ 3(a) and (3)(b). Thus, neither of the Defendants reside, or are located, in the Northern District of New York. Plaintiff is incarcerated at Southport Correctional Facility, located in the Western District of New York. Therefore, since both Plaintiff and one of the Defendants are New York residents, this case could clearly not be brought as a diversity action. Moreover, under Plaintiff's section 1983 claim, venue is not proper in the Northern District of New York. All Defendants do not reside in the same state, neither Defendant is located in this district, and the complaint does not allege any conduct that occurred in the Northern District of New York.

Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Second Circuit has suggested that "a district court should not dismiss for improper venue on its own motion except in extraordinary circumstances." Concession Consultants, Inc. v. Mirisch, 355 F.2d 369 (2d Cir.1966).

In the present matter, the Court finds and agrees with Judge Baxter's Order and ReportRecommendation that this case presents precisely the extraordinary circumstances making it proper for the Court to dismiss for improper venue *sua sponte*.

### d. Leave to amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted); *see also Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

**\*5** Here, the Court agrees with Magistrate Judge Baxter that any attempt by Plaintiff to amend his complaint would be futile. As discussed, although Plaintiff alleges "due process violations," section 1983 does not permit such actions to be brought against private individuals absent some involvement by the state. Moreover, Plaintiff does not have the right to enforce New York State criminal statutes.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss Plaintiff's complaint with prejudice.

### IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's August 7, 2012 Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further **ORDERS** that Plaintiff's application to proceed *in forma pauperis* is **DENIED;** and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1789593

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 2591065
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Peter GONZALEZ and Francesca Gonzalez, Plaintiffs,
v.
Gary L. SHARPE, U.S. District Judge United States
District Court Northern District of New York, Defendant.

No. 1:06-CV-1023 (FJS/RFT).
|
Sept. 8, 2006.

**Attorneys and Law Firms**

Peter Gonzalez, Francesca Gonzalez, Schoharie, NY,
Plaintiffs pro se.

## MEMORANDUM-DECISION AND ORDER

SCULLIN, Senior Judge.

### I. INTRODUCTION

**\*1** The Clerk of the Court has sent Plaintiffs' complaint and
their application to proceed *in forma pauperis* to the Court for
its review.[1] *See* Dkt. Nos. 1-2.

### II. DISCUSSION

After reviewing the information that Plaintiffs provided in
their *in forma pauperis* application, the Court concludes that
they meet the financial criteria for commencing this action *in
forma pauperis*. Therefore, the Court must now consider the
sufficiency of the allegations set forth in their complaint in
light of 28 U.S.C. § 1915(e). Section 1915(e) directs
that, when a plaintiff seeks to proceed *in forma pauperis,*
"(2) ... the court shall dismiss the case at any time if the
court determines that-... (B) the action ... (i) is frivolous or
malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)
(B).[2] Thus, although the court has the duty to show liberality
towards *pro se* litigants, *see* *Nance v. Kelly,* 912 F.2d 605,

606 (2d Cir.1990) (per curiam), and "extreme caution should
be exercised in ordering sua sponte dismissal of a pro se
complaint *before* the adverse party has been served and both
parties (but particularly the plaintiff) have had an opportunity
to respond, ..." *Anderson v. Coughlin,* 700 F.2d 37, 41
(2d Cir .1983) (internal citations omitted), the court also has
a responsibility to determine that a claim is not frivolous
before permitting a plaintiff to proceed with an action in *forma
pauperis* .[3]

The only Defendant that Plaintiffs have named in their
complaint is "Gary L. Sharpe, U.S. District Judge United
States District Court Northern District of New York." *See*
Dkt. No. 1. Plaintiffs complain about a Decision and Order
that Defendant Judge Sharpe issued in an earlier action that
Plaintiffs commenced in this District. *See Gonzalez v. Spain,*
No. 1:06-CV-898 (GLS/RFT). In *Spain,* Defendant Judge
Sharpe dismissed the complaint pursuant to 28 U.S.C.
§ 1915(e)(2)(B), because the defendants, five justices of
the Appellate Division, Third Department, and a justice of
the Schoharie County Court, were absolutely immune from
liability on Plaintiffs' claims. *See Spain,* No. 1:06-CV-0898,
at Dkt. No. 3 (Decision and Order filed July 27, 2006).[4]
Plaintiffs claim that Defendant Judge Sharpe improperly
dismissed their complaint to "cover-up" the *Spain* defendants'
wrongdoing and that Defendant Judge Sharpe's certification
pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from
the Decision and Order would not be taken in good faith
was "fraudulent." *See* Dkt. No. 1 at 5. Plaintiffs request that
the Court fine and/or imprison Defendant Judge Sharpe. *See
id.* at 20-21. In the alternative, Plaintiffs ask this Court to
"intervene" with their appeal in *Spain* and "allow Plaintiffs
to proceed with [that] legal action," in which event Plaintiffs
state that they will "drop all causes of action and criminal
charges" against Defendant Judge Sharpe. *See id.* at 21.

**\*2** In essence, Plaintiffs seek to invoke this Court's federal
question jurisdiction, asserting claims against Defendant for
the violation of their constitutional rights. *See* Dkt. No. 1
at 2. Plaintiffs' claim arise, if at all, pursuant to *Bivens
v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971). *Bivens* actions, although not precisely
parallel, are the analog to actions pursuant to 42 U.S.C.
§ 1983 against state actors, and the constitutional standard
of review is the same for either type of action. *See Tavarez
v. Reno,* 54 F.3d 109, 110 (2d Cir.1995) (per curiam). Thus,

"federal courts have typically incorporated § 1983 law into *Bivens* actions." *Id.* (citations omitted).

The proper avenue for challenging a judicial determination is on direct appeal, not by seeking a declaration that the presiding judge's decision violated the litigant's constitutional rights. *See Montesano v. New York,* Nos. 05 CV 9574, 05 CV 10624, 2006 WL 944285, *4 (S.D.N.Y. Apr. 12, 2006).* [5] "Neither damages, injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments." *Montesano,* 2006 WL 944285, at *4.

"Judicial immunity has been created both by statute and by judicial decision 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of the consequences.' " *Huminski v. Corsones,* 396 F.3d 53, 74 (2d Cir.2005) (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)) (other citation and footnote omitted). The law in this Circuit clearly provides that "[j]udges enjoy absolute immunity from personal liability [under Section 1983] for 'acts committed within their judicial jurisdiction.' " *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994) (quoting *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). "The absolute immunity of a judge applies ' "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." ' " *Id.* (quotation omitted). Thus, under the common-law doctrine of judicial immunity, a judge is absolutely immune from a suit for monetary damages unless (1) the actions giving rise to the suit were "not taken in the judge's judicial capacity" or (2) the suit arises from actions that the judge took "in the complete absence of all jurisdiction." *Huminski v. Corsones,* 386 F.3d 116, 137-38 (2d Cir.2004) (citations omitted).

Similarly, injunctive relief is not available in an action pursuant to 42 U.S.C. § 1983 against a judicial officer for acts taken in that official's judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." *42 U.S .C. § 1983.* This provision, enacted in 1996 as section 309(c) of the Federal Courts Improvement Act, Publ. L. No. 104-317, 110 Stat. 3847 (1996), legislatively reversed the decision in *Pulliam v. Allen,* 466 U.S. 522

(1984), in which the Supreme Court held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id.* at 541-42. As with § 1983 law generally, this legislative restoration of judicial immunity has been deemed applicable to *Bivens* actions against federal judicial officers. *See Jones v. Newman,* No. 98 Civ. 7460, 1999 WL 493429, *7 (S.D.N.Y. June 30, 1999);* *Kampfer v. Scullin,* 989 F.Supp. 194, 201 (N.D.N.Y.1997) (citation omitted).

**\*3** Plaintiffs' claims against Defendant Judge Sharpe arise solely from the performance of his judicial duties in presiding over *Spain* and determining the sufficiency of Plaintiffs' complaint in that action. Redress of Plaintiffs' claims lies with the Court of Appeals. [6] Plaintiffs do not claim that Defendant Judge Sharpe violated a declaratory decree or that declaratory relief is unavailable. Therefore, the doctrine of judicial immunity bars Plaintiffs' claims against Defendant Judge Sharpe, and the Court must dismiss their complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

Finally, insofar as Plaintiffs seek the imposition of criminal penalties against Defendant Judge Sharpe, this Court has no authority to grant such relief to Plaintiffs. "It is well settled that a private citizen has no right to prosecute a federal crime." *People v. Muka,* 440 F.Supp. 33, 36 (N.D.N.Y.1977) (citing *Connecticut Action Now, Inc. v. Roberts Plating Company, Inc.,* 457 F.2d 81, 86 (2d Cir.1972)) (other citations omitted). A criminal prosecution is intended to protect the rights of the United States as a whole, not to vindicate private rights; and the United States Attorney "possesses an absolute and unreviewable discretion as to what crimes to prosecute." *Id.* (citing 28 U.S.C. § 547(1)) (other citation omitted).

### III. CONCLUSION

Accordingly, have reviewed the entire file in this matter and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B); and the Court further

**ORDERS** that Plaintiff's application to proceed *in forma pauperis* is **DENIED AS MOOT;** and the Court further;

**CERTIFIES** that any appeal from this matter would not be taken in good faith, *see* 28 U.S.C. § 1915(a)(3); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on Plaintiffs

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2591065

## Footnotes

1    Plaintiffs have not paid the statutory filing fee for this action.

2    To determine whether an action is frivolous, the court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

3    Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court, *see Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as "to discourage the filing of, and waste of judicial resources[,]" *Neitzke,* 490 U.S. at 327.

4    Plaintiffs have filed an appeal from this Decision and Order to the United States Court of Appeals for the Second Circuit. *See Spain,* 1:06-CV-898, at Dkt. No. 5 (Notice of Appeal filed August 24, 2006).

5    "Although the First Amendment grants an individual the right to sue in court, it does not afford the party the right to obtain a particular result." *Montesano,* 2006 WL 944285, at *3 (citing cases). Thus, an adverse judicial decision does not constitute a violation of the right to petition the government for the redress of grievances. Similarly, "[d]issatisfaction with a court's ruling does not amount to a deprivation of one's due process rights." *Id* .

6    This Court has no authority to "intervene" with Plaintiffs' appeal in *Spain,* which is pending before the Second Circuit.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 204 of 212

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 205 of 212

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 206 of 212

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual can also be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 207 of 212

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

**\*4**  In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be

subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

*District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5**  The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 208 of 212

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute

provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 209 of 212

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).[7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See* *Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 210 of 212

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics.[9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

 **\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. §1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (per curiam) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and

found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

## CONCLUSION

 **\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are

with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including

Case 6:23-cv-00086-MAD-ML    Document 7    Filed 04/07/23    Page 212 of 212

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑ 28 U.S.C. § 1332.

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.